1  REBEKAH KAUFMAN (CA SBN 213222)
   RKaufman@mofo.com
2  ROBERT PETRAGLIA (CA SBN 264849)
   RPetraglia@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  MARC J. ZWILLINGER (*pro hac vice*)
   Marc@zwillinger.com
7  JACOB SOMMER (*pro hac vice*)
   Jake@zwillinger.com
8  ZWILLGEN PPLC
   1705 N. Street, NW
9  Washington, D.C. 20036
   Telephone: 202.706.5202
10 Facsimile: 202.706.5298

11 Attorneys for Defendant
   YAHOO! INC.

12

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16

17                                      | Case No.      5:13-CV-10-4980 LHK

18 IN RE YAHOO MAIL LITIGATION          | **REPLY IN SUPPORT OF YAHOO!**
                                        | **INC.'S MOTION TO DISMISS**
19

20                                      | **HEARING:**

21                                      | Date:    August 7, 2014
                                        | Time:    1:20 p.m.
22                                      | Place:   Courtroom 8
                                        | Judge:   The Honorable Lucy H. Koh
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3  I.  INTRODUCTION ........................................................................................................... 1

4  II.  ARGUMENT ................................................................................................................. 2

5      A.  Plaintiffs Fail to Show That The Wiretap Act Applies ........................................... 2

       B.  Plaintiffs Fail to Show That Yahoo Users Did Not Give Express Consent ........... 4

6      C.  The Ordinary Course of Business Exception Applies ............................................ 7

7      D.  Plaintiffs Do Not Oppose Dismissal of Their Claim for Unauthorized
           Access Under the SCA .......................................................................................... 8

8      E.  Plaintiffs Fail to State a Claim for Improper Disclosure Under the SCA .............. 8

9      F.  The Complaint Establishes Yahoo's Good Faith Immunity .................................. 9

       G.  CIPA Requires Interception of Communications "In Transit." ........................... 10

10     H.  Interpreting CIPA to Apply Even After Yahoo Receives an Email Would
           Lead to Absurd Results ...................................................................................... 11

11     I.  Plaintiffs' CIPA Claims Are Preempted ............................................................. 13

12     J.  Plaintiffs Fail to Allege a Violation of Their Constitutional Rights .................... 14

13 III.  CONCLUSION .......................................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adams v. City of Battle Creek*,
  250 F.3d 980 (6th Cir. 2001) ................................................................................. 8

*Aderhold v. car2go N.A., LLC*,
  No. C13-489, 2014 U.S. Dist. LEXIS 26320 (W.D. Wash. Feb. 27, 2014) ........... 4

*Amati v. City of Woodstock*,
  176 F.3d 952 (7th Cir. 1999) ................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 2

*Bunnell v. Motion Picture Ass'n of America*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................. 3

*Chevron Corp. v. Donziger*,
  No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622 (N.D. Cal. Aug. 22, 2013) .... 15

*Columbia Pictures, Inc. v. Bunnell*,
  245 F.R.D. 443 (C.D. Cal. 2007) ........................................................................... 3

*Deering v. CenturyTel, Inc.*,
  No. 10-cv-0063, 2011 WL 1842859 (D. Mont. May 16, 2011) .............................. 4

*Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*,
  872 F. Supp. 2d 369 (D.N.J. 2012) ...................................................................... 10

*Hill v. National Collegiate Athletic Assn.*,
  7 Cal 4th 1 (1994) ................................................................................................ 15

*In re DoubleClick, Inc. v. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................. 3, 6

*In re Google Inc. Gmail Litig.*,
  No. 13-MD-02430, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) .... 7, 15

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 3

*In re Pharmatrack, Inc.*,
  329 F.3d 9 (1st Cir. 2003) ...................................................................................... 5

*Jenkins v. County of Riverside*,
  398 F.3d 1093 (9th Cir. 2005) ................................................................................ 8

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ........................................................................................... 13, 14

*Klayman v. Obama*,
  957 F. Supp. 2d 1 (D.D.C. 2013) ................................................................................ 15

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002)........................................................................... 2, 3, 4, 10

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) ........................................................................................................... 8

*Leong v. Carrier IQ, Inc.*,
  2012 U.S. Dist. LEXIS 59480 (C.D. Cal. Apr. 27, 2012)........................................ 14

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................... 15

*Murray v. Fin. Visions, Inc.*,
  No. C 07-2578, 2008 U.S. Dist. LEXIS 93419 (D. Ariz. Nov. 6, 2008) ................... 5

*O'Brien v. O'Brien*,
  899 So. 2d 1133 (Fla. Dist. Ct. App. 2005) .............................................................. 10

*People v. Conklin*,
  12 Cal. 3d 259 (1974) ........................................................................................... 13, 14

*People v. Melongo*,
  -- N.E.3d -, 2014 IL 114852 (2014) ........................................................................... 13

*People v. Wilson*,
  17 Cal. App. 3d 598 (1971)......................................................................................... 11

*Ribas v. Clark*,
  38 Cal.3d 355 (Cal.1985) ............................................................................................ 12

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975)................................................................................... 12, 13

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013)................................................................................. 9, 10

*Sanders v. Robert Bosch Corp.*,
  38 F.3d 736 (4th Cir. 1994)........................................................................................... 7

*Shively v. Carrier IQ, Inc.*,
  2012 U.S. Dist. LEXIS 103237 (N.D. Cal. July 24, 2012)...................................... 14

