Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Matthew B. George (SBN 239322)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
*mbg@girardgibbs.com*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707
*lking@kaplanfox.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:   (212) 687-7714
*dstraite@kaplanfox.com*

*Co-Lead Interim Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE YAHOO MAIL LITIGATION | Case No.: 5:13-cv-04980-LHK<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  April 23, 2015<br>Time:  1:30 p.m.<br>Place: Courtroom 8<br>Judge: The Honorable Lucy H. Koh |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REDACTED

**NOTICE OF MOTION AND MOTION**

TO YAHOO! INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 23, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Lucy H. Koh, located at the Robert F. Peckman Federal Building, 280 South First Street, Fifth Floor, San Jose, California, Plaintiffs will, and hereby do, move for an order granting class certification pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure.  This motion is based on the notice of motion and motion, the accompanying memorandum of points and authorities, the accompanying declarations of Daniel C. Girard, Laurence King, Robert Sherwood, Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles, the papers and records on file in this action, and such other written and oral arguments as may be presented to the Court.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ISSUES TO BE DECIDED ....................................................................................2

III.  FACTUAL BACKGROUND .................................................................................2

    A.   Yahoo Scans and Analyzes Incoming and Outgoing Email Between Yahoo Mail
        Subscribers and Non-Subscribers .........................................................2

        ■  ██████████████████████████ ....................3

        2.   Yahoo Intercepts Incoming Email—Including Email from Plaintiffs and Other
           Class Members—While It Is In Transit to Yahoo Mail Subscribers' Inboxes ...........4

        ■  ███████████████████████████ ....................5

        ■  ████████████████████████ ....................6

        ■  ████████████████████████████ ....................6

        ■  ███████████████████████████ ....................7

        7.   Yahoo Intercepts and Scans Outgoing Email ..........................................7

   ■  ███████████████████████████ ....................8

    C.   Yahoo Does Not Obtain Class Members' Consent to Intercept, Scan, Analyze and
        Store Their Communications with Yahoo Mail Users .......................................8

    D.   Plaintiffs' Claims ......................................................................9

IV.  CLASS CERTIFICATION SHOULD BE GRANTED ...............................................10

    A.   The Class Is So Numerous That Joinder Is Impracticable ......................................11

    B.   There Are Questions of Law and Fact Common to the Class.............................................11

    C.   Plaintiffs' Claims Are Typical of the Class ..........................................13

D.    Plaintiffs Will Fairly and Adequately Represent the Class ....................................................13

E.    The Class Is Ascertainable...............................................................................................14

F.    The Requirements of Rule 23(b)(2) Are Satisfied ............................................................15

    1.    Certification Under Rule 23(b)(2) Is Appropriate Because Yahoo's Conduct Is "Generally Applicable to the Class as a Whole" ...........................................16

    2.    The Court May Apply the CIPA to All Class Members ...............................................17

        a.    Applying California Law Is Not Arbitrary or Unfair.........................................18

        b.    No Other State Has a Greater Interest in Having Its Laws Applied ..................19

    3.    Plaintiffs Have Standing to Seek Injunctive Relief ....................................................22

V.    CONCLUSION.........................................................................................................................22

1

2

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Hyland's Inc.*
    300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................................... 18

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*
    133 S. Ct. 1184 (2013) ...................................................................................................... 10

*Arnott v. U.S. Citizenship & Immigration Services*
    290 F.R.D. 579 (C.D. Cal. Oct. 22, 2012) ........................................................................ 11

AT & T Mobility LLC v. AU Optronics Corp.
    707 F.3d 1106 (9th Cir. 2013) .......................................................................................... 18

*Bates v. United Parcel Service, Inc.*
    511 F.3d 974 (9th Cir. 2007) ............................................................................................ 22

*Berndt v. Cal. Dept. of Corrections*
    2012 WL 950625 (N.D. Cal. Mar. 20, 2012) .................................................................... 15

*Brazil v. Dole Packaged Foods, LLC*
    2014 WL 2466559 (N.D. Cal. May 30, 2014) .............................................................. 15, 22

*Charlebois v. Angels Baseball, LP*
    2011 WL 2610122 (C.D. Cal. June 30, 2011) .................................................................. 11

*Chavez v. Blue Sky Natural Beverage Co.*
    268 F.R.D. 365 (N.D. Cal. 2010) ...................................................................................... 19

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ............................................................................................................ 22

*Clothesrigger, Inc. v. GTE Corp.*
    191 Cal. App. 3d 605 (Cal. Ct. App. 1987) ...................................................................... 21

*DG ex rel. Stricklin v. Devaughn*
    594 F.3d 1188 (10th Cir. 2010) ........................................................................................ 17

*Ellis v. Costco Wholesale Corp.*
    285 F.R.D. 492 (N.D. Cal. 2012) ...................................................................................... 17

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) .............................................................................. 10, 11, 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Forbush v. J.C. Penney Co., Inc.*
  994 F.2d 1101 (5th Cir.1993) ................................................................................ 16

*Galvan v. KDI Distribution, Inc.*
  2011 WL 5116585 (C.D. Cal. Oct. 25, 2011)......................................................... 20

*General Telephone Co. of the Southwest v. Falcon*
  457 U.S. 147 (1982)......................................................................................... 10, 13

*Gray v. Golden Gate Nat'l Recreational Area*
  279 F.R.D. 501 (N.D. Cal. 2011)........................................................................... 14

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) .......................................................................... 11, 13

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ................................................................................. 13

*In re Abbott Laboratories Norvir Anti-Trust Litig.*
  2007 WL 1689899 (N.D. Cal. June 11, 2007) ....................................................... 11

*In re Carrier IQ, Inc.*
  2015 WL 274054 (N.D. Cal. Jan. 21, 2015) .......................................................... 12

*In re ConAgra Foods, Inc.*
  302 F.R.D. 537 (C.D. Cal. 2014)........................................................................... 22

*In re Google Inc. Gmail Litig.*
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................................................... 14

*In re High-Tech Employee Antitrust Litig.*
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................... 10, 14

*In re Zynga Privacy Litig.*
  750 F.3d 1098 (9th Cir. 2014) ............................................................................... 10

*Kearney v. Salomon Smith Barney, Inc.*
  39 Cal.4th 95 (2006) ............................................................................................. 20

*Kelley v. Microsoft Corp.*
  251 F.R.D. 544 (W.D. Wash. 2008) ...................................................................... 19

