1  REBEKAH KAUFMAN (CA SBN 213222)
   RKaufman@mofo.com
2  ROBERT TRAVIS PETRAGLIA (CA SBN 264849)
   RPetraglia@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  MARC J. ZWILLINGER (*pro hac vice*)
   JACOB SOMMER (*pro hac vice*)
7  ZWILLGEN PLLC
   1705 N. Street, NW
8  Washington, D.C. 20036
   Telephone: (202) 706-5202
9  Facsimile: (202) 706-5298
   Marc@zwillgen.com
10 Jake@zwillgen.com

11 *Attorneys for Defendant YAHOO! INC.*

12

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                   SAN JOSE DIVISION

17

18 IN RE YAHOO MAIL LITIGATION          Case No.    5:13-CV-4980 LHK

19                                       **DEFENDANT'S OPPOSITION TO
                                         PLAINTIFFS' MOTION FOR
20                                       CLASS CERTIFICATION**

21                                       Date:     April 23, 2015
                                         Time:     1:30 p.m.
22                                       Judge:    The Honorable Lucy H. Koh
                                                   Courtroom 8
23

24

25

26          REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................i

I.  INTRODUCTION ........................................................................................1

II. RELEVANT BACKGROUND .....................................................................2

    A.  Overview of CIPA and the SCA ......................................................2

    B.  Factual Background ...........................................................................3

III. LEGAL STANDARDS ...............................................................................6

IV. ARGUMENT ..............................................................................................6

    A.  Plaintiffs Fail to Meet Rule 23(a)'s Requirements. .........................7

        1.  Plaintiffs cannot satisfy the commonality requirement.............7

        2.  Plaintiffs have atypical claims. ...............................................11

        3.  Plaintiffs are inadequate class representatives. ......................12

        4.  The proposed class is not ascertainable and is overbroad.......14

    B.  Certification Under Rule 23(b)(2) Would Be Improper. ................15

        1.  Plaintiffs lack standing to seek relief under 23(b)(2).............15

        2.  The proposed class is not cohesive. ........................................18

        3.  No single injunction or declaration would provide relief to the whole class. .......................................................................19

    C.  Choice of Law Principles Preclude Certification of the CIPA Claim.................22

V.  CONCLUSION .........................................................................................25

CASES

*Alberghetti v. Corbis Corp.*,
  263 F.R.D. 571 (C.D. Cal. 2010) ................................................................. 14

*Balthazor v. Cent. Credit Servs.*,
  No. 10-62435-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 182275
  (S.D. Fla. Dec. 27, 2012) ............................................................................. 8

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998)................................................................... 18, 19

*Berry v. Funk*,
  146 F.3d 1003 (D.C. Cir. 1998) .................................................................... 9

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234
  (N.D. Cal. May 30, 2014) ................................................................ 14, 15, 17

*Campion v. Old Republic Home Prot. Co.*,
  861 F. Supp. 2d 1139 (S.D. Cal. 2012) .................................................. 16, 17

*Castagnola v. Hewlett-Packard Co.*,
  No. C 11-05772 JSW, 2012 U.S. Dist. LEXIS 82026
  (N.D. Cal. June 13, 2012) ....................................................................... 16, 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ............................................................ 13, 21

*Connelly v. Hilton Grand Vacations Co.*,
  294 F.R.D. 574 (S.D. Cal. 2013).................................................................. 18

*Conrad v. Gen. Motors Acceptance Corp.*,
  283 F.R.D. 326 (N.D. Tex. 2012) ................................................................ 19

*East Texas Motor Freight Syst. Inc. v. Rodriguez*,
  431 U.S. 395 (1977) ..................................................................................... 14

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ............................................................. 25

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006)...................................................................... 16

*Gianino v. Alacer*,
  846 F. Supp. 2d. 1096 (C.D. Cal. 2012) ...................................................... 24

*Gonzales v. Comcast*,
   No. 10-cv-01010-LJO-BAM, 2012 WL 10621
   (E.D. Cal. Jan. 3, 2012) ........................................................................... 21

*Grayson v. 7-Eleven, Inc.*,
   No. 09-CV-1353 MMA (WMc), 2011 U.S. Dist. LEXIS 62211
   (S.D. Cal. June 10, 2011) ......................................................................... 25

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .................................................................... 11

*Hicks v. Client Servs., Inc.*,
   No. 07-61822-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 101129
   (S.D. Fla. Dec. 10, 2008) ..................................................................... 8, 10

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) .................................................................. 16

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) .............................................................. 17

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg.& Sales Practice Litig.*,
   920 F. Supp. 2d 1050 (N.D. Cal. 2013) .................................................... 19

*In re Google Inc. Gmail Litig.*,
   No. 13-MD-02430-LHK, 2014 U.S. Dist. LEXIS 36957
   (N.D. Cal. Mar. 18, 2014) ......................................................... 7, 9, 13, 17

*In re Intel Laptop Battery Litig.*,
   No. C 09-02889 JW, 2011 U.S. Dist. LEXIS 144209
   (N.D. Cal. Apr. 7, 2011) ........................................................................... 16

*In re Prempro Prods. Liability Litig.*,
   230 F.R.D. 555 (E.D. Ark. 2005) .............................................................. 25

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................. passim

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
   628 F.2d 994 (7th Cir. 1980) .................................................................... 11

*Jones v. ConAgra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 WL 2702726
   (N.D. Cal. June 13, 2014) ......................................................................... 15

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ................................................................................ 22, 23

*Lemon v. Int'l Union of Operating Eng'rs*,
    216 F.3d 577 (7th Cir. 2000) .............................................................................. 19

*Lewallen v. Medtronic USA, Inc.*,
    No. C 01-20395 RMW, 2002 U.S. Dist. LEXIS 20153
    (N.D. Cal. Aug. 28, 2002) ............................................................................ 18, 19

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .......................................................... 22, 23, 24, 25

*McCann v. Foster Wheeler LLC*,
    48 Cal.4th 68 (2010) ........................................................................................ 24

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012) .............................................................................. 18

*Moheb v. Nutramax Labs. Inc.*,
    No. CV 12-3633-JFW (JCx), 2012 WL 6951904
    (C.D. Cal. Sept. 4, 2012) ................................................................................... 21

*Montalti v. Catanzariti*,
    191 Cal. App. 3d 96 (1987) ............................................................................... 15

*Nelsen v. King Cnty.*,
    895 F.2d 1248 (9th Cir. 1990) ........................................................................... 18

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214 (1999) .............................................................................. 23

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................................. 10

*Quesada v. Banc of Am. Inv. Servs., Inc.*,
    No. 11-CV-01703 YGR, 2013 U.S. Dist. LEXIS 32588
    (N.D. Cal. Feb. 19, 2013) ................................................................................ 7, 8

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ........................................................................... 10

*Saavedra v. Eli Lily & Co.*,
    No. 2:12-cv-9366-SVW-MAN, 2013 U.S. Dist. LEXIS 173055
    (C.D. Cal. Feb. 26, 2013) .................................................................................. 16

*San Diego Cnty. Gun Rights Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ............................................................................. 16

*Sanders v. Johnson & Johnson, Inc.*,
    No. 03-2663 (GEB), 2006 U.S. Dist. LEXIS 35881
    (D.N.J. May 31, 2006) ........................................................................................ 25

*Schulken v. Washington Mut. Bank*,
    No. 09-cv-02708-LHK, 2012 WL 28099
    (N.D. Cal. Jan. 5, 2012) ..................................................................................... 21

*Sims v. Iovate Health Scis., U.S.A., Inc.*,
    No. 09md2087 BTM(AJB), 2011 U.S. Dist. LEXIS 31470
    (S.D. Cal. Mar. 23, 2011) .................................................................................. 25

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ...................................................................................... 23

*Torres v. Nutrisystem, Inc.*,
    289 F.R.D. 587 (C.D. Cal. 2013) ................................................................... 7, 10

*Valentine v. NebuAd, Inc.*,
    804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................................ 23

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
    206 F.R.D. 271 (C.D. Cal. 2002) ....................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................ *passim*

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001) ....................................................................................... 25

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-2724-LHK, 2014 U.S. Dist. LEXIS 71575
    (N.D. Cal. May 23, 2014) ............................................................................ 17, 24

*Zephyr v. Saxon Mortg. Servs., Inc.*,
    873 F. Supp. 2d 1223 (E.D. Cal. 2012) ............................................................. 23

**STATUTES**

18 U.S.C.
    § 2702 .................................................................................................................. 3
    § 2702(b)(3) ................................................................................................... 7, 10
    § 2707(c) ........................................................................................................... 13

Cal. Penal Code
    § 630 .................................................................................................................. 23
    § 631 ......................................................................................................... 2, 3, 7, 10
    § 632 .................................................................................................................... 7
    § 637.2(a) ........................................................................................................... 13

**OTHER AUTHORITIES**

45 C.F.R. § 164.522(b) .................................................................................................... 17

**RULES**

Fed. R.Civ. P.
    Rule 23(a)........................................................................................................*passim*
    Rule 23(a)(2).................................................................................................... 1, 10
    Rule 23(a)(3)........................................................................................................ 11
    Rule 23(a)(4)........................................................................................................ 12
    Rule 23(b)(2).................................................................................................*passim*
    Rule 23(b)(3)...................................................................................................... 1, 6

## I. INTRODUCTION

Plaintiffs seek to certify a nationwide class of non-Yahoo email users to challenge Yahoo's automated scanning of email – a practice for which this Court has already ruled Yahoo had explicit consent from its own users and which has been publicly and widely disclosed and discussed since its inception. The gravamen of Plaintiffs' Complaint is that the class has not consented to scanning or sharing of the contents of their emails and that Yahoo has thereby violated the California Invasion of Privacy Act (CIPA) and the Stored Communications Act (SCA). Plaintiffs attack scanning in its entirety, claiming that scanning for any purpose without consent, including for spam, malware and virus protection, is unlawful and should be enjoined. Plaintiffs' bid to certify a 23(b)(2) class does not come close to satisfying the requirements for certification.

The rationale behind the Court's denial of class certification in the *Gmail* litigation applies equally here. There, the Court held that consent could be implied and that a determination of whether a putative class member consented to scanning requires an individualized inquiry that precluded certification of a class under 23(b)(3). Though Plaintiffs have strategically dropped their monetary relief claims and seek certification only under 23(b)(2) for injunctive and declaratory relief, those same highly-individualized considerations of consent still preclude certification. There is simply no way to determine with evidence common to the class which non-users have consented to scanning. Plaintiffs thus cannot satisfy Rule 23(a)(2)'s commonality requirement or show that the class as a whole is entitled to uniform, indivisible relief under Rule 23(b)(2).

Plaintiffs also cannot show that their claims are typical of the class or that they are adequate representatives. Plaintiffs concede that they learned about Yahoo's practices before filing the lawsuit and have continued to send email to Yahoo Mail users. Plaintiffs thus cannot represent a class of non-users who purportedly do not want their email scanned and have not consented to Yahoo's practices. Moreover, Plaintiffs concede that scanning for spam and malware is beneficial to the class and that some class members want those protections, yet they seek to prevent Yahoo from offering such services without prior consent.

Certification under (b)(2) is unwarranted for the additional reason that the class as defined and the relief sought on behalf of the class creates a substantial intraclass conflict. Plaintiffs define the class as any non-Yahoo users who have sent or received emails from Yahoo users or who will do so in the future. Not only is the class not fixed in time but it consists of a disparate group of email users, some of whom without doubt have consented to Yahoo's practices and many of whom (regardless of consent) would not welcome the relief Plaintiffs seek or find it beneficial. Moreover, there is no single injunction or declaration that benefits the class as a whole. Plaintiffs seek a broad injunction and corresponding declaratory judgment prohibiting Yahoo from engaging in scanning for any purpose whatsoever including spam, malware and virus protection without consent. Putting aside that Plaintiffs have not put forward any viable technological means to obtain express consent from non-users and that some class members will not want such relief, it would set email services back for decades and prohibit providers from protecting against the substantial threats that exist today from malicious use of emails (both sent to and from users).

Plaintiffs have also failed to show that the putative class is ascertainable or that California's wiretapping laws can properly be applied nationwide. In sum, Plaintiffs have not met their burden on class certification.

## II. RELEVANT BACKGROUND

### A. Overview of CIPA and the SCA

CIPA prohibits an interception of a communication while it is in transit without the consent of all parties to the communication. Cal. Penal Code § 631. The Court has already concluded that Yahoo Mail users expressly consent to Yahoo's scanning and analysis of their emails by agreeing to the Communications Terms of Service (ATOS), but has not yet considered whether non-Yahoo users also expressly or impliedly consent to Yahoo's email scanning. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1029, n.1 (N.D. Cal. 2014).

The SCA is a federal statute that prohibits, *inter alia*, "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service"

without the consent of "the originator or an addressee or intended recipient of such communication." 18 U.S.C. § 2702.

Plaintiffs' claims both turn on the issue of consent.

## B.    Factual Background

**Scanning benefits non-users:** Plaintiffs seek to prevent Yahoo from scanning emails without consent, claiming that scanning for *any purpose* (not just advertising) violates CIPA. Plaintiffs have each stated that they "contend that Yahoo's scanning of [their] email correspondence with Yahoo subscribers for spam and malware detection violates California Penal Code § 631." (Declaration of Rebekah Kaufman in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification "Kaufman Decl." Exs. E-H; Plaintiffs' Motion for Class Certification "Mot." at 3:25, 7:4-13 (challenging scanning for viruses and spam), 5:2-20 (challenging scanning for targeted advertising), 5:24-26 (challenging indexing emails for search), 6:23-7:3 (challenging scanning email to classify them for the Yahoo Mail user), 7:14-19 (challenging scanning to determine if the email data is already on Yahoo's system), 7:20-27 (challenging scanning for anti-spam and abuse).)[1]

But email scanning is necessary to protect users and non-users from spam, malware and viruses, and Yahoo thus scans both incoming and outgoing email to prevent such abuse.[2] (Declaration of Gareth Shue in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification "Shue Decl." ¶¶ 3-4, 9-13; Kaufman Decl. Ex. M at 94:11-15.) Scanning also allows Yahoo to provide a more relevant advertising experience, product features, and free email services to current and future users – the latter of which will include some members of the putative class who later become Yahoo users. (Kaufman Decl. Ex. M at 75:18-76:1.) Though

---

[1] Plaintiffs do not accurately describe Yahoo's email scanning. That need not be resolved at this juncture, however, and therefore Yahoo will reserve those specific arguments for summary judgment, if necessary.

[2] Though Plaintiffs contend that Yahoo provides email services to some subscribers without "performing any of these commercial processes" (Mot. at 8:13-14), their evidence pertains only to subscribers from a single provider that is supported by Yahoo and solely to scanning for targeted advertising, not spam, malware or virus protection. (Mot. at 8:13-18.)

Plaintiffs contend that all scanning that makes email work is illegal without non-user consent, they offer no proof that such consent could ever be obtained through technological means given the billions of non-Yahoo email users in the world that could potentially communicate with Yahoo users. (Shue Decl. ¶ 13.)

**Yahoo has publicly disclosed that it scans emails:** Yahoo's ATOS clearly discloses that it scans emails "for the purposes of providing personal product features, providing targeted advertising, and detecting spam and abuse." *In re Yahoo Mail*, 7 F. Supp. 3d at 1030. Yahoo also discloses its email scanning on other webpages to keep Yahoo users and the public at large aware of Yahoo's business practices. For example Yahoo's "Mail FAQ" explains that Yahoo's "automated systems will scan and analyze all incoming and outgoing email, IM, and other communications content sent and received from your account in order to personalize your experience." (Declaration of Dan Tepstein in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification "Tepstein Decl." Exs. 58-74.) Yahoo's "Mail Overview" page on its website also explains that Yahoo uses "machine learning and constantly tune[s] and improve[s] [its] filtering technologies that block spam and other malicious emails you do not want to see. You can help train the filters by clicking on the Spam button every time you encounter unwanted emails in your inbox." (Tepstein Decl. Ex. 75.) The "Yahoo Mail" page states that:

> Yahoo! provides personally relevant product features, content, and advertising, and spam and malware detection by scanning and analyzing Mail, messenger, and other communications content. Some of these features and advertising will be based on our understanding of the content and meaning of your communications. For instance, we scan and analyze email messages to identify key elements of meaning and then categorize this information for immediate and future use.

(Declaration of Jakub Slomczynski in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification "Slomczynski Decl." Ex. B.) These pages are accessible by users and non-users of Yahoo's email services, and have been viewed millions of times. (Slomczynski Decl. ¶¶ 4-6.)

In addition to its own public disclosures, news of Yahoo's scanning has been widely disseminated by the press and internet bloggers. (Declaration of Sarah Meron in Support of

Defendant's Opposition to Plaintiffs' Motion for Class Certification "Meron Decl." Exs. 25, 57 *Yahoo Shutting Down Mail Classic, Forces Users to Upgrade*, ABC News, June 3, 2013 ("getting the new version of Yahoo Mail means . . . 'the acceptance of automated content scanning and analyzing of your communications content, which Yahoo uses to deliver product features, relevant advertising and abuse protection.'"); *Yahoo's Email Scanning Isn't Seedy, It's Entering the Modern Era*, Copypress, June 5, 2013 (reproducing portions of Yahoo's ATOS).)

**Some putative class members also consented to the sharing of specific email content with third parties:** Though Yahoo believes that it obtained express consent from its users to share email content with third parties (thereby disposing of Plaintiffs' SCA claim), to the extent an inquiry into non-user consent is required, such inquiry would be highly individualized.[3] For example, this Court already found that "the ATOS also established Yahoo Mail users' consent to Yahoo's practice of scanning and analyzing emails for the purposes of creating user profiles for both parties to the email communication and sharing content from the emails with third parties." *In re Yahoo Mail*, 7 F. Supp. 3d at 1030-1031. Therefore, non-Yahoo Mail users who read the Yahoo ATOS before sending email to Yahoo Mail users would have consented to sharing of content of emails with third parties. Moreover, Yahoo also disclosed that Yahoo could share email content with third parties in a publicly available FAQ. (Tepstein Decl. Exs. 58-74.) Also, members of the putative class who read certain media articles and then continued to send email to Yahoo users may have also impliedly consented to such disclosure. (Meron Exs. 1, 22 (*7 Tips to Deal With Yahoo's TOS Update That Lets Them Snoop in Your Emails and Chats*, The Online Privacy Blog, June 3, 2013; *Yahoo! Mail Beta Uses Email Keywords for Ad Targeting*, Adotas, May 23, 2011).)

Plaintiffs also have not provided any support for their claim that any of their content was shared with third-parties, especially as their SCA claim is based on a on a limited test program that was in place for a short period time and has long since been discontinued. (Declaration of

---

[3] The Court declined to rule on whether Plaintiffs' SCA claim should be dismissed on this ground because Yahoo did not raise this argument in its opening brief. *In re Yahoo Mail*, 7 F. Supp. 3d at 1035.

1   Kevin Day in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification

2   "Day Decl." ¶¶ 2-3.) Thus, there are no facts that support injunctive or declaratory relief under

3   the SCA, or that provide Plaintiffs with standing to bring an SCA claim.

4   **III.    LEGAL STANDARDS**

5       A class action is "an exception to the usual rule that litigation is conducted by and on

6   behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

7   2550 (2011). "In order to justify a departure from that rule, a class representative must be part of

8   the class and possess the same interest and suffer the same injury as the class members." *Id.*

9   Rule 23(a)'s "four requirements – numerosity, commonality, typicality, and adequate

10  representation – effectively limit the class claims to those fairly encompassed by the named

11  plaintiff's claims." *Id.* (quotations omitted). Further, a plaintiff seeking certification under Rule

12  23(b)(2) must show that "final injunctive relief or corresponding declaratory relief is appropriate

13  respecting the class as a whole." *Id.* at 2557. "The key to the (b)(2) class is 'the indivisible nature

14  of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can

15  be enjoined or declared unlawful ***only as to all of the class members or as to none of them***." *Id.*

16  (emphasis added). A plaintiff "must affirmatively demonstrate his compliance with the Rule –

17  that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common

18  questions of law or fact, etc." and satisfy the Court, based on "a rigorous analysis," that the

19  prerequisites of certification are satisfied. *Id.* at 2551.

20  **IV.    ARGUMENT**

21      Though Plaintiffs attempt to avoid the death knell of individual issues of consent by not

22  seeking a 23(b)(3) class with its predominance requirement, they cannot escape the fact that those

23  same individual issues of consent prevent them from certifying a (b)(2) class. Indeed, Plaintiffs

24  themselves have consented to the very conduct about which they complain by continuing to email

25  Yahoo users with full knowledge that those emails would be scanned and the content could be

26  shared. Moreover, the class is too diverse to make classwide injunctive or declaratory relief

27  permissible or even desirable.

28

A.     **Plaintiffs Fail to Meet Rule 23(a)'s Requirements.**

1.     **Plaintiffs cannot satisfy the commonality requirement.**

Commonality under Rule 23(a) requires a "common contention" that "is capable of classwide resolution" and "will resolve an issue that is ***central*** to the validity of each of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 (emphasis added). To satisfy this requirement, Plaintiffs must "demonstrate that the class members 'have suffered the same injury.'" *Id.* Commonality is measured by "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* In assessing these requirements, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Plaintiffs concede that consent is a key question that will drive the resolution of Plaintiffs' claims. (Mot. at 12:18-19.) Plaintiffs' alleged lack of consent is the gravamen of their Complaint, a central element of their claims, and part of the relief they seek. Cal. Penal Code § 631; 18 U.S.C. § 2702(b)(3); (Mot at 1:23-26) (seeking an injunction that Yahoo cannot scan without consent). Though Plaintiffs attempt to impose a presumption of lack of consent, ***consent cannot be resolved by proof common to the class as a whole***. As the Court found in the *Gmail* litigation, consent "is a question of fact that requires looking at all of the circumstances surrounding the interceptions to determine whether an individual knew that her communications were being intercepted." *In re Google Inc. Gmail Litig.* "*Gmail Litig*", No. 13-MD-02430-LHK, 2014 U.S. Dist. LEXIS 36957, at *62 (N.D. Cal. Mar. 18, 2014); *see also id.* at *50 n.9 ("The distinction between one-party consent and two-party consent is immaterial . . . [because] the issue of whether *any* email user . . . consented to the alleged interceptions is a question fraught with individualized inquiries."). The need for such an individualized inquiry precludes satisfaction of Rule 23(a)'s commonality requirement.

For instance, in *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013), the court denied certification of a class under another provision of CIPA (Cal. Penal Code § 632) for failure to satisfy commonality because a determination of whether each class member consented to the recording of her phone calls would require a detailed factual inquiry into the individual circumstances of each call. *Torres*, 289 F.R.D. at 592; *see also Quesada v. Banc of Am. Inv.*

*Servs., Inc.*, 2013 U.S. Dist. LEXIS 32588, at *16-24 (N.D. Cal. Feb. 19, 2013) (denying class certification; "Plaintiff has not proposed a realistic means or classwide resolution of the common question: did Defendant obtain consent to record the call."); *Balthazor v. Cent. Credit Servs.*, 2012 U.S. Dist. LEXIS 182275, at *11 (S.D. Fla. Dec. 27, 2012) (denying class certification of TCPA claim under 23(a)'s commonality requirement because "[r]esolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone."); *Hicks v. Client Servs., Inc.*, 2008 U.S. Dist. LEXIS 101129, at *20 (S.D. Fla. Dec. 10, 2008) (denying class certification under TCPA for failure to meet the commonality requirement because "ultimately consent is an issue that would have to be determined on an individual basis at trial.").

Likewise, resolution of each putative class member's CIPA and SCA claims here necessarily involve an individual assessment of whether each class member gave consent, express or implied. Plaintiffs seek to certify a class of "all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future." Just as in *Gmail*, there are many ways in which members of Plaintiffs' proposed class have consented to scanning or sharing content from their emails: Some non-users were previously Yahoo users and expressly agreed to Yahoo's ATOS. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1029. Some non-users sent emails to Yahoo users after learning of Yahoo's practices through any number of public sources: By visiting Yahoo's webpages that describe its practices (Tepstein Decl. Exs. 1-75; Slomczynski Decl. ¶¶ 2-6); extensive media coverage, blogs, publicity regarding this lawsuit and the prior lawsuit brought against Yahoo over its email scanning practices (Meron Decl. Exs. 1-59); word-of-mouth (Kaufman Decl. Ex. L at 22:18-24:13) (Abrams admits she has told others about Yahoo's practices); Ex. I at 58:12-21 (Google scans e-mails for personalizing and that sort of thing ... it's been common knowledge …. I've had conversations about it. People generally seem to know that.); and even from Yahoo's own users who may have informed the people they communicate with that Yahoo scans email pursuant to Yahoo's terms of service (Tepstein Decl. Exs. 1-21) ("If you consent to this ATOS

and communicate with non-Yahoo users using the Services, you are responsible for notifying those users about this feature."). This is not to mention that some non-users, such as plaintiffs Baker and Abrams who are Gmail users, have consented to having their emails scanned through agreements with their own email providers. (Kaufman Decl. Ex. K at 37:18-22, Ex. L at 37:6-13.)

In *Gmail*, the Court found that a similar "panoply of sources from which emails users could have learned of Google's interceptions" would require "[a] fact-finder, in determining whether class members impliedly consented, . . . to evaluate to which of the various sources each individual user had been exposed and whether each individual 'knew about and consented to the interception' based on the sources to which she was exposed." *Gmail Litig.,* 2014 U.S. Dist. LEXIS 36957, at *66-68 (citing *Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998).) So too here. Individualized inquiries of consent make classwide adjudication impossible.

Plaintiffs' argument that Yahoo's "concealment" of the *specifics* of its practices "prevents any class members from providing actual consent" (Mot. at 12:22-23) is a red herring, and was rejected by this Court in *Gmail*: "To find implied consent, a fact-finder need not determine email users had specific knowledge of the particular devices that intercepted their emails. Rather, the fact-finder need only be convinced based on the surrounding circumstances that "email users were notified of interceptions." *Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957, at *78. "[A] fact-finder could find implied consent even based on broad disclosures." *Id.* at *79. Yahoo has been open about the fact that it scans email, why it scans email, and that it could share email content. (Tepstein Decl. Exs. 1-21, 58-74) Indeed, the Court found Yahoo's disclosure in its ATOS sufficient to obtain express consent from its own users to scan their emails. *Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957. The public's lack of knowledge of the specific, proprietary, technical processes Yahoo uses to accomplish scanning does not make consent any less of an individualized inquiry.

Finally, though Plaintiffs attempt to identify "common questions" other than consent – such as whether Yahoo intercepts its users' email while in transit – those questions are not the type of central question required by *Dukes*. The Supreme Court explained in *Dukes* that though only one common question is required, not just any "common" question will do. 131 S. Ct. at

2551. What matters is a common question that will "drive the resolution of the litigation." *Id.*

Though *Dukes* identified numerous "common" questions that would be raised in an employment

discrimination case (such as, Do our managers have discretion over pay? Is that an unlawful

employment practice?), the "crucial question" identified by the Court for purposes of satisfying

23(a)(2) was "why was I disfavored?"—a question that could not be answered with common

evidence for each class member. *Id.* at 2551-52.

Here, the "common" questions identified by Plaintiffs will similarly not resolve this case

in one fell swoop because the conduct about which they complain is not itself unlawful if there is

consent.[4] Cal. Penal Code § 631; 18 U.S.C. § 2702(b)(3); *see also Dukes*, 131 S. Ct. at 2551

(common questions are the type that "demonstrate[s] that all class members have suffered the

same injury."). Thus, certifying a class would not eliminate the fundamental need at trial to

adjudicate the issue of consent for each individual class member. *Hicks*, 2008 U.S. Dist. LEXIS

101129, at *20 (denying class certification for failure to meet commonality requirement because

"ultimately consent is an issue that would have to be determined on an individual basis at trial").

For this same reason, the court in *Torres* rejected the plaintiff's contention that questions of

whether each class member's call was recorded and whether the call was recorded without

disclosure were sufficient to show commonality under CIPA: "These questions . . . are

comparable to those rejected by the Supreme Court [in *Dukes*], and therefore are not sufficient to

show commonality. The driving force in this case will be the litigation of the confidentiality and

consent issues, which are not common to all class members." *Torres*, 289 F.R.D. at 592 n.2.

---

[4] The cases cited by Plaintiffs are distinguishable for this reason. In *Parsons v. Ryan*, 754 F.3d 657, 678-80 (9th Cir. 2014), certification of a class of inmates challenging the Arizona Department of Correction's (ADC) health care policies and practices was proper because the question of whether all inmates were at risk of harm due to the unavailability of constitutionally adequate care could be answered for the entire class in one stroke: All inmates were subject to the constitutionally inadequate policies and thus, for instance, either ADC employed enough doctors to provide adequate care or it did not. *See also Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2010) (detainees held for longer than 6 months without a bond hearing share a common question of whether detention for longer than that generates a constitutional violation). Here, in contrast, the mere fact that all non-users may be subject to Yahoo's practices does not mean that all non-users have been subject to a violation of CIPA or the SCA. Unlike the cases Plaintiffs cite in which an entire group was subject to a constitutional violation (regardless of whether an actual injury was suffered), CIPA and the SCA only make certain conduct illegal *if done without consent*, which cannot be shown for the group of non-Yahoo users as a whole.

## 2. Plaintiffs have atypical claims.

Plaintiffs also fail to demonstrate their claims are typical of the class. Rule 23(a) requires named plaintiffs to have claims that are typical of those of the class members they seek to represent. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same source of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Certification should be denied "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to itself." *Id.*

Since filing suit, Plaintiffs have chosen to continue to send email to the Yahoo accounts of friends, family members and work colleagues. (Kaufman Decl. Exs. A-D.) Plaintiffs admit that when they send an email to a Yahoo user they know it will be scanned but "sen[d] it anyway." (Kaufman Decl. Ex. K at 57:10-17.) By communicating with Yahoo users since learning of Yahoo's practices and even after filing suit, Plaintiffs have demonstrated that they consent to Yahoo's practices and lack standing to seek relief on behalf of a class of consumers who purportedly do not consent and would not want their emails scanned. "[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.* 628 F.2d 994, 999 (7th Cir. 1980).

Plaintiffs' claims are not even typical of each other. Plaintiffs Baker and Abrams are Gmail users and consented to having their emails scanned through their own provider. (Kaufman Decl. Ex. K at 37:18-22, 41:8-16; Ex. L at 37:6-13.) Moreover, Plaintiff Baker had extensive knowledge before filing suit about email scanning as a business practice as a result of his occupation as a digital media consultant (Kaufman Decl. Ex. K at 10:11-18:25.) He has opted-in to having his emails scanned by his employer, and by Google (Kaufman Decl. Ex. K at 36:8-37:11; 37:18-22; 52:9-10). Plaintiff Nobles only emails family members at Yahoo and freely

admitted that she has alternative means of communicating with them without emailing them at their Yahoo Mail address. (Kaufman Decl. Ex. J at 34:22-35:2, 36:24-37:18, 37:24-38:10.)

Plaintiffs also differ from each other with respect to their views about the benefits of scanning for spam, virus and malware detection. Plaintiff Pincus wants spam and viruses to be stopped before they reach his inbox. (Kaufman Decl. Ex. I at 29:25-30:21.) He has an expectation that his email service provider will scan his emails for spam and viruses. (Kaufman Decl. Ex. I at 32:9-19.) He also acknowledges that putative class members would not want to receive more spam or computer viruses. (*Id.* at 28:19-29:2.) Plaintiff Abrams believes that if her own provider's scanning of her emails "prevent[s] me from getting a virus or sending – sending spam to my whole email address book, then it's helpful." (Kaufman Decl. Ex. L at 48:13-15.) In contrast, Plaintiff Baker does not believe that spam filtering is useful because "if someone has a good knowledge of how to control their in-box, there [sic] are not going to be getting those e-mails." (Kaufman Decl. Ex. K at 71:24-72:6.)

The contention that Yahoo's scanning for spam, virus, and malware protection is unlawful and should be enjoined is clearly not typical of the class as a whole. As evident by Abrams' and Pincus' testimony, there are many class members who *want* their emails to be scanned for spam, virus and malware detection and believe that such scanning *benefits* them. The same is true for scanning for targeted advertising. Plaintiff Abrams believes that it is helpful that her own provider scans her emails to provide her with more targeted or relevant advertising. (Kaufman Decl. Ex. L at 44:16-46:3.) Plaintiffs' attempt to enjoin such scanning is not only atypical of the class but demonstrates the conflicts inherent in the putative class.

Moreover, with respect to the SCA claim, none of the Plaintiffs submitted evidence that any content from their emails has ever been shared with a third-party. Plaintiffs have not shown that they have suffered the same alleged injury under the SCA as the proposed class members.

### 3.    Plaintiffs are inadequate class representatives.

Rule 23(a)(4)'s adequacy of representation requirement involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This factor is of paramount importance because it protects the due process rights of absent class members who will be bound by the judgment. *Id.* Here, Plaintiffs are plainly inadequate class representatives. As a threshold matter, Plaintiffs have continued to communicate with Yahoo users since filing the lawsuit and thus consent to the practices they seek to enjoin on behalf of the class. They also cannot show they are adequate representatives of the SCA claim because they have not shown that any content from their emails has ever been disclosed without their consent.

Plaintiffs have also dropped their pursuit of monetary relief on behalf of the class. Though Plaintiffs assert the class is entitled to monetary relief, Plaintiffs only seek certification of a 23(b)(2) class.[5] (Consolidated Class Action Complaint "Compl." at 18:15-17; Kaufman Decl. Exs. A-D.) This strategy impermissibly prioritizes potential success in the litigation over the rights of individual class members to pursue monetary relief. *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 561 (C.D. Cal. 2012) (changing strategy to seek only (b)(2) class affects putative class members' rights and raises questions of adequacy); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."); *Dukes*, 131 S. Ct. at 2559 (expressing concern that plaintiffs' strategy of seeking only a 23(b)(2) class "created the possibility . . . that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from.").

---

[5] To the extent Plaintiffs argue that seeking certification under (b)(2) is their only hope after the Court's denial of certification in *Gmail*, it is important to note that unlike many class actions where the potential damages award for any one class member would be too small to justify litigating the case as an individual action, CIPA and the SCA provide for significant statutory damages, fees and costs for an individual plaintiff. Specifically, under CIPA, damages can be awarded "for the greater of" $5,000, or three times the amount of actual damages. Cal. Penal Code § 637.2(a). And under the SCA, "the court may assess as damages . . . the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c),

Even worse, the (b)(2) class that Plaintiffs seek to certify would impose relief that many class members would undoubtedly not want or benefit from. Email users face significant daily threats from malicious use of email. By way of example, approximately 3 billion spam emails are sent to Yahoo users alone per day. (Shue Decl. ¶ 4.) Without scanning for spam, users' email inboxes would be so flooded by email that inboxes would not be functional. (*Id.* ¶ 3.) Also, Yahoo would not be able to protect proposed class members from spam and malware sent from non-Yahoo Mail accounts. (*Id.* ¶ 11.) Indeed, there are billions of non-users in the world and unique email addresses, and Yahoo has no technological means to obtain, much less track, consent. (Shue Decl. ¶ 13; Declaration of Michael Albers in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification "Albers Decl." ¶ 6.) Plaintiffs thus in essence seek to shut down scanning. Without a shadow of a doubt, that would not benefit the class as a whole. *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 578 (C.D. Cal. 2010) ("For obvious reasons, a class representative is not adequate if the representative seeks relief which the class members do not want.") (citing *East Texas Motor Freight Syst. Inc. v. Rodriguez*, 431 U.S. 395 (1977)).

**4.      The proposed class is not ascertainable and is overbroad.**

Class certification should also be denied because there is no reliable and administratively feasible mechanism for identifying class members. *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, at *37-38 (N.D. Cal. May 30, 2014) (to be ascertainable, plaintiff must demonstrate that class is definable by objective criteria and that it is administratively feasible to determine membership in the class). In contrast to cases in which courts have found the members of a class to be ascertainable through objective means, such as in *Brazil* where all purchasers of a product would have been exposed to an alleged false label, here there is no such uniformity in the class that would permit a ready determination of who is in the class. Plaintiffs define the class as all current non-users who send emails to Yahoo users and all non-users who may send emails in the future. The class is neither fixed in time, nor is there an objective means to determine which of these current or future non-users have consented or will consent to their emails being scanned. There is thus no objective means to determine who in the

class is entitled to the injunctive and declaratory relief Plaintiffs seek, much less carve out those class members who would not welcome that relief.

Moreover, Yahoo does not have records that would provide a way to identify each and every non-user that has sent an email to or received an email from a Yahoo user. (Albers Decl. ¶¶ 2-6.) Yahoo cannot determine whether a non-Yahoo email address belongs to someone who is also a Yahoo Mail user. (Albers Decl. ¶ 3.) Many email users maintain multiple email accounts, including all of the Plaintiffs. (Kaufman Decl. Exs. A-D.) Yahoo thus cannot determine whether its "servers are sending an email to or receiving an email from a class member." [6] (Mot. at 15:21-23.) Moreover, self-identification would be unreliable here because it would require class members to (1) consider all emails sent and received, (2) identify all individuals with whom emails had been exchanged, and (3) determine whether emails were exchanged with Yahoo email addresses, as opposed to the hundreds of other available email providers.[7] Though Plaintiffs suggest that the ascertainability requirement is either lessened or not required in the (b)(2) context, courts in the Ninth Circuit (including this Court) have not abandoned that requirement. *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *45-48.

The proposed class definition is also impermissibly overbroad. CIPA has a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987). Plaintiffs filed their individual suits on October 25, November 15, and November 20, 2013. Plaintiffs, however, seek to certify a class under CIPA of non-users going back to October 2, 2011.

**B.  Certification Under Rule 23(b)(2) Would Be Improper.**

**1.  Plaintiffs lack standing to seek relief under 23(b)(2).**

Even if Plaintiffs could meet Rule 23(a)'s requirements, they cannot satisfy the requirements set forth in Rule 23(b)(2). Plaintiffs lack standing to seek injunctive or declaratory

---

[6] Plaintiffs cite no evidence for this assertion, because there is none.

[7] *Cf. Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *11 (N.D. Cal. June 13, 2014) (class not ascertainable because "[t]he variety of products and of labels, combined with the lack of receipts and the low cost of the purchases, means that consumers are unlikely to accurately self-identify").

relief (both of which are prospective only) because each of them admits that they have continued to send emails to Yahoo users with full knowledge that those emails would be scanned and their content would be stored and potentially shared. Because they freely consent to the conduct about which they complain, Plaintiffs cannot show a future injury or controversy under either CIPA or the SCA that would enable them to obtain injunctive or declaratory relief under 23(b)(2) on behalf of the putative class. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (to have standing to seek injunctive relief, a plaintiff must demonstrate that she is "realistically threatened by a repetition of the violation"); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (Unless the named plaintiff is entitled to seek injunctive relief, she "may not represent a class seeking that relief"); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (a person seeking declaratory relief must show a very significant possibility of future harm; it is insufficient to demonstrate only a past injury).

Each Plaintiff learned about Yahoo's scanning of their emails prior to filing their lawsuits, but have continued to send emails to Yahoo users. (Kaufman Decl. Exs. A-D, Ex. L at 25:23-26:10, Ex. I at 50:11-14, Ex. J at 41:25-42:5, Ex. K at 57:10-17.) Plaintiffs thus consent to the practices asserted in their Complaint. "If a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices." *In re Intel Laptop Battery Litig.*, 2011 U.S. Dist. LEXIS 144209, at *7 (N.D. Cal. Apr. 7, 2011); *Castagnola v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 82026, at *16 (N.D. Cal. June 13, 2012) ("Plaintiffs now have knowledge of the terms and conditions of the program . . .[t]hus, the Court concludes they have not alleged facts showing a realistic threat that they would be harmed by Defendants' conduct in the future."); *Saavedra v. Eli Lily & Co.*, 2013 U.S. Dist. LEXIS 173055, at *29-30 (C.D. Cal. Feb. 26, 2013) (plaintiffs could not establish standing for declaratory or injunctive relief where plaintiffs failed to allege they would purchase drug in the future and "even if they did, they now know about the possibility of the side-effects."); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) (holding that defendant did not have standing to pursue declaratory relief because he

did not intend to purchase another warranty plan and, even if he did, he "now has knowledge of Defendant's alleged misconduct").

Plaintiffs contend that "ceasing all email with Yahoo Mail subscribers is unrealistic given the more than 75 million Yahoo Mail accounts in use in the United States alone," and therefore they will likely email with Yahoo users in the future. (Mot. at 22:6-7.) But to the extent Plaintiffs are truly concerned about scanning, they have other means of communicating with Yahoo users, such as by phone, texting, use of alternative email addresses and even in person. Plaintiff Nobles only infrequently exchanges emails with two Yahoo users, who are friends that she talks to on the phone and texts all the time. (Kaufman Decl. Ex. J at 34:22-35:2, 36:24-37:18, 37:24-38:6.) Likewise, Plaintiff Abrams only emails her uncle-employer at his Yahoo account, who she regularly communicates with in person and by phone and has chosen not to ask that he use another email address to communicate because of their relationship (Kaufman Decl. Ex. L at 25:23-26:10, 52:17-24, 71:20-7.) Plaintiffs Pincus and Baker also base their claims on emails they sent to friends, whom they admit they could communicate with by other means. (Kaufman Decl. Ex. K at 57:10-17, Ex. I at 50:11-14.) Though Baker states that some of his emails are with clients, he admits that he has never spoken with these clients about Yahoo's practices that are the subject of this lawsuit and/or sought use of an alternative email addresses. Further, Plaintiffs' reliance on hypothetical emails they might receive in the future, such as a Yahoo email "from [a] physician with test results" (Mot. at 22:9-11), does not establish standing and indeed is an injury Plaintiffs can readily avoid. *See* 45 C.F.R. § 164.522(b). An alleged threat of future injury cannot be conjectural or hypothetical. *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *29-30 (N.D. Cal. May 23, 2014).

Plaintiffs rely on two food-labeling cases that conclude that plaintiffs may have standing to seek an injunction where they allege they would be willing to buy the product in the future. *See Brazil*, 2014 U.S. Dist. LEXIS 74234, at *37-38; *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 575 (C.D. Cal. 2014). The plaintiffs in those cases, however, did not continue to buy the mislabeled product – rather they contended that they might, in the future, buy a product from the same defendant. *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *38; *ConAgra Foods*, 302 F.R.D. at 575.

Further, these consumer protection cases were better suited to class-wide treatment because mislabeling food is itself illegal; whereas scanning email and sharing email content is legal if done with consent – consent that Plaintiffs have given here by their ongoing communications with Yahoo users. Thus, for instance, in *Castagnola*, where the plaintiffs alleged that HP had tricked them into enrolling in a fee-based service administered by a third party, and sought injunctive relief to end this allegedly deceptive business practice, the court held that "plaintiffs now have knowledge of the terms and conditions of the program," and therefore failed to show a realistic threat that they would be harmed by Defendants' conduct in the future. 2012 U.S. Dist. LEXIS 82026, at *16. Similarly, here, the Plaintiffs have been aware of Yahoo's practices since before filing suit, but have continued to send emails to Yahoo Mail users. Plaintiffs cannot manufacture a future injury under these circumstances. This can only mean that they consent to Yahoo's email scanning.[8] *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) ("[S]peaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess.").

### 2. The proposed class is not cohesive.

Plaintiffs also do not satisfy Rule 23(b)(2)'s cohesiveness requirement. "While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *see also Lewallen v. Medtronic USA, Inc.*, 2002 U.S. Dist. LEXIS 20153 (N.D. Cal. Aug. 28, 2002) (denying certification of a (b)(2) class for lack of cohesiveness where there were individual issues among class members). Indeed, some courts have observed that "a (b)(2) class may require more cohesiveness than a (b)(3) class." *Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 579 (S.D. Cal. 2013). Cohesiveness is necessary because "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

---

[8] Plaintiffs may contend that they have standing to bring an injunction because Yahoo's conduct is "capable of repetition, but evading review," however that doctrine "is an exception only to the mootness doctrine; it is not transferable to the standing context." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1254 (9th Cir. 1990).

is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557; *Barnes*, 161 F.3d at 143 n.18 ("At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness . . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries."). Thus, the requisite cohesiveness is lacking where individual issues preclude a finding that the class as a whole was injured. *Lewallen*, 2002 U.S. Dist. LEXIS 20153, at *10.

The putative class here lacks cohesiveness for the same reason that it lacks commonality. There is no way to determine on a class basis which members of the class consent to Yahoo's practices or which ones would even want the relief Plaintiffs seek. The need for individualized inquiries render it unmanageable for the Court to determine whether any class member has a claim and has suffered a common injury, much less whether the injury can be redressed with injunctive or declaratory relief for the class as a whole.[9] *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000) ("Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class[.]"); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 329 (N.D. Tex. 2012) (holding class certification of plaintiffs' TCPA action under Rule 23(b)(2) was improper because "[a] finding of consent precludes liability under the TCPA," and "[a]lthough [plaintiff] alleges that [defendant] pursued a common course of conduct . . . individual issues of consent would predominate at a trial on the merits if the Court were to certify the class.").

### 3. No single injunction or declaration would provide relief to the whole class.

Nor do Plaintiffs satisfy Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

---

[9] This is in contrast to cases that involve indivisible, uniform legal claims where the class is cohesive. *See, e.g., In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1056 (N.D. Cal. 2013) ("[Defendant]'s proposed actions either amount to a breach of contract or they do not. Plaintiffs' breach of contract claim is amenable to uniform, classwide adjudication, and involves future actions which can be enjoined on a classwide basis.").

23(b)(2). The Supreme Court has explained that the key requirement for a 23(b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted." *Dukes*, 131 S. Ct. at 2557. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

The injunctive relief Plaintiffs seek here is not "indivisible." Plaintiffs seek to certify a class of *all* U.S. persons that are not Yahoo Mail users who either "have sent emails to or received emails from" a Yahoo Mail user or "will send emails to or receive emails from" a Yahoo Mail user. But the injunctive relief Plaintiffs seek turns on whether such users consented to having their emails scanned. Specifically, Plaintiffs seek an injunction requiring Yahoo to "cease scanning the emails of non-Yahoo Mail subscribers *without their consent*" and "delete all data it has collected and stored from non-subscribers email *without their consent*." (Mot. 1:23-25 (emphasis added).) Accordingly, there is no "single injunction" that would provide relief to class members. Rather, Yahoo would have to, on an e-mail by e-mail basis, determine whether non-Yahoo Mail senders or recipients consented to having their emails scanned and, if not, refrain from scanning the particular email sent by or to that person (at least until they consent).

Moreover, for all the reasons discussed above regarding the individualized inquiry that would be necessary to determine whether any given non-user has given consent and the sheer volume of non-users and email addresses at issue, compliance with Plaintiffs' proposed injunction would be impossible short of simply ceasing all scanning, thus setting back email services for decades.[10] For this reason, the injunction that Plaintiffs seek would not benefit the class as a whole. Indeed, for certain class members, an injunction prohibiting such practice will offer no

---

[10] Plaintiffs attempt to distinguish between scanning that is necessary to transmit email to Yahoo users and scanning that is for "commercial purposes," (Mot. at 8:1-12) however the CIPA does not distinguish between interceptions that are necessary to provide email service, and those that are not. Further, email service without spam filtering would not be a functional. (Shue Decl. ¶ 3.) The email scanning that Plaintiffs challenge is necessary to effectively and safely transmit email. (*Id.* at ¶ 8.)

"relief" at all and instead be viewed as harmful.[11] Many non-users who fall under Plaintiffs' class definition would not want Yahoo to cease scanning or welcome such relief. Nor would an injunction prohibiting Yahoo from scanning emails provide a benefit to a non-user who does not intend to email a Yahoo user in the future, or to a person that previously did not use Yahoo Mail, but now does.

Multiple courts have refused to certify a 23(b)(2) class under similar circumstances. *See, e.g., Schulken v. Washington Mut. Bank*, No. 09-cv-02708-LHK, 2012 WL 28099, at *7 (N.D. Cal. Jan. 5, 2012) ("For those class members who no longer have HELOCs with Chase, it is unclear why these class members would need the requested relief because they are not currently in a position to benefit from a change in Chase's policies and practices."); *Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *6 (C.D. Cal. Sept. 4, 2012 ("Plaintiff and other members of the Class no longer buy Cosamin and thus, will obtain no benefit from an injunction concerning Defendant's advertising because they cannot demonstrate a probability of future injury."); *Gonzales v. Comcast*, 2012 WL 10621, at *16 (E.D. Cal. Jan. 3, 2012) (denying Rule 23(b)(2) certification in consumer action regarding cable bills, because the "vast majority of class members would have no claim for injunctive relief, because they are, by definition, *former* Comcast subscribers.").

A plaintiff "cannot seek certification under Rule 23(b)(2) by combining an array of remedies, some of which will benefit only certain subsets of the class, and contending that each member of the class can avail himself or herself of one or more of the proposed remedies." *Cholakyan*, 281 F.R.D. at 559. By defining their class as all current, former, and future non-Yahoo Mail users that correspond with Yahoo Mail users and seeking injunctive relief that turns on the issue of consent, that is exactly what Plaintiffs have done. They do not seek "an indivisible

---

[11] Plaintiffs' proposed injunction requiring Yahoo to identify entities with which it allegedly shared information collected from non-users does not provide relief to the class as a whole as the mere identification of any such entities provides no perceivable benefit. Nor is there any basis for Plaintiffs' proposed injunction requiring Yahoo to delete all data it has stored from non-subscribers' email. The SCA does not prohibit a service provider from storing or accessing emails stored on its servers. (*In re Yahoo Mail*, 7 F. Supp. 3d at 1032.)

1   injunction benefitting all [class] members at once" and certification of a Rule 23(b)(2) class is

2   improper. *Dukes*, 131 S. Ct. at 2558.

3       Plaintiffs' requested declaration that Yahoo's conduct violates CIPA and the SCA suffers

4   from the same flaw. Given the individualized nature of consent and the fact that declaratory relief

5   is prospective only, there could be no *classwide* declaration that Yahoo violates CIPA or the

6   SCA. Nor are Plaintiffs entitled to prospective relief under the SCA because they have not shown

7   that Yahoo shares content from their emails with third parties. (Day Decl. ¶¶ 2-3.)

8       **C.    Choice of Law Principles Preclude Certification of the CIPA Claim.**

9       The need to apply the laws of each class member's home state precludes certification of a

10  nationwide class of Plaintiffs' CIPA claim. In California, a three-step "governmental interest" test

11  is used to resolve choice of law questions. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th

12  95, 107-108 (2006). A court must first determine whether the laws of each potentially concerned

13  state are different from those of California, and then "examine[] each jurisdiction's interest in the

14  application of its own law." *Id.* If the non-forum states' laws differ from those of the forum state

15  and the non-forum states have an interest in applying their laws in the action, the court will select

16  the law of the state whose interests would be most impaired. *Id.*

17      Here, there are numerous differences between CIPA and the wiretapping statutes of the

18  other 49 states, as Plaintiffs' concede. (Mot. at 20:5-7.) For instance, 37 states require only one-

19  party consent to an interception; some states do not provide for injunctive relief; at least one dual-

20  party consent state (and 10 single-party consent states) does not provide a private right of action

21  for wiretapping; several states expressly exclude email from their wiretapping statutes; and some

22  states require plaintiffs to prove that they had either an objective or subjective expectation that

23  their communications would remain "private." (Attachment A hereto (State Wiretapping Laws

24  Chart).) Each of these differences is a material conflict, and many would be dispositive in this

25  case. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (a difference is material

26  if it "make[s] a difference in th[e] litigation."). Given these conflicts, the Court must examine

27  each jurisdiction's interest in the application of its laws.

28

Though Plaintiffs argue that California has an interest in regulating conduct "that emanates from within its borders" (Mot. at 20:9-12), they ignore that the express purpose of CIPA is to protect *California residents*: "The Legislature by this chapter intends to protect the right of privacy of *the people of this state*." Cal. Penal Code § 630 (emphasis added); *see also Kearney*, 39 Cal. 4th at 119-20 ("there can be no question but that the principal purpose of [CIPA] is to protect the privacy of confidential communications of [C]alifornia residents *while they are in California*"); *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) (finding that CIPA is intended "to protect California residents from having their conversations recorded by either instate or out-of-state callers without all parties' consent.").[12] Moreover, as Plaintiffs concede, the alleged "place of wrong" is not California, as under Plaintiffs' theory of interception, Yahoo scans the content of emails at its MTAs, and its █████ machines, which are found all over the country and for the majority of class members would be of emails sent solely to and from residents *of other states*. (Mot. at 4:9-19, 7:21-23; Shue Decl. ¶ 2; Kaufman Decl. Ex. M at 48:1-5.) If an email is sent by a non-California resident to another non-California resident, and passes through Yahoo's servers outside of California (e.g. Kaufman Decl. Ex. K at 35:18-22, 58:2-14), California law simply cannot apply. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state") (quotations and citations omitted); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (California law could not be applied to non-California residents for conduct outside the state); *Mazza*, 666 F.3d at 593-94 (law of the place of the injury governed when a California corporation (headquartered in California) was sued for conduct that took place in, and/or emanated from, California).

Plaintiffs argue that the interests of other states would not be materially impaired because other states do not have an interest "in depriving their residents of greater privacy protections

---

[12] Plaintiffs cite *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026 (N.D. Cal. 2011), for the proposition that a California defendant can be held liable to non-California plaintiffs under CIPA. The *NebuAd* court, which did not engage in any choice of law analysis, held that plaintiffs had standing to sue a California defendant under CIPA where the complaint alleged that the communications at issue were sent to and from California. *Id.* at 1027-28. Here, in contrast, many communications are not directed to or from California, and will not pass through California.

available to them under California law." (Mot. at 20:19-20.) But the government interest test "does not permit the Court to weigh the conflicting state interests to determine which conflicting state law manifests the 'better' or 'worthier' social policy." *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *70-71 (*citing McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97 (2010)). "Rather, 'the Court must recognize the importance of federalism and every state's right to protect its consumers and promote those businesses within its borders.'" *Id.* (citing *Gianino v. Alacer*, 846 F. Supp. 2d. 1096, 1103 (C.D. Cal. 2012)). By enacting laws that differ from the CIPA, the various states have opted to define the scope of wiretapping liability in the manner that they believe best protects the interests of their residents while promoting business and other interests that might be affected by more expansive laws. As the Ninth Circuit emphasized, the choice of law analysis must recognize the "valid interest in shielding out-of-state businesses from what the state may consider to be excessive litigation" because "[i]n our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state." *Mazza*, 666 F.3d at 592-93; *see also Gianino*, 846 F. Supp. 2d at 1103 (each state has a "compelling interest . . . in delineating the scope of recovery for the consumers under their own laws."). Each foreign state thus has an interest in applying its law to transactions within its borders and "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Mazza*, 66 F.3d at 593.

Plaintiffs point out that Yahoo's terms of service with its users contains a California choice of law provision. (Mot. at 19:10-13.) But the fact that Yahoo and its users have agreed that their relationship shall be governed by California law is irrelevant to determining whether ***non-parties*** to the terms of service can invoke California law nationwide.[13] "Choice-of-law agreements have no effect in a class action if the trial court determines that they are

---

[13] The two cases Plaintiffs cite do not support this proposition, as the courts considered only whether the choice-of-law provision constitutionally permitted application of a particular law and not whether that law should be applied under a choice-of-law analysis. (Mot. at 19:15-21.)

unenforceable or that the class claims fall outside their scope." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918 (2001).

Thus, no nationwide class can be certified for Plaintiffs' CIPA claim.[14] *Mazza*, 666 F.3d at 594 (vacating certification of nationwide class where California law could not be applied extraterritorially). The need to apply the divergent laws of the 50 states also means that claims of the putative class members are not cohesive, further precluding certification of a (b)(2) class. *Grayson v. 7-Eleven, Inc.*, 2011 U.S. Dist. LEXIS 62211 (S.D. Cal. June 10, 2011) (decertifying (b)(2) class; finding lack of cohesion where states' laws conflict because cohesion "requires that a common legal ground be generally applicable to the class."); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 635-636 (W.D. Wash. 2011) (cohesiveness for (b)(2) class not satisfied where no common legal ground); *Sanders v. Johnson & Johnson, Inc.*, 2006 U.S. Dist. LEXIS 35881, at *31-33 (D.N.J. May 31, 2006) (no cohesiveness where class members would be subject to different state laws governing the numerous claims); *In re Prempro Prods. Liability Litig.*, 230 F.R.D. 555, 569 (E.D. Ark. 2005) ("A [Rule 23(b)(2)] class cannot be cohesive if the states' laws governing the class are notably different.").

## V. CONCLUSION

For the reasons stated herein, Yahoo respectfully requests that Plaintiffs' motion for class certification be denied.

Dated: March 12, 2015

By: /s/ Rebekah Kaufman
Rebekah Kaufman

Attorneys for Defendant
YAHOO! INC.

---

[14] Plaintiffs request in a footnote that a California-only class be certified. Seeking such relief for the first time in a footnote is improper, and in any event they have not shown the other requirements for a (b)(2) class are satisfied, including how such a class is ascertainable. *Sims v. Iovate Health Scis., U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 31470, at *33-34 (S.D. Cal. Mar. 23, 2011) (assertion of issue in footnote is insufficient to present the matter for determination).

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Alabama | Ala. Code §§ 13A-11-30, 13A-11-31 | Single Party | No | None | No | No |
| Alaska[1] | Alaska Stat. Ann. §§ 42.20.300, 42.20.310 | Single Party | No | None | No | No |
| Arizona | A.R.S. §§ 13-3005, 12-731 | Single Party | Yes | • actual damages plus profits made by defendant, or statutory damages of $100 a day for each day of the violation, or $10,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Arkansas | Ark. Code §§ 5-60-120, 23-17-107 | Single Party | No | None | No | No |
| California | Cal. Penal Code §§ 631, 632, 637.2 | All Party | Yes | • $5,000 or three times actual damages, whichever is greater | Yes | Yes |

---

[1] Alaska's wiretap statute applies to "oral conversations," not emails. *See* Alaska Stat. § 42.20.310 (applying to "oral conversations").

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Colorado | Colo. Rev. Stat. §§ 18-9-301 to 18-9-305 | Single Party | No | None | No | No |
| Connecticut[2] | Conn. Gen. Stat. §§ 52-570d, 53a-187 to 53a-189, 54-41r | All Party | Yes | <ul><li>actual damages;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | No |
| Delaware | Del. Code Ann., tit. 11 §§ 1335, 2402, 2409 | All Party[3] | Yes | <ul><li>actual damages, but not less than liquidated damages of $100 per day for each day of violation or $1,000, whichever is higher;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| District of Columbia[4] | DC Code §§ 23-542, 23-554 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |

[2] A party raising an interception claim under Connecticut law must establish an expectation of privacy. Conn. Gen. Stat. § 52-570d(a).
[3] A conflict exists in Delaware's wiretap laws. Del. Code Ann. Tit. 11, § 1335(a)(4) makes it illegal to intercept private conversations without the consent of all parties. But one Delaware federal court has interpreted the law to allow an individual to record his own conversations. *United States v. Vespe*, 389 F. Supp. 1359, 1372 (1975).

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Florida | Fla. Stat. §§ 934.03 to 934.10 | All Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Georgia | Ga. Code Ann. §§ 16-11-62 to 16-11-66, 16-11-66.1 | Single Party | No | None | No | No |
| Hawaii | Haw. Rev. Stat. §§ 803-42 to 803-48 | Single Party | Yes | • actual damages and any profits made by the violator, or statutory damages of $100 per day for each day of violation, or $10,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Idaho | Idaho Code Ann. § 18-6702 to 18-6709 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |

---

[4] Plaintiffs alleging claims under the District of Columbia's wiretapping statute must establish a legitimate expectation of privacy. *See Napper v. United States*, 22 A.3d 758, 767 (D.C. Ct. App. 2011) (noting that DC's wiretapping statute intends to codify the Supreme Court's Fourth Amendment test; thus person invoking wiretap statute must likewise establish a legitimate expectation of privacy).

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Illinois[5] | 720 Ill. Comp. Stat. §§ 5/14-1 to 5/14-1, 5/14-6 | All Party | Yes | • actual damages | Yes | Yes |
| Indiana | Ind. Code Ann. §§ 35-31.5-2-176, 35-33.5-5-4 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| Iowa | Iowa Code §§ 727.8, 808B.8 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Kansas | Kan. Stat. Ann. §§ 21.6101, 22-2518<br><br>[§§ 21-4001 and 21-4002 repealed] | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| Kentucky | Ky. Rev. Stat. Ann. § 526.010 | Single Party | No | None | No | No |

---

[5] The Illinois statute requires proof of an expectation of privacy. 720 Ill. Comp. Stat. Ann. 5/14-1; *see also People v. Gariano*, 852 N.E.2d 344, 348 (Ill. App. Ct. 2006) (noting statute's expectation of privacy requirement).

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Louisiana[6] | La. Rev. Stat. Ann. §§ 15:1303, 15:1312 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| Maine | Me. Rev. Stat. Ann. tit. 15 §§ 710, 711 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | No |
| Maryland[7] | Md. Code Ann. Cts. & Jud. Proc. §§ 10-402, 10-410 | All Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |

---

[6] Louisiana's wiretap statute requires plaintiff to establish the existence of a reasonable expectation of privacy. *State v. Smith*, 848 So. 2d 650, 653-54 (La. Ct. App. 2003) (analyzing existence of objective expectation of privacy for state wiretap claim); *Wilson v. Tregre*, No. 13–5612, 2014 WL 4539424 , at *8 (E.D. La. Sept. 11, 2014) ("A finding that a defendant has violated the Louisiana Wiretapping Statute, La. R.S. § 15:1303, also requires a finding that there was a reasonable expectation of privacy.").

[7] Maryland's wiretap statute requires proof of a reasonable expectation of privacy. *Benford v. ABC*, 649 F. Supp. 9, 11 (D. Md. 1986).

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|-------|-----------|------------------|--------------------------|-------------------------------|----------------------------------|------------------------------|
| Massachusetts | Mass. Ann. Laws ch. 272 § 99 | All Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| Michigan[8] | Mich. Comp. Laws §§ 750.539c, 750.539h | All Party | Yes | • actual damages | Yes | Yes |
| Minnesota | Minn. Stat. §§ 626A.02, 626A.13, 626A.25 | Single Party | Yes | • actual damages, or statutory damages of $100 or $1,000, whichever is greater (626A.02 subd. 5);<br>• three times the actual damages, or $100 a day for each day of violation or $10,000, whichever is greater (any other action under this section) | Yes | Yes |

---

[8] Michigan's wiretap statute excludes emails. *See Bailey v. Bailey*, 07-11672, 2008 WL 324156, at *8 (E.D. Mich. Feb. 6, 2008) (Michigan statute "was meant to prohibit eavesdropping in the traditional sense of recording or secretly listening to audible conversation"). Michigan's statute further applies only to private conversations. Mich. Comp. Laws Ann. § 750.539c.

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Mississippi | Miss. Code Ann. §§ 41-29-531, 41-529 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| Missouri | Mo. Ann. Stat. §§ 542.402, 542-418 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $10,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| Montana | Mont. Code Ann. § 45-8-213 | All Party | No | None | No | No |
| Nebraska | Neb. Rev. Stat. §§ 86-290, 86-297 | Single Party | Yes | • actual damages plus profits made by violator, or statutory damages of $100 a day for each day of the violation, or $10,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | No |
| Nevada | Nev. Rev. Stat. Ann §§ § 200.620, 200.690 | All Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;<br>• attorneys' fees;<br>• costs | No | Yes |

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| New Hampshire[9] | N.H. Rev. Stat. Ann. §§ 570-A:2, 570-A:11 | All Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| New Jersey | N.J. Stat. §§ 2A:156A-3, 2A:156A-4, 2A:156A-24 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation or $1,000, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| New Mexico | N.M. Stat. Ann. §§ 30-12-1, 30-12-11 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| New York | N.Y. Penal Law §§ 250.00, 250.05 | Single Party | No | None | No | No |
| North Carolina | N.C. Gen. Stat. §§ 15A-287, 15A-296 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |

---

[9] New Hampshire's wiretap law excludes email communications. *See* N.H. Rev. Stat. Ann. § 570-A:2 (applying to "telecommunication or oral communication").

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| North Dakota | N.D. Cent. Code § 12.1-15-02 | Single Party | No | None | No | No |
| Ohio | Ohio Rev. Code Ann. § 2933.52, 2933.65 | Single Party | Yes | • actual damages plus profits of the violator, or liquidated damages of $200 per day for each day of violation, or $10,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Oklahoma | Okla. Stat. tit. 13 §§176.4, 176.2 | Single Party | No | None | No | No |
| Oregon | Or. Rev. Stat. §§ 165,540, 165,543, 133.739 | Single Party[10] | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is greater;<br>• attorneys' fees | No | Yes |
| Pennsylvania | Pa. Stat. Ann. tit.18 §§ 5702, 5704, 5725 | All Party[11] | Yes | • actual damages plus profits made by violator, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | Yes | Yes |

---

[10] Must be all parties for in-person communications.

[11] Consent only needs to be obtained from persons who send emails, not from persons who receive emails. *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 633 (E.D. Pa. 2006) (noting that the "intended recipient of an intercepted communication, therefore, has no standing to raise [a] claim").

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Rhode Island | R.I. Gen. Laws § 11-35-21, 12-5.1-13 | Single Party | Yes | • actual damages, or liquidated damages of $100 per day for each day of violation, or $1,000, whichever is higher;<br>• attorneys' fees;<br>• costs | No | Yes |
| South Carolina | S.C. Code Ann. §§ 17-30-30, 17-30-135 | Single Party | Yes | • actual damages, or liquidated damages of $500 per day for each day of violation, or $25,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| South Dakota | S.D. Codified Laws § 23A-35A-20 | Single Party | No | None | No | No |
| Tennessee | Tenn. Code Ann. §§ 39-13-601, 39-13-603 | Single Party | Yes | • actual damages, or statutory damages of $100 per day for each day of violation, or $1,000, whichever is greater;<br>• attorneys' fees;<br>• costs | Yes | Yes |
| Texas | Tex. Penal Code Ann. §§ 16.02; Tex. Code Crim. Proc. art. 18.20; Tex. Civ. Prac. & Rem. Code Ann. § 123.004 | Single Party | Yes | • statutory damages of $10,000 for each occurrence; actual damages in excess of $10,000;<br>• attorneys' fees;<br>• costs | Yes | Yes |

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| Utah | Utah Code Ann. §§ 76-9-401, 76-9-403, 77-23a-4, 77-23a-11 | Single Party | Yes | <ul><li>actual damages plus profits of violator, or statutory damages of $100 per day for each day of violation, or $10,000, whichever is greater [§ 77-23a-11(3)(b)];</li><li>attorneys' fees;</li><li>costs</li></ul> | Yes | Yes |
| Vermont | No statute or definitive case law | N/A | N/A | N/A | N/A | N/A |
| Virginia | Va. Code Ann. §§ 19.2-62, 19.2-69 | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $400 a day for each day of violation, or $4,000, whichever is higher;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| Washington[12] | Wash. Rev. Code Ann. § 9.73.030, 9.73.060 | All Party | Yes | <ul><li>actual damages, including mental pain and suffering, or $100 a day for each day of violation not to exceed $1,000;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | No |

---

[12] Washington's wiretap act requires proof of a reasonable expectation of privacy. *State v. Kipp*, 317 P.3d 1029, 1032 (Wash. 2014) (state privacy act applies only to "private communications or conversations," and communications are private only "(1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable.").

| State | Statute(s) | Required consent | Private right of action? | Civil money damages available | Statute allows civil injunction? | Punitive damages available? |
|---|---|---|---|---|---|---|
| West Virginia | W. Va. Code §§ 62-1D-3, 62-1D-12 | Single Party | Yes | <ul><li>actual damages, but not less than $100 for each day of violation;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| Wisconsin | Wis. Stat. Ann. §§ 968.31, 885.365(1), | Single Party | Yes | <ul><li>actual damages, or liquidated damages of $100 for each day of violation, or $1,000, whichever is higher;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |
| Wyoming | Wyo. Stat. §§ 7-3-702, 7-3-710 | Single Party | Yes | <ul><li>actual damages, but not less than $1,000 a day for each day of violation;</li><li>attorneys' fees;</li><li>costs</li></ul> | No | Yes |