UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE YAHOO MAIL LITIGATION | Case No.  13-CV-04980-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. No. 60 <br><br> **[PUBLIC REDACTED VERSION]** |

This case involves putative class action claims regarding Defendant Yahoo!, Inc.'s ("Yahoo") practice of scanning and analyzing emails of non-Yahoo Mail subscribers in purported violation of federal and California wiretapping laws. Plaintiffs Cody Baker, Brian Pincus, Halima Nobles, and Rebecca Abrams, individually and on behalf of those similarly situated (collectively, "Plaintiffs"), allege that Yahoo's operation of its Yahoo Mail service violates the Stored Communications Act ("SCA") and California's Invasion of Privacy Act ("CIPA"). Plaintiffs filed a motion for class certification on February 5, 2015. ECF No. 60 ("Mot."). For the reasons stated below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for class certification.

## I.     BACKGROUND

### A.  Factual Background

Plaintiffs are four individuals representing a class of individuals who do not use Yahoo's email service ("Yahoo Mail") but have sent emails to Yahoo Mail subscribers from non-Yahoo email addresses. Compl. ¶¶ 15–18. Plaintiff Cody Baker is a resident of New York. *Id.* ¶ 15. Plaintiff Halima Nobles is a resident of Texas. *Id.* ¶ 17. Plaintiff Brian Pincus and Plaintiff Rebecca Abrams are residents of California. *Id.* ¶¶ 16, 18. Yahoo is a Delaware corporation with headquarters in Sunnyvale, California. *Id.* ¶ 19.

Plaintiffs allege Yahoo's practices while operating Yahoo Mail violate state and federal wiretapping laws. *Id.* ¶¶ 5–7. In their motion for class certification, Plaintiffs seek injunctive and declaratory relief on behalf of a class of non-Yahoo Mail subscribers.[1] *Id.* ¶ 7. Plaintiffs' proposed class consists of all persons in the United States who are not Yahoo Mail subscribers and who sent emails to or received emails from a Yahoo Mail subscriber between October 2, 2011 and the present. *Id.* ¶ 97.

### 1.  Yahoo Mail and Yahoo's Use of Scanned Emails

Yahoo operates Yahoo Mail as a free web-based email service. *Id.* ¶¶ 20–23. More than 275 million subscribers have registered for Yahoo Mail to create @yahoo.com, @ymail.com, or @rocketmail.com email addresses. *Id.* ¶¶ 20–21. Before signing up for a Yahoo Mail account, potential subscribers must provide Yahoo with personal information such as their name, birthday, telephone number, and account information. *Id.* ¶ 31.

In order to provide Yahoo Mail as a free email service to subscribers, Yahoo charges advertisers to display advertisements on Yahoo Mail webpages. *Id.* ¶ 23. Roughly 75% of Yahoo's revenue in 2013 came from advertising. *Id.* ¶ 28. Plaintiffs allege Yahoo can increase its revenues by charging advertisers higher rates to display targeted advertisements to Yahoo Mail subscribers.

---

[1] In the complaint, Plaintiffs also sought statutory damages. Compl. ¶ 7. Plaintiffs do not, however, seek statutory damages in their motion for class certification.

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

*Id*. Thus, Yahoo has a financial incentive to scan and store email content to allow advertisers to target individuals based on certain personal characteristics. *Id*.

The instant dispute concerns Yahoo's interception, scanning, and storage of Yahoo Mail subscribers' incoming and outgoing emails for content, specifically the content of emails to and from non-Yahoo Mail subscribers with whom Yahoo Mail subscribers communicate. Plaintiffs allege Yahoo intercepts and scans Yahoo Mail subscribers' emails ██████████████████ ██████████████████. Mot. at 3. Yahoo allegedly copies the entirety of the email, "extracts keywords from the body of the email, reviews and extracts links and attachments, and classifies the email based on its content." *Id.* Yahoo also "subjects the copied email and extracted information to additional analysis to create targeted advertising for its subscribers, and stores it for later use." *Id.*

According to Plaintiffs,[2] Yahoo's scanning and analysis processes have "steadily expanded" since 2010, with "the goal of increasing revenue from advertisers, reducing costs to Yahoo, and providing user features that Yahoo believes keep it competitive in the marketplace." *Id.* (citing Girard Decl., ECF No. 60, Exh. 1 ("Doron Depo."), at 37:8–38:5, 41:3–42:10, 53:25–55:10, and Declaration of Robert Sherwood, ECF No. 60-15, ("Sherwood Decl."), at ¶ 17). Consequently, Yahoo frequently tests and modifies its scanning and analysis processes. Mot. at 3. Among other things, Yahoo scans its subscribers' emails for spam, links, attachments, data on online shopping and purchase behavior, and other keywords for further analysis. *Id.*; Doron Depo. at 23:23–25:1, 29:4–32:18, 41:3–42:10, 44:15–45:14; Sherwood Decl. ¶¶ 9–21.

As Plaintiffs describe it, Yahoo intercepts, scans, and copies email ██████████████████ ██████████████████, which then triggers the additional scanning and analyses that Yahoo conducts. Mot. at 4; Sherwood Decl. ¶¶ 9–13; Doron Depo. at 38:19–40:23, 74:5–75:11. More specifically, when a non-Yahoo Mail subscriber sends an email to a Yahoo Mail subscriber,

---

[2] Yahoo contends that "Plaintiffs do not accurately describe Yahoo's email scanning," but concedes that this dispute does not need to be resolved at this stage of the proceedings. *See* Opp. at 3 n.1.

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   the email is "transmitted through the internet until it reaches Yahoo's Mail Transfer Agent"

2   ("MTA"). Doron Depo. at 65:9–66:8; Sherwood Decl. ¶ 10. The MTA performs "specific actions

3   that are unrelated to the transmission of email." Mot. at 4 (citing Doron Depo. at 24:4–26:20,

4   44:15–45:2, 65:7–66:24, 73:23–76:1, 102:13–105:20; Ex. 4 at YAH00068107; Ex. 12 at

5   YAH00011472; Sherwood Decl. at ¶¶ 10–13). These actions include assigning the email █████

6   ████████████ that can be used for advertising purposes, time-stamping the email, and

7   "copying the entire message—including the date, time, sender, recipients, subject line, and body of

8   the email—████████████████████████████████████████" *Id.*

9        The copied data is transmitted through the "████████ to the "████ for further analysis. *Id.*

10  (citing Doron Depo. at 49:7-24; Ex. 9 at YAH00011490; Sherwood Decl., Ex. 1 at ¶ 13). The

11  "████ is a ████████████████████████████████████████████████

12  █████████████████████████████████ *Id.* The "████ is a

13  "series of computers that analyze the content and data collected from the email for various

14  purposes." *Id.* Yahoo uses ████████████████████ and █████████████

15  ████ technology to scan and extract information from Yahoo Mail subscribers' "commercial

16  email," e.g., online shopping receipts and travel confirmations. Mot. at 5 (citing Doron Depo. at

17  16:16–17:3, 27:18–35:13, 68:18–69:1; Exh. 12; Exh. 15; Exh. 32; Sherwood Decl. ¶ 19).

18       In addition to scanning and extracting information from commercial emails, Yahoo scans

19  and indexes keywords from its subscribers' personal emails using processes called "██████

20  ████████," which allow subscribers to search their email. *Id.* This process, while not

21  technically necessary to deliver or send email, is an additional feature meant to attract subscribers.

22  *Id.* "██████ is a new technology that Yahoo has begun using to "harvest[] the keywords extracted

23  by ████████████████" to use in Yahoo's advertising efforts. *Id.* Using ██████ Yahoo can

24  extract information from emails between Yahoo Mail subscribers and putative class members in

25  order to display targeted advertising to Yahoo Mail subscribers. According to internal Yahoo

26  emails, ██████████████████████████████████████████████████

27  █████████████████████████████████████████████████" Girard

28

United States District Court
Northern District of California

Decl., Exh. 42 (YAH00071993). Additionally, Yahoo acknowledges on its "Frequently Asked Questions" page that its scanning technology "looks for patterns, keywords, and files" and that Yahoo shares "specific objects from a message" with certain third parties. Mot. at 6 (citing Girard Decl., Exh. 24).

Before transmitting an email to a Yahoo Mail subscriber's inbox from the MTA, Yahoo determines whether an email is spam. Mot. at 7 (citing Doron Depo. at 24:4–25:2, 65:15–66:8; Girard Decl., Exh. 4(YAH00068107); Sherwood Decl. ¶ 16). Yahoo also scans incoming emails for attachments such as photos or other images. *Id.* Yahoo also intercepts and scans outgoing emails sent from Yahoo Mail subscribers to non-Yahoo Mail subscribers through Yahoo's "████████████," which apparently collect data similar to the data Yahoo collects from incoming email. Mot. at 7 (citing Doron Depo. at 47:17–49:4, 96:22–98:2; Ex. 10; Sherwood Decl., at ¶ 22). While ██████ email is scanned for keywords so that Yahoo Mail subscribers can search their "███ emails, Yahoo does not currently scan █████ email for the advertising functions of █████ *Id.*

Plaintiffs contend that Yahoo "can and does provide email services" to some Yahoo Mail subscribers without intercepting, scanning, and analyzing emails "for commercial purposes." Yahoo "cannot use email to target ads to users" without consent from both the sender and receiver in the United Kingdom. Yahoo therefore does not provide targeted advertising to Yahoo Mail subscribers in the United Kingdom. Girard Decl., Exh. 20 (YAH00009864–65).

### 2. Consent and Publicity

Yahoo requires its subscribers to consent to the interception, scanning, analysis, and storage of email in exchange for Yahoo Mail services. Mot. at 8; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1029–31 (N.D. Cal. 2014) ("Accordingly, the Court concludes that Yahoo obtained consent from one party to the electronic communications to scan and analyze emails for the purposes of providing personal product features, providing targeted advertising, and detecting spam and abuse."). In its terms of service, Yahoo also notifies its subscribers that: "If you consent to this [Additional Terms of Service] and communicate with non-Yahoo users using the Services,

5

you are responsible for notifying those users about this feature." Girard Decl., Exh. 3, ¶ 1.c.

According to Plaintiffs, Yahoo "makes no other effort to obtain the consent of non-subscribers."

Mot. at 8. Moreover, Yahoo provides no mechanism for non-Yahoo Mail subscribers to opt out of

Yahoo's scanning practices. *See* Girard Decl., Ex. 30 (Yahoo Interrogatory Responses 7 & 8).

Plaintiffs further allege that Yahoo has actively "concealed information," or otherwise

attempted to avoid widespread public scrutiny of its scanning practices. Mot. at 9. More

specifically, Plaintiffs cite █████ project team emails from 2010 stating that members were "quite

concerned about how users will react to our going through their email to target ads" and that

friends and family members described it as "an invasion of their privacy and too much 'big

brother.'" Girard Decl., Exh. 26 (YAH00016831–32). In 2012, Yahoo's communications

department also recommended that it would be "good to have a quiet blog post on our advertising

or privacy blog about several forms of targeting (not just commercial mail) so we can say we have

something out there if there is an issue. No one wants to proactively grab the attention of

consumers. It's just a way of having something documented." Girard Decl., Exh. 34

(YAH00004771). Subsequent emails in late 2013 confirmed that Yahoo "preferr[ed] to discuss

email ad targeting only when we're talking to advertising-friendly audiences. It raises a lot of

privacy concerns." One Yahoo employee explained in another internal email chain that "[w]e

haven't talked about █████ with consumers. . . . I would prefer not to talk about it with

consumers in case it stirs up privacy debates." Girard Decl., Exh. 37 (YAH00004931–32).

Yahoo disputes Plaintiffs' characterization and notes that the Additional Terms of Service

("ATOS") are publicly available, and that Yahoo's "Mail FAQ" page explains that Yahoo's

"automated systems will scan and analyze all incoming and outgoing email, IM, and other

communications content sent and received from your account in order to personalize your

experience." Declaration of Dan Tepstein, ECF No. 80-58. The "Yahoo Mail" page states:

> Yahoo! provides personally relevant product features, content, and
> advertising, and spam and malware detection by scanning and
> analyzing Mail, Messenger, and other communications content.
> Some of these features and advertising will be based on our
> understanding of the content and meaning of your communications.

United States District Court
Northern District of California

> For instance, we scan and analyze email messages to identify key elements of meaning and then categorize this information for immediate and future use.

Declaration of Jakub Slomczynski, ECF No. 78-7. According to Yahoo, these pages are "accessible by users and non-users of Yahoo's email services, and have been viewed millions of times." Slomczynski Decl. ¶¶ 4–6. Yahoo also cites a variety of articles discussing its ATOS and Yahoo Mail services, including two June 2013 pieces published by ABC News and Copypress. *See* Declaration of Sarah Meron, ECF Nos. 79-25 (ABC News article), 79-57 (Copypress article).

### 3.  Class Allegations and Relief Sought

Plaintiffs allege that Yahoo's operation of Yahoo Mail violates the Stored Communications Act ("SCA") and California's Invasion of Privacy Act ("CIPA").[3] Compl. ¶¶ 5–6. In their motion for class certification Plaintiffs seek certification of a nationwide class of non-Yahoo Mail subscribers. More specifically, Plaintiffs seek certification of the following class:

> [A]ll persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

Mot. at 1. In the alternative, Plaintiffs also seek the certification of a California-only subclass as to Plaintiffs' CIPA claim.[4] Mot. at 22 n.2; Reply at 13. Moreover, Plaintiffs seek "solely declaratory and injunctive relief," as a class under Federal Rule of Civil Procedure 23(b)(2). Mot. at 1.

### B.  Procedural History

Beginning on October 2, 2013, Plaintiffs filed six separate class action complaints against Yahoo in the Northern District of California, alleging that Yahoo scans and analyzes emails in violation of privacy laws. On December 18, 2013, this Court related all six pending actions

---

[3] As discussed below, Plaintiffs also alleged violations of Article I Section I of the California Constitution, but the Court granted Defendant's motion to dismiss this claim on August 12, 2014. ECF No. 49.

[4] Yahoo takes issue with Plaintiffs' request that the Court certify a California-only subclass in a footnote. As the Court may divide a class into subclasses "on the motion of either party, or *sua sponte*," the Court concludes that Plaintiffs' request is not improper. *See* Newberg on Class Actions § 7:30 (5th ed.). Yahoo had ample opportunity to respond to Plaintiffs' request in Yahoo's opposition to Plaintiffs' motion.

7

1   because they involve the same defendant, Yahoo, and "substantially the same basic allegations"

2   that Yahoo's "interception, storage, reading and scanning of email violates Plaintiffs' and other

3   consumers' rights of privacy." ECF No. 14 at 2. On January 8, 2014, two of the Plaintiffs filed

4   stipulations to dismiss their actions, which the Court granted. *See Kevranian v. Yahoo!*, 13-cv-

5   04547-LHK, ECF No. 36; *Zelaya v. Yahoo! Inc.*, 13-cv-04619-LHK, ECF No. 23. On January 22,

6   2014, this Court consolidated the remaining four cases for pretrial purposes, ECF No. 27, and

7   appointed interim class counsel, ECF No. 29. Plaintiffs filed a consolidated class action complaint

8   on February 12, 2014. ECF No. 35.

9         On March 5, 2014, Yahoo filed a motion to dismiss Plaintiffs' claims. ECF No. 37. On

10  March 26, 2014, Plaintiffs filed an opposition to Yahoo's motion to dismiss. ECF No. 39. On

11  April 7, 2014, Yahoo filed a reply. ECF No. 41. On August 12, 2014, the Court granted in part and

12  denied in part Defendant Yahoo's motion to dismiss. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016

13  (N.D. Cal. 2014). Of Plaintiffs' original claims, only Plaintiffs' improper disclosure claim under

14  § 2702(a)(1) of the SCA and § 631 claim under CIPA survived Yahoo's motion to dismiss. *Id.* at

15  1043. Plaintiffs chose not to amend their complaint, and Yahoo filed its answer to Plaintiffs'

16  complaint on August 26, 2014. ECF No. 53.

17        On February 5, 2015, Plaintiffs filed the instant motion for class certification. ECF No. 60.

18  On March 12, 2015, Yahoo filed its opposition. ("Opp."), ECF No. 77. On April 9, 2015, Plaintiffs

19  filed their reply. ("Reply"), ECF No. 89.[5]

20  **II.    LEGAL STANDARD**

21        Federal Rule of Civil Procedure 23, which governs class certification, has two sets of

22  distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must

23  meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule

24  23(b).

25

26  ─────────────────────
27  [5] The parties filed the class certification briefing as exhibits attached to administrative motions to
    seal. *See* ECF Nos. 60, 77, 89. The Court addresses the parties' sealing motions in a separate
    order.

28  Case No.13-CV-04980-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

8

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001))). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 1195. Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class. *Zinser*, 253 F.3d at 1186.

### III.   DISCUSSION

Plaintiffs move to certify a nationwide class of persons who are not Yahoo Mail

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

subscribers who have sent emails to or received emails from a Yahoo Mail subscriber from

October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail

subscriber in the future. Mot. at 1. In the alternative, Plaintiffs seek the additional certification of a

California-only subclass as to Plaintiffs' CIPA claim. Plaintiffs seek to certify only an injunctive

relief class under Rule 23(b)(2). The Court addresses Plaintiffs' standing to seek injunctive relief

before turning to the requirements of Rule 23(a) and Rule 23(b).

### A.  Standing

Yahoo challenges Plaintiffs' standing to seek injunctive or declaratory relief under Rule

23(b)(2). More specifically, Yahoo argues that Plaintiffs have continued to send emails to Yahoo

subscribers even after Plaintiffs learned that Yahoo allegedly scans, stores, and uses those emails.

According to Yahoo, Plaintiffs' conduct constitutes consent to Yahoo's practices, and Plaintiffs'

knowledge of Yahoo's practices "precludes [them] from showing a likelihood of being injured in

the future by those practices." Opp. at 16 (quoting *In re Intel Laptop Battery Litig.*, No. C09-

02889 JW, 2011 WL 7290487, at \*2 (N.D. Cal. Apr. 7, 2011)). For the reasons stated below, the

Court rejects Yahoo's argument.

"In a class action, standing is satisfied if at least one named plaintiff meets the

requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing

*Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)). Not only must at least one named plaintiff

satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that

[s]he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488,

493 (2009). An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of

common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a

showing of cohesiveness of class claims is required. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th

Cir. 1998).

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

To establish standing for prospective injunctive relief, Plaintiff must demonstrate that "[s]he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future."). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101–02. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show that she herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999).

The gravamen of Yahoo's argument is that once Plaintiffs discovered that their emails to Yahoo subscribers were being intercepted, stored, and used by Yahoo, Plaintiffs then consented to Yahoo's actions by continuing to email Yahoo subscribers. According to Yahoo, because Plaintiffs now know that any emails Plaintiffs send to Yahoo subscribers will be subject to Yahoo's interception and use of those emails, Plaintiffs "consent" to future interceptions and cannot allege a future injury as required to establish standing for injunctive relief.

In support of this argument, Yahoo relies on four district court cases from this circuit: *In re Intel Laptop Battery Litig.*, 2011 WL 7290487, at *2; *Castagnola v. Hewlett-Packard Co.*, No C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012); *Saavedra v. Eli Lily & Co.*, No. 12-CV-9366, 2013 WL 6345442 (C.D. Cal. Feb. 26, 2013); and *Campion v. Old Republic Home Protection Co., Inc.*, 861 F. Supp. 2d 1139 (S.D. Cal. 2012). These cases, primarily citing to each other, concluded that the plaintiffs lacked standing to seek injunctive relief because (1) the

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiffs failed to assert that they intended to engage in the injury producing conduct in the future,

2    and (2) the plaintiffs' knowledge of the defendants' wrongful conduct meant that plaintiffs could

3    not articulate a future injury. For example, in *Campion*, the court found that the plaintiff lacked

4    standing to seek injunctive relief, concluding that the plaintiff "does not ever intend to purchase

5    another [warranty plan]. Furthermore, even if Plaintiff were to purchase another home warranty

6    plan from Defendant, he now has knowledge of Defendant's alleged misconduct." *Campion*, 861

7    F. Supp. 2d at 1150. Similarly, in *In re Intel Laptop Battery Litig.*, the court found that the plaintiff

8    "does not allege that it plans to purchase a laptop of any kind in the future. Further, Plaintiff has

9    knowledge of Defendants' alleged misconduct." 2011 WL 7290487, at *2; *see Castagnola*, 2012

10   WL 2159385, at *6 ("Plaintiffs do not allege that they intend to purchase products from

11   Snapfish.com in the future . . . . Even if they did . . . however, Plaintiffs now have knowledge of

12   the terms and conditions of the program." (citing *In re Intel Laptop Battery Litig.* and *Campion*));

13   *Saavedra*, 2013 WL 6345442, at *8 ("Plaintiffs have failed to allege that they intend to purchase

14   Cymbalta in the future. Moreover, even if they did, they now know about the possibility of the

15   side-effects." (citing *Castagnola* and *Campion*)). In all four cases, the courts noted that the

16   plaintiffs' presumptive knowledge of the defendants' fraudulent conduct meant that plaintiffs

17   could not, as a matter of law, be injured by defendants' future wrongful conduct.

18        This Court, among others in this circuit, has rejected this proposition as overly narrow in

19   the consumer protection context. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-

20   2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014) ("Several courts in this district

21   have held in similar cases that to establish standing, [a plaintiff] must allege that [s]he intends to

22   purchase the products at issue in the future." (internal quotation marks omitted)); *Larsen v. Trader

23   Joe's Co.*, No. 11-5188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (rejecting *Campion*

24   as overly narrow). In these cases, plaintiffs needed to allege actual reliance on alleged

25   misrepresentations in order to show an injury-in-fact. *See, e.g.*, *Werdebaugh*, 2014 WL 2191901,

26   at *5–6 (listing cases). In essence, actual reliance requires a showing that plaintiffs were unaware

27   of the "truth" of the alleged misrepresentation and paid a price premium or made a purchase that

28
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

plaintiffs would not have otherwise made. *Id.* Presumably these plaintiffs then became aware that the defendants' labels were misleading and accordingly filed suit. As is the case here, the defendants argued that the plaintiffs could not allege a future injury because any future purchase would be made with the knowledge that the labels were allegedly fraudulent. Courts have repeatedly rejected this argument as artificially precluding injunctive relief altogether. *See id.*

More specifically, as one court put it, "If the Court were to construe Article III standing . . . as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." *Henderson v. Gruma Corp.*, No. 10-4173, 2011 WL 1362188, at *7 (S.D. Cal. Apr. 11, 2011). Rather than applying a rule that would have the functional effect of precluding injunctive relief altogether, courts have held that the "likelihood of future injury" requirement under Article III may be satisfied where a consumer "allege[s] that [s]he intends to purchase the products at issue in the future," even after a consumer discovers the alleged misrepresentation. *Werdebaugh*, 2014 WL 2191901, at *9 (internal quotation marks omitted). This outcome accords with both the standing requirements of Article III and the underlying policy justifications for the statutory protections at issue.

In the instant case, the Court similarly concludes that Yahoo's argument would have the functional effect of eliminating injunctive relief altogether for victims of alleged violations of the SCA and CIPA. Here, Plaintiffs have alleged an injury-in-fact, i.e., that Yahoo wrongfully intercepted, disclosed, and used Plaintiffs' electronic communications. After discovering this alleged conduct, Plaintiffs filed the instant suit. Under Yahoo's proposed rule, to be eligible for injunctive relief, Plaintiffs would then have to cease receiving and sending emails to Yahoo Mail subscribers in order to avoid consenting to Yahoo's future conduct. However, Plaintiffs must also show "a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946. Yahoo does not explain how Plaintiffs could both avoid "consenting" to Yahoo's conduct while simultaneously establishing a "real and immediate threat" that Plaintiffs' emails would be subject

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to Yahoo's interception and use. In other words, Yahoo would put Plaintiffs in a catch-22 that

2    would essentially preclude injunctive relief altogether. Yahoo would require Plaintiffs to allege

3    both (1) that Plaintiffs, in order to avoid "consenting" to Yahoo's conduct, stopped emailing

4    Yahoo subscribers after discovering Yahoo's alleged wrongful conduct, and (2) that Plaintiffs

5    continued to email Yahoo subscribers so that Plaintiffs allege a real and immediate threat of future

6    injury, i.e., that Yahoo would intercept Plaintiffs' communications in the future. The Court

7    declines to impose an impossible burden on Plaintiffs. [6]

8          Here, Plaintiffs have shown that they intend to continue to email Yahoo Mail subscribers

9    and have, in fact, done so since discovering Yahoo's alleged wrongful conduct. *See* Declaration of

10   Rebecca Adams, ECF No. 62, ¶ 3; Declaration of Cody Baker, ECF No. 63, ¶ 3; Declaration of

11   Halima Nobles, ECF No. 64, ¶ 3; Declaration of Brian Pincus, ECF No. 65, ¶ 3. Plaintiffs have

12   therefore alleged a "real and immediate threat" that their electronic communications will be

13   intercepted and used by Yahoo—the precise injuries that Plaintiffs identify as the basis for this

14   action. This is not an instance where Plaintiffs have identified only a past transaction or injury and

15   have failed to show any likelihood of future injury. *See, e.g.*, *Werdebaugh*, 2014 WL 2191901, at

16   *9 ("[Plaintiff] has not alleged, let alone provided evidentiary proof, that he intends or desires to

17   purchase [defendant's] products in the future . . . and Plaintiff lacks standing to pursue [injunctive

18   relief].""). Nor can Plaintiffs opt out of Yahoo's practices. *See* Girard Decl., Ex. 30. In sum, the

19   Court concludes that Plaintiffs have sufficiently alleged a "real and immediate threat of repeated

20   injury," which would be redressable through injunctive relief. *Bates*, 511 F.3d at 985.

21   Accordingly, Plaintiffs have shown standing to pursue injunctive relief.

22   **B. Rule 23(a) Factors**

23          Plaintiffs bear the burden to show that the proposed class satisfies each requirement under

24

---

25   [6] Yahoo asserts that Plaintiffs could contact Yahoo Mail subscribers via phone, fax, or email
     addresses provided by Yahoo's competitors. Opp. at 17. Yahoo appears to be arguing that
26   Plaintiffs are not required, either by necessity or convenience, to "consent" to Yahoo's
     interceptions and disclosures because Plaintiffs can communicate with Yahoo Mail subscribers via
27   other means. This argument places Plaintiffs in the same catch-22 position referenced above. As
     discussed above, the Court finds Yahoo's argument unpersuasive.

28
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   Rule 23(a)(1). While Yahoo does not contest numerosity, Yahoo does challenge whether Plaintiffs

2   have shown commonality, typicality, and adequacy. The Court addresses each requirement in turn.

3       **1.  Numerosity**

4       Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is

5   impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," but rather

6   asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris*

7   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). In determining

8   whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the

9   facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir.

10   1977).

11       Here, Plaintiffs estimate that there are "hundreds of thousands of class members," but do

12   not offer an exact figure for the size of the class. Mot. at 11. Yahoo does not dispute the

13   numerosity of the proposed class. As Plaintiffs contend that it is beyond dispute that the proposed

14   class numbers well over forty and joinder would be impracticable, the Court finds that the

15   numerosity requirement is satisfied. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536

16   (N.D. Cal. 2012); *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249

17   F.R.D. 334, 346 (N.D. Cal. 2008) ("[V]arious courts have found that the numerosity factor is

18   satisfied if the class comprises 40 or more members . . . .").

19       **2.  Commonality**

20       "Commonality requires the plaintiff to demonstrate that the class members 'have suffered

21   the same injury,'" which "does not mean merely that they have all suffered a violation of the same

22   provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention"

23   and "[t]hat common contention . . . must be of such a nature that it is capable of classwide

24   resolution—which means that determination of its truth or falsity will resolve an issue that is

25   central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been

26   construed permissively. All questions of fact and law need not be common to satisfy the rule. The

27   existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

28   

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–20 (9th Cir. 1998). All questions of fact and law need not be common to satisfy the rule. *Id.* Rather, in deciding whether plaintiffs share a common question with the prospective class, the named plaintiffs must share at least one question of fact or law with the prospective class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted); *see Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

In support of their motion for class certification, Plaintiffs contend that there are "several common questions of law and fact" because "all class members are subject to Yahoo's practice of intercepting, copying and analyzing email content." Mot. at 12. Yahoo argues that Plaintiffs cannot satisfy the commonality requirement because (1) the issue of "consent cannot be resolved by proof common to the class as a whole," and (2) Plaintiffs have failed to identify a "central" common question as required by *Dukes*. Opp. at 7–8.

In the instant case, the Court finds that Plaintiffs have carried their burden of satisfying the commonality requirement of Rule 23(a). Here, Plaintiffs have two surviving claims against Yahoo: alleged improper disclosure under § 2702(a)(1) of the SCA and alleged illegal wiretapping under § 631 of CIPA. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1042–43. As to their SCA claim, Plaintiffs allege that Yahoo violated § 2702(a)(1), which prohibits "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Plaintiffs also allege that Yahoo's interception and scanning of their emails violates § 631 of CIPA. Section 631 of CIPA makes it unlawful to use "any machine, instrument or contrivance" to intentionally intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read, attempt to read, or learn the "contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable" without the consent of all parties to the communication. *See* Cal. Penal Code § 631(a).

As Plaintiffs note, both claims will require resolution of whether Yahoo intercepts emails

16

United States District Court
Northern District of California

to and from non-Yahoo Mail subscribers; how Yahoo stores, accesses, and scans those emails; and what use or disclosure, if any, Yahoo makes of the contents of those emails. For instance, the parties dispute whether Yahoo intercepts emails while "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," an element of a § 631 claim. Indeed, Yahoo moved to dismiss Plaintiffs' CIPA claim on this basis. *See In re Yahoo Mail Litig.*, 7 F. Supp. 2d at 1036. Whether Yahoo intercepts emails to and from non-Yahoo mail subscribers while those emails are in transit is a "common contention" that "is capable of classwide resolution" and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2552. This common question is one that will "generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551. Should it be the case that Yahoo does not, in fact, intercept the emails of non-Yahoo Mail subscribers while those emails are "in transit," but rather accesses those emails while the emails are "in electronic storage," then Plaintiffs' CIPA claim would be defeated. Likewise, for Plaintiffs' SCA claim, the common factual question of whether Yahoo actually discloses to third parties the contents of class members' emails is essential to Plaintiffs' claim. *See, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014). As Rule 23(a)(2) requires only one significant common question of law or fact, the Court concludes that Plaintiffs have satisfied their burden.

In opposition, Yahoo argues that the issue of whether putative class members have consented to Yahoo's interception, disclosure, and use of their emails is a "key question" that defeats commonality under Rule 23(a). Opp. at 7. More specifically, Yahoo relies on this Court's decision in *In re Google Inc. Gmail Litigation*, No. 13-MD-2430-LHK, 2014 WL 1102660, at *21 (N.D. Cal. Mar. 18, 2014), in support of its argument that consent is a "question of fact" that will require individualized inquiry. In *Gmail*, the Court concluded that the "individualized questions with respect to consent . . . [were] likely to overwhelm any common issues," and concluded that the plaintiffs had failed to satisfy the predominance requirement under Rule 23(b)(3). *Id.* More specifically, the *Gmail* plaintiffs sought to certify classes that included Gmail subscribers and non-subscribers. *Id.* at *10. Some Gmail subscribers had received different privacy disclosures, making

17

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   even express consent an individualized inquiry. *Id.* at *14–15. Evaluating the "full panoply of

2   disclosures, from the news media, from Google, and from other sources," the Court concluded that

3   at least some proposed class members would have been on notice of the alleged interceptions, and

4   consented to Google's conduct. *Id.* at *18–19. Google produced evidence of widespread, critical

5   media coverage of Google's scanning and interception policies as well as Google's own

6   disclosures which had been viewed more than 1.6 million times, presumably by both Gmail

7   subscribers and non-subscribers. *Id.* at *17–18. The Court concluded that the process of

8   "determining [to] what disclosures each Class member was privy and determining whether that

9   specific combination of disclosures was sufficient to imply consent" meant that the plaintiffs could

10  not satisfy the predominance requirement under Rule 23(b)(3). *Id.* at *18.

11      In the instant case, Yahoo contends that these same questions of consent will "overwhelm"

12  any common questions of fact or law. However, *Gmail* is of limited applicability here.  As a

13  threshold matter, unlike in *Gmail*, Plaintiffs in the instant action do not seek to certify a class

14  under Rule 23(b)(3), which requires that "questions of law or fact common to class members

15  *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3)

16  (emphasis added). Moreover, Yahoo fails to note that in *Gmail*, the defendant did not challenge

17  whether the plaintiffs satisfied the commonality requirement under Rule 23(a). *In re Gmail Litig*.,

18  2014 WL 1102660, at *11. The Court's decision in *Gmail* turned on the plaintiffs' failure to

19  demonstrate predominance, not commonality. *See id.*

20      Furthermore, it is well established that the predominance requirement under Rule 23(b)(3)

21  is more demanding than the commonality requirement under Rule 23(a). *See, e.g.*, *Hanlon*, 150

22  F.3d at 1019 ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the

23  companion requirements of Rule 23(b)(3)."); *see also* Newberg on Class Actions § 3:27 (5th ed.)

24  (noting that "Rule 23(b)(3) most obviously builds on Rule 23(a)(2)" but "adds an additional

25  measure of commonality"). This distinction between the commonality and predominance

26  requirements not only distinguishes *Gmail*, but also much of the other authority upon which

27  Yahoo relies. Plaintiffs in the instant case do not bear the burden of showing that a common

United States District Court
Northern District of California

28

18

1  question of law or fact predominates over individual questions. Instead, Plaintiffs need only show

2  the existence of a common question of law or fact that is significant and capable of classwide

3  resolution. *See Mazza*, 666 F.3d at 589; *Dukes*, 131 S. Ct. at 2552. Although Yahoo may be

4  correct that consent could present legal and factual questions that are not common to the proposed

5  class, that observation does not bear on whether Plaintiffs have identified *other* common legal and

6  factual questions that are significant to Plaintiffs' claims and capable of classwide resolution. *See*

7  *Mazza*, 666 F.3d at 589 ("[C]ommonality requires only a single significant question of law or fact.

8  Even assuming arguendo that we were to agree with [defendant's] 'crucial question' contention,

9  the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are

10  common issues under Rule 23(a)(2)." (internal citation omitted)).

11      Yahoo also cites *Torres v. Nutrisystem, Inc.*, 289 F.R.D 587 (C.D. Cal. 2013). In *Torres*,

12  the plaintiff put forth two "common" questions of law or fact: whether the defendant recorded or

13  monitored confidential telephone communications and whether the defendant obtained consent

14  before doing so. *Id.* at 592. In rejecting these "common" questions, the *Torres* court found that

15  neither question would result in common answers on a classwide basis. *Id.* at 593–94. Instead,

16  determining whether the defendant had recorded "confidential" conversations without "consent"

17  would require individualized factual determinations that would produce "varying answers." *Id.* As

18  the *Torres* plaintiff had failed to put forth any other common questions, the court concluded that

19  the plaintiff had failed to carry her burden under Rule 23(a). *Id.*

20      By contrast, the Court finds *Stern v. DoCircle, Inc.*, No. 12-2005, 2014 WL 486262, at *4

21  (C.D. Cal. Jan. 29, 2014), more relevant to the instant case. In *Stern*, as in *Torres* and the instant

22  case, the defendant argued that issues of consent would require individualized inquiries that

23  defeated commonality. Rejecting the defendant's argument, the *Stern* court noted that "even

24  though numerous individual inquiries may run afoul of the Rule 23(b)(3) predominance

25  requirement, not all issues have to be common to satisfy Rule 23(a)(2)'s commonality

26  requirement." *Id.* Rather, "for purposes of Rule 23(a)(2), [e]ven a single [common] question will

27  do." *Dukes*, 131 S. Ct. at 2556 (internal quotation marks omitted). The *Stern* court then found that

28

19

United States District Court
Northern District of California

1   the questions of which party bore the burden of proof as to consent and what steps the defendant

2   had taken to comply with the Telephone Consumer Protection Act ("TCPA") were "factual and

3   legal issues common to all class members," and the plaintiffs had therefore satisfied the

4   commonality requirement. *Stern*, 2014 WL 486262, at *4. Both the *Stern* and *Torres* courts

5   acknowledged that the plaintiffs' claims would require individualized factual determinations with

6   respect to consent. In *Torres*, however, the plaintiff failed to put forth even a single common

7   question of law or fact that was separate from the consent issue—a failure that distinguishes

8   *Torres* from *Stern* and the instant case.

9          Yahoo also contends that the common questions Plaintiffs have identified are not "central

10  questions" that would "resolve this case in one fell swoop." Opp. at 10. However, Yahoo cites no

11  authority for the proposition that the "common question" required under Rule 23(a) must resolve

12  an entire action. To the contrary, in *Dukes*, the United States Supreme Court held that a "common

13  contention" was one which would "resolve *an* issue," not *all* issues. *Dukes*, 131 S. Ct. at 2541

14  (emphasis added). Moreover, "[w]here the circumstances of each particular class member vary but

15  retain a common core of factual or legal issues with the rest of the class, commonality exists."

16  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks and

17  citation omitted). Here, the Court finds that there is a "common core of factual or legal issues,"

18  that are material to Plaintiffs' class claims. *Id.* This is sufficient as a matter of law.

19         In sum, the Court finds that Plaintiffs have satisfied the commonality requirement under

20  Rule 23(a).

21      **3.  Typicality**

22         Under Rule 23(a)(3) the representative party must have claims or defenses that are "typical

23  of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

24  class member's claim arises from the same course of events, and each class member makes similar

25  legal arguments to prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124 (citations

26  omitted). This requirement is "permissive and requires only that the representative's claims are

27  reasonably co-extensive with those of the absent class members; they need not be substantially

28

20

1   identical." *Hanlon*, 150 F.3d at 1020. Reasonably coextensive claims with absent class members

2   will satisfy the typicality requirement, but the class must be limited to "those fairly encompassed

3   by the named plaintiff's claims." *Dukes* at 131 S. Ct. at 2550. "[C]lass certification is

4   inappropriate where a putative class representative is subject to unique defenses which threaten to

5   become the focus of the litigation." *Hanlon*, 976 F.2d at 508 (citations omitted). "The purpose of

6   the typicality requirement is to assure that the interest of the named representative aligns with the

7   interests of the class." *Id.*

8   As a threshold matter, the Court notes that typicality under Rule 23(a) is a permissive

9   requirement and requires only that Plaintiffs' claims be "reasonably co-extensive," not

10  "substantially identical" with the proposed class members' claims. *Hanlon*, 150 F.3d at 1020. In

11  the instant case, Plaintiffs' claims and those of the proposed class members arise out of Yahoo's

12  interception, scanning, and use of each class member's emails to and from Yahoo Mail

13  subscribers. Plaintiffs allege, and Yahoo does not dispute, that each class member is subject to the

14  same scanning practices by Yahoo. As such, Plaintiffs and the proposed class members "have the

15  same or similar injury, . . . the action is based on conduct which is not unique to the named

16  plaintiffs, and . . . other class members have been injured by the same course of conduct." *Hanlon*,

17  976 F.2d at 508.

18  Yahoo contends that Plaintiffs' claims are atypical because (1) Plaintiffs have continued to

19  email Yahoo Mail subscribers after discovering Yahoo's scanning practices; (2) Plaintiffs have

20  consented to scanning by other email services; and (3) Plaintiffs have differing views regarding

21  virus and malware detection and scanning to prevent spam emails. Opp. at 11–12. As discussed

22  below, the Court concludes that Plaintiffs have satisfied the typicality requirement.

23  As to Yahoo's first argument, the Court finds that Yahoo has failed to explain why

24  Plaintiffs' decisions to continue to email Yahoo Mail subscribers would render Plaintiffs' claims

25  atypical of the proposed class. Yahoo again relies on its argument that Plaintiffs have consented to

26  Yahoo's scanning, interception, and use of Plaintiffs' emails by continuing to email Yahoo Mail

27  subscribers. According to Yahoo, this is a defense that is "peculiar to" Plaintiffs, as Yahoo argues

28

United States District Court
Northern District of California

21

United States District Court
Northern District of California

that Plaintiffs accordingly lack standing to pursue injunctive relief. *See* Opp. at 11. To the extent that Plaintiffs' continued emailing of Yahoo Mail subscribers arguably constitutes consent to Yahoo's conduct, the Court notes that this defense is unlikely to be unique. Yahoo identifies no evidentiary support for its assertion that Plaintiffs' decisions to continue to email Yahoo Mail subscribers even after discovering Yahoo's scanning practices is atypical of the proposed class. This is unsurprising in light of Yahoo's claim that class members have consented to Yahoo's practices because class members would have seen media coverage and Yahoo's own disclosures regarding Yahoo's scanning practices. Yahoo explicitly argues that "members of the putative class who read certain media articles and then continued to send email to Yahoo users may have also impliedly consented to such disclosure." Opp. at 5. Yahoo cannot plausibly argue that class members have consented to its practices while simultaneously arguing that Plaintiffs' consent renders Plaintiffs atypical. Furthermore, the Court has rejected Yahoo's arguments with respect to Plaintiffs' standing to seek injunctive relief. As such, the Court concludes that Plaintiffs are not subject to a unique defense that defeats typicality.

Yahoo also relies on a Seventh Circuit case for the proposition that "even an arguable defense peculiar to the named plaintiff . . . may destroy the required typicality of the class." *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980). As discussed above, the Court is not persuaded that Plaintiffs' continued emailing of Yahoo Mail subscribers after discovering the nature of Yahoo's scanning practices is "peculiar" or atypical. Moreover, even if this were the case, the Court notes that the Seventh Circuit has subsequently clarified that "[t]ypicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 297 (N.D. Ill. 2007) (discussing *J.H. Cohn* and *Wagner* and concluding that "the presence of a unique defense against [plaintiff] does not destroy typicality"). Even assuming Yahoo was correct and Plaintiffs might be subject to a unique defense, the Court is not persuaded that this alone defeats Plaintiffs' showing of typicality.

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    Yahoo also argues that Plaintiffs' claims are "atypical of each other's." More specifically,

2    Yahoo points to Plaintiff Baker and Plaintiff Adams' consent to scanning by third party email

3    providers such as Google, and Plaintiff Nobles' statement that she chooses to email her family

4    members at their Yahoo Mail accounts despite having other means to communicate with them.

5    Again, the Court finds that Yahoo has failed to explain why these particular facts would render

6    Plaintiffs' claims atypical of those of the proposed class. To the extent Yahoo appears to be

7    arguing that these facts show that Plaintiffs Baker, Adams, and Nobles have consented to Yahoo's

8    scanning, interception, and use of Plaintiffs' emails, the Court concludes for the reasons discussed

9    above that any consent defense will likely be typical of the proposed class. If these individual facts

10   are not relevant to Plaintiffs' claims or Yahoo's defenses, then these additional facts are ultimately

11   irrelevant to the typicality analysis. *See Rodriguez*, 591 F.3d at 1124.

12        Furthermore, the Court finds Yahoo's arguments regarding spam filtering and scanning for

13   viruses and malware to be immaterial to the typicality analysis. Yahoo takes certain statements

14   made by Plaintiffs as evidence that many class members may believe that scanning for spam,

15   viruses, and malware is desirable and beneficial. However, as Plaintiffs note, that belief does not

16   necessarily mean that class members would want the contents of their emails scanned, extracted,

17   stored, and then used for commercial purposes such as targeted advertising. As discussed above,

18   "Rule 23(a)(3) focuses on "the defendants' conduct and plaintiff's legal theory." *Sisley v. Sprint*

19   *Commc'ns Co., L.P.*, 284 F. App'x 463, 468 (9th Cir. 2008). That Plaintiffs might have individual

20   subjective beliefs about the value of certain types of filtering, or have consented to scanning by

21   *other* email providers, does not vitiate the nature of Yahoo's alleged conduct or Plaintiffs' basic

22   legal claims under the SCA or CIPA.

23        Yahoo also notes in passing that Plaintiffs' claims are atypical because Plaintiffs have not

24   proven that Yahoo shared content from their emails with third parties in violation of the SCA.

25   Yahoo fails to explain why this is relevant to the typicality analysis. As an initial matter, Plaintiffs

26   are not obligated to prove the merits of their claims at the class certification stage. *See Amgen*, 133

27   S. Ct. at 1210 ("A plaintiff seeking class certification is not required to prove the elements of his

28

United States District Court
Northern District of California

1    [or her] claim at the certification stage . . . ."); *see also In re High-Tech Empl. Antitrust Litig.*, 985

2    F. Supp. 2d 1167, 1187 (N.D. Cal. 2013) (Plaintiffs are not required to "prove elements of their

3    substantive case at the class certification stage"). Moreover, Plaintiffs contend that Yahoo has, in

4    fact, shared extracted information from emails with third parties based on disclosures on Yahoo's

5    FAQ page. Yahoo's FAQ page states "4. Does Yahoo Mail automatically share my messages with

6    anyone else? Your messages are shared only with [t]he people you want. Yahoo may

7    anonymously share specific objects from a message with a 3rd party to provide a more relevant

8    experience within your mail." Girard Decl., Exh. 24. Consequently, the Court finds Yahoo's

9    argument unpersuasive.

10          In sum, the Court finds that Plaintiffs' claims are typical of the proposed class.

11       **4.  Adequacy**

12          In the Ninth Circuit, to test the adequacy of a class representative, courts ask two

13   questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

14   class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously

15   on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*,

16   150 F.3d at 1020).

17          The Court finds Plaintiffs to be adequate class representatives. Plaintiffs and the proposed

18   class share the same claims and interest in obtaining relief, and Plaintiffs are vigorously pursuing

19   relief on behalf of the proposed class. The Court also finds that Plaintiffs' counsel has experience

20   in prosecuting consumer fraud and data privacy class actions. *See* ECF Nos. 60-44, 61 (exhibits of

21   class counsel detailing experience prosecuting data privacy and consumer protection class

22   actions).

23          In opposition, Yahoo argues that Plaintiffs are inadequate class representatives because (1)

24   Plaintiffs have continued to email Yahoo Mail subscribers; (2) Plaintiffs have abandoned claims

25   for monetary relief; and (3) class members would oppose the relief sought. Opp. at 12–14.

26   Yahoo's first argument is nearly identical to Yahoo's arguments with respect to the typicality of

27   Plaintiffs' claims. Yahoo does not explain why Plaintiffs' alleged subsequent consent to Yahoo's

28
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   conduct would render Plaintiffs inadequate class representatives. As discussed above, any

2   defenses with respect to consent are likely to be typical of the class. The existence of this potential

3   defense does not create a conflict of interest between Plaintiffs and proposed class members or

4   otherwise affect Plaintiffs' ability to vigorously prosecute this action. *See Staton*, 327 F.3d at 957.

5       The Court further concludes that Plaintiffs' decision to only pursue certification of an

6   injunctive relief class under Rule 23(b)(2) does not affect Plaintiffs' adequacy to serve as class

7   representatives. Here, Yahoo takes issue with Plaintiffs' decision to pursue class certification only

8   under Rule 23(b)(2) and not also under Rule 23(b)(3). Yahoo appears to be arguing that Plaintiffs

9   should have also sought certification of a damages class under Rule 23(b)(3). As Yahoo is well

10   aware, however, the Court found in *Gmail* that issues of implied consent defeated predominance

11   as required under Rule 23(b)(3), and the *Gmail* plaintiffs were unsuccessful in certifying a Rule

12   23(b)(3) class. *See* 2014 WL 1102660, at *21. Indeed, Yahoo relies heavily on the "individualized

13   factual inquiry" language that this Court used in *Gmail* in arguing that Plaintiffs cannot satisfy the

14   commonality requirement of Rule 23(a). In light of the Court's decision in *Gmail*, Plaintiffs have

15   made the strategic decision to seek certification only under Rule 23(b)(2), which does not require

16   common questions to predominate over individual issues. As Plaintiffs note, Plaintiffs are not

17   required to pursue claims or remedies that would preclude class certification. *See, e.g.*, *Kennedy v.*

18   *Jackson Nat'l Life Ins. Co*, No. 10-07-0371 CW, 2010 WL 2524360, at *5 (N.D. Cal. June 23,

19   2010) ("Defendant cannot claim that Plaintiff is inadequate because she declines to assert a theory

20   that could unravel the putative class.").

21       Yahoo further argues that Plaintiffs' decision to forgo moving to certify a damages class

22   under Rule 23(b)(3) "impermissibly prioritizes potential success in the litigation over the rights of

23   individual class members to pursue monetary relief." Opp. at 13. Yahoo appears to be arguing that

24   certifying a Rule 23(b)(2) class in the instant case would somehow prevent or preclude proposed

25   class members from bringing individual claims for statutory damages. *See id.* As Yahoo notes,

26   CIPA provides for statutory damages of at least $5,000, Cal. Penal Code § 637.2(a), and the SCA

27   provides for statutory damages of at least $1,000, 18 U.S.C. § 2707(c). *See* Opp. at 13 n.5.

28
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    However, Yahoo cites little authority for the proposition that certification of a Rule 23(b)(2) class

2    would preclude individual claims for damages,[7] and the Court concludes that certification of a

3    Rule 23(b)(2) class would not necessarily preclude such claims. In the Ninth Circuit, "the general

4    rule is that a class action suit seeking only declaratory and injunctive relief does not bar

5    subsequent individual damages claims by class members, even if based on the same events." *Hiser*

6    *v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996). Indeed, "every federal court of appeals that has

7    considered the question has held that a class action seeking only declaratory or injunctive relief

8    does not bar subsequent individual suits for damages." *Id.* (quoting *In re Jackson Lockdown/MCO*

9    *Cases*, 568 F. Supp. 869, 892 (E.D. Mich. 1983)). As another court in this District concluded, the

10   United States Supreme Court's decision in *Dukes* only "confirms what common sense suggests: a

11   Rule 23(b)(2) judgment, with its one-size-fits-all approach and its limited procedural protections,

12   will not preclude later claims for individualized relief." *In re TFT-LCD (Flat Panel) Antitrust*

13   *Litig.*, No. 7-1827 SI, 2012 WL 273883, at *3 (N.D. Cal. Jan. 30, 2012).

14        Yahoo also contends that class members would "not want or benefit from" the injunctive

15   relief Plaintiffs seek. More specifically, Yahoo argues that "Plaintiffs thus in essence seek to shut

16   down scanning," which would result in Yahoo being unable to prevent the delivery of spam emails

17   and malware. *See* Opp. at 14. Plaintiffs contend that they challenge only the method that Yahoo

18   uses to filter for spam. Reply at 5. Plaintiffs also dispute whether Yahoo's particular scanning

19   methods, which allegedly involve "extracting, learning the meaning of, and using the content of

20   non-subscribers' emails," are actually necessary to filter for spam or malware. Plaintiffs contend

21   that Yahoo "can and does provide email services" to some Yahoo Mail subscribers without

22   intercepting, scanning, and analyzing emails "for commercial purposes." According to Plaintiffs,

23

24   [7] Yahoo cites *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 558 (C.D. Cal. 2012), but
     that case is inapposite. The *Cholakyan* court concluded that none of the remedies proposed by the
25   plaintiff would result in classwide relief, as required under Rule 23(b)(2). *Id.* at 559. It did not
     discuss whether certification of an injunctive relief class would preclude individual damages
26   claims. Moreover, the Court agrees with the *In re TFT-LCD* court's conclusion that cases like
     *Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271, 274 (C.D. Cal. 2002),
27   the only other case Yahoo cites, involved putative classes seeking monetary damages and not
     injunctive relief. *See In re TFT-LCD*, 2012 WL 273883, at *3 n.5 (discussing cases).

28
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Yahoo "cannot use email to target ads to users" without consent from both the sender and receiver in the ▇▇▇▇▇▇▇▇▇. Yahoo therefore does not provide targeted advertising to Yahoo Mail subscribers in the ▇▇▇▇▇▇▇▇▇. Girard Decl., Exh. 20 (YAH00009864–65). Ultimately, these disputes are not particularly relevant here. "A difference of opinion about the propriety of the specific relief sought in a class action among potential class members is not sufficient to defeat certification." *Californians for Disability Rights*, 249 F.R.D. at 348; *see also* 1 Newberg on Class Actions § 3:30 ("As a general rule, disapproval of the action by some class members should not be sufficient to preclude a class action on the ground of inadequate representation."). Here, the Court finds that the relief that Plaintiffs seek does not conflict with the interests of proposed class members.

The Court therefore concludes that Plaintiffs are adequate class representatives.

**5.  Ascertainability**

The parties dispute whether and to what degree the ascertainability requirement applies to proposed classes under Rule 23(b)(2). As the parties recognize, courts addressing motions to certify classes under Rule 23(b)(3) have held that "apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) (motion to certify class under Rule 23(b)(3)). Under this line of cases, a class is ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class." *See Wolph v. Acer Am. Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23, 2012) (certifying a Rule 23(b)(3) class where "the identity and contact information for a significant portion of these individuals can be obtained from the warranty registration information and through Acer's customer service databases").

Plaintiffs contend that the ascertainability requirement does not apply to Rule 23(b)(2) classes, and that even if it did apply, Plaintiffs' proposed class definition satisfies the ascertainability requirement. As a threshold matter, the Court notes that the Ninth Circuit has not

27

United States District Court
Northern District of California

United States District Court
Northern District of California

expressly addressed the issue of whether the judicially implied ascertainability requirement applies when a plaintiff moves to certify a class only under Rule 23(b)(2). However, every other circuit to address the issue has concluded that the ascertainability requirement does not apply to Rule 23(b)(2) classes. *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of [sic] other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . ."); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[M]any courts have found Rule 23(b)(2) well suited for cases where the composition of the class is not readily ascertainable . . . ."); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1976) (no ascertainability requirement for Rule 23(b)(2) classes).

In the absence of Ninth Circuit authority to the contrary, the Court finds the Third Circuit's decision in *Shelton* to be instructive. As the *Shelton* court explained, the ascertainability requirement "requires something more than a class capable of clear definition by a court; it requires that the class's members be identifiable." 775 F.3d at 560. This additional specificity is necessary in Rule 23(b)(3) classes, as Congress has imposed "additional 'procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members.'" *Shelton*, 775 F.3d at 560 (quoting *Comcast*, 133 S. Ct. at 1432). More specifically, in Rule 23(b)(3) classes, potential class members must be given the opportunity to opt out and the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In order to satisfy these procedural safeguards, the Court must be able to ascertain, i.e., identify potential class members.

Rule 23(b)(2) classes, in contrast, serve a different purpose than Rule 23(b)(3) classes and, consequently, do not impose the same procedural safeguards. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2257 (internal quotation marks omitted). As the focus of a

28

Rule 23(b)(2) class is "on the nature of the remedy sought . . . the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action." *Shelton*, 775 F.3d at 561. Accordingly, Rule 23(b)(2) does not impose the same procedural safeguards as Rule 23(b)(3). *See Dukes*, 131 S. Ct. at 2558–59 ("The procedural protections attending the the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*."). As the Third Circuit explained, "the enforcement of the remedy usually does not require individual identification of class members in (b)(2) class actions: 'If relief is granted . . . the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance . . . .'" *Shelton*, 775 F.3d at 561 (quoting *Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974)). Thus as a matter of practical application, the ascertainability requirement serves little purpose in Rule 23(b)(2) classes, as there will generally be no need to identify individual class members.

The Court therefore concludes that the ascertainability requirement does not apply to Rule 23(b)(2) actions.[8] This does not obviate the basic requirement that Plaintiffs provide a clear class definition under Rule 23(c)(1)(B). *See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ."). In the instant case, Plaintiffs propose a class of "all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2,

---

[8] The Court also notes that to the extent an ascertainability requirement might apply to Rule 23(b)(2), Plaintiffs' proposed class definition would satisfy it. "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, No. 13-00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). As Plaintiffs note, class member self-identification may be more reliable in the instant case than in others, as potential class members can check their emails to see whether they sent or received emails from Yahoo Mail subscribers within the class period. To the extent Yahoo objects to the class definition's inclusion of future class members, the Court finds Yahoo's objection unpersuasive. *See Williams v. City of Antioch*, No. 08-2301, 2010 WL 3632197, at *6 (N.D. Cal. Sept. 2, 2010) ("[It] is well-settled that a class may be defined to include individuals who may not become part of the class until later." (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010))).

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future." Mot. at 1. Yahoo does not argue that this proposed definition is so unclear as to fail to satisfy Rule 23(c)(1)(B), and the Court concludes that Plaintiffs' proposed class definition is sufficiently clear.

In addition to its ascertainability arguments, Yahoo also asserts that the class definition is overbroad because CIPA has a one year statute of limitations. *See* Opp. at 15 (citing *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (Ct. App. 1987)). As Plaintiffs note, however, claims under the SCA are subject to a two year statute of limitations. For the reasons discussed in Part D, the Court certifies a nationwide class as to Plaintiffs' SCA claim and a California-only subclass as to Plaintiffs' CIPA claim. As the first class action complaint related to this consolidated action was filed on October 2, 2013,[9] the class period as to the SCA claim properly commences on October 2, 2011, and the class period as to the CIPA claim properly commences on October 2, 2012. *See Kevranian v. Yahoo!*, 13-cv-04547-LHK, ECF No. 1.

In sum, the Court finds that Plaintiffs have satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

## C. Rule 23(b)(2)

In addition to the Rule 23(a) requirements, Plaintiffs also bear the burden of showing that the proposed class satisfies the requirements of Rule 23(b)(2). An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, "[i]t is sufficient if class members complain

---

[9] The Court granted the *Kevranian* plaintiff's stipulation to dismiss his action without prejudice on January 8, 2014. *See* Case No. 13-cv-04547-LHK, ECF No. 36. The Court had previously related *Kevranian* to the instant cases. *See* ECF No. 27. The Court granted Plaintiffs' motion to consolidate the remaining individual cases on January 22, 2014. *See* Case No. 13-cv-4980-LHK, ECF No. 26.

30

United States District Court
Northern District of California

of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters*, 145 F.3d at 1047.

Here, the Court concludes that the proposed class satisfies the requirements of Rule 23(b)(2). Plaintiffs contend that all emails sent from and to Yahoo Mail subscribers are subject to the same interception and scanning processes. Girard Decl., Ex. 1 (Doron Depo.) at 22:4–10, 38:19–40:23, 47:14–49:1; Exh. 3, ¶ 1.c. As such, Plaintiffs challenge a "pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. Moreover, Plaintiffs seek only injunctive and declaratory relief, which is appropriate under Rule 23(b)(2). *See id.*; *see also Ries*, 287 F.R.D. at 540–41 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011)).

Yahoo contends that Plaintiffs' proposed class lacks cohesiveness because consent to Yahoo's practices cannot be determined on a class basis. Opp. at 19. More specifically, Yahoo argues that "[t]he need for individualized inquiries" would make it too difficult to determine whether any class member "has a claim and has suffered a common injury." *Id.* This argument presumes, however, that individual class members must prove their claims or individualized injuries in order for Rule 23(b)(2) certification to be appropriate. As the Ninth Circuit explained in *Walters*, "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." 145 F.3d at 1047 (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed.) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).")). In contrast to Rule 23(b)(3) classes, the focus is not on the claims of individual class members, but rather whether Yahoo has engaged in a "common policy." *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Walter*s, 145 F.3d at 1047.

Yahoo's focus on whether a potential class member has consented to Yahoo's interception and use of his or her emails loses sight of the purpose of Rule 23(b)(2). It may be the case that some class members, i.e., individuals who sent or received emails from Yahoo Mail subscribers

United States District Court
Northern District of California

31

1    during the class period, did so knowing that Yahoo would intercept, scan, and disclose the

2    contents of their emails to third parties. However, "[t]he rule does not require us to examine the

3    viability or bases of class members' claims for declaratory and injunctive relief, but only to look at

4    whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*,

5    591 F.3d at 1125; *see also Zinser*, 253 F.3d at 1195. More importantly, under Rule 23(b)(2), a

6    class may be certified even where "some class members may have suffered no injury or different

7    injuries from the challenged practice." *Id.* (citing *Walters*, 145 F.3d at 1047; *Gibson v. Local 40,*

8    *Supercargoes & Checkers*, 543 F.2d 1259, 1264 (9th Cir. 1976)).

9            The Court finds *Rodriguez* to be illustrative. In *Rodriguez*, a class of individuals detained

10   without bond hearings pending immigration proceedings moved to certify a class under Rule

11   23(b)(2). 591 F.3d at 1111. Specifically, the plaintiffs sought injunctive relief providing individual

12   bond hearings to all class members, in which the government would bear the burden of proof. *Id.*

13   The defendants argued that certification under Rule 23(b)(2) was inappropriate because some class

14   members might not be entitled to bond hearings under mandatory detention rules and other class

15   members were subject to regulations governing the burden of proof. *Id.* at 1125. As such, the

16   individual class members would have different bases for relief, be entitled to different levels of

17   relief, and potentially be ineligible for relief altogether. *Id.* In rejecting the defendants' argument,

18   the Ninth Circuit made clear that Rule 23(b)(2) certification was appropriate even though some

19   class members might not be entitled to any relief and the legally detained class members might not

20   have actually suffered a cognizable injury. *See id.* at 1125–26. As the Ninth Circuit explained, the

21   defendants' arguments "miss[ed] the point of Rule 23(b)(2)." *Id.* at 1125. Rule 23(b)(2), "does not

22   require us to examine the viability or bases of class members' claims for declaratory and

23   injunctive relief, but only to look at whether class members seek uniform relief from a practice

24   applicable to all of them." *Id.* Focusing on the requested relief from a uniform practice, the Ninth

25   Circuit concluded that certification under Rule 23(b)(2) would be appropriate.

26          Like the defendants in *Rodriguez*, Yahoo contends that certification under Rule 23(b)(2) is

27   inappropriate because some class members may not be entitled to relief or may not have suffered a

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

cognizable injury. *See id.* As in *Rodriguez*, Yahoo's arguments "miss the point of Rule 23(b)(2)." *Id.* at 1125. "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* Instead, the Court must examine whether Plaintiffs "seek uniform relief from a practice applicable to" the entire class. *Id.* Yahoo may well be correct that some class members do not have viable SCA or CIPA claims because they consented to Yahoo's conduct. That does not, however, vitiate the operative fact that the proposed Rule 23(b)(2) class challenges Yahoo's uniform policy of intercepting, scanning, and using contents of emails sent to and from Yahoo Mail subscribers by non-Yahoo Mail subscribers. *See id.* at 1126. As in *Rodriguez*, Plaintiffs "complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. This is sufficient to satisfy Rule 23(b)(2).

In opposition, Yahoo cites *Lemon v. International Union of Operating Engineers*, 216 F.3d 577, 580 (7th Cir. 2000), but that case addressed the appropriateness of certifying a Rule 23(b)(2) class where the plaintiffs sought money damages in addition to injunctive and declaratory relief. In *Lemon*, the plaintiffs alleged discrimination on the basis of race and gender under Title VII of the Civil Rights Act. *Id.* at 579. The district court certified a Rule 23(b)(2) class, notwithstanding the fact that plaintiffs also sought compensatory and punitive damages. *Id.* at 579–80. On appeal, the Seventh Circuit concluded that the individualized inquiries required to determine each class members' entitlement to monetary damages were incompatible with Rule 23(b)(2)'s requirements that the "interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Id.* at 580. The court's analysis was specific to the damages issue: "A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim." *Id.* Here, in contrast, Plaintiffs do not seek monetary damages that will require "judicial inquiry into the particularized merits of each

United States District Court
Northern District of California

1  individual plaintiff's claim." *Id. Lemon* is therefore of little relevance here.

2       Yahoo also argues that Plaintiffs' requested injunctive relief is not "indivisible" because

3  Yahoo would have to determine consent on an individual basis. *See* Opp. at 20. Plaintiffs seek

4  injunctive relief "that requires Yahoo to cease scanning the emails of non-Yahoo Mail subscribers

5  without their consent, permanently delete all data it has collected and stored from non-subscribers'

6  email without their consent, and identify all individuals and entities with which [Yahoo] has

7  shared or sold information or data [Yahoo] collected from non-subscribers' emails." Mot. at 1.

8  According to Yahoo, there is "no 'single injunction' that would provide relief to class members"

9  because Yahoo would have to "on an e-mail by email basis, determine whether" class members

10  consented. Opp. at 20.

11       However, the Court concludes that Yahoo misunderstands the "indivisibility" requirement

12  under Rule 23(b)(2). The "indivisibility" requirement precludes certification where "each

13  individual class member would be entitled to a *different* injunction or declaratory judgment against

14  the defendant." *Dukes*, 131 S. Ct. at 2557. Here, while Yahoo appears to be contesting the

15  feasibility or ease of complying with an injunction requiring Yahoo to obtain a class member's

16  consent prior to scanning the class member's emails, this does not go to the indivisible nature of

17  the relief sought.[10] As discussed above, in *Rodriguez*, not all of the proposed class members would

18  have been entitled to an individual bond hearing with the burden of proof on the government, as

19  some class members were subject to mandatory detention or subject to a different burden of proof.

---

[10] The Court finds Yahoo's description of the requested injunctive relief as "setting back email services for decades" to be overly dramatic in light of the evidence in this case. Plaintiffs contest the accuracy of Yahoo's characterization of the feasibility of determining consent. Relying on testimony from Yahoo's engineering director, Plaintiffs argue that ███████ would ostensibly require a non-Yahoo Mail subscriber to consent to Yahoo's scanning and interception prior to delivering the email to a Yahoo Mail subscriber. Plaintiffs further contend that ███████ Reply at 11 (citing Straite Decl., Exh. 1 (Shue Depo.), at 105:5–25, 121:19–123:12). Furthermore, Plaintiffs argue that Yahoo "can and does provide email services" to some Yahoo Mail subscribers without intercepting, scanning, and analyzing emails "for commercial purposes." According to Plaintiffs, Yahoo "cannot use email to target ads to users" without consent from both the sender and receiver in the ███████. Yahoo therefore does not provide targeted advertising to Yahoo Mail subscribers in the ███████. Girard Decl., Exh. 20 (YAH00009864–65).

34

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

591 F.3d at 1125–26. As the Ninth Circuit concluded, however, the mere fact that a class member's entitlement to relief might differ from individual to individual did not render the requested injunctive relief improperly divisible. *Id.* As a practical matter, implementing the requested injunctive relief in *Rodriguez* would have inevitably involved individualized determinations of whether a class member was entitled to a bond hearing where the government bore the burden of proof. Ultimately, the fact that the plaintiffs sought "relief from a single practice," was sufficient to satisfy the "indivisibility" requirement. *Id.* at 1225–26. Likewise, Yahoo may have to, as a practical matter, adjust its scanning practices on an individual basis. That does not, however, change the fact that Plaintiffs seek uniform relief from a common policy that Yahoo applies to all class members.

Furthermore, the fact that some class members might not want Yahoo to cease its interception and scanning of non-Yahoo Mail subscribers' emails does not render Plaintiffs' Rule 23(b)(2) class improper. The cases on which Yahoo relies involved situations where class members were no longer subject to the defendant's alleged wrongful conduct and would therefore no longer benefit from the requested relief. *See* Opp. at 21. Consequently, certification under Rule 23(b)(2) was inappropriate. For instance, in *Schulken v. Washington Mutual Bank*, No. 09-2708, 2012 WL 28099, at *7 (N.D. Cal. Jan. 5, 2012), this Court concluded that class members who "*no longer have* [lines of credit] with Chase" would not need the requested relief because "they are not currently in a position to benefit from a change in Chase's policies and practices." Here, in contrast, Yahoo does not argue that class members are no longer subject to its interception and scanning practices and would therefore not benefit from the requested relief, but instead asserts that some class members might not want the requested relief.[11] As such, the cases Yahoo cites are not applicable to the instant case. Moreover, the Court notes that Yahoo has failed to put forth any

---

[11] Yahoo also takes issue with the specific injunctive relief that Plaintiffs request, including the deletion of all data that Yahoo has stored from non-subscribers' emails. *See* Opp. at 21 n.11. At the class certification stage, however, Yahoo's "concern about the possible scope of an injunction if Plaintiffs are successful on the merits is premature." *See, e.g.*, *McMillion v. Hawaii*, 261 F.R.D. 536, 546 (D. Haw. 2009).

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    evidence of any proposed class member's opposition to the requested relief. Further, to the extent

2    any such opposition might exist, it would not preclude certification under Rule 23(b)(2). *See*

3    *Walters*, 145 F.3d at 1047 (citing 7A Wright, Miller & Kane, Federal Practice & Procedure § 1775

4    (2d ed.) ("All the class members need not be aggrieved by or desire to challenge the defendant's

5    conduct in order for some of them to seek relief under Rule 23(b)(2).")).

6         The Court therefore concludes that certification of an injunctive and declaratory relief class

7    under Rule 23(b)(2) is appropriate.

8    **D. Choice of law**

9         While certification of a class might be appropriate under Rule 23(b)(2), the Court must

10   also determine whether application of California law to a nationwide class is appropriate as to

11   Plaintiffs' CIPA claim.[12]

12        A court must ensure that the certification of a nationwide class under the laws of a single

13   state comports with due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). In a

14   CAFA diversity action, this Court applies California's choice of law rules. *See Klaxon Co. v.*

15   *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bruno v. Quten Research Institute, LLC*, 280

16   F.R.D. 524, 538 n.7 (C.D. Cal. 2011). "Under California's choice of law rules, the class action

17   proponent bears the initial burden to show that California has significant contact or significant

18   aggregation of contacts to the claims of each class member." *Mazza*, 666 F.3d at 589. "Once the

19   class action proponent makes this showing, the burden shifts to the other side to demonstrate that

20   foreign law, rather than California law, should apply to class claims." *Id.* at 590.

21        "[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and

22   is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state

23   interests.'" *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013)

24   _____

25   [12] The Court notes that in *Mazza* the defendant argued the choice of law issue in the context of
     Rule 23(b)(3)'s predominance requirement. 666 F.3d at 589 ("Honda contends that common

26   issues of law do not predominate because California's consumer protection statutes may not be
     applied to a nationwide class with members in 44 jurisdictions."). The parties do not dispute that

27   this Court must apply choice of law principles to the proposed class even though Plaintiffs do not
     seek certification under Rule 23(b)(3).

28                                                      36

United States District Court
Northern District of California

(citations omitted). Yahoo does not dispute that California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member in this case. The Court agrees, as Yahoo's corporate headquarters are in California, the vast majority of Yahoo's executive decision makers responsible for Yahoo Mail are located in California, and the processes used to intercept, scan, and store email are developed and directed by Yahoo employees in California. Reply at 13. Accordingly, the Court finds that Plaintiffs have met their initial burden. "California has a constitutionally significant aggregation of contacts to the claims of each putative class member in this case," and application of California law here poses no constitutional concerns. *Mazza*, 666 F.3d at 591; *see also Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987) (concluding application of California law was constitutionally permissible where defendant's principal offices were in California and the allegedly fraudulent misrepresentations emanated from California); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (location of the defendant's headquarters is also a relevant factor in significant contact or aggregation of contacts analyses).

Because the Court is satisfied that California has sufficient contacts with the proposed class claims, the burden is on Yahoo to show "that foreign law, rather than California law, should apply." *Mazza*, 666 F.3d at 590. California law may be applied on a classwide basis only if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). To determine whether the interests of other states outweigh California's interest, courts administer the following three-step government interest test. The court must first determine whether the law of the other states is materially different from California law. *Mazza*, 666 F.3d at 590. Second, if there are differences, the court determines whether the other state has an interest in having its law applied. *Id.* at 591–92. Third, if another state has an interest, the court determines which state's interest would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593.

### 1.  Material Differences in State Law

The Court finds that Yahoo has met its burden on the first step of California's choice-of-

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

law analysis. Plaintiffs concede, as they must, that there are material differences between CIPA and the wiretapping statutes of the other 49 states. For example, some states expressly exclude email from their wiretapping statutes, others require only single party consent, and still others require plaintiffs to prove that they had either an objective or subjective expectation of privacy. *See* Opp. at 22; Opp. at Attachment A. These differences are material, as their application would "spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591. Moreover, there are also "material differences in the remedies given by state laws," as some states provide for injunctive relief while others do not, and the states vary as to whether damages may be recovered. *See* Opp. at 22; Opp. at Attachment A.

### 2. Other States' Interests

As for the second step, the Court finds that the other 49 states each have an interest in applying their own law. As the Ninth Circuit explained in *Mazza*, "each foreign state has an interest in applying its law to transactions within its borders," which means that "if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce." 666 F.3d at 593. This reflects the "principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Id*. at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). Here, the purported nationwide class consists of members from 50 states, as Plaintiffs allege that individuals from each of the 50 states that sent emails to and received emails from Yahoo Mail subscribers had their emails intercepted and scanned by Yahoo. Each state has "an interest in being able to delineate the appropriate standard of liability and the scope of recovery based on its understanding of the balance between the interests of individuals and corporate entities operating within its territory." *Frezza v. Google Inc.*, No. 12-237, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013).

### 3. Comparative Impairment

At the final step, where the states have conflicting policies, the Court must determine which state's interest would be more impaired if its policy was subordinated to the policy of the

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    other state. *See Mazza*, 666 F.3d at 593–94. This last step of the analysis does not permit the Court

2    to weigh the conflicting state interests to determine which conflicting state law manifests the

3    "better" or "worthier" social policy. *Id*. (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97

4    (2010)). Rather, "the Court must recognize the importance of federalism and every state's right to

5    protect its consumers and promote those businesses within its borders." *Gianino*, 846 F. Supp. 2d.

6    at 1103. Here, for the reasons stated below, the Court finds that other states' interests would be

7    most impaired by applying California law to non-Californian class members. The Court begins by

8    outlining California's interest in applying CIPA to California residents, before turning to

9    California's interest in applying CIPA to non-California residents and other states' comparative

10   interests in applying their own laws to their own residents.

11          Here, the Court agrees with Plaintiffs that California has an interest in applying its own

12   privacy laws to communications and putative class members within California, as well as to

13   entities operating within California. Yahoo is headquartered in Sunnyvale, California, the vast

14   majority of Yahoo's executive decision makers responsible for Yahoo Mail are located in

15   California, and the processes used to intercept, scan, and store email are developed and directed by

16   Yahoo employees in California. Compl. ¶ 19; Reply at 13. Moreover, Yahoo does not contest that

17   California has an interest in applying its own laws to its own residents. Having concluded that

18   California has a greater interest in applying its own laws to its own residents does not, however,

19   address whether California has a greater interest in applying its own laws to a non-resident than

20   the non-resident's home state.

21          The Court therefore turns to California's interest in applying its laws to non-residents. As

22   Plaintiffs must concede, California's interest in applying its law to nonresidents who send or

23   receive emails from Yahoo Mail subscribers in other states is more attenuated. *See Mazza*, 666

24   F.3d at 594 ("California's interest in applying its law to residents of foreign states is attenuated.")

25   (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). As a general matter, "California

26   recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the

27   wrong has the predominant interest." *Mazza*, 666 F.3d at 593 (quoting *Hernandez v. Burger*, 102

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   Cal. App. 3d 795, 802 (Ct. App. 1980)). The Court recognizes that the "place of the wrong" is less

2   clear in the instant case than it was in *Mazza*. As Plaintiffs note, the actual interception and

3   scanning of emails occurs in data centers located throughout the country and the physical location

4   of the sender or receiver does not necessarily determine whether an email will be intercepted in

5   one state or another. *See* Straite Decl., Exh. 1 ("Shue Depo.") at 125:3–10. There is no easily

6   identifiable "place of the wrong," as emails sent by a proposed class member in New York to a

7   Yahoo Mail subscriber in Texas may be intercepted in New York, Virginia, Nebraska, or any other

8   state where Yahoo maintains a data center. This is in contrast to the scenario presented in *Mazza*,

9   where the physical location where a consumer saw and relied on an allegedly misleading

10  advertisement could be easily identified. *Mazza*, 666 F.3d at 593–94 ("[T]he last events necessary

11  for liability as to the foreign class members—communication of the advertisements to the

12  claimants and their reliance thereon in purchasing vehicles—took place in the various foreign

13  states, not in California.").

14          While the "place of the wrong" analysis offers less direct guidance here, it is not entirely

15  inapplicable. The Court sees little reason why California's interest would be more greatly impaired

16  than the class member's home state's interest where a putative class member is located outside of

17  California, his or her emails are intercepted in data centers outside of California, and the Yahoo

18  Mail subscriber is located outside of California. Plaintiffs do not dispute Yahoo's claim that the

19  majority of emails sent and received by putative class members would not be routed through

20  California. Shue Decl. ¶ 2; Kaufman Decl. Exh. M at 48:1–5. Instead, Plaintiffs argue that

21  California has a strong interest in regulating conduct that "emanates from within its borders." Mot.

22  at 20. While that generic interest might be sufficient to satisfy constitutional due process

23  requirements as to Yahoo, California's specific interest in applying its privacy laws to non-

24  residents under choice-of-law rules is less clear. *See, e.g.*, *Keilholtz v. Lennox Hearth Prods. Inc.*,

25  268 F.R.D. 330, 340 (N.D. Cal. 2010) (finding the defendant's conduct "emanated from

26  California" which satisfied due process concerns before turning to the choice-of-law analysis).

27          Moreover, the Court finds further support for its conclusion that California has a

28  Case No.13-CV-04980-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    comparatively lesser interest in applying CIPA to non-residents in the statute itself. Plaintiffs fail

2    to acknowledge that in enacting CIPA, the California legislature specifically stated that its intent

3    was to "protect the right of privacy of the *people of this state*." Cal. Penal Code § 630 (emphasis

4    added); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 124–26 (2006) ("[T]he

5    objective of protecting individuals in California from the secret recording of confidential

6    communications by or at the behest of another party to the communication was one of the

7    principal purposes underlying the 1967 invasion-of-privacy enactment."). This statement of intent

8    "lie[s] at the heart of virtually all the decisions construing [CIPA]." *Ribas v. Clark*, 38 Cal. 3d

9    355, 359 (1985); *see also Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1011 (C.D. Cal.

10   2014) (discussing "California's clearly expressed interest in protecting its residents from secretly

11   recorded phone calls").

12          The cases on which Plaintiffs rely for the general proposition that California has an interest

13   in protecting non-resident plaintiffs against "conduct emanating from California" are pre-*Mazza*

14   cases discussing the applicability of California consumer protection laws, including California's

15   Unfair Competition Law ("UCL"). *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL

16   8742757 (N.D. Cal. Dec. 21, 2010) (UCL and California Cartwright Act claims); *Wolph v. Acer*

17   *Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) (UCL, California Consumers Legal Remedies Act,

18   and California False Advertising Law claims); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580

19   (C.D. Cal. 2008) (UCL and California Consumers Legal Remedies Act claims). Even assuming

20   these cases remain good law after *Mazza*, these cases do not address whether CIPA should be

21   applied extraterritorially to non-resident plaintiffs.[13] Unlike the more limited purpose of CIPA,

22

23   _____

     [13] Plaintiffs cite *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026 (N.D. Cal. 2011), in
24   support of their argument that CIPA should apply to non-resident plaintiffs, but that case is
     inapposite. In *Valentine*, the court concluded that non-resident plaintiffs had standing to bring
25   claims under CIPA against a resident defendant where the intercepted communications were
     routed to the defendant's California headquarters for analysis. *Id.* at 1024, 1026. The *Valentine*
26   court did not address whether CIPA should apply to a nationwide class where there are material
     conflicts of law and the intercepted communications may never pass through California.
27

28
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

California's UCL serves the broader purposes of protecting "the Public . . . from fraud and deceit," and preserving "fair business competition." *Jonczyk v. First Nat'l Capital Corp.*, No. 13-959, 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 110 (1972), and *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Accordingly, California "has [an] interest in applying the UCL to the activities of California businesses, regardless of whether injuries resulting from those activities are experienced by a California resident." *Jonczyk*, 2014 WL 1689281, at *4. It is less evident how much interest, if any, California has to applying CIPA to protect non-residents when the stated purpose of the law is to protect the privacy rights of Californians.

Consequently, the Court concludes that for proposed class members who are not California residents, California has less interest in applying CIPA in the first instance. Accordingly, California's lesser interest in applying CIPA to non-residents would not be significantly impaired by applying the laws of other states. *See Jonczyk*, 2014 WL 1689281, at *4 ("Because Plaintiff is not a California resident, California's interest in applying the CIPA will not be significantly impaired if Missouri law is applied in this action.").

The Court now turns to the comparative interest that the other 49 states have in applying their own laws to their own residents. Here, the Court finds that the home states of non-California class members have a significant interest in applying their own wiretapping laws to their residents. The 50 states' variations in degrees of protection, requirements for consent, and available remedies reflect the states' "valid interest in shielding out-of-state businesses from what the state may consider to be excessive litigation," because "[i]n our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state." *Mazza*, 666 F.3d at 592–93. The individual states also have valid interests in balancing the privacy interests of their residents with free speech considerations. *Cf. People v. Clark*, 6 N.E. 3d 154 (Ill. 2014) (balancing "governmental interest" in "protecting individuals from the surreptitious monitoring of their conversations," with First Amendment free speech

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

considerations).

Plaintiffs further argue that "class members' home states do not have an interest in depriving their residents of greater privacy protections available" under California law. *See* Mot. at 20. However, the choice-of-law analysis does not permit the Court to weigh the conflicting state interests to determine which conflicting state law manifests the "better" or "worthier" social policy. *Mazza*, 666 F.3d at 593–94 (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97 (2010)). The Court may not second guess the decisions of other states that choose to strike a different balance in deciding how to best protect the privacy rights of their residents while balancing the desire to attract businesses that provide valuable services to their residents. *See Gianino*, 846 F. Supp. 2d. at 1103 ("[T]he Court must recognize the importance of federalism and every state's right to protect its consumers and promote those businesses within its borders.").

In sum, the Court concludes that for non-California class members, other states' interests would be more impaired by applying California law than would California's interests by applying other states' laws. Certification of the nationwide class under California law therefore would be improper. Each nonresident class member's state law claims should be governed by and decided under the wiretapping laws of the state in which the class member resides. Because adjudication of the state law claims will require application of the laws of 50 states, a nationwide class would not satisfy the cohesiveness requirement under Rule 23(b)(2). Significantly different legal issues will arise out of the claims of class members from the various states, and these different legal issues eclipse any common issues of law that exist.

Plaintiffs request, in the alternative, that the Court certify a California-only subclass as to their CIPA claim. *See* Mot. at 22; Reply at 14. Plaintiffs note that Plaintiff Pincus and Plaintiff Abrams are California residents and can adequately represent the class. *See* Reply at 14. As the Court has found that the Rule 23(a) and Rule 23(b)(2) requirements would otherwise be satisfied, the Court grants Plaintiffs' request and certifies a California-only subclass as to the CIPA claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs'

43

United States District Court
Northern District of California

1   motion for class certification. The Court grants Plaintiffs' motion to certify a nationwide class as

2   to Plaintiffs' SCA claim, but denies Plaintiffs' motion to certify a nationwide class as to Plaintiffs'

3   CIPA claim. The Court grants Plaintiffs' motion to certify a California-only subclass as to

4   Plaintiffs' CIPA claim. The Court therefore certifies the following class and subclass:

5        As to Plaintiffs' SCA claim: All persons in the United States who are not Yahoo Mail

6   subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

7   October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail

8   subscriber in the future.

9        As to Plaintiffs' CIPA claim: All persons in California who are not Yahoo Mail

10   subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

11   October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail

12   subscriber in the future.

13        The Court appoints Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima

14   Nobles as representatives of the nationwide SCA class, and Plaintiffs Brian Pincus and Rebecca

15   Abrams as representatives of the California-only CIPA subclass. The Court appoints Girard Gibbs

16   and Kaplan Fox as class counsel. Within 14 days of the date of this Order, Plaintiffs shall file an

17   amended complaint that amends the class definition to comport with the Court's certified class

18   definitions. Plaintiffs may not make any other substantive change to the complaint, unless Yahoo

19   stipulates to the change.

20   **IT IS SO ORDERED.**

21   Dated: May 26, 2015

22   _Lucy H. Koh_

23   LUCY H. KOH
     United States District Judge

24

25

26

27

28

United States District Court
Northern District of California

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION