No. _____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE YAHOO MAIL LITIGATION,

CODY BAKER, BRIAN PINCUS, REBECCA ABRAMS, and HALIMA NOBLES,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents,*

v.

YAHOO! INC.,

*Defendant-Petitioner.*

Petition for Permission to Appeal from the United States District Court for the
Northern District of California, case no. 5:13-cv-04980-LHK, Judge Lucy H. Koh

## PETITION FOR PERMISSION TO APPEAL ORDER GRANTING IN PART CLASS CERTIFICATION PURSUANT TO RULE 23(f)

REBEKAH E. KAUFMAN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000

JOSEPH R. PALMORE
BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 887-6940
JPalmore@mofo.com

*Counsel for Defendant-Petitioner Yahoo! Inc.*

JUNE 9, 2015

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-petitioner

Yahoo! Inc. hereby states that Yahoo! Inc. has no parent corporation and that no

publicly held corporation owns 10% or more of Yahoo! Inc.'s stock.


Dated:  June 9, 2015                       <u>          s/ Joseph R. Palmore       </u>

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ......................................................................................................1

STATEMENT OF THE ISSUES.................................................................................3

STATEMENT OF FACTS ..........................................................................................4

      A.    Background ..................................................................................................4

      B.    The District Court's Certification Order ................................................6

REASONS FOR GRANTING INTERLOCUTORY REVIEW .............................8

I.     REVIEW SHOULD BE GRANTED BECAUSE COURTS ARE
      DIVIDED OVER ARTICLE III'S REQUIREMENTS IN THE
      CONSUMER PROTECTION CONTEXT .....................................................9

      A.    Standing In The Consumer Protection Context Has Divided
          District Courts In The Circuit................................................................9

      B.    The District Court's Standing Ruling Cannot Be Reconciled
          With Article III's Requirements.........................................................10

II.    REVIEW IS ALSO WARRANTED BECAUSE THE DISTRICT
      COURT CERTIFIED UNASCERTAINABLE CLASSES .........................13

III.   THE DISTRICT COURT MANIFESTLY ERRED IN ITS
      COMMONALITY AND COHESIVENESS DETERMINATIONS............16

CONCLUSION .......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adashunas v. Negley*,
   626 F.2d 600 (7th Cir. 1980) .............................................................................14

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998) ...............................................................................19

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ..............................................................................12

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ...........................................................8, 10, 13, 16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .......................................................................................11, 12

*Clapper v. Amnesty International USA*,
   133 S. Ct. 1138 (2013) ........................................................................................11

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ..............................................................................14

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .....................................................15

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) ............................................................................12

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) ......................................................................12, 13

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .....................................................6

*In re Hulu Privacy Litig.*,
   2014 WL 2758598 (N.D. Cal. June 16, 2014)....................................................13

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ..............................................................................15

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012).........................................................................15

*Lemon v. Int'l Union of Operating Eng'rs*,
  216 F.3d 577 (7th Cir. 2000) ...............................................................................20

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003).................................................................................9

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...................................................................17, 19

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ...............................................................................13

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..............................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..................................................................................*passim*

## STATUTES

18 U.S.C. § 2702(a)(1)...............................................................................5, 18

18 U.S.C. § 2702(b)(3)...............................................................................5, 18

Cal. Penal Code § 631(a) ...........................................................................5, 18

## OTHER AUTHORITIES

Newberg on Class Actions § 3:2................................................................14, 15

Newberg on Class Actions § 3:3.....................................................................13

## INTRODUCTION

The district court certified a nationwide class (and a California-only subclass) of all non-Yahoo Mail users who have emailed with Yahoo Mail subscribers—in other words, virtually *every* email user without a Yahoo Mail account.  Plaintiffs seek to wield this class to challenge Yahoo's business practices involving automated scanning of email, contending that, when conducted without consent, those practices violate the California Invasion of Privacy Act (CIPA) and the federal Stored Communications Act (SCA).

Immediate review of the certification order is warranted for three reasons:

*First*, plaintiffs have no standing to seek the prospective relief they seek—an injunction (and declaration) barring Yahoo's scanning of emails for any purpose (including scanning to identify and block spam, malware, and viruses).  It is black letter law that plaintiffs must have standing for the particular remedies they seek and that they cannot rely on purported past wrongs as a basis for prospective relief.  Yet alleged past injury is (at most) the only one plaintiffs have here.  Because plaintiffs know about Yahoo's email scanning practices and continue to send email to Yahoo users, they necessarily consent to those practices.  They thus have no entitlement to prospective relief barring alleged *nonconsensual* scanning.  As the district court recognized, district courts in this Circuit are deeply divided on the

availability of injunctive relief under these circumstances.  This Court should grant immediate review to decide this fundamental and unresolved question.

*Second*, the certified class is unascertainable because there is no objective or administratively feasible criteria through which class membership can be determined.  Consent is a central issue in this case.  A class member who has consented to Yahoo's practices has no claim under CIPA or the SCA.  Yet determining who has not consented (and thus is part of the class) requires an individualized, fact-specific inquiry.  In addition, Yahoo cannot reliably determine which non-Yahoo Mail subscribers are located in California, defeating the ascertainability of the California-only subclass for that reason as well.

Rather than require plaintiffs to meet this requirement, however, the district court held it inapplicable to claims for injunctive relief.  The district court correctly noted that this Court has not decided that question.  The court went on to incorrectly state, however, that every other Circuit to address it has held that a Rule 23(b)(2) class need not be ascertainable. In fact, the Fifth and Seventh Circuits have required Rule 23(b)(2) classes to meet the requirement, and under the approach adopted by those courts, this class could not have been certified.  Review should be granted to decide this fundamental and unresolved question as well.

*Third*, the district court's certification order manifestly erred by misapplying the cohesiveness and commonality requirements.  Given that only some class

members may be eligible for injunctive relief (due to their lack of consent), there is no cohesive class such that Yahoo's conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). The fact-specific and individualized inquiry required to determine consent likewise defeats commonality. It is not enough for there to be some common questions—every purported class would meet that standard. Instead, there must be common questions that lead to common answers that will drive the resolution of the case. Because the issue of consent cannot be litigated on a classwide basis, the district court erred by certifying the class.

Indeed, in a virtually identical suit against Google, the same district court declined to certify a class of email users precisely because of the highly individualized issue of consent. In an attempt to avoid that fate, plaintiffs here jettisoned their damages claim and sought certification under only Rule 23(b)(2). But no amount of tactical maneuvering and repackaging can alter the fundamental fact that overwhelming individual issues render this case ill-suited for resolution on a classwide basis.

## STATEMENT OF THE ISSUES

1.    Whether the district court incorrectly decided an unsettled and fundamental issue of law when it held that Article III's standing requirements governing prospective relief can be relaxed in the consumer protection context.

2. Whether the district court incorrectly decided an unsettled and fundamental issue of law when it held, in conflict with the Fifth and Seventh Circuits, that a Rule 23(b)(2) class need not be ascertainable.

3. Whether the district court committed manifest error when it certified a class that did not meet Rule 23(a)(2)'s commonality requirement and Rule 23(b)(2)'s cohesiveness requirement because the central issue in the case is the fact-specific and individualized inquiry into consent to Yahoo's business practices.

## STATEMENT OF FACTS

### A. Background

Yahoo operates Yahoo Mail as a free web-based email service with more than 275 million subscribers. App. 2. Yahoo scans both incoming and outgoing email to protect users and non-users from spam, malware and viruses. App. 59-61 ¶¶ 3-4, 9-13; App. 119:11-15. Scanning also allows Yahoo to provide relevant advertising, product features, and free email services to current and future users. App. 117:18-118:1.

Plaintiffs are four individuals who do *not* subscribe to Yahoo Mail but who communicate with Yahoo Mail users by email. App. 2. Plaintiffs claim that nonconsensual scanning for any purpose, including for spam, malware and virus protection, is unlawful under CIPA and the SCA and thus should be enjoined.

4

The SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). That prohibition does not apply where *any* party to the communication has consented: "A provider described in subsection (a) may divulge the contents of a communication . . . with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." *Id.* § 2702(b)(3). CIPA prohibits interception of a communication while it is in transit "without the consent of all parties to the communication." Cal. Penal Code § 631(a).

In a previous order dismissing several of plaintiffs' claims, the district court held that Yahoo Mail subscribers consent to having their emails intercepted and scanned when they agree to Yahoo's terms of services. App. 47-48. Many non-Yahoo Mail subscribers also have knowledge of Yahoo's email scanning and thus consent to the practice when they communicate by e-mail with Yahoo Mail users. Yahoo discloses its email scanning (and possible sharing of email content with third parties) on webpages to inform the public of its business practices. App. 131-164; *see also* App. 165-173. For example, the "Yahoo Mail" page states that "Yahoo! provides personally relevant product features, content, and advertising, and spam and malware detection by scanning and analyzing Mail, Messenger, and

other communications content" and that "[s]ome of these features and advertising will be based on our understanding of the content and meaning of your communications."   App. 66.   News of Yahoo's email scanning also has been widely disseminated by the press and on the internet.  *E.g.*, App. 125-126; App. 128.  All of the named plaintiffs in this case continue to send emails to Yahoo Mail users, even though plaintiffs are fully informed about Yahoo's business practices.  App. 71-100; App. 103:11-14; App. 106:25-107:5; App. 110:10-17; App. 113:23-114:10.

As the district court noted, however, not all non-Yahoo Mail users are aware of Yahoo's practices.  App. 6.  Thus, the issue of which non-Yahoo Mail users in plaintiffs' proposed class have consented to Yahoo's business practices—and thus have no claim—is a central and highly individualized issue in the dispute.

### B.   The District Court's Certification Order

In a similar action against Google, the same district court denied class certification because "individualized questions with respect to consent" would "likely . . . overwhelm any common issues."  *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *21 (N.D. Cal. Mar. 18, 2014).  The complaint in this case (like the one in *In re Google*) also sought damages and thus asserted allegations with respect to Rule 23(b)(3).  Nonetheless, plaintiffs here abandoned their claim for class-wide monetary relief in an attempt to avoid the fate of the *In re Google*

plaintiffs and instead moved to certify only a Rule 23(b)(2) class for injunctive and declaratory relief. Plaintiffs sought to certify a class of "all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future." App. 53.

The district court certified the requested class under the SCA, and a California-only class under CIPA. App. 44. Even though plaintiffs have continued to send emails to Yahoo Mail subscribers since learning about Yahoo's business practices and thus have no future injury, the court held that plaintiffs had standing to seek a forward-looking injunction. App. 10. The court noted that several district courts in the Ninth Circuit have concluded that other "plaintiffs lacked standing to seek injunctive relief because (1) the plaintiffs failed to assert that they intended to engage in the injury producing conduct in the future, and (2) the plaintiffs' knowledge of the defendants' wrongful conduct meant that plaintiffs could not articulate a future injury." App. 11-12. The district court sided, however, with a separate group of district courts that have "rejected this proposition as overly narrow in the consumer protection context." App. 12.

In addition, the district court held that a Rule 23(b)(2) class need not be ascertainable, i.e., that there need be no mechanism for identifying class members.

In reaching that conclusion, the court expressly acknowledged that this Court had never addressed it.  App. 27-28.

The district court also held that plaintiffs' proposed class met Rule 23(a)(2)'s commonality and Rule 23(b)(2)'s cohesiveness requirements.  The court acknowledged that "Yahoo may be correct that consent could present legal and factual questions that are not common to the proposed class," but the court dismissed that concern on the ground that there are some "*other* common legal and factual questions" that could be resolved classwide.  App. 19.  The court likewise rejected Yahoo's argument that the proposed class lacks cohesiveness.  The court decided it did not matter some class members consented.    App. 31-32.  All that mattered in the court's view was that *some other* class members might not have consented and could be entitled to relief.  App. 32.

## REASONS FOR GRANTING INTERLOCUTORY REVIEW

Immediate review of a class certification order under Rule 23(f) of the Federal Rules of Civil Procedure is appropriate if, among other reasons, "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review" or "the district court's class certification decision is manifestly erroneous."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).    The district court's certification of a class of email users,

notwithstanding individualized questions of consent, satisfies these requirements in multiple respects.

## I.   REVIEW SHOULD BE GRANTED BECAUSE COURTS ARE DIVIDED OVER ARTICLE III'S REQUIREMENTS IN THE CONSUMER PROTECTION CONTEXT

As the district court recognized, the district courts in this Circuit are divided on the requirements for Article III standing to secure prospective relief in the consumer protection context.  App. 11-13.  The Court should grant this petition to decide that question.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (deciding Article III standing of named plaintiff as a necessary threshold issue in review of class certification order under Rule 23(f)).

### A.   Standing In The Consumer Protection Context Has Divided District Courts In The Circuit

The district court noted that "four district court cases from this circuit" have held that plaintiffs "lacked standing to seek injunctive relief because (1) the plaintiffs failed to assert that they intended to engage in the injury producing conduct in the future, and (2) the plaintiffs' knowledge of the defendants' wrongful conduct meant that plaintiffs could not articulate a future injury."  App. 11-12 (citing cases).  As the district court implicitly acknowledged (App. 11-12), the class here could not have been certified under that approach because plaintiffs would lack standing to seek injunctive relief.  They know of Yahoo's business practices and have implicitly consented to those practices by continuing to send

emails to Yahoo Mail subscribers.  App. 71-100; App. 103:11-14; App. 106:25-107:5; App. 110:10-17; App. 113:23-114:10.  Plaintiffs therefore cannot show any risk of being subject to alleged statutory violations in the future.

The district court declined to follow these decisions because, in its view, they are "overly narrow in the consumer protection context."  App. 12.  Instead, the court relied upon a contrary line of intra-circuit district court authority holding that, in consumer class actions, the existence of *past* injuries are sufficient to establish standing to secure *future* injunctive relief.  *See* App. 12-13 (citing cases).  As demonstrated by the acknowledged and deepening disagreement among the district courts on this "unsettled and fundamental issue" of standing law (*Chamberlan*, 402 F.3d at 959), this Court has not had an opportunity to address this question.  It should grant this petition in order to do so.

## B. The District Court's Standing Ruling Cannot Be Reconciled With Article III's Requirements

The district court's conclusion that it could certify an injunction-only class in the absence of any showing by plaintiffs of risk of future injury was incorrect.  The district court apparently believed that traditional Article III requirements are "overly narrow in the consumer protection context," App. 12, because they might "have the functional effect of precluding injunctive relief" once a plaintiff knew the cause of the injury, App. 13.

The Supreme Court has rejected the argument that a desire to afford remedies to plaintiffs justifies relaxing Article III's requirements. In *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), for example, the Court declined to find standing notwithstanding the argument that its absence would "insulate the government's surveillance activities from meaningful judicial review." *Id.* at 1154. The Court instead reiterated its long held rule: "'[t]he assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing.'" *Id.* (alteration in original) (citation omitted).

Far from relaxing standing rules for claims that might otherwise evade review, the Supreme Court and this Court have consistently held that standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis in original) (internal quotation marks omitted). This means that the plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Id.*

For injunctive relief, there must be an "actual and imminent" threat, *id.*, and "past wrongs do not in themselves amount to that real and immediate threat of injury," *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *see id.* at 111-12;

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (explaining that injunctive relief requires a plaintiff to demonstrate "'a sufficient likelihood that he will again be wronged in a similar way'" (quoting *Lyons*, 461 U.S. at 111)). Thus, in the context of a class action, this Court has explained that the named plaintiffs themselves must be entitled to the relief they seek. Alleged injuries to unnamed members of the class are "simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

The district court's certification order contradicts these principles. Plaintiffs all admit that they have continued to send emails to Yahoo Mail users with full knowledge that those emails would be scanned and their content would be stored and potentially shared. App. 71-100; App. 103:11-14; App. 106:25-107:5; App. 110:10-17; App. 113:23-114:10. They therefore have no future injury—and thus any entitlement to an injunction—because any future scanning would take place with these plaintiffs' consent. Instead, plaintiffs can cite only alleged "past wrongs" to support their request for injunctive relief. *Lyons*, 461 U.S. at 103; *see id.* at 111-12. That is not enough. *See, e.g.*, *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (to have standing to seek injunctive relief, a plaintiff must demonstrate that she is "realistically threatened by a repetition of the violation");

*Hodgers-Durgin*, 199 F.3d at 1045 (same); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (same).

## II.   REVIEW IS ALSO WARRANTED BECAUSE THE DISTRICT COURT CERTIFIED UNASCERTAINABLE CLASSES

The district court also (incorrectly) decided another "unsettled and fundamental issue" (*Chamberlan*, 402 F.3d at 959) relating to class certification that warrants this Court's immediate review:  whether a Rule 23(b)(2) class must be ascertainable or definite.

Under the ascertainability requirement, there must be some objective and administratively feasible criteria by which class membership can be determined. *See* Newberg on Class Actions § 3:3; *see also, e.g.*, *In re Hulu Privacy Litig.*, 2014 WL 2758598, at *15-16 (N.D. Cal. June 16, 2014) (holding that class was not ascertainable because "the claims apparently are not amenable to ready verification" and "the court cannot tell how potential class members reliably could establish by affidavit the answers to the potential questions").

As the district court observed, this Court "has not expressly addressed the issue of whether the judicially implied ascertainability requirement applies when a plaintiff moves to certify a class only under Rule 23(b)(2)," as opposed to applying only to those certified under Rule 23(b)(3).  App. 27-28.  The district court then decided that open question by holding that there is no ascertainability requirement

for Rule 23(b)(2) classes, on the ground that "there will generally be no need to identify individual class members" in injunction-only classes.  App. 28-29.

In the district court's view, its jettisoning of the ascertainability requirement was supported by "every other circuit to address the issue."  App. 28 (citing cases from the three circuits).  That is incorrect.  Both the Fifth and the Seventh Circuits require Rule 23(b)(2) classes to be ascertainable.  *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (holding in a Rule 23(b)(2) case that "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable"); *Adashunas v. Negley*, 626 F.2d 600, 603-04 (7th Cir. 1980) (Rule 23(b)(2) class "of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable.  Hence, for that reason, the plaintiff class cannot be maintained.").  The disagreement among the other courts of appeals and the absence of authority from this Court on this fundamental question support immediate review in this case.

The conclusion of the Fifth and Seventh Circuits are correct.  Numerous courts (including district courts in this Circuit) have recognized that the ascertainability requirement is derived from Rule 23(a), which applies to both Rule 23(b)(2) and 23(b)(3) classes.  *See generally* Newberg on Class Actions § 3:2 (explaining that courts "imply that the term 'class' in Rule 23(a) means a definite

or ascertainable class"); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) (addressing Rule 23(a) and explaining that a class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (same). "The rationale is that a court can only apply the Rule 23(a) prerequisites to a class whose members can be ascertained." Newberg on Class Actions § 3:2. "In other words, courts state that they must be able to know who belongs to a class before they can determine the numerosity of the class, the commonality of the claims of the class members, or any of the other class certification prerequisites." *Id.*

If properly applied, the ascertainability requirement would be dispositive here. Plaintiffs sought certification of a sprawling class of unidentifiable non-Yahoo Mail subscribers who have emailed or may in the future email Yahoo Mail users. Yahoo does not have records that would even provide a way to identify each and every non-Yahoo Mail subscriber that has sent an email to or received an email from a Yahoo user. App. 56 ¶¶ 2-6. Nor can Yahoo determine whether a non-Yahoo Mail email address belongs to someone who is also a Yahoo Mail user

(and thus who would have consented to the Yahoo terms of service). App. 56 ¶ 3. In fact, many email users maintain multiple email accounts, including all of the plaintiffs. App. 71-100. The district court's California-only subclass of non-Yahoo Mail subscribers is unascertainable for an additional reason. The record establishes that Yahoo cannot reliably determine which non-Yahoo Mail subscribers are located in California. App. 120:11-121:4. Thus, there is no objective or administratively feasible means to define the class or sub-class of non-Yahoo users. Even if there were, there would be no objective means to determine which of these non-users have consented or will consent to Yahoo's scanning practices.[1]

## III.   THE DISTRICT COURT MANIFESTLY ERRED IN ITS COMMONALITY AND COHESIVENESS DETERMINATIONS

Immediate review also is warranted because the district court committed manifest error in its class certification order. *Chamberlan*, 402 F.3d at 959.

---

[1] In a cursory footnote, the district court stated in the alternative that assuming *arguendo* that the ascertainability requirement did apply, plaintiffs would meet it. App. 29 n.8. The district court identified "class member self-identification" as a procedure that "*may*" be a "reliable" tool for identifying who should be in the class. App. 29 n.8 (emphasis added). The court made no finding that such class identification by honor system actually would be reliable. Nor did the court attempt to explain how such a system would provide an objective and administratively feasible means of determining consent for those class members who emailed with Yahoo Mail subscriber in the past, much less those who will send such email in the future.

Resolution of plaintiffs' claims will require a fact-specific and individualized inquiry as to whether each class member has consented to Yahoo's business practices. That inquiry should have defeated both commonality and cohesiveness.

The district court's certification of a class including every non-Yahoo Mail subscriber in the United States—regardless of whether they read, are aware of, or expressly consented to Yahoo's terms and conditions—cannot be reconciled with Rule 23(a)(2)'s commonality requirement as elucidated by the Supreme Court's decision in *Wal-Mart*.

As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," such that "all their claims can productively be litigated at once." *Wal-Mart*, 131 S. Ct. at 2551. Commonality is thus satisfied only "where the plaintiffs' claims rest on a 'common contention' whose 'truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014) (quoting *Wal-Mart*, 131 S. Ct. at 2551). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 131 S. Ct. at 2551.

Relying predominately on pre-*Wal-Mart* precedent, the district court held that the commonality requirement was satisfied here because the court found "*an* issue" that could be resolved on a classwide basis. App. 20. But not every

17

common question provides a basis for a finding of commonality.  Instead, as the Court in *Wal-Mart* explained, the common question must be one that will "drive the resolution of the litigation."  131 S. Ct. at 2551.  The *Wal-Mart* Court identified numerous "common" questions in the case before it:  "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?"  *Id.*  The Court emphasized, however, that merely "[r]eciting these questions is not sufficient to obtain class certification."  *Id.*  The "crucial question" for purposes of satisfying Rule 23(a)(2) was "why was I disfavored?"—a question that could not be answered with common evidence for each class member.  *Id.* at 2551-52.  Commonality requires "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* at 2551.

Here, the district court's certification will not "generate common *answers* apt to drive the resolution of the litigation."  *Id.*  Plaintiffs contend that Yahoo intercepts email sent to and from all Yahoo Mail subscribers, in violation of California Penal Code § 631(a), and discloses email content to third parties, in violation of 18 U.S.C. § 2702(a)(1).  Both of these claims fundamentally turn on whether Yahoo's acts were without "consent."  Cal. Penal Code § 631(a); 18 U.S.C. § 2702(b)(3).  Yet consent cannot be resolved "in one stroke."  *Wal-Mart*, 131 S. Ct. at 2551.  Indeed, the district court conceded that "Yahoo may be correct

that consent could present legal and factual questions that are not common to the proposed class."  App. 19.

Similarly, the fact-specific and individualized nature of consent renders the class non-cohesive for purposes of Rule 23(b)(2).  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) ("While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive.").  In certifying a class of all non-Yahoo Mail subscribers in the United States, the district court gave little weight to that requirement.  Rather than require a cohesive class, the district court held that it does not matter that all class members who might receive an injunction might not be entitled to (or even desire) that relief.  App. 32.

But in *Wal-Mart*, the Supreme Court explained that the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart*, 131 S. Ct. at 2557 (internal quotation marks omitted); *see Parsons*, 754 F.3d at 689 (concluding that Rule 23(b)(2)'s requirement that injunctive relief be "appropriate respecting the class as a whole" is satisfied where there is "an injury that can be remedied on a class-wide basis").  This requirement "operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case

19

will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000).

Here, this requirement should have precluded certification. As discussed above, resolution of plaintiffs' claims necessarily depends on the fact-specific and individualized inquiry of consent. Given that only some (but not all) class members may be eligible for injunctive relief due to their lack of consent, there is no cohesive class such that Yahoo's conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S. Ct. at 2557. This Court should grant review to correct the district court's manifest error in concluding otherwise.

## CONCLUSION

The petition should be granted.

Respectfully submitted,

Dated:  June 9, 2015

s/ Joseph R. Palmore
JOSEPH R. PALMORE
BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 887-6940
JPalmore@mofo.com

REBEKAH E. KAUFMAN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000

*Counsel for Defendant-Petitioner
Yahoo! Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 9, 2015.

I certify that  one copy of the foregoing was served via UPS overnight mail on June 9, 2015 on each of the following:

Daniel C. Girard
Girard Gibbs LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dcg@girardgibbs.com

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com

Dated:  June 9, 2015                                   _____ s/ Joseph R. Palmore _____