*Smith v. Harrington*,
  C 12-03533 LB, 2013 WL 132465 (N.D. Cal. Jan. 9, 2013)..................................... 8

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
   36 F.3d 457 (5th Cir. 1994) ........................................................................ 3

*Sullivan v. Finkelstein*,
   496 U.S. 617 (1990) (Scalia, J., concurring) ............................................ 4

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2003) ................................................................. 3, 4

*Ung v. Facebook, Inc.*,
   No. 1:12-cv-217244, Dkt. 0054-000 (Cal. Super. Ct. July 2, 2012) ...... 15

*United States v. Councilman*,
   418 F.3d 67 (1st Cir. 2005) ........................................................... 2, 3, 11

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ................................................................... 15

*United States v. Johnson*,
   256 F.3d 895 ............................................................................................ 3

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) ..................................................................... 2

*United States v. Steiger*,
   318 F.3d 1039 (11th Cir. 2003) ................................................................. 3

*United States v. Warshak*,
   631 F.3d 266 (6th Cir. 2010) ................................................................... 15

*Valentine v. NebuAd, Inc.*,
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) ................................................... 14

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) .............................................................. 12, 13

*Watkins v. L.M. Berry & Co.*,
   704 F.2d 577 (11th Cir. 1983) ................................................................... 5

**STATUTES**

18 U.S.C.
   § 2511(1)(d) .............................................................................................. 7
   §§ 2511(2)(a)-(i) ..................................................................................... 14
   § 2707(e) ................................................................................................... 9

Cal. Pen. Code
   § 630 *et seq* .................................................................................... 12, 14

Cal. Penal Code
    § 502...................................................................................................................... 11

**OTHER AUTHORITIES**

http://www.merriam-webster.com/dictionary/transit .................................................. 10

S. Rep. No. 99-541 (1986) ........................................................................................ 14

# I.   INTRODUCTION

The express provisions in Yahoo's Communications Terms of Service eliminate any potential liability for violation of the Wiretap Act.  Under the Act, only the Yahoo user's consent is needed.  Unlike the contract provisions the Court considered in the Gmail litigation, Yahoo states plainly that it scans and analyzes the content of all messages for the purpose of advertising.  Although plaintiffs contend that Yahoo provides additional information about its practices in other documents (such as its FAQs), the broad consent that Yahoo obtains to scan and analyze all email content without limitation includes, as a matter of law, the lesser-included practices that are described in these other documents.  Moreover, even if plaintiffs could state a Stored Communications Act (SCA) claim against Yahoo for accessing email on its own servers, this consent would be dispositive under the SCA as well.

The essential question that must be decided for plaintiffs' CIPA claim is: when is an email no longer "in transit" such that CIPA's all-party consent provisions no longer apply?  Yahoo offers a bright-line rule, supported by Ninth Circuit precedent decided *en banc* after the withdrawal of a contrary panel opinion.  For email, transit ends when the email reaches the custody of the destination service provider.

Plaintiffs vacillate between claiming that transit ends when the communication has actually reached the recipient, and when it reaches the recipient's proverbial mailbox.  Both theories are unworkable and have serious consequences.  The first contravenes prior California case law and would make it illegal for the recipient to authorize anyone to look at or listen to her messages before she does.  This theory also would amount to a complete sea change in law enforcement practices, requiring intercept orders for unread or unheard messages.  Plaintiffs' second theory is similarly unworkable because it would cause criminal liability to turn entirely on a provider's internal network design.  Scanning email on some servers would be permissible, but scanning on others would be a criminal offense.  The law cannot be so uncertain as to criminalize such differences.

Any application of CIPA to email therefore must recognize that CIPA's two-party consent provisions cannot apply once an email is received by the destination provider's server.  This

conclusion is supported by the Ninth Circuit and other circuits' determination under the Wiretap Act that emails are no longer "in transit" once they are in pre-delivery temporary storage. Alternatively, any contrary application of CIPA would be preempted under the SCA, which is intended to govern how providers can access and disclose mail on their servers.  If CIPA is not preempted, and if it were held to apply to emails until the moment they are read or accessed by the user, it would bring about the exact result that the Ninth Circuit warned against in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), by criminalizing a broad range of everyday activity and inviting discriminatory and arbitrary enforcement.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Show That The Wiretap Act Applies.

Plaintiffs' arguments that the Wiretap Act applies to the conduct alleged are unavailing. First, plaintiffs are wrong that a bare allegation that Yahoo "intercepts its users' incoming and outgoing emails while they are in transit" states a Wiretap Act claim.  (Opp. 3:19.)  That allegation merely recites the elements of a claim under the Wiretap Act, but does not show that the Wiretap Act applies *here*, where an ECS provider allegedly scanned emails *after* they reached its servers.[1]  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 880 (9th Cir. 2002) (finding the Wiretap Act does not apply to electronic communications in temporary storage en route to the recipient); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (more than legal conclusions and recitations of a statute are needed to state a claim).

Second, plaintiffs' reliance on *Councilman* and *Szymuszkiewicz* is misplaced.  Although these cases hold that communications can be in temporary electronic storage *and* capable of being intercepted, this is a minority view.  The Ninth Circuit has held explicitly that electronic communications in temporary, intermediate storage en route to their destinations are covered by the SCA, and not the Wiretap Act.  *Konop*, 302 F.3d at 880.  This follows this Court's own prior

---

[1] Plaintiffs argue in a footnote that their allegations regarding outgoing email are conceptually distinct from their allegations regarding incoming email.  (Opp. 9 n.4.)  But Yahoo can only scan emails stored on its servers, regardless of whether they are on the way out or on the way in.  Therefore, outgoing emails are also covered by the SCA, not the Wiretap Act.  *See Konop*, 302 F.3d at 878 n.6 ("Email . . . [is] stored at various junctures in various computers between the time the sender types the message and the recipient reads it").

interpretation of the SCA (*see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1059 (N.D. Cal. 2012) (concluding the SCA protects electronic communications stored for a limited time in the middle of a transmission)) and other courts that have considered the issue.  *See, e.g.*, *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994); *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003); *In re DoubleClick, Inc. v. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001).  And the Ninth Circuit reaffirmed *Konop* in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2003), where it determined the SCA covers emails in storage prior to delivery.[2]  *Id.* at 1075.  As the dissent in *Councilman* observed, "every court that has passed upon the issue before us has reached a conclusion opposite to that of the en banc majority: that the Wiretap Act's prohibition on intercepting electronic communications does not apply when they are contained in electronic storage, *whether such storage occurs pre- or post-delivery*, and even if the storage lasts only a few mili-seconds."  *United States v. Councilman*, 418 F.3d 67, 87 (1st Cir. 2005) (emphasis added).  *Konop* and *Theofel* remain good law, and interpret the Wiretap Act in a manner that defeats plaintiffs' claim.

Plaintiffs argue that *Councilman* and *Szymuszkiewicz* should apply because they are closer on the facts than *Konop* and *Theofel*.  (Opp. 5:18-20, 9:20.)  But each case addressed the same question:  Does the SCA or the Wiretap Act apply to electronic communications in temporary, intermediate storage prior to delivery?  And the district court in *Szymuszkiewicz* acknowledged that *Konop* had been applied to similar facts but stated that it disagreed with *Konop*'s holding.[3]

Plaintiffs' suggestion that the Ninth Circuit would have reached a contrary conclusion if it had the benefit of Senator Leahy's amicus brief in *Councilman* fares no better.  (Opp. 6:7-8.)  In

---

[2] This belies plaintiffs' argument that *Konop*'s rejection of their position is "dicta."  (Opp. 1:13, 6:6, 9:20-22); *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) ("Communications are in 'electronic storage' under the SCA, and outside the scope of the Wiretap Act, even where the storage is transitory and lasts for only a few seconds.").  This Court should continue to follow the Ninth Circuit's conclusions as it is bound to do.  *See United States v. Johnson*, 256 F.3d 895, 914-16 (9th Cir. 2001).

[3] *See* No. 07-CR-171, 2009 U.S. Dist. LEXIS 60755, 22-24 (E.D. Wis. June 30, 2009) (finding that *Bunnell v. Motion Picture Ass'n of America*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007), was not factually distinguishable, and was a reasonable extension of the logic employed by *Konop* and *Steve Jackson Games*, but deciding that *Konop* should not be followed.).

*Konop*, the Ninth Circuit expressly considered (and rejected) arguments raised by the dissent, amici, and in law review articles similar to Senator Leahy's. *Konop*, 302 F.3d at 878 n.6 ("It is ... argued that if the term 'intercept' does not apply to the *en route* storage of electronic communications, the Wiretap Act's prohibition against 'intercepting' electronic communications would have virtually no effect. . . . [T]he language and structure of the ECPA demonstrate that Congress considered and rejected this argument.").  Nor it is clear what significance the Ninth Circuit would have attached to Senator Leahy's brief given the skepticism courts have applied to a legislator's post-enactment statements regarding the interpretation of a statute. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974) ("post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the act's passage.  Such statements 'represent only the personal views of these legislators.'"); *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring) ("Arguments based on subsequent legislative history . . . should not be taken seriously, not even in a footnote.").

Finally*,* plaintiffs wrongly suggest that a 2010 edition of the Department of Justice computer crime manual reflects a major change after *Konop* and *Theofel* were decided.  (Opp. 9:5-17.)  Instead, the DOJ recognizes the split between the First Circuit and other circuits, including the Ninth Circuit, on the issue of whether the Wiretap Act applies to emails in temporary storage en route to their recipient.[4]  Plaintiffs can offer no persuasive reason for this Court to refuse to apply binding Ninth Circuit precedent in favor of the First and Seventh Circuits.  The Court should be skeptical of plaintiffs' misguided invitation.

**B.     Plaintiffs Fail to Show That Yahoo Users Did Not Give Express Consent.**

Nothing in plaintiffs' brief undermines the conclusion that Yahoo has obtained consent from its users for the conduct alleged by clear and unequivocal contractual disclosures.  First, plaintiffs are wrong that the issue of express consent presents a question for a trier of fact.  (Opp. 18:22.)  Courts routinely dismiss Wiretap Act claims at the pleading stage based on one party's consent.[5]  Indeed, this Court analyzed the express consent issue in the Gmail scanning case at the

---

[4] H. Marshall Jarrett, et al., Prosecuting Computer Crimes (Department of Justice Office of Legal Education 2d ed. 2010) at 63-64.

1    motion to dismiss stage.  None of the cases plaintiffs cite hold that express consent cannot be

2    decided as a matter of law based on a written agreement.[6]

3         Plaintiffs' argument that the terms "scan" and "analyze" are "amorphous terms" that do

4    not "explicitly inform Yahoo Mail users what Yahoo does with the contents of its users' email" is

5    similarly unavailing.  (Opp. 11:9-10.)  "Scan" and "analyze" are straightforward verbs that

6    describe precisely the conduct that is the crux of plaintiffs' complaint, which itself uses the very

7    same terms to contend that Yahoo has not obtained consent to scan and analyze emails.  (*See,*

8    *e.g.*, Compl. ¶ 4 ("Yahoo has <u>scanned and analyzed</u> Plaintiffs emails . . . without regard to

9    whether or not Plaintiffs have given their consent to the <u>scanning and analysis</u>"); ¶ 6 ("Yahoo

10   does not obtain actual consent from Yahoo Mail users for its <u>scanning and analysis</u>"); ¶ 33

11   ("Yahoo does not disclose in the Terms of Service that it <u>scans</u> emails[.]") (emphases added).)

12   Yahoo's Communications Terms of Service was and is sufficiently clear to obtain consent.

13        Nor has Yahoo exceeded the scope of its broad, contractual consent.  Yahoo's

14   Communications Terms of Service describe what Yahoo does with emails, including storing

15   them: "Yahoo's automated systems scan and analyze all incoming and outgoing communications

16   content sent and received from your account . . . to, without limitation, provide personally

17   relevant product features and content, to match and serve targeted advertising and for spam and

18

---

19        [5] *See, e.g.*, *Mortensen v. Bresnan Commc'n.*, No. 10-cv-0013, 2010 U.S. Dist. LEXIS
     131419, at *13 (D. Mont. Dec. 13, 2010) (holding plaintiffs consented to interception through

20   defendant's online agreement, and a link on its website); *Deering v. CenturyTel, Inc.*, No. 10-cv-
     0063, 2011 WL 1842859, at *1 (D. Mont. May 16, 2011) (holding plaintiffs consented to the

21   collection of user information through defendant's privacy policy); *see also generally Aderhold v.
     car2go N.A., LLC*, No. C13-489, 2014 U.S. Dist. LEXIS 26320 (W.D. Wash. Feb. 27, 2014)

22   (finding consent under the TCPA where plaintiff checked three boxes indicating assent to
     particular conditions).

23

24        [6] The cases plaintiffs cite each involve a factual issue rather than the meaning and scope
     of a written agreement obtaining consent.  *In re Pharmatrack, Inc.*, 329 F.3d 9, 15, 20 (1st Cir.

25   2003), dealt with whether plaintiffs consented to the collection of their users' information when
     they purchased software that forwarded user data to the defendant, despite the fact that the

26   defendants allegedly led plaintiffs to believe that they would *not* collect user information.
     *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983), dealt with whether the

27   plaintiffs gave implied consent to the taping of personal calls when they expressly consented to
     the taping of sales calls.  Finally, *Murray v. Fin. Visions, Inc.*, No. C 07-2578, 2008 U.S. Dist.

28   LEXIS 93419 (D. Ariz. Nov. 6, 2008), involved a factual question of whether the plaintiffs
     forwarded their emails directly to the defendant, thereby giving consent.  *Id.* at *13.

malware detection and abuse protection." (Compl. ¶ 41.) It also states that "Yahoo collects and stores the data," and that Yahoo scans and analyzes all incoming and outgoing emails "including those stored in your account."[7] *Id.* This is an explicit and unequivocal advisory for users of what Yahoo will do if those users choose to use its free email services.

Plaintiffs' various quotations from Yahoo's Privacy Policy and other documents establish no deficiency in consent, given the broad consent obtained from Yahoo's users in the Communications Terms of Service. Plaintiffs argue that the Privacy Policy "say[s] nothing about the scanning and analysis of email" and thus could "give users the impression that Yahoo only collects basic demographic information." (Opp. 11:14-16.) The Privacy Policy does not mention the scanning and analysis of email because it does not govern the scanning and analysis of email content.[8] The Communications Terms of Service does that. Both policies explain exactly what they cover. (*See* Compl. Exs. B, D.) Users must agree to both. (Compl. ¶ 31.)

Plaintiffs also argue that Yahoo's FAQ page and Yahoo Mail privacy practice page[9] "illustrate[] how incomplete the paragraph in Yahoo's Communications Terms of Service is." (Opp. 11:22-12:6.) The broad consent in the Communications Terms of Service regarding the scanning and analysis of all incoming and outgoing communications encompasses this conduct; these additional pages provide more detailed information to users who may seek it. (Compl. Ex. D, F, G.) Yahoo is not required to give this extra detail to acquire users' consent to scan and analyze their email, and had it done so, it might have narrowed the consent it was obtaining, not expanded it. *See In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d at 510 ("True, officers of

---

[7] Thus, this language also suffices as consent for SCA purposes.

[8] Yahoo's Privacy Policy "covers how Yahoo treats personal information that Yahoo collects and receives." (Compl. Ex. B.) It explains that "[p]ersonal information is information about [the user] that is personally identifiable like [their] name, address, email address, or phone number, and that is not otherwise publicly available." (*Id.*) Undoubtedly, if Yahoo had put the language in its privacy policy and not its Communications Terms of Service, plaintiffs would be arguing that the Communications Terms of Service would have been the proper place to put it.

[9] Plaintiffs also make reference to 54 additional "privacy practices" (Opp. 12:1); however, as is clear from the documents attached to the complaint, only one of these is related to Yahoo Mail (*see* Compl. Ex. E) and is, in any event, consistent with the Communications Terms of Service. (*See* Compl. Ex. F.) The rest concern other Yahoo products, such as Yahoo Answers, Yahoo Finance, and Yahoo News. (*See* Compl. Ex. E.)

1   certain Web sites might not understand precisely how DoubleClick collects demographic

2   information through cookies and records plaintiffs' travel across the Web.  However, that

3   knowledge is irrelevant to the authorization at issue . . . . All that the Web sites must authorize is

4   that DoubleClick access plaintiffs' communications to them.").  Yahoo obtained consent through

5   clear, simple, language that broadly notifies its users that it will scan and analyze their email.

6            Plaintiffs also argue that Yahoo does not obtain consent to "intercept and scan email for

7   the purpose of creating user profiles," or to store the content of their emails.  (Opp. 12:18-22.)

8   But these allegations are irrelevant.  If Yahoo properly obtained consent to access the contents of

9   the message, the Wiretap Act requires no further consent.  If the Wiretap Act even applies, it is

10  the act of "interception" that needs consent, and nothing further.  *See* 18 U.S.C. § 2511(1)(d).

11  Assuming the truth of plaintiffs' allegation, the Wiretap Act does not speak to—much less

12  prohibit—creation of user profiles or storing email content.

13           **C.        The Ordinary Course of Business Exception Applies.**

14           Plaintiffs argue that this Court's prior decision regarding the ordinary course of business

15  exception in the *In re Google Gmail Privacy* matter controls.  A critical difference is that the

16  Court previously determined that Google's alleged conduct was contrary to its stated policy, and

17  therefore outside the scope of its ordinary business.  No. 13-MD-02430, 2013 U.S. Dist. LEXIS

18  172784 at *28.  Here, Yahoo has stated that it provides free email services in exchange for the

19  right to scan and analyze emails and display targeted advertising.  (*See, e.g.*, Compl. Ex. D.; Ex.

20  G (explaining email scanning and analysis for targeting advertisements)).  It would be

21  incongruous to find that Yahoo acted outside of its ordinary course of business where it acted

22  exactly as it told its users it would.

23           The agreements between ECS providers and their users regarding the services provided

24  and the terms of those services should determine the contours of the ordinary course of business

25  exception.  In deciding whether the exception applies, courts have expressly considered whether a

26  party to the communication had reasonable notice of the interception.[10]  Moreover, this approach

27  ──────────────

28  [10] *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740-42 (4th Cir. 1994) (holding that
    recording all telephone conversations on certain lines after bomb threats were received by the
    company was not in the ordinary course of business where the employees did not receive notice

would eliminate ambiguity over what the exception covers and would avoid the unrestrained consequence of defining ordinary course of business as "whatever a business wants," because the business must have first disclosed its planned conduct to its users.

Finally, though plaintiffs argue that the rule of lenity does not apply to the ordinary course of business exception because courts have been "interpreting and applying this exception for decades" (Opp. 14:14), courts have not interpreted the exception consistently, much less resolved the ambiguities in its scope. Yahoo's argument is not, as plaintiffs contend, based solely on the difference of opinion between this Court and Judge Grewal. (Opp. 14:12-13.) Other courts have determined that the ordinary course of business exception is ambiguous (*see, e.g.*, *Adams v. City of Battle Creek*, 250 F.3d 980, 982 (6th Cir. 2001)) ("[the ordinary course of business exception is] not altogether clear."). Given that Courts disagree, the exception should be interpreted to limit rather than expand the scope of liability. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

### D.   Plaintiffs Do Not Oppose Dismissal of Their Claim for Unauthorized Access Under the SCA.

Plaintiffs concede their claim for unauthorized access under § 2701(a) by failing to respond to Yahoo's arguments in its motion to dismiss. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (failure to raise claims in a response results in abandonment); *Smith v. Harrington*, C 12-03533 LB, 2013 WL 132465 at *11 (N.D. Cal. Jan. 9, 2013) ("where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice."). Plaintiffs' claims for unauthorized access under 2701(a)—the only SCA claim plaintiffs allege—should be dismissed.

### E.   Plaintiffs Fail to State a Claim for Improper Disclosure Under the SCA.

Plaintiffs cannot transform allegations of unauthorized access under section 2701 into improper disclosure claims under section 2702(a) of the SCA based on one unsupported and conclusory allegation in their complaint. Plaintiffs argue they have adequately stated a claim

---

of the recording.); *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999) ("[W]hat is ordinary is apt to be known; it imports implicit notice"); *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001) ("'Ordinary course of business' . . . generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) with notice.").

under section 2702(a) by relying on one unrelated sentence from the Yahoo privacy policy, which refers to sharing customer information with "trusted partners."  There is simply no support for their allegation that the customer information includes any email content,[11] or that "trusted partners" who allegedly received non-content information were governmental entities, the only entities to whom disclosure of non-content information is prohibited by section 2702(a).  This entirely speculative and unsupported allegation cannot survive a motion to dismiss.  The SCA expressly allows Yahoo to provide records or information "pertaining to a subscriber or to a customer of such service (not including contents of communications…)" to "any person other than a governmental entity."  18 U.S.C. § 2702(c)(6).  Plaintiffs have failed to allege an essential element of a claim under section 2707 for violating section 2702(a) by not alleging that Yahoo disclosed email content to third parties or non-content information to governmental entities.

### F.    The Complaint Establishes Yahoo's Good Faith Immunity.

The complaint establishes that Yahoo obtained its users' consent to scanning, and plaintiffs' claims must be dismissed under § 2707(e) or § 2520(d)(3) because plaintiffs have not pled the absence of good faith reliance on that consent.  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).  Plaintiffs attempt to distinguish *Sams*, arguing that the complaint in *Sams* alleged facts providing a defense to liability (namely that Yahoo acted in reliance on a grand jury subpoena) and thus that it was incumbent on the plaintiff to allege facts showing that reliance was not in good faith.  18 U.S.C. § 2707(e) (good faith reliance on a grand jury subpoena is a defense).  The *Sams* court found that Yahoo acted in good faith when it relied on the allegedly invalid subpoena because plaintiff did not allege facts that led "to a plausible inference that Yahoo! actually knew that these subpoenas were invalid…."  *Sams*, 713 F.3d at 1181.  Plaintiffs contend that they have not alleged facts here showing entitlement to a defense and thus that they need not also allege facts showing that Yahoo did not act in good faith reliance.  But plaintiffs are wrong.  Here, plaintiffs have included allegations regarding the terms of Yahoo's agreement with its users regarding the scanning and analyzing of their mail.  In light of that agreement, which

---

[11] In support, plaintiffs cite to Exs. B and G to the complaint, but those documents do not say that Yahoo disclosed content to third parties.  (Opp. 15:4-7.)

entitles Yahoo to a complete defense on grounds of consent, it was incumbent on plaintiffs to include facts leading to a plausible inference that Yahoo knew the consent was invalid.  This case is thus on all fours with *Sams*.  (Compl. ¶¶ 34, 41, 52.)

Plaintiffs assert in the alternative that Yahoo acted in bad faith in continuing to rely on *Konop* after two other circuits reached different conclusions.  *Konop* is controlling Ninth Circuit precedent.  To call it "objectionably unreasonable" for Yahoo to continue to rely on binding precedent in its home circuit strains credulity.

### G.	CIPA Requires Interception of Communications "In Transit."

Section 631's statutory language is clear:  communications may not be intercepted while "in transit" or "passing over any wire, line, or cable."  Plaintiffs do not address this language, instead arguing a California court would reject the Ninth Circuit's holding in *Konop* and interpret the phrase "in transit" in section 631 differently than "transmission" in the federal Wiretap Act.  This Court should follow *Konop* and interpret the clear statutory language as written:  "transit" means "an act, process, or instance of passing through or over" (http://www.merriam-webster.com/dictionary/transit (April 7, 2014)), and emails are no longer "in transit" when they arrive at the email provider to whom they are addressed and where they will be stored.

Rather than turn to CIPA's statutory text, plaintiffs instead rely on Senator Leahy's amicus brief about the federal Wiretap Act.  But reliance on post-passage legislative history is even less relevant when it relates to a different statute passed by a different legislative body.  Instead, a California court interpreting "in transit" would likely reach the same result as other courts that have repeatedly followed *Konop*'s lead.  *See, e.g.*, *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 872 F. Supp. 2d 369 (D.N.J. 2012) (New Jersey law); *O'Brien v. O'Brien*, 899 So. 2d 1133, 1136 (Fla. Dist. Ct. App. 2005) (Florida law).

Accepting Yahoo's interpretation of CIPA would not implicate Senator Leahy's core concerns.  The Senator's brief recognizes that when transferred *between* entities on the way to its recipient's mailbox, a "number of intermediary computers may temporarily store a message" and points out that this temporary storage during transmission should not change protections afforded to an email message.  (Leahy Br. at 12.)  As Yahoo argues, however, once the message arrives at

the destination provider's servers, its transmission is complete.  Senator Leahy's worries about

shifting protection as an email moves in and out of electronic storage on the path between the

sender and destination are not implicated.  Once the email reaches Yahoo, it never shifts "back

in" to protection under the Wiretap Act.  The message has reached its destination – yahoo.com –

and Yahoo's conduct is governed by laws pertaining to stored communications, like the SCA and

Cal. Penal Code § 502 (criminalizing hacking into user accounts by third parties).

### H.    Interpreting CIPA to Apply Even After Yahoo Receives an Email Would Lead to Absurd Results.

If an intended recipient can lawfully authorize someone else to read his emails or listen to

voice messages before he does, he should be able to authorize his service provider to do the same.

Either the recipient has autonomy and control over his recorded messages, or he does not.

Plaintiffs try to preserve some control by the recipient, while still making Yahoo into a criminal

actor, by vacillating between two theories of when emails are no longer "in transit" under CIPA,

neither of which works.  First, they argue that the emails are "in transit" until they reach the

intended recipient.  (Opp. 17).  Alternatively, they argue that transit ends when the mail reaches

the recipient's mailbox.  (Opp. 19).  Applying either theory in an all-party consent state like

California leads to inappropriate results.  If emails remain in transit until the intended recipient

downloads the email, it would lead to the criminalization of ordinary behavior, including by

office assistants, because administrative assistants and answering services like the one in *People

v. Wilson*, 17 Cal. App. 3d 598 (1971), are temporary way points, not intended recipients.

Plaintiffs seek to discredit this by arguing that administrative assistants read emails only

after they have reached their intended destination.  (Opp. at 19.)  But under both *Councilman* and

*Szymuszkiewicz*, any automatic forwarding or sorting of email (even if requested by the recipient)

is an intercept because it happens automatically on servers before the recipient has downloaded or

read the message.  Both decisions addressed only federal law, which allows for interception with

one party's consent. Where neither party consented, the courts erroneously concluded that the

message should still be protected by the Wiretap Act.  Applying the rationale of those cases in a

two-party consent state would criminalize ordinary behavior, such as email or call forwarding.

As to the "mailbox" theory, criminal liability under CIPA would theoretically turn entirely on a provider's network design.  A user's mailbox for a global provider like Yahoo is not analogous to a home mailbox, and will not reside on a single computer server in a specific location.  Rather, email is passed through many computer servers and will exist on and be replicated to a system of mail servers in data centers around the country, and such technology will continue to evolve.  An interpretation of the law that hinges on which individual computer server an email resides at any given time makes no sense, and would be based on a particular technological understanding of what a "mailbox" is.  This type of rule is not consistent with the language of either federal or state law.  Nor should technological architecture be the key determining factor for liability.  Such a rule would make criminal liability unpredictable and arbitrary with no practical effect on user privacy, because it is undisputed that at some point in the process Yahoo is allowed to access the emails without the sender's consent.  Moreover, it would criminalize ordinary provider behavior because CIPA does not contain the same provider exceptions as the Wiretap Act. Cal. Penal Code § 631(b). Thus, any type of intermediate scanning in the ordinary course of processing the mail (including for viruses and malware) by Yahoo would still be illegal until the email reached the mailbox.  *Id.*  Likewise, if email users were to program Yahoo's servers to take action on an email (such as forwarding, deleting, sorting), such programming would also be criminal if done before the email reaches the mailbox.[12]

CIPA must be interpreted consistent with its purpose.  CIPA is intended to protect conversational privacy from access by third parties.  *Ribas v. Clark*, 38 Cal.3d 355, 365 (1985).s Consistent with that purpose, California courts have interpreted section 631 not to apply to the parties to the conversations — only third-party eavesdroppers.  *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975).  Here, a participant to the conversation, who cannot herself violate § 631, has authorized Yahoo to examine her

---

[12] Either rule would affect criminal proceedings.  Under the first theory, the government would need a Title III intercept Order to obtain unread mail that had not yet reached the recipient.  Under the second, whether it would need a Title III order or a Search Warrant would depend on the design of the mail provider's network and whether it was pulling email from an intermediate mail server or the destination mail server.  Thus, adopting either position in this case could have an impact on law enforcement practices.

1   communications.  Allowing participants to access and forward their own email, but not allowing

2   those participants to authorize another to do what they themselves may do is overbroad, divorced

3   from the statute's purpose, and conflicts with *Kahn* and *Rogers*.  Illinois courts, when faced with

4   an all-party consent statute that as applied would lead to similarly absurd, overbroad results and

5   criminalize normal behavior, recently struck it down as unconstitutional.  *See People v. Melongo*,

6   -- N.E.3d --, 2014 IL 114852 (Ill. 2014) ("[W]hen that policy criminalizes a wide range of

7   innocent conduct, however, it cannot be sustained."); *People v. Clark*, -- N.E.3d --, 2014 IL

8   115776 (Ill. 2014) (same).  This Court should interpret CIPA in a more logical way than plaintiffs

9   urge, by finding that, when an email reaches the recipient's provider (which processes the email

10   on the recipient's behalf), the email is no longer in transit.

**I.    Plaintiffs' CIPA Claims Are Preempted.**

12      Plaintiffs fundamentally misunderstand Yahoo's preemption arguments.  Yahoo does not

13   claim that federal law wholly preempts CIPA.  Rather, CIPA is preempted by the SCA (or by the

14   Wiretap Act if that Act is held to apply) to the extent it attempts to regulate what ECS providers

15   do with email communications in temporary storage on their servers prior to delivery.  Plaintiffs'

16   argument that the SCA does not preempt CIPA simply repeats their contention that the SCA does

17   not apply to emails in temporary storage on a provider's storage en route to a recipient (Opp.

18   23:6-8), in contravention of Ninth Circuit law.  *See* Section II.A. *supra*.

19      *Conklin* and *Kearney*, cited by plaintiffs, only discuss whether the Wiretap Act preempts

20   the field of wiretapping, and whether it conflicts with CIPA's stricter prohibition on the

21   interception of telephone calls.  *People v. Conklin*, 12 Cal. 3d 259, 262 (1974); *Kearney v.

22   Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 105 (2006).  Those decisions do not address whether

23   the SCA preempts CIPA or the narrow issue presented here:  whether individual states may upset

24   Congress's regulation of nationwide ECS providers that must access emails on their own servers.

25   *Conklin* was decided in 1974, before email, and could not have anticipated how federal regulation

26   of ECS providers would conflict with state wiretapping laws.  In finding there were no

27   developments since *Conklin* that would warrant reconsideration of its preemption decision,

28

*Kearney* only considered the wiretapping of telephone calls.[13]  The court did not consider the provisions of the Wiretap Act or the SCA that create different standards for ECS providers, nor did it address electronic communications.[14]  *Id.*

Plaintiffs also fail to address the point that CIPA conflicts with the exceptions in the Wiretap Act and the SCA that expressly permit ECS providers to provide their services.  *See* 18 U.S.C. §§ 2511(2)(a)-(i); 2520(d) and 2707(e).  In 1967 (long before the advent of email), CIPA's drafters aspired to address "advances in science and technology" that "have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications" (Cal. Pen. Code § 630), but there is no reason to conclude the statute can be appropriately applied to all future developments in communications technology.  Congress passed ECPA to end the legal uncertainty that could "discourage [ECS providers] from developing new innovative forms of telecommunications and computer technology."  S. Rep. No. 99-541 at 5 (1986).  CIPA is an example of a statute that creates this type of uncertainty.  While Congress may have "left room for the states to supplement the Wiretap Act *in certain areas*" (*Conklin*, 12 Cal. 3d at 266) (emphasis added) (internal quotation and citation omitted), regulating email providers is not one of them.

**J.**     **Plaintiffs Fail to Allege a Violation of Their Constitutional Rights.**

Plaintiffs contend they have a privacy interest in their emails because the Wiretap Act and CIPA prohibit the interception of email without consent.  (Opp. 24:4-6.)  However, a legally recognizable privacy interest must be based on an interest in "precluding the dissemination or misuse of *sensitive and confidential* information;" or "in making *personal decisions or*

---

[13] *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 95, 105 (2006) ("In [*Conklin*] this court specifically addressed the question whether the provisions of title III of the federal Omnibus Crime Control and Safe Streets Act of 1968 . . . –relating to the wiretapping or recording of telephone conversations—preempted the application of more stringent provisions embodied in California's invasion-of-privacy law").

[14] Plaintiffs also rely on federal cases that do not address whether the SCA preempts CIPA, or whether ECPA preempts state regulation of ECS providers.  *See Shively v. Carrier IQ, Inc.*, 2012 U.S. Dist. LEXIS 103237 at *2 (N.D. Cal. July 24, 2012); *Leong v. Carrier IQ, Inc.*, 2012 U.S. Dist. LEXIS 59480 at *7 (C.D. Cal. Apr. 27, 2012); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2011).

1   conducting personal activities" without intrusion.  *See Hill v. National Collegiate Athletic Assn.*,

2   7 Cal 4th 1, 35 (1994) (emphasis added).  The constitutional right of privacy does not protect a

3   *means* of communication, rather it protects sensitive information.  *See id.*

4           Plaintiffs have failed to point to any allegations (e.g., allegations regarding the content of

5   their emails) that would show a reasonable expectation of privacy.  Nor is it clear they could do

6   so given the Court's prior ruling in the Gmail case.  *See In re Google Inc. Gmail Litig.*, No. 13-

7   MD-02430, 2013 U.S. Dist. LEXIS 172784 at *84 (N.D. Cal. Sept. 26, 2013) (holding plaintiffs

8   did not have a reasonable expectation of confidentiality in their emails because emails can be

9   forwarded to third parties).  Moreover, plaintiffs' "stockpiling" argument that "Yahoo's

10  wholesale scanning of emails and storage of their data . . . violates their reasonable expectation of

11  privacy" does not establish such a reasonable expectation of privacy.  (Opp. 24:12-13.)  *See Low*

12  *v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 n.3 (N.D. Cal. 2012) (rejecting argument that

13  California Constitution protects against "collecting and stockpiling" of unnecessary information).

14          The cases plaintiffs rely upon to support their "stockpiling" theory have no bearing on this

15  matter.  *Klayman*, as well as *Warshak* and *Forrester*, evaluate the United States government's

16  searches of citizens' data under the Fourth Amendment.  *See Klayman v. Obama*, 957 F. Supp. 2d

17  1, 9-10 (D.D.C. 2013); *United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008); *United*

18  *States v. Warshak*, 631 F.3d 266, 282 (6th Cir. 2010).  The California Constitution, however,

19  "requires a plaintiff to show the privacy invasion is serious, thus setting a higher threshold than

20  for a federal claim under the *Fourth Amendment*."  *Chevron Corp. v. Donziger*, No. 12-mc-

21  80237, 2013 U.S. Dist. LEXIS 119622, *34 (N.D. Cal. Aug. 22, 2013) citing *Norman-Bloodsaw*

22  *v. Lawrence Berkeley Lab*, 135 F.3d 1260, 1271 (9th Cir. 1998). Further, *Klayman* and *Ung v.*

23  *Facebook, Inc.*, No. 1:12-cv-217244, Dkt. 0054-000 (Cal. Super. Ct. July 2, 2012), dealt with

24  comprehensive, years-long surveillance of individuals' telephone calls (*Klayman*) and online

25  browsing (*Facebook*).  Here, Yahoo allegedly only collected information plaintiffs sent to Yahoo

26  users, with the consent of those users.  (Compl. ¶ 1.)

27  **III.    CONCLUSION**

28          Based on the foregoing, Plaintiffs' consolidated complaint should be dismissed.

1    Dated:  April 7, 2014                    MORRISON & FOERSTER LLP

2

3                                             By:    /s/ Rebekah Kaufman
                                                     REBEKAH KAUFMAN
4
                                              Attorneys for Defendant
5                                             YAHOO! INC.

6
     Dated:  April 7, 2014                    ZWILLGEN PLLC
7

8
                                              By:    /s/ Marc J. Zwillinger
9                                                    MARC J. ZWILLINGER

10                                            Attorneys for Defendant
                                              YAHOO! INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Rebekah Kaufman, am the ECF User whose ID and password are being used to file this Request for Judicial Notice to support Defendant Yahoo! Inc.'s Motion to Dismiss Complaint.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Marc Zwillinger has concurred in this filing.

Dated:  April 7, 2014                                  /s/ Rebekah Kaufman
                                                              Rebekah Kaufman

sf-3402602