*Klaxon v. Stentor Electric Manufacturing Co.*
  313 U.S. 487 (1941)............................................................................................... 17

*Lyon v. U.S. Immigration & Customs Enforcement*
  300 F.R.D. 628 (N.D. Cal. Apr. 16, 2014)................................................................ 15

*Mazza v. American Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ................................................................ 18, 19, 21

*O'Connor v. Boeing North America, Inc.*
  184 F.R.D. 311 (C.D. Cal. 1998)................................................................ 14

*Paracor Financial, Inc. v. General Electric Capital Corp.*
  96 F.3d 1151 (9th Cir. 1996) ................................................................ 17

*Parkinson v. Hyundai Motor America*
  258 F.R.D. 580 (C.D. Cal. 2008)................................................................ 20

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ................................................................ 17

*Pecover v. Electronic Arts Inc.*
  2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................ 19, 20, 21

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985)................................................................ 18

*Rannis v. Recchia*
  380 F. App'x 646 (9th Cir. 2010) ................................................................ 11

*Ries v. Arizona Beverages USA LLC*
  287 F.R.D. 523 (N.D. Cal. 2012)................................................................ 11, 16

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010) ................................................................ 12, 13, 16, 17

*Shelton v. Bledsoe*
  2015 WL 74192 (3d Cir. Jan. 7, 2015) ................................................................ 15, 17

*Shook v. El Paso County*
  386 F.3d 963 (10th Cir. 2004) ................................................................ 15

*Sueoka v. United States*
  101 F. App'x. 649 (9th Cir. 2004) ................................................................ 11

*Sullivan v. Oracle Corp.*
  51 Cal. 4th 1191 (2011) ................................................................ 20

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK

*Valentine v. NebuAd, Inc.*
  804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................... 20

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ...................................................... 1, 12, 16

*Walters v. Reno*
  145 F.3d 1032 (9th Cir. 1998) ............................................... 16, 17

*Washington Mutual Bank v. Superior Court*
  24 Cal. 4th 906 (2001) .................................................. 17, 18, 19

*Werdebaugh v. Blue Diamond Growers*
  2014 WL 2191901 (N.D. Cal. May 23, 2014) ................................... 18, 19, 21

*Wolin v. Jaguar Land Rover North America*
  617 F.3d 1168 (9th Cir. 2010) ..................................................... 13

*Wolph v. Acer America Corp.*
  272 F.R.D. 477 (N.D. Cal. 2011) ............................................... 19, 20

*Yaffe v. Powers*
  454 F.2d 1362 (1st Cir. 1976) ..................................................... 15

**Rules**

Fed. R. Civ. P. 23 ........................................................... passim

**Statutes**

18 U.S.C. § 2702(a)(2) ......................................................... 10

Cal. Penal Code § 631 ........................................................ 9, 12

Cal. Penal Code § 637.2(b) ...................................................... 9

**Other Authorities**

1 Alba Cone & Herbert B. *Newberg, Newberg on Class Actions* § 3.3 (4th ed. 2002) ..................... 11

5 James W. Moore, *Moore's Federal Practice*, § 23.21[3] ...................................... 14

Manual for Complex Litigation (Fourth) § 21.222 (2004) ..................................... 15

Wright, Miller & Kane, 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.) .......................... 17

## I.    INTRODUCTION

California-based Yahoo! Inc. operates a web-based email service called Yahoo Mail.  In exchange for providing "free" email, Yahoo subscribers agree to allow Yahoo to intercept, scan, analyze and store their emails for the purpose of providing targeted advertising, one of the company's main sources of revenue.  Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams and Halima Nobles are four individuals who do not subscribe to Yahoo Mail, but who do occasionally correspond with subscribers of Yahoo Mail.  Plaintiffs allege that Yahoo intercepts the email they send to and receive from Yahoo Mail subscribers while it is in transit and scans and analyzes the content.  They also allege that Yahoo provides some of the information it obtains from their email to third parties without their consent. Unlike subscribers, however, Yahoo does not obtain the consent of non-subscribers to its practices, warn non-subscribers of its practices, or give non-subscribers a way of avoiding the interception of their communications.  Plaintiffs allege that Yahoo therefore violates the California Invasion of Privacy Act (CIPA), which requires all parties to consent to the interception of a communication, and the Stored Communications Act (SCA).

Plaintiffs move for certification under Federal Rule of Civil Procedure Rule 23(b)(2) of a class of all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.  Class certification under Rule 23(b)(2) is appropriate because plaintiffs do not seek monetary relief.  Instead, they are requesting solely declaratory and injunctive relief for Yahoo's unlawful interception, scanning and sharing of the content of their emails, conduct that is "generally applicable to the class as a whole."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).  Plaintiffs seek a declaration that Yahoo's conduct violates the CIPA and the SCA, as well as injunctive relief that requires Yahoo to cease scanning the emails of non-Yahoo Mail subscribers without their consent, permanently delete all data it has collected and stored from non-subscribers' email without their consent, and identify all individuals and entities with which it has shared or sold information or data it collected from non-subscribers' emails.

Class certification is also appropriate because the proposed class satisfies the requirements of Rule 23(a).  While the precise size of the class is unknown, with more than 75 million Yahoo Mail

subscribers it can reasonably be inferred that the class has more than forty members, the minimum number required by the Ninth Circuit to satisfy the numerosity requirement.  Numerous common questions of law and fact exist, including whether Yahoo intercepts email while it is in transit.  Because plaintiffs and class members are all subject to the same conduct by Yahoo, the typicality requirement is satisfied.  The adequacy requirement is also satisfied, as plaintiffs have no conflicts with class members, have retained experienced counsel, and are diligently pursuing class members' claims.  Finally, if ascertainability is required for 23(b)(2) classes, the class is ascertainable because plaintiffs have precisely defined the class based on objective criteria.  Because the proposed class satisfies the requirements of Rule 23(a) and (b)(2), plaintiffs request that the Court grant their motion for class certification, appoint plaintiffs as class representatives, and appoint Girard Gibbs LLP and Kaplan Fox & Kilsheimer LLP as class counsel.

## II.      ISSUES TO BE DECIDED

The issue to be decided is whether plaintiffs' claims satisfy the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

## III.     FACTUAL BACKGROUND

### A.      Yahoo Scans and Analyzes Incoming and Outgoing Email Between Yahoo Mail Subscribers and Non-Subscribers

Yahoo acknowledges that it scans and analyzes all of its Yahoo Mail subscribers' incoming and outgoing email and stores the data it collects for future use:

> Yahoo's automated systems scan and analyze all incoming and outgoing communications content sent and received from your account (such as Mail and Messenger content including instant messages and SMS messages) including those stored in your account to, without limitation, provide personally relevant product features and content, to match and serve targeted advertising and for spam and malware detection and abuse protection.  By scanning and analyzing such communications content, Yahoo collects and stores the data.

Declaration of Daniel C. Girard, Ex. 3, ¶ 1.c.  While Yahoo Mail subscribers purportedly agree to Yahoo's interception and scanning of their email as a condition of using the email service, non-Yahoo Mail subscribers like plaintiffs do not.  Plaintiffs' Declarations, ¶ 4.  They do, however, use other email providers and inevitably correspond with subscribers of Yahoo Mail, and expect to do so in the future.

1   *Id.*, ¶ 3.  As discussed in more detail below, when a class member sends an email to a Yahoo Mail

2   subscriber, ███████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████

6   ████████   Yahoo has claimed that plaintiffs and class members consent to its practices, but Yahoo

7   insists that its actual email scanning policies and practices are and must remain "highly confidential"

8   under a protective order and concealed from the public, and Yahoo provides no mechanism for non-

9   Yahoo Mail subscribers to opt out of its scanning practices.  Girard Decl., Ex. 30 (Yahoo Interrogatory

10  Responses 7 & 8).

11  ████   ████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ███████████████████████████   Ex. 1 (Doron Dep.) at 37:8-38:5, 41:3-42:10,

15  53:25-55:10; Ex. 31 at 48/113; Declaration of Robert Sherwood, Ex. 1 at ¶ 17.██████████████

16  █████████████████████████████████████████████████████

17  █████████████████████████████████████████████████████

18  ████████████   Analysts have estimated that the company's core business has an actual market value

19  of negative $4 billion.  Girard Decl., Ex. 25 at 1.  Providing standard advertising content in web

20  browsers is no longer as profitable as it used to be now that certain technologies can be used to block the

21  ads.  *Id.*, Ex. 31 at 104/113. █████████████████████████████████

22  ████████████████████████████████████████████████████████

23  *Id.*, Ex. 1 (Doran Dep.) at 41:3-42:10; Ex. 25 at 4-5.

24  ██████████████████████████████████████████

25  ████████████████████████████████████████████

26  ██████████████████████████████████████████████████████   *Id.*,

27  Ex. 1 (Doron Dep.) at 23:23-25:2, 29:4-32:18, 41:3-42:10, 44:15-45:14; Ex. 4; Sherwood Decl., Ex. 1 at

28  ¶¶ 9-21. █████████████████████████████████████████████████

3

1      ███████████████████████████████ Sherwood Decl., Ex. 1 at ¶¶ 9-13; Girard

2 Decl., Ex. 1 (Doron Dep.) at 38:19-40:23, 74:5-75:11 ████████████████████████████

3 ████████████████████████████████████████████████████████████████

4 ████ Sherwood Decl., Ex. 1 at ¶¶ 13-21; Girard Decl., Ex. 1 (Doron Dep.) at 42:6-14, 75:2-76:1,

5 102:13-105:20; Ex. 12 at YAH00011472.

6         **2.**       **Yahoo Intercepts Incoming Email—Including Email from Plaintiffs and**

7                     **Other Class Members—While It Is In Transit to Yahoo Mail Subscribers'**

8                     **Inboxes**

9      ██████████████████████████████████████████

10      ███████████████████████████████████████████ Girard Decl.,

11 Ex. 1 (Doron Dep.) at 65:9-66:8; Ex. 4 at YAH00068107; Sherwood Decl., Ex. 1 at ¶ 10. ████████

12 ███████████████████████████████████████████████████

13 ████████████████ Girard Decl., Ex. 1 (Doron Dep.) at 24:4-26:20, 44:15-45:2, 65:7-66:24, 73:23-

14 76:1, 102:13-105:20; Ex. 4 at YAH00068107; Ex. 12 at YAH00011472; Sherwood Decl., Ex. 1 at

15 ¶¶ 10-13. ████████████████████████████████████████

16 █████████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████ Girard Decl., Ex. 1 (Doron Dep.) at 32:19-33:18, 46:21-47:4, 65:7-66:24,

19 102:13-105:20; Ex. 4 at YAH00068107; Ex. 12 at YAH00011472; Sherwood Decl., Ex. 1 at ¶¶ 11-13.

20      █████████████████████████████████████████

21 ███████████████████████████████████

22 ██████ Girard Decl., Ex. 1 (Doron Dep.) at 49:7-24; Ex. 6 at YAH00011655-56; Sherwood Decl., Ex.

23 1 at ¶ 13. ███████████████████████████████████

24 ████████████████████████████████ Girard Decl., Ex. 1

25 (Doron Dep.) at 49:7-24; Ex. 9 at YAH00011490; Sherwood Decl., Ex. 1 at ¶ 13. █████████████

26 ████████████████████████████████████

27 █████████████████████ Girard Decl., Ex. 1 (Doron Dep.) at 65:15-69:3; Sherwood Decl.,

28 Ex. 1 at ¶¶ 13, 18-21.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK



Girard Decl., Ex. 1 (Doron Dep.) at 16:16-17:3, 27:18-35:13, 68:18-69:1; Ex. 12; Ex. 15; Ex. 32; Sherwood Decl., Ex. 1 at ¶ 19.

Girard Decl., Ex. 1 (Doron Dep.) at 29:1-33:18; Ex. 11 at YAH00013080; Sherwood Decl., Ex. 1 at ¶ 19.

Girard Decl., Ex. 1 (Doron Dep.) at 34:16-35:13, 66:14-69:3; Ex. 11 at YAH00013080.

Girard Decl., Ex. 32 at YAH00002626-30; Ex. 1(Doron Dep.) at 34:25-35:13; Ex. 11 at YAH00013080-81; Sherwood Decl., Ex. 1 at ¶¶ 19-20.

Girard Decl., Ex. 1 (Doron Dep.) at 43:19-22, 51:16-53:6, 58:24-59:7, 108:7-109:24, 111:8-11,115:21-118:24; Ex. 13; Ex. 14 at YAH00070464; Ex. 17; Ex. 18; Sherwood Decl., Ex. 1 at ¶ 20.

Sherwood Decl., Ex. 1 at ¶ 14; Girard Decl., Ex. 1 (Doran Dep.) at 41:3-43:2, 58:24-59:9; Ex. 5 at YAH00074541.

Girard Decl., Ex. 1 (Doron Dep.) at 41:3-43:2, 75:2-76:1; Sherwood Decl., Ex. 1 at ¶ 14.



Girard Decl., Ex. 46 at YAH0070625; Ex. 18 at YAH00071892; Ex. 1 (Doron Dep.) at 117:8-118:24;

Sherwood Decl., Ex. 1 at ¶ 20.

Sherwood Decl., Ex. 1 at ¶ 20.

Girard Decl., Ex. 42 at YAH0071993.

Yahoo also acknowledges that its scanning technology "looks for patterns, keywords, and files" in its users' email and that it shares "specific objects from a message" with third parties.  Girard Decl., Ex. 24.

*Id.*, Ex. 23.

*Id.* Ex. 28 at YAH0004758, Ex. 29 at YAH00040217-19.

Girard Decl., Ex. 1 (Doron Dep.) at 60:2-62:5; Ex. 4 at YAH00068104-05; Sherwood Decl., Ex. 1 at ¶ 15.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK

1

2 ███████████████████ Girard Decl., Ex. 1 (Doron Dep.) at 60:2-62:5; Ex. 4 at

3 YAH00068104-05; Sherwood Decl., Ex. 1 at ¶ 15.

4 

5 

6 

7 

8 

9 ███████████████████████ Girard Decl.,

10 Ex. 1 (Doron Dep.) at 24:4-25:2, 65:15-66:8; Ex. 4 at YAH00068107; Sherwood Decl., Ex. 1 at ¶ 16.

11 

12 

13 Girard Decl., Ex. 1 (Doron Dep.) at 123:12-125:20; Ex. 21.

14 

15 

16 

17 ███ Girard Decl., Ex. 1 (Doron Dep.) at 53:1-57:24; Sherwood Decl., Ex. 1 at ¶ 17.

18 ████████████████████ Sherwood Decl., Ex.

19 1 at ¶ 17.

20        **7.**    **Yahoo Intercepts and Scans Outgoing Email**

21 

22 

23 

24 ███ Girard Decl., Ex. 1 (Doron Dep.) at 47:17-49:4, 96:22-98:2; Ex. 10; Sherwood Decl., Ex. 1 at

25 ¶ 22.

26 ████████████ Girard Decl., Ex. 1 (Doron Dep.) at 47:12-49:6,112:6-10; Sherwood

27 Decl., Ex. 1 at ¶ 22.

28

7

Girard Decl., Ex. 1 (Doron Dep.) at 37:8-38:5, 42:6-14, 75:6-76:1

103:23-105:20; Ex. 12 at YAH00011472;  Sherwood Decl., Ex. 1 at ¶¶ 13-14, 17, 19, 21.

Girard Decl., Ex. 1 (Doron Dep.) at 37:8-38:5, 41:3-42:5, 75:6-76:1; Sherwood Decl., Ex. 1 at

¶¶ 8, 13-15, 17, 19, 21.

Girard Decl., Ex. 20.

**C.**     **Yahoo Does Not Obtain Class Members' Consent to Intercept, Scan, Analyze and Store Their Communications with Yahoo Mail Users**

Yahoo requires Yahoo Mail subscribers to agree to the interception, scanning, analysis and

storage of their email in exchange for using the Yahoo Mail service.  *See* Girard Decl., Ex. 3 at ¶ 1.

Yahoo does not, however, obtain consent from non-subscribers to the interception, scanning, analysis

and storage of their emails with Yahoo Mail subscribers.  Yahoo attempts to put the burden of obtaining

non-subscribers consent on Yahoo Mail subscribers, stating in its Communications Terms of Service:

"If you consent to this [Additional Terms of Service] and communicate with non-Yahoo users using the

Services, you are responsible for notifying those users about this feature."  *Id.*, ¶ 1.c.  Yahoo makes no

other effort to obtain the consent of non-subscribers to the interception of their communications.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK

1   Yahoo has also concealed information about its practices from the general public.



4   Girard Decl., Ex. 28 at YAH00016831-32.

6   *Id.*, Ex. 37.

8   *Id.*, Ex. 34.

9   *Id.*, Ex. 35.

11   *Id.*, Ex. 34.

15   *Id.*, Ex. 37.

16   **D.      Plaintiffs' Claims**

17   Plaintiffs allege that Yahoo's conduct violates the California Invasion of Privacy Act ("CIPA"),

18   which makes it illegal for any person to use a "machine, instrument, or contrivance" to "willfully and

19   without the consent of all parties to the communication, or in any unauthorized manner, read[], or

20   attempt[] to read, or to learn the contents or meaning of any message, report, or communication while

21   the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any

22   place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to

23   communicate in any way, any information so obtained."  Cal. Penal Code § 631.  The CIPA authorizes

24   "[a]ny person" to "bring an action to enjoin and restrain any violation" of section 631.  Cal. Penal Code

25   § 637.2(b).

26   Plaintiffs also allege that Yahoo's conduct violates the Stored Communications Act ("SCA"),

27   which prohibits certain unauthorized access to stored communications and records.  While the SCA

28   immunizes electronic service providers like Yahoo from liability for accessing emails that are in its

---

9

1   subscribers' mailboxes or in "backup protection," they are still prohibited from disclosing the contents

2   of emails to third parties.  18 U.S.C. § 2702(a)(2).  "Under the Stored Communications Act, 'a person or

3   entity' (1) 'providing remote computing service to the public' (2) 'shall not knowingly divulge to any

4   person or entity the contents of any communication' (3) 'which is carried or maintained on that service

5   ... on behalf of, and received by means of electronic transmission from (or created by means of computer

6   processing of communications received by means of electronic transmission from), a subscriber or

7   customer of such service' (4) 'solely for the purpose of providing storage or computer processing

8   services to such subscriber or customer,' unless the provider is authorized to access the contents of any

9   such communications to provide other services."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th

10  Cir. 2014) (quoting 18 U.S.C. § 2702(a)(2)).

11  **IV.    CLASS CERTIFICATION SHOULD BE GRANTED**

12          Plaintiffs requesting class certification must demonstrate "that they have met each of the four

13  requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule

14  23(b)."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).  Courts must "engage in

15  a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class

16  certification have met the requirements of Rule 23."  *Id.* at 980 (quoting *General Telephone Co. of the*

17  *Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).  "Merits questions may be considered to the extent—

18  but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class

19  certification are satisfied."  *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1195

20  (2013).  "If a court concludes that the moving party has met its burden of proof, then the court has broad

21  discretion to certify the class."  *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1179

22  (N.D. Cal. 2013).

23          Plaintiffs' claims satisfy each of the requirements of Rule 23(a) and the requirements of Rule

24  23(b)(2).  Plaintiffs therefore request certification of a class of all persons in the United States who are

25  not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail

26  subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a

27  Yahoo Mail subscriber in the future.  Excluded from the class are Yahoo, its parents, subsidiaries,

28

10

1    affiliates and controlled persons, as well as the officers and directors (and their immediate family) of

2    Yahoo, its parents, subsidiaries, affiliates and controlled persons.

3          **A.**      **The Class Is So Numerous That Joinder Is Impracticable**

4          Plaintiffs satisfy the numerosity requirement because the class "is so numerous that joinder of all

5    members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Where 'the exact size of the class is unknown,

6    but general knowledge and common sense indicate that it is large, the numerosity requirement is

7    satisfied.'"  *In re Abbott Laboratories Norvir Anti-Trust Litig.,* Nos. C 04–1511 CW, C 04–4203 CW,

8    2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg,

9    *Newberg on Class Actions* § 3.3 (4th ed. 2002)).  In addition, "[b]ecause plaintiffs seek injunctive and

10   declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable

11   inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of

12   [the] proposed []class ... is sufficient to make joinder impracticable."  *Arnott v. U.S. Citizenship &*

13   *Immigration Services*, 290 F.R.D. 579, 586 (C.D. Cal. Oct. 22, 2012) (all but last alteration in original)

14   (quoting *Sueoka v. United States,* 101 F. App'x. 649, 653 (9th Cir. 2004)); *see also Charlebois v. Angels*

15   *Baseball, LP*, No. SACV 10-0853 DOC, 2011 WL 2610122, at *9 (C.D. Cal. June 30, 2011) (noting that

16   "numerosity requirements are often 'relaxed' when only injunctive or declaratory relief is

17   sought").  Plaintiffs estimate that there are hundreds of thousands of class members.  There are more

18   than 75 million Yahoo Mail accounts in the United States.  Complaint (ECF No. 35), ¶ 21; Answer (ECF

19   No. 53), ¶ 21.  If each of those Yahoo Mail subscribers emails with only one unique person who uses

20   email provided by another e-mail service provider, the class would have 80 million members.  Since a

21   proposed class of at least forty members presumptively satisfies the numerosity requirement, plaintiffs

22   have satisfied Rule 23(a)(1).  *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Ries v.*

23   *Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

24         **B.**      **There Are Questions of Law and Fact Common to the Class**

25         Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The

26   commonality requirement has "'been construed permissively' and '[a]ll questions of fact and law need

27   not be common to satisfy the rule.'"  *Ellis*, 657 F.3d at 981 (alteration in original) (quoting *Hanlon v.*

28   *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122

(9th Cir. 2010) (noting that "common" does not mean "complete congruence").  As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The common questions must "generate common *answers*" that are "apt to drive the resolution of the litigation."  *Id.*  Commonality is thus satisfied where the claims of all class members "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

████████████████████████████████████████████████████████████████

████████████████████████████████████████████  A common issue that was addressed in the motion to dismiss briefing is whether Yahoo intercepts its users' email while it is "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631.  Yahoo contends that email is no longer "in transit" when it arrives on a Yahoo server, but plaintiffs contend that the email remains in transit until it arrives in the recipient's inbox.  *See* ECF Nos. 37 & 39 (briefing on motion to dismiss); *see also In re Carrier IQ, Inc.*, No. C-12-md-2330 EMC, 2015 WL 274054, at *16-17 (N.D. Cal. Jan. 21, 2015) (holding that a communication is intercepted in transit when the interception occurs "*during* the transmission process" and before the communication has reached its final destination). ██████████████████████████████████

█████████████████████████████████████████████████████████████████ Yahoo purports to place the burden on subscribers to obtain the consent of non-subscribers in its terms of service, and has asserted that some class members have impliedly consented if they have some information about Yahoo's practices from other sources like the media.  Plaintiffs contend that Yahoo's concealment of its practices prevents any class members from providing actual consent, and that Yahoo provides non-subscribers with no means to opt out of those practices other than ceasing all email with Yahoo Mail subscribers—an unrealistic solution given the more than 75 million Yahoo Mail subscribers in the United States.  Additional common questions include whether Yahoo has acted willfully in violation of the CIPA and whether Yahoo's sharing of "specific objects" from email messages with third

1  parties violates the SCA.  Because the answers to these questions will be common to all class members,

2  the commonality requirement is satisfied.

3        **C.**     **Plaintiffs' Claims Are Typical of the Class**

4        Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the

5  claims or defenses of the class."  "The purpose of the typicality requirement is to assure that the interest

6  of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North*

7  *America*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

8  508 (9th Cir. 1992)).  Typicality exists when the class representatives and the class members are

9  subjected to and injured by the same course of conduct. *Ellis*, 657 F.3d at 984.  "Typicality refers to the

10  nature of the claim or defense of the class representative, and not to the specific facts from which it

11  arose or the relief sought." *Id*. (quoting *Hanon*, 976 F.2d at 508).  Therefore, "[l]ike the commonality

12  requirement, the typicality requirement is 'permissive' and requires only that the representative's claims

13  are 'reasonably co-extensive with those of absent class members; they need not be substantially

14  identical.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Hanlon*, 150 F.3d at 1020).

15        The typicality element is satisfied for the same reasons that the commonality requirement is

16  satisfied.  As the Supreme Court has explained, "The commonality and typicality requirements of Rule

17  23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular

18  circumstances maintenance of a class action is economical and whether the named plaintiff's claim and

19  the class claims are so interrelated that the interests of the class members will be fairly and adequately

20  protected in their absence." *Falcon*, 457 U.S. at 163 n.13.   Since plaintiffs are subject to the same

21  conduct by Yahoo as all class members, plaintiffs' claims are typical of the class.

22        **D.**     **Plaintiffs Will Fairly and Adequately Represent the Class**

23        Rule 23(a)(4) is satisfied when the class representatives will "fairly and adequately protect the

24  interests of the class."  To make this determination, "courts must resolve two questions: '(1) do the

25  named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

26  the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*,

27  657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).  "Adequate representation depends on, among

28  other factors, an absence of antagonism between representatives and absentees, and a sharing of interest

between representatives and absentees." *Id.*   In considering the adequacy of plaintiffs' counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Because plaintiffs' claims are typical of the class, they have no conflicts with class members. Plaintiffs have also committed to prosecute the case vigorously on behalf of all class members. Plaintiffs' Declarations, ¶ 2.  Plaintiffs have retained counsel with substantial experience in litigating privacy claims and class actions generally.  Girard Decl., ¶ 46, Ex. 44; Declaration of Laurence King, ¶¶ 4-5, Exs. A-B.  Plaintiffs' counsel have devoted a significant amount of time to identifying and investigating the potential claims and will continue to commit the resources necessary to representing the class.  Girard Decl., ¶¶ 46-47.  Plaintiffs and their counsel have demonstrated their commitment to prosecuting this case on behalf of all class members and thus satisfy the adequacy requirement.

### E.   The Class Is Ascertainable

"[C]ourts have implied an additional requirement under Rule 23(a): that the class to be certified be ascertainable." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *10 (N.D. Cal. Mar. 18, 2014).  "'A class definition should be precise, objective, and presently ascertainable,' though 'the class need not be so ascertainable that every potential member can be identified at the commencement of the action.'" *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (quoting *O'Connor v. Boeing North America, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). "A class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for a court to ascertain whether an individual is a member.'" *In re High-Tech*, 985 F. Supp. 2d at 1182 (quoting *O'Connor*, 184 F.R.D. at 319).  It must be possible to determine whether a class member is included "by reference to objective criteria." *Id.* (quoting 5 James W. Moore, *Moore's Federal Practice,* § 23.21[3] (Matthew Bender 3d ed.)).

Classes certified under Rule 23(b)(2), however, "generally command less precision than those brought under Rule 23(b)(3)," and courts in this circuit have therefore relaxed the ascertainability requirement for (b)(2) classes. *Lyon v. U.S. Immigration & Customs Enforcement*, 300 F.R.D. 628, 636

n.3 (N.D. Cal. Apr. 16, 2014); *see also Berndt v. Cal. Dept. of Corrections*, No. C 09-3174 PJH, 2012 WL 950625, at *9 (N.D. Cal. Mar. 20, 2012) (finding the ascertainability requirement satisfied for a proposed (b)(2) class where the "class definition satisfactorily describes and reaches members of the class who *may* experience harm" as a result of the defendant's conduct "at some point in the future"); Manual for Complex Litigation (Fourth) § 21.222 (2004) ("Because individual class members must receive the best notice practicable and have an opportunity to opt out, and because individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."). In fact, the Third Circuit recently held that "a judicially-created implied requirement of ascertainability—that the members of the class be *capable* of specific enumeration—is inappropriate for (b)(2) classes." *Shelton v. Bledsoe*, No. 12-4226, 2015 WL 74192, at *5 (3d Cir. Jan. 7, 2015). The First and Tenth Circuits are in accord. *See Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1976).

The proposed class is ascertainable because plaintiffs have precisely defined the class based on objective criteria: email with Yahoo Mail subscribers during the class period. *See Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-018310LHK, 2014 WL 2466559, at *4 (N.D. Cal. May 30, 2014) (finding that the proposed class of persons who purchased Dole fruit products within the class period was ascertainable even though class members will likely lack proof of their purchases and the defendants had no company records identifying purchasers). Because Yahoo scans all incoming and outgoing email, there is no concern that the class includes individuals who were not or will not be exposed to Yahoo's scanning practices. *See id.* ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████ Thus, to the extent ascertainability is required for a 23(b)(2) class, the proposed class satisfies the Ninth Circuit's standard for ascertainability.

## F.   The Requirements of Rule 23(b)(2) Are Satisfied

A class may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-*

1  *Mart*, 131 S. Ct. at 2557 (holding that certification under Rule 23(b)(2) is appropriate "when a single

2  injunction or declaratory judgment would provide relief to each member of the class.").  The Supreme

3  Court has said that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory

4  remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only

5  as to all the class members or as to none of them."  *Wal-Mart*, 131 S. Ct. at 2557 (citation omitted).

6  "'[I]t is sufficient' to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern

7  or practice that is generally applicable to the class as a whole.'"  *Rodriguez*, 591 F.3d at 1125 (quoting

8  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).  And "questions of manageability and judicial

9  economy are … irrelevant to 23(b)(2) class actions."  *Id.* (quoting *Forbush v. J.C. Penney Co., Inc.,* 994

10 F.2d 1101, 1105 (5th Cir.1993)).

11       **1.      Certification Under Rule 23(b)(2) Is Appropriate Because Yahoo's Conduct
12              Is "Generally Applicable to the Class as a Whole"**

13       Plaintiffs challenge conduct that affects all class members:  Yahoo's interception of their email

14 with Yahoo Mail subscribers, scanning and analyzing the content of the emails, and sharing those

15 contents with certain third parties. ███████████████████████████████████████████

16 ███████████████████████████████████████████████████████████████████

17 ████████████████████████████  Girard Decl., Ex. 1 (Doron Dep.) at 22:4-10, 38:19-40:23,

18 47:14-49:1; Ex. 3 at ¶ 1.c.  Yahoo's practices are therefore uniform with respect to all class members,

19 and plaintiffs are challenging a "pattern or practice that is generally applicable to the class as a whole."

20 *Rodriguez*, 591 F.3d at 1125.  In addition, plaintiffs seek declaratory and injunctive relief, exactly the

21 type of relief that is best suited to certification under Rule 23(b)(2).  *See Ries*, 287 F.R.D. at 541 ("This

22 case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least

23 insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and

24 (2) injunctive relief prohibiting defendants from continuing them.").

25       Yahoo has argued that class certification under Rule 23(b)(2) is not appropriate because some

26 class members may have impliedly consented to Yahoo's practices.  But even if that were true, "[t]he

27 fact that some class members may have suffered no injury or different injuries from the challenged

28 practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."  *Rodriguez*, 591

F.3d at 1125.  "All the class members need not be aggrieved by or desire to challenge defendant's

conduct in order for some of them to seek relief under Rule 23(b)(2)."  *Walters*, 145 F.3d at 1047

(quoting Wright, Miller & Kane, 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.)); *see also* Fed. R. Civ. P.

23(b)(2) advisory committee's note to 1966 amendment ("Action or inaction is directed to a class within

the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few

members of the class, provided it is based on grounds which have general application to the class.").

The Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class

members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-

like predominance test, and does not require a finding that all members of the class have suffered

identical injuries."  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).  Courts therefore grant class

certification even if some class members may not have been injured by the defendant's conduct.  *See,*

*e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 536 (N.D. Cal. 2012) (certifying a (b)(2) class

even though some women received promotions despite Costco's alleged gender discrimination in

promotion and management practices); *see also Shelton*, 2015 WL 74192, at *8 ("There is no

requirement that every class member suffer an injury before a class is certifiable under Rule 23."); *DG*

*ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010) ("only named plaintiffs in a class

action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering

a continuing injury or are under an immediate threat of being injured in the future").

### 2.      The Court May Apply the CIPA to All Class Members

Although the CIPA is a California statute, it may be applied to the claims of class members from

all fifty states.  District courts must apply the choice-of-law principles of the state in which they sit for

claims over which they exercise supplemental or diversity jurisdiction.  *See Klaxon v. Stentor Electric*

*Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Paracor Financial, Inc. v. General Electric Capital*

*Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  As the California Supreme Court has explained, "California

law may be used on a classwide basis so long as its application is not arbitrary or unfair with respect to

nonresident class members" and "the interests of other states are not found to outweigh California's

interest in having its law applied."  *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 921

(2001).  "Under California's choice of law rules, the class action proponent bears the initial burden to

1   show that California has 'significant contact or significant aggregation of contacts' to the claims of each

2   class member." *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting

3   *Washington Mutual*, 24 Cal. 4th at 921).  The burden then shifts to the defendants to demonstrate that

4   the law of another state should apply. *Id.* at 590; *see also Washington Mutual*, 24 Cal. 4th at 921.

     **a.**    **Applying California Law Is Not Arbitrary or Unfair**

6       Application of California law to all class members is not arbitrary or unfair because California

7   has "a significant contact or significant aggregation of contacts to the claims asserted by each member of

8   the plaintiff class, contacts creating state interests." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-

9   22 (1985) (citation omitted).  "[C]onduct by a defendant within a state that is related to a plaintiff's

10  alleged injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts, creating

11  state interests, such that choice of its laws is neither arbitrary nor fundamentally unfair.'" *AT & T*

12  *Mobility LLC v. AU Optronics Corp.,* 707 F.3d 1106, 1113 (9th Cir. 2013) (citations omitted).  This

13  requirement is established in this case because Yahoo's headquarters are located in Sunnyvale,

14  California, and the largest concentration of Yahoo's United States offices are in California.  Girard

15  Decl., Ex. 38; Ex. 39. ████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████ *Id.*, Ex. 1 (Doron

18  Dep.) at 17:4-21, 19:3-22, 77:16-78:16; Ex. 38; Ex. 39.  Some of Yahoo's computer networks are also

19  located in California. *Id.*, Ex. 43 at ¶ 7.

20      Many courts have found that similar contacts with California established that application of

21  California law to the claims of residents of other states would not be arbitrary or unfair. *See, e.g., Allen*

22  *v. Hyland's Inc.*, 300 F.R.D. 643, 656-57 (C.D. Cal. 2014) (finding that the plaintiffs "sufficiently

23  demonstrated that this action is tied to California, such that the application of California law would not

24  be arbitrary or unfair" where the defendant was located in California and had manufacturing,

25  distribution, marketing and warehousing operations in California, and that relevant decision-making

26  occurred in California); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724-LHK, 2014 WL

27  2191901, at *19 (N.D. Cal. May 23, 2014) (finding the plaintiff met his burden of showing significant

28  contacts where the defendant was headquartered in California and the allegedly wrongful conduct

originated in California); *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 485 (N.D. Cal. 2011)

("[W]here Acer is incorporated in California and has its principal place of business and headquarters in

San Jose, California, consumers who purchase an Acer notebook would have some expectation that

California law would apply to any claims arising from alleged defects such that the application of

California law would not be arbitrary or unfair."); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D.

365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly

originated in California. With such significant contacts between California and the claims asserted by

the class, application of the California consumer protection laws would not be arbitrary or unfair to

defendants.").

    In addition, Yahoo's Terms of Service includes a California choice-of-law provision.  Girard

Decl., Ex. 43 at ¶ 28 ("You and Yahoo! each agree that the TOS and the relationship between the parties

shall be governed by the laws of the State of California without regard to its conflict of law provisions

….").  Although class members are not parties to the Terms of Service, the provision shows that Yahoo

is prepared to litigate claims relating to its email services, including its scanning and analysis of the

content of incoming and outgoing email, under California law.  *See Pecover v. Electronic Arts Inc.*, No.

C 08-2820 VRW, 2010 WL 8742757, at *19 (N.D. Cal. Dec. 21, 2010) (finding that a California choice-

of-law provision in EA's contracts with retailers "indicate[d] that EA was prepared to litigate in

California" in an antitrust case brought by video game purchasers); *Kelley v. Microsoft Corp.*, 251

F.R.D. 544, 550 (W.D. Wash. 2008) (finding that a choice-of-law provision in Microsoft's contracts

with retailers supported a finding of sufficient contacts in case brought by indirect purchasers alleging

deceptive marketing of software).  These significant contacts with California establish that it would not

be arbitrary or unfair to apply California law to the claims of all class members.

   **b.**    **No Other State Has a Greater Interest in Having Its Laws Applied**

    Because plaintiffs have shown that California law can be constitutionally applied to all class

members, the burden shifts to the defendants to demonstrate that the law of another state should apply.

*Mazza*, 666 F.3d at 590; *see also Washington Mutual*, 24 Cal. 4th at 921.  "To determine whether the

interests of other states outweigh California's interest, courts administer [California's] three-step

government interest test."  *Werdebaugh*, 2014 WL 2191901, at *19.  First, the court determines whether

there are differences in the laws of the states that could apply; second, the court determines whether a "true conflict" exists; and third, if there is a true conflict, the court "compares the nature and strength" of the interest of each state in having its law applied to determine which state's interest would be most impaired if it was not applied.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1202 (2011).

There is a conflict between California law, which requires all parties to a communication to consent to its interception, and the law of states that require the consent of only one party to the communication.  *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 100 (2006).[1]  But Yahoo will not be able to show that other states' interests will be more impaired than California's interest if their laws are not applied.  Courts have recognized that California has a strong interest in regulating conduct that emanates from within its borders.  *See Pecover*, 2010 WL 8742757, at *20 (explaining that California courts "have recognized California's interest in entertaining claims by nonresident plaintiffs against resident defendants" and citing cases); *Wolph*, 272 F.R.D. at 486 (finding that California's interest in having its law applied outweighs other states' interests in having their laws applied because the allegedly defective computers "were likely 'researched, designed, developed and tested within California' and … the 'decisions regarding marketing, sales, and pricing' likely would have been made in California"); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (finding that California's interest in having its law applied was greater than other states' interests when the wrongful acts underlying the plaintiffs' claims emanated from the defendant's California headquarters).  At the same time, class members' home states do not have an interest in depriving their residents of greater privacy protections available to them under California law.  *See Galvan v. KDI Distribution, Inc.*, No. SACV 08-0999-JVS, 2011 WL 5116585, at *14 (C.D. Cal. Oct. 25, 2011) ("To the extent that California laws conflict with any other state's law implicated in this matter, there is no evidence that a

---

[1] In *Kearney*, the California Supreme Court held that there was a true conflict between the law of California, which requires all parties to consent to interception, and the law of Georgia, which requires the consent of only one party.  *Id.*  The court concluded that in the context of that case, where the defendant was located in Georgia and the class members were California residents, "the failure to apply California law … would impair California's interest in protecting the degree of privacy afforded to California residents by California law more severely than the application of California law would impair any interests of the State of Georgia."  *Id.*; *see also Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026-28 (N.D. Cal. 2011) (noting that although *Kearney* did not address the issue, a California defendant can be held liable to non-California plaintiffs under the CIPA).

non-forum state has any interest in applying their laws over California's with respect to a California-based company, where the California law will likely afford the out-of-state customers greater protection."); *Pecover*, 2010 WL 8742757, at *20-21 ("Applying the laws of foreign states will not vindicate California's legitimate interests in deterring harmful conduct within its borders, whereas applying California law to nonresident plaintiffs will vindicate foreign states' interests in compensating their residents."); *see also Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App. 3d 605, 616 (Cal. Ct. App. 1987) ("California's more favorable laws may properly apply to nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.").

While this Court reached a different result in *Werdebaugh*, that case involved consumer protection claims based on consumers' purchases of products that were allegedly sold pursuant to misrepresentations. 2014 WL 2191901, at *20. Because "the place of the wrong" was "the point of purchase by each class member," each state had an interest in protecting its residents from the allegedly wrongful conduct occurring to them within its borders. *Id.* at *21; *see also Mazza*, 666 F.3d at 593 (concluding that "California considers the 'place of wrong' to be the state where the last event to make the actor liable occurred"). This "place of the wrong" analysis is not applicable in this case because there is no comparable "point of purchase" with in the class member's state of residence. Yahoo's wrongful conduct does not occur in the class member's home state just because he presses "send" on his email to a Yahoo Mail user or receives an email from a Yahoo Mail user there. Instead, the "place of the wrong" is a different state than the class members' state of residence, ███████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████ Girard Decl., Ex. 1 (Doran Dep.) at 18:12-16, 25:3-22, 43:6-9, 48:1-5; *see also* Ex. 43 at ¶ 7 (informing subscribers that their communications, including email, will be sent through Yahoo's computer networks in California, Texas, Virginia and other locations). Under these circumstances, the interests of other states in having their laws applied does not outweigh California's interest in having its

1   laws applied, and the states' interests in protecting the privacy rights of their residents are served by

2   providing class members with the greater privacy protections of the CIPA.[2]

3                **3.    Plaintiffs Have Standing to Seek Injunctive Relief**

4          Yahoo contends that plaintiffs lack standing to seek injunctive relief because they now know

5   about Yahoo's practices and can simply refrain from emailing with Yahoo Mail subscribers.  But

6   ceasing all email with Yahoo Mail subscribers is unrealistic given the more than 75 million Yahoo Mail

7   accounts in use in the United States alone.  Complaint (ECF No. 35), ¶ 21; Answer (ECF No. 53), ¶ 21.

8   For this reason, each of the plaintiffs has stated that he expects to email with Yahoo Mail users in the

9   future.  Plaintiffs' Declarations, ¶ 3.  Moreover, plaintiffs cannot prevent Yahoo Mail users from

10  emailing them.  For example, one of the plaintiffs could receive a Yahoo Mail email from his physician

11  with test results—an email that would be intercepted and scanned by Yahoo before the plaintiff even

12  knew it had been sent.  Because plaintiffs have demonstrated that they "ha[ve] suffered or [are]

13  threatened with a 'concrete and particularized' legal harm … coupled with 'a sufficient likelihood that

14  [they] will again be wronged in a similar way,'" they have established standing for prospective

15  injunctive relief.  *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of*

16  *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Under these circumstances, courts find that plaintiffs

17  have standing to seek prospective injunctive relief.  *See, e.g., Brazil*, 2014 WL 2466559, at *11 (finding

18  the plaintiff had standing where he testified that he would still be willing to buy a Dole product despite

19  his misrepresentation claims against Dole); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 575 (C.D. Cal.

20  2014) (holding that "a plaintiff does not lack standing simply because 'he has learned that a label is

21  misleading and therefore will not be fooled by it again,'" but rather only "if he has not expressed an

22  intent to purchase the products in the future") (citation omitted).

23  **V.    CONCLUSION**

24         Plaintiffs request that the Court grant their motion for class certification, appoint Cody Baker,

25  Brian Pincus, Rebecca Abrams, and Halima Nobles as class representatives, and appoint Girard Gibbs

26  and Kaplan Fox as class counsel.

27  _____

28  [2] Alternatively, the Court may certify the CIPA claim on behalf of a subclass of California residents
    only, as two of the plaintiffs are California residents and the Rule 23(a) and (b)(2) requirements remain
    satisfied.

DATED: February 5, 2015

**GIRARD GIBBS LLP**

_____/s/ Daniel C. Girard_____
Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Matthew B. George (SBN 239322)
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
*as@girardgibbs.com*
*mbg@girardgibbs.com*

*Co-Lead Interim Class Counsel*

**KAPLAN FOX & KILSHEIMER LLP**

_____/s/ Laurence D. King_____
Laurence D. King (SBN 206423)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707
*lking@kaplanfox.com*

*and*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
*dstraite@kaplanfox.com*

*Co-Lead Interim Class Counsel*

### ATTESTATION OF E-FILED SIGNATURE

I, Daniel C. Girard, am the ECF User whose ID and password are being used to file Plaintiffs' Motion For Class Certification.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Laurence D. King has concurred in this filing.

_____/s/ Daniel C. Girard_____

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.: 5:13-CV-04980-LHK