# IN RE YAHOO MAIL LITIGATION

## APPENDIX

## TABLE OF CONTENTS

| Date | Dkt. # | Description | Pages |
|------|--------|-------------|-------|
| 5/26/2015 | 105 | Order Granting in Part and Denying in Part Motion for Class Certification | 1-44 |
| 8/12/2014 | 49 | Order Granting in Part and Denying in Part Yahoo's Motion to Dismiss | 45-51 |
| 2/5/2015 | 60-3 | Plaintiffs' Motion for Class Certification | 52-54 |
| 3/12/2015 | 78-2 | Declaration of Michael Albers in Support of Yahoo's Opposition to Motion for Class Certification | 55-57 |
| 3/12/2015 | 78-4 | Declaration of Gareth Shue in Support of Yahoo's Opposition to Motion for Class Certification | 58-61 |
| 3/12/2015 | 78-5 | Declaration of Jakub Slomczynski in Support of Yahoo's Opposition to Motion for Class Certification | 62-64 |
| 3/12/2015 | 78-7 | Exhibit B:  Yahoo Mail Page | 65-67 |
| 3/12/2015 | 78-9 | Declaration of Rebekah Kaufman in Support of Yahoo's Opposition to Motion for Class Certification | 68-70 |
| 3/12/2015 | 78-10 | Exhibit A:  Plaintiff Cody Baker's Responses and Objections to Yahoo's First Set of Interrogatories | 71-77 |
| 3/12/2015 | 78-11 | Exhibit B:  Plaintiff Brian Pincus' Reponses to Yahoo's First Set of Interrogatories | 78-84 |
| 3/12/2015 | 78-12 | Exhibit C:  Plaintiff Halima Nobles' Responses to Yahoo's First Set of Interrogatories | 85-92 |

| Date | Dkt. # | Description | Pages |
|---|---|---|---|
| 3/12/2015 | 78-13 | Exhibit D:  Plaintiff Rebecca Abrams' Responses to Yahoo's First Set of Interrogatories | 93-100 |
| 3/12/2015 | 78-18 | Exhibit I:  Excerpts from Transcript of 2/12/2015 Deposition of Plaintiff Brian Pincus | 101-103 |
| 3/12/2015 | 78-19 | Exhibit J:  Excerpts from Transcript of 2/13/2015 Deposition of Plaintiff Halima Nobles | 104-107 |
| 3/12/2015 | 78-20 | Exhibit K:  Excerpts from Transcript of 2/16/2015 Deposition of Plaintiff Cody Baker | 108-110 |
| 3/12/2015 | 78-21 | Exhibit L:  Excerpts from Transcript of 3/4/2015 Deposition of Plaintiff Rebecca Abrams | 111-114 |
| 3/12/2015 | 78-22 | Exhibit M:  Excerpts from Transcript of 2/6/2015 Deposition of Amir Doron | 115-121 |
| 3/12/2015 | 79 | Declaration of Sarah Meron in Support of Yahoo's Opposition to Motion for Class Certification | 122-123 |
| 3/12/2015 | 79-25 | Exhibit 25:  CopyPress Article, "Yahoo's Email Scanning Isn't Seedy, It's Entering the Modern Era" | 124-126 |
| 3/12/2015 | 79-57 | Exhibit 57:  ABC News Article, "Yahoo Shutting Down Mail Classic, Forces Users to Upgrade" | 127-128 |
| 3/12/2015 | 80 | Declaration of Dan Tepstein in Support of Yahoo's Opposition to Motion for Class Certification | 129-130 |
| 3/12/2015 | 80-58 | Exhibit 58:  Yahoo Mail FAQ Page | 131-132 |
| 3/12/2015 | 80-59 | Exhibit 59:  Yahoo Mail FAQ Page | 133-134 |

| **Date** | **Dkt. #** | **Description** | **Pages** |
|---|---|---|---|
| 3/12/2015 | 80-60 | Exhibit 60:  Yahoo Mail FAQ Page | 135-136 |
| 3/12/2015 | 80-61 | Exhibit 61:  Yahoo Mail FAQ Page | 137-138 |
| 3/12/2015 | 80-62 | Exhibit 62:  Yahoo Mail FAQ Page | 139-140 |
| 3/12/2015 | 80-63 | Exhibit 63:  Yahoo Mail FAQ Page | 141-142 |
| 3/12/2015 | 80-64 | Exhibit 64:  Yahoo Mail FAQ Page | 143-144 |
| 3/12/2015 | 80-65 | Exhibit 65:  Yahoo Mail FAQ Page | 145-146 |
| 3/12/2015 | 80-66 | Exhibit 66:  Yahoo Mail FAQ Page | 147-148 |
| 3/12/2015 | 80-67 | Exhibit 67:  Yahoo Mail FAQ Page | 149-150 |
| 3/12/2015 | 80-68 | Exhibit 68:  Yahoo Mail FAQ Page | 151-152 |
| 3/12/2015 | 80-69 | Exhibit 69:  Yahoo Mail FAQ Page | 153-154 |
| 3/12/2015 | 80-70 | Exhibit 70:  Yahoo Mail FAQ Page | 155-156 |
| 3/12/2015 | 80-71 | Exhibit 71:  Yahoo Mail FAQ Page | 157-158 |
| 3/12/2015 | 80-72 | Exhibit 72:  Yahoo Mail FAQ Page | 159-160 |
| 3/12/2015 | 80-73 | Exhibit 73:  Yahoo Mail FAQ Page | 161-162 |
| 3/12/2015 | 80-74 | Exhibit 74:  Yahoo Mail FAQ Page | 163-164 |
| 3/12/2015 | 80-75 | Exhibit 75:  Yahoo Mail Overview Page | 165-173 |

1
2
3
4
5
6
7

United States District Court
Northern District of California

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12                                            Case No.  13-CV-04980-LHK

13   IN RE YAHOO MAIL LITIGATION         **ORDER GRANTING IN PART AND
                                         DENYING IN PART MOTION FOR
14                                       CLASS CERTIFICATION**

15                                            Re: Dkt. No. 60

16                                            **[PUBLIC REDACTED VERSION]**

17

18          This case involves putative class action claims regarding Defendant Yahoo!, Inc.'s

19   ("Yahoo") practice of scanning and analyzing emails of non-Yahoo Mail subscribers in purported

20   violation of federal and California wiretapping laws. Plaintiffs Cody Baker, Brian Pincus, Halima

21   Nobles, and Rebecca Abrams, individually and on behalf of those similarly situated (collectively,

22   "Plaintiffs"), allege that Yahoo's operation of its Yahoo Mail service violates the Stored

23   Communications Act ("SCA") and California's Invasion of Privacy Act ("CIPA"). Plaintiffs filed

24   a motion for class certification on February 5, 2015. ECF No. 60 ("Mot."). For the reasons stated

25   below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for class certification.

26
27
28

## I.    BACKGROUND

### A.  Factual Background

Plaintiffs are four individuals representing a class of individuals who do not use Yahoo's email service ("Yahoo Mail") but have sent emails to Yahoo Mail subscribers from non-Yahoo email addresses. Compl. ¶¶ 15–18. Plaintiff Cody Baker is a resident of New York. *Id.* ¶ 15. Plaintiff Halima Nobles is a resident of Texas. *Id.* ¶ 17. Plaintiff Brian Pincus and Plaintiff Rebecca Abrams are residents of California. *Id.* ¶¶ 16, 18. Yahoo is a Delaware corporation with headquarters in Sunnyvale, California. *Id.* ¶ 19.

Plaintiffs allege Yahoo's practices while operating Yahoo Mail violate state and federal wiretapping laws. *Id*. ¶¶ 5–7. In their motion for class certification, Plaintiffs seek injunctive and declaratory relief on behalf of a class of non-Yahoo Mail subscribers.[1] *Id.* ¶ 7. Plaintiffs' proposed class consists of all persons in the United States who are not Yahoo Mail subscribers and who sent emails to or received emails from a Yahoo Mail subscriber between October 2, 2011 and the present. *Id*. ¶ 97.

### 1.  Yahoo Mail and Yahoo's Use of Scanned Emails

Yahoo operates Yahoo Mail as a free web-based email service. *Id.* ¶¶ 20–23. More than 275 million subscribers have registered for Yahoo Mail to create @yahoo.com, @ymail.com, or @rocketmail.com email addresses. *Id.* ¶¶ 20–21. Before signing up for a Yahoo Mail account, potential subscribers must provide Yahoo with personal information such as their name, birthday, telephone number, and account information. *Id.* ¶ 31.

In order to provide Yahoo Mail as a free email service to subscribers, Yahoo charges advertisers to display advertisements on Yahoo Mail webpages. *Id.* ¶ 23. Roughly 75% of Yahoo's revenue in 2013 came from advertising. *Id.* ¶ 28. Plaintiffs allege Yahoo can increase its revenues by charging advertisers higher rates to display targeted advertisements to Yahoo Mail subscribers.

---

[1] In the complaint, Plaintiffs also sought statutory damages. Compl. ¶ 7. Plaintiffs do not, however, seek statutory damages in their motion for class certification.

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    *Id.* Thus, Yahoo has a financial incentive to scan and store email content to allow advertisers to

2    target individuals based on certain personal characteristics. *Id.*

3         The instant dispute concerns Yahoo's interception, scanning, and storage of Yahoo Mail

4    subscribers' incoming and outgoing emails for content, specifically the content of emails to and

5    from non-Yahoo Mail subscribers with whom Yahoo Mail subscribers communicate. Plaintiffs

6    allege Yahoo intercepts and scans Yahoo Mail subscribers' emails █████████████████████

7    ████████████████. Mot. at 3. Yahoo allegedly copies the entirety of the email, "extracts

8    keywords from the body of the email, reviews and extracts links and attachments, and classifies

9    the email based on its content." *Id.* Yahoo also "subjects the copied email and extracted

10   information to additional analysis to create targeted advertising for its subscribers, and stores it for

11   later use." *Id.*

12        According to Plaintiffs,[2] Yahoo's scanning and analysis processes have "steadily

13   expanded" since 2010, with "the goal of increasing revenue from advertisers, reducing costs to

14   Yahoo, and providing user features that Yahoo believes keep it competitive in the marketplace."

15   *Id.* (citing Girard Decl., ECF No. 60, Exh. 1 ("Doron Depo."), at 37:8–38:5, 41:3–42:10, 53:25–

16   55:10, and Declaration of Robert Sherwood, ECF No. 60-15, ("Sherwood Decl."), at ¶ 17).

17   Consequently, Yahoo frequently tests and modifies its scanning and analysis processes. Mot. at 3.

18   Among other things, Yahoo scans its subscribers' emails for spam, links, attachments, data on

19   online shopping and purchase behavior, and other keywords for further analysis. *Id.*; Doron Depo.

20   at 23:23–25:1, 29:4–32:18, 41:3–42:10, 44:15–45:14; Sherwood Decl. ¶¶ 9–21.

21        As Plaintiffs describe it, Yahoo intercepts, scans, and copies email █████████████████

22   ████████████████████, which then triggers the additional scanning and analyses that

23   Yahoo conducts. Mot. at 4; Sherwood Decl. ¶¶ 9–13; Doron Depo. at 38:19–40:23, 74:5–75:11.

24   More specifically, when a non-Yahoo Mail subscriber sends an email to a Yahoo Mail subscriber,

---

[2] Yahoo contends that "Plaintiffs do not accurately describe Yahoo's email scanning," but concedes that this dispute does not need to be resolved at this stage of the proceedings. *See* Opp. at 3 n.1.

3
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the email is "transmitted through the internet until it reaches Yahoo's Mail Transfer Agent"

2  ("MTA"). Doron Depo. at 65:9–66:8; Sherwood Decl. ¶ 10. The MTA performs "specific actions

3  that are unrelated to the transmission of email." Mot. at 4 (citing Doron Depo. at 24:4–26:20,

4  44:15–45:2, 65:7–66:24, 73:23–76:1, 102:13–105:20; Ex. 4 at YAH00068107; Ex. 12 at

5  YAH00011472; Sherwood Decl. at ¶¶ 10–13). These actions include assigning the email █████

6  ███████████ that can be used for advertising purposes, time-stamping the email, and

7  "copying the entire message—including the date, time, sender, recipients, subject line, and body of

8  the email—██████████████████████████████████████████" *Id.*

9        The copied data is transmitted through the "█████ to the "████ for further analysis. *Id.*

10  (citing Doron Depo. at 49:7-24; Ex. 9 at YAH00011490; Sherwood Decl., Ex. 1 at ¶ 13). The

11  "█████ is a ██████████████████████████████████████████

12  ██████████████████████████████████████ *Id.* The "████ is a

13  "series of computers that analyze the content and data collected from the email for various

14  purposes." *Id.* Yahoo uses ███████████████████ and █████████████

15  ██████ technology to scan and extract information from Yahoo Mail subscribers' "commercial

16  email," e.g., online shopping receipts and travel confirmations. Mot. at 5 (citing Doron Depo. at

17  16:16–17:3, 27:18–35:13, 68:18–69:1; Exh. 12; Exh. 15; Exh. 32; Sherwood Decl. ¶ 19).

18        In addition to scanning and extracting information from commercial emails, Yahoo scans

19  and indexes keywords from its subscribers' personal emails using processes called "████████

20  ██████," which allow subscribers to search their email. *Id.* This process, while not

21  technically necessary to deliver or send email, is an additional feature meant to attract subscribers.

22  *Id.* "█████ is a new technology that Yahoo has begun using to "harvest[] the keywords extracted

23  by ████████████████" to use in Yahoo's advertising efforts. *Id.* Using ██████ Yahoo can

24  extract information from emails between Yahoo Mail subscribers and putative class members in

25  order to display targeted advertising to Yahoo Mail subscribers. According to internal Yahoo

26  emails, ███████████████████████████████████████████

27  ████████████████████████████████████████████" Girard

28                             4
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1  Decl., Exh. 42 (YAH00071993). Additionally, Yahoo acknowledges on its "Frequently Asked

2  Questions" page that its scanning technology "looks for patterns, keywords, and files" and that

3  Yahoo shares "specific objects from a message" with certain third parties. Mot. at 6 (citing Girard

4  Decl., Exh. 24).

5          Before transmitting an email to a Yahoo Mail subscriber's inbox from the MTA, Yahoo

6  determines whether an email is spam. Mot. at 7 (citing Doron Depo. at 24:4–25:2, 65:15–66:8;

7  Girard Decl., Exh. 4(YAH00068107); Sherwood Decl. ¶ 16). Yahoo also scans incoming emails

8  for attachments such as photos or other images. *Id.* Yahoo also intercepts and scans outgoing

9  emails sent from Yahoo Mail subscribers to non-Yahoo Mail subscribers through Yahoo's

10  "███████████," which apparently collect data similar to the data Yahoo collects from

11  incoming email. Mot. at 7 (citing Doron Depo. at 47:17–49:4, 96:22–98:2; Ex. 10; Sherwood

12  Decl., at ¶ 22). While ██████ email is scanned for keywords so that Yahoo Mail subscribers can

13  search their "███ emails, Yahoo does not currently scan ██████ email for the advertising

14  functions of ██████ *Id.*

15          Plaintiffs contend that Yahoo "can and does provide email services" to some Yahoo Mail

16  subscribers without intercepting, scanning, and analyzing emails "for commercial purposes."

17  Yahoo "cannot use email to target ads to users" without consent from both the sender and receiver

18  in the United Kingdom. Yahoo therefore does not provide targeted advertising to Yahoo Mail

19  subscribers in the United Kingdom. Girard Decl., Exh. 20 (YAH00009864–65).

20          **2.  Consent and Publicity**

21          Yahoo requires its subscribers to consent to the interception, scanning, analysis, and

22  storage of email in exchange for Yahoo Mail services. Mot. at 8; *see also In re Yahoo Mail Litig.*,

23  7 F. Supp. 3d 1016, 1029–31 (N.D. Cal. 2014) ("Accordingly, the Court concludes that Yahoo

24  obtained consent from one party to the electronic communications to scan and analyze emails for

25  the purposes of providing personal product features, providing targeted advertising, and detecting

26  spam and abuse."). In its terms of service, Yahoo also notifies its subscribers that: "If you consent

27  to this [Additional Terms of Service] and communicate with non-Yahoo users using the Services,

28  

5

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   you are responsible for notifying those users about this feature." Girard Decl., Exh. 3, ¶ 1.c.

2   According to Plaintiffs, Yahoo "makes no other effort to obtain the consent of non-subscribers."

3   Mot. at 8. Moreover, Yahoo provides no mechanism for non-Yahoo Mail subscribers to opt out of

4   Yahoo's scanning practices. *See* Girard Decl., Ex. 30 (Yahoo Interrogatory Responses 7 & 8).

5           Plaintiffs further allege that Yahoo has actively "concealed information," or otherwise

6   attempted to avoid widespread public scrutiny of its scanning practices. Mot. at 9. More

7   specifically, Plaintiffs cite ████ project team emails from 2010 stating that members were "quite

8   concerned about how users will react to our going through their email to target ads" and that

9   friends and family members described it as "an invasion of their privacy and too much 'big

10  brother.'" Girard Decl., Exh. 26 (YAH00016831–32). In 2012, Yahoo's communications

11  department also recommended that it would be "good to have a quiet blog post on our advertising

12  or privacy blog about several forms of targeting (not just commercial mail) so we can say we have

13  something out there if there is an issue. No one wants to proactively grab the attention of

14  consumers. It's just a way of having something documented." Girard Decl., Exh. 34

15  (YAH00004771). Subsequent emails in late 2013 confirmed that Yahoo "preferr[ed] to discuss

16  email ad targeting only when we're talking to advertising-friendly audiences. It raises a lot of

17  privacy concerns." One Yahoo employee explained in another internal email chain that "[w]e

18  haven't talked about ████ with consumers. . . . I would prefer not to talk about it with

19  consumers in case it stirs up privacy debates." Girard Decl., Exh. 37 (YAH00004931–32).

20          Yahoo disputes Plaintiffs' characterization and notes that the Additional Terms of Service

21  ("ATOS") are publicly available, and that Yahoo's "Mail FAQ" page explains that Yahoo's

22  "automated systems will scan and analyze all incoming and outgoing email, IM, and other

23  communications content sent and received from your account in order to personalize your

24  experience." Declaration of Dan Tepstein, ECF No. 80-58. The "Yahoo Mail" page states:

25              Yahoo! provides personally relevant product features, content, and
                advertising, and spam and malware detection by scanning and
26              analyzing Mail, Messenger, and other communications content.
                Some of these features and advertising will be based on our
27              understanding of the content and meaning of your communications.

28
                                                    6
        Case No.13-CV-04980-LHK
        ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

> For instance, we scan and analyze email messages to identify key elements of meaning and then categorize this information for immediate and future use.

Declaration of Jakub Slomczynski, ECF No. 78-7. According to Yahoo, these pages are "accessible by users and non-users of Yahoo's email services, and have been viewed millions of times." Slomczynski Decl. ¶¶ 4–6. Yahoo also cites a variety of articles discussing its ATOS and Yahoo Mail services, including two June 2013 pieces published by ABC News and Copypress. *See* Declaration of Sarah Meron, ECF Nos. 79-25 (ABC News article), 79-57 (Copypress article).

### 3.  Class Allegations and Relief Sought

Plaintiffs allege that Yahoo's operation of Yahoo Mail violates the Stored Communications Act ("SCA") and California's Invasion of Privacy Act ("CIPA").[3] Compl. ¶¶ 5–6. In their motion for class certification Plaintiffs seek certification of a nationwide class of non-Yahoo Mail subscribers. More specifically, Plaintiffs seek certification of the following class:

> [A]ll persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

Mot. at 1. In the alternative, Plaintiffs also seek the certification of a California-only subclass as to Plaintiffs' CIPA claim.[4] Mot. at 22 n.2; Reply at 13. Moreover, Plaintiffs seek "solely declaratory and injunctive relief," as a class under Federal Rule of Civil Procedure 23(b)(2). Mot. at 1.

### B.  Procedural History

Beginning on October 2, 2013, Plaintiffs filed six separate class action complaints against Yahoo in the Northern District of California, alleging that Yahoo scans and analyzes emails in violation of privacy laws. On December 18, 2013, this Court related all six pending actions

---

[3] As discussed below, Plaintiffs also alleged violations of Article I Section I of the California Constitution, but the Court granted Defendant's motion to dismiss this claim on August 12, 2014. ECF No. 49.
[4] Yahoo takes issue with Plaintiffs' request that the Court certify a California-only subclass in a footnote. As the Court may divide a class into subclasses "on the motion of either party, or *sua sponte*," the Court concludes that Plaintiffs' request is not improper. *See* Newberg on Class Actions § 7:30 (5th ed.). Yahoo had ample opportunity to respond to Plaintiffs' request in Yahoo's opposition to Plaintiffs' motion.

7

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

because they involve the same defendant, Yahoo, and "substantially the same basic allegations" that Yahoo's "interception, storage, reading and scanning of email violates Plaintiffs' and other consumers' rights of privacy." ECF No. 14 at 2. On January 8, 2014, two of the Plaintiffs filed stipulations to dismiss their actions, which the Court granted. *See Kevranian v. Yahoo!*, 13-cv-04547-LHK, ECF No. 36; *Zelaya v. Yahoo! Inc.*, 13-cv-04619-LHK, ECF No. 23. On January 22, 2014, this Court consolidated the remaining four cases for pretrial purposes, ECF No. 27, and appointed interim class counsel, ECF No. 29. Plaintiffs filed a consolidated class action complaint on February 12, 2014. ECF No. 35.

On March 5, 2014, Yahoo filed a motion to dismiss Plaintiffs' claims. ECF No. 37. On March 26, 2014, Plaintiffs filed an opposition to Yahoo's motion to dismiss. ECF No. 39. On April 7, 2014, Yahoo filed a reply. ECF No. 41. On August 12, 2014, the Court granted in part and denied in part Defendant Yahoo's motion to dismiss. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014). Of Plaintiffs' original claims, only Plaintiffs' improper disclosure claim under § 2702(a)(1) of the SCA and § 631 claim under CIPA survived Yahoo's motion to dismiss. *Id.* at 1043. Plaintiffs chose not to amend their complaint, and Yahoo filed its answer to Plaintiffs' complaint on August 26, 2014. ECF No. 53.

On February 5, 2015, Plaintiffs filed the instant motion for class certification. ECF No. 60. On March 12, 2015, Yahoo filed its opposition. ("Opp."), ECF No. 77. On April 9, 2015, Plaintiffs filed their reply. ("Reply"), ECF No. 89.[5]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

---

[5] The parties filed the class certification briefing as exhibits attached to administrative motions to seal. *See* ECF Nos. 60, 77, 89. The Court addresses the parties' sealing motions in a separate order.

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001))). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 1195. Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class. *Zinser*, 253 F.3d at 1186.

### III.    DISCUSSION

Plaintiffs move to certify a nationwide class of persons who are not Yahoo Mail

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

subscribers who have sent emails to or received emails from a Yahoo Mail subscriber from

October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail

subscriber in the future. Mot. at 1. In the alternative, Plaintiffs seek the additional certification of a

California-only subclass as to Plaintiffs' CIPA claim. Plaintiffs seek to certify only an injunctive

relief class under Rule 23(b)(2). The Court addresses Plaintiffs' standing to seek injunctive relief

before turning to the requirements of Rule 23(a) and Rule 23(b).

### A. Standing

Yahoo challenges Plaintiffs' standing to seek injunctive or declaratory relief under Rule

23(b)(2). More specifically, Yahoo argues that Plaintiffs have continued to send emails to Yahoo

subscribers even after Plaintiffs learned that Yahoo allegedly scans, stores, and uses those emails.

According to Yahoo, Plaintiffs' conduct constitutes consent to Yahoo's practices, and Plaintiffs'

knowledge of Yahoo's practices "precludes [them] from showing a likelihood of being injured in

the future by those practices." Opp. at 16 (quoting *In re Intel Laptop Battery Litig.*, No. C09-

02889 JW, 2011 WL 7290487, at *2 (N.D. Cal. Apr. 7, 2011)). For the reasons stated below, the

Court rejects Yahoo's argument.

"In a class action, standing is satisfied if at least one named plaintiff meets the

requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing

*Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)). Not only must at least one named plaintiff

satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that

[s]he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488,

493 (2009). An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of

common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a

showing of cohesiveness of class claims is required. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th

Cir. 1998).

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

To establish standing for prospective injunctive relief, Plaintiff must demonstrate that "[s]he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future."). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101–02. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show that she herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999).

The gravamen of Yahoo's argument is that once Plaintiffs discovered that their emails to Yahoo subscribers were being intercepted, stored, and used by Yahoo, Plaintiffs then consented to Yahoo's actions by continuing to email Yahoo subscribers. According to Yahoo, because Plaintiffs now know that any emails Plaintiffs send to Yahoo subscribers will be subject to Yahoo's interception and use of those emails, Plaintiffs "consent" to future interceptions and cannot allege a future injury as required to establish standing for injunctive relief.

In support of this argument, Yahoo relies on four district court cases from this circuit: *In re Intel Laptop Battery Litig.*, 2011 WL 7290487, at *2; *Castagnola v. Hewlett-Packard Co.*, No C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012); *Saavedra v. Eli Lily & Co.*, No. 12-CV-9366, 2013 WL 6345442 (C.D. Cal. Feb. 26, 2013); and *Campion v. Old Republic Home Protection Co., Inc.*, 861 F. Supp. 2d 1139 (S.D. Cal. 2012). These cases, primarily citing to each other, concluded that the plaintiffs lacked standing to seek injunctive relief because (1) the

11

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   plaintiffs failed to assert that they intended to engage in the injury producing conduct in the future,

2   and (2) the plaintiffs' knowledge of the defendants' wrongful conduct meant that plaintiffs could

3   not articulate a future injury. For example, in *Campion*, the court found that the plaintiff lacked

4   standing to seek injunctive relief, concluding that the plaintiff "does not ever intend to purchase

5   another [warranty plan]. Furthermore, even if Plaintiff were to purchase another home warranty

6   plan from Defendant, he now has knowledge of Defendant's alleged misconduct." *Campion*, 861

7   F. Supp. 2d at 1150. Similarly, in *In re Intel Laptop Battery Litig.*, the court found that the plaintiff

8   "does not allege that it plans to purchase a laptop of any kind in the future. Further, Plaintiff has

9   knowledge of Defendants' alleged misconduct." 2011 WL 7290487, at *2; *see Castagnola*, 2012

10  WL 2159385, at *6 ("Plaintiffs do not allege that they intend to purchase products from

11  Snapfish.com in the future . . . . Even if they did . . . however, Plaintiffs now have knowledge of

12  the terms and conditions of the program." (citing *In re Intel Laptop Battery Litig.* and *Campion*));

13  *Saavedra*, 2013 WL 6345442, at *8 ("Plaintiffs have failed to allege that they intend to purchase

14  Cymbalta in the future. Moreover, even if they did, they now know about the possibility of the

15  side-effects." (citing *Castagnola* and *Campion*)). In all four cases, the courts noted that the

16  plaintiffs' presumptive knowledge of the defendants' fraudulent conduct meant that plaintiffs

17  could not, as a matter of law, be injured by defendants' future wrongful conduct.

18          This Court, among others in this circuit, has rejected this proposition as overly narrow in

19  the consumer protection context. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-

20  2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014) ("Several courts in this district

21  have held in similar cases that to establish standing, [a plaintiff] must allege that [s]he intends to

22  purchase the products at issue in the future." (internal quotation marks omitted)); *Larsen v. Trader

23  Joe's Co.*, No. 11-5188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (rejecting *Campion*

24  as overly narrow). In these cases, plaintiffs needed to allege actual reliance on alleged

25  misrepresentations in order to show an injury-in-fact. *See, e.g.*, *Werdebaugh*, 2014 WL 2191901,

26  at *5–6 (listing cases). In essence, actual reliance requires a showing that plaintiffs were unaware

27  of the "truth" of the alleged misrepresentation and paid a price premium or made a purchase that

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    plaintiffs would not have otherwise made. *Id.* Presumably these plaintiffs then became aware that

2    the defendants' labels were misleading and accordingly filed suit. As is the case here, the

3    defendants argued that the plaintiffs could not allege a future injury because any future purchase

4    would be made with the knowledge that the labels were allegedly fraudulent. Courts have

5    repeatedly rejected this argument as artificially precluding injunctive relief altogether. *See id.*

6           More specifically, as one court put it, "If the Court were to construe Article III standing . . .

7    as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false

8    advertising under California consumer protection laws because a plaintiff who had been injured

9    would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and

10   would never have Article III standing." *Henderson v. Gruma Corp.*, No. 10-4173, 2011 WL

11   1362188, at *7 (S.D. Cal. Apr. 11, 2011). Rather than applying a rule that would have the

12   functional effect of precluding injunctive relief altogether, courts have held that the "likelihood of

13   future injury" requirement under Article III may be satisfied where a consumer "allege[s] that

14   [s]he intends to purchase the products at issue in the future," even after a consumer discovers the

15   alleged misrepresentation. *Werdebaugh*, 2014 WL 2191901, at *9 (internal quotation marks

16   omitted). This outcome accords with both the standing requirements of Article III and the

17   underlying policy justifications for the statutory protections at issue.

18          In the instant case, the Court similarly concludes that Yahoo's argument would have the

19   functional effect of eliminating injunctive relief altogether for victims of alleged violations of the

20   SCA and CIPA. Here, Plaintiffs have alleged an injury-in-fact, i.e., that Yahoo wrongfully

21   intercepted, disclosed, and used Plaintiffs' electronic communications. After discovering this

22   alleged conduct, Plaintiffs filed the instant suit. Under Yahoo's proposed rule, to be eligible for

23   injunctive relief, Plaintiffs would then have to cease receiving and sending emails to Yahoo Mail

24   subscribers in order to avoid consenting to Yahoo's future conduct. However, Plaintiffs must also

25   show "a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946.

26   Yahoo does not explain how Plaintiffs could both avoid "consenting" to Yahoo's conduct while

27   simultaneously establishing a "real and immediate threat" that Plaintiffs' emails would be subject

28
                                                        13
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   to Yahoo's interception and use. In other words, Yahoo would put Plaintiffs in a catch-22 that

2   would essentially preclude injunctive relief altogether. Yahoo would require Plaintiffs to allege

3   both (1) that Plaintiffs, in order to avoid "consenting" to Yahoo's conduct, stopped emailing

4   Yahoo subscribers after discovering Yahoo's alleged wrongful conduct, and (2) that Plaintiffs

5   continued to email Yahoo subscribers so that Plaintiffs allege a real and immediate threat of future

6   injury, i.e., that Yahoo would intercept Plaintiffs' communications in the future. The Court

7   declines to impose an impossible burden on Plaintiffs. [6]

8        Here, Plaintiffs have shown that they intend to continue to email Yahoo Mail subscribers

9   and have, in fact, done so since discovering Yahoo's alleged wrongful conduct. *See* Declaration of

10  Rebecca Adams, ECF No. 62, ¶ 3; Declaration of Cody Baker, ECF No. 63, ¶ 3; Declaration of

11  Halima Nobles, ECF No. 64, ¶ 3; Declaration of Brian Pincus, ECF No. 65, ¶ 3. Plaintiffs have

12  therefore alleged a "real and immediate threat" that their electronic communications will be

13  intercepted and used by Yahoo—the precise injuries that Plaintiffs identify as the basis for this

14  action. This is not an instance where Plaintiffs have identified only a past transaction or injury and

15  have failed to show any likelihood of future injury. *See, e.g.*, *Werdebaugh*, 2014 WL 2191901, at

16  *9 ("[Plaintiff] has not alleged, let alone provided evidentiary proof, that he intends or desires to

17  purchase [defendant's] products in the future . . . and Plaintiff lacks standing to pursue [injunctive

18  relief]."). Nor can Plaintiffs opt out of Yahoo's practices. *See* Girard Decl., Ex. 30. In sum, the

19  Court concludes that Plaintiffs have sufficiently alleged a "real and immediate threat of repeated

20  injury," which would be redressable through injunctive relief. *Bates*, 511 F.3d at 985.

21  Accordingly, Plaintiffs have shown standing to pursue injunctive relief.

22      **B. Rule 23(a) Factors**

23      Plaintiffs bear the burden to show that the proposed class satisfies each requirement under

24

25  [6] Yahoo asserts that Plaintiffs could contact Yahoo Mail subscribers via phone, fax, or email
    addresses provided by Yahoo's competitors. Opp. at 17. Yahoo appears to be arguing that

26  Plaintiffs are not required, either by necessity or convenience, to "consent" to Yahoo's
    interceptions and disclosures because Plaintiffs can communicate with Yahoo Mail subscribers via

27  other means. This argument places Plaintiffs in the same catch-22 position referenced above. As
    discussed above, the Court finds Yahoo's argument unpersuasive.

28                                                14

    Case No.13-CV-04980-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

Rule 23(a)(1). While Yahoo does not contest numerosity, Yahoo does challenge whether Plaintiffs have shown commonality, typicality, and adequacy. The Court addresses each requirement in turn.

### 1. Numerosity

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Here, Plaintiffs estimate that there are "hundreds of thousands of class members," but do not offer an exact figure for the size of the class. Mot. at 11. Yahoo does not dispute the numerosity of the proposed class. As Plaintiffs contend that it is beyond dispute that the proposed class numbers well over forty and joinder would be impracticable, the Court finds that the numerosity requirement is satisfied. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) ("[V]arious courts have found that the numerosity factor is satisfied if the class comprises 40 or more members . . . .").

### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

United States District Court
Northern District of California

15

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*,

2    150 F.3d 1011, 1019–20 (9th Cir. 1998). All questions of fact and law need not be common to

3    satisfy the rule. *Id.* Rather, in deciding whether plaintiffs share a common question with the

4    prospective class, the named plaintiffs must share at least one question of fact or law with the

5    prospective class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted); *see*

6    *Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or

7    fact.").

8            In support of their motion for class certification, Plaintiffs contend that there are "several

9    common questions of law and fact" because "all class members are subject to Yahoo's practice of

10   intercepting, copying and analyzing email content." Mot. at 12. Yahoo argues that Plaintiffs

11   cannot satisfy the commonality requirement because (1) the issue of "consent cannot be resolved

12   by proof common to the class as a whole," and (2) Plaintiffs have failed to identify a "central"

13   common question as required by *Dukes*. Opp. at 7–8.

14           In the instant case, the Court finds that Plaintiffs have carried their burden of satisfying the

15   commonality requirement of Rule 23(a). Here, Plaintiffs have two surviving claims against

16   Yahoo: alleged improper disclosure under § 2702(a)(1) of the SCA and alleged illegal wiretapping

17   under § 631 of CIPA. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1042–43. As to their SCA

18   claim, Plaintiffs allege that Yahoo violated § 2702(a)(1), which prohibits "knowingly divulg[ing]

19   to any person or entity the contents of a communication while in electronic storage by that

20   service." 18 U.S.C. § 2702(a)(1). Plaintiffs also allege that Yahoo's interception and scanning of

21   their emails violates § 631 of CIPA. Section 631 of CIPA makes it unlawful to use "any machine,

22   instrument or contrivance" to intentionally intercept the content of a communication over any

23   "telegraph or telephone wire, line, cable or instrument," or to read, attempt to read, or learn the

24   "contents or meaning of any message, report, or communication while the same is in transit or

25   passing over any wire, line or cable" without the consent of all parties to the communication. *See*

26   Cal. Penal Code § 631(a).

27           As Plaintiffs note, both claims will require resolution of whether Yahoo intercepts emails

28                                                16

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    to and from non-Yahoo Mail subscribers; how Yahoo stores, accesses, and scans those emails; and

2    what use or disclosure, if any, Yahoo makes of the contents of those emails. For instance, the

3    parties dispute whether Yahoo intercepts emails while "in transit or passing over any wire, line, or

4    cable, or is being sent from, or received at any place within this state," an element of a § 631

5    claim. Indeed, Yahoo moved to dismiss Plaintiffs' CIPA claim on this basis. *See In re Yahoo Mail*

6    *Litig.*, 7 F. Supp. 2d at 1036. Whether Yahoo intercepts emails to and from non-Yahoo mail

7    subscribers while those emails are in transit is a "common contention" that "is capable of

8    classwide resolution" and "will resolve an issue that is central to the validity of each one of the

9    claims in one stroke." *Dukes*, 131 S. Ct. at 2552. This common question is one that will "generate

10   common *answers* apt to drive the resolution of the litigation." *Id.* at 2551. Should it be the case

11   that Yahoo does not, in fact, intercept the emails of non-Yahoo Mail subscribers while those

12   emails are "in transit," but rather accesses those emails while the emails are "in electronic

13   storage," then Plaintiffs' CIPA claim would be defeated. Likewise, for Plaintiffs' SCA claim, the

14   common factual question of whether Yahoo actually discloses to third parties the contents of class

15   members' emails is essential to Plaintiffs' claim. *See, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d

16   1098, 1109 (9th Cir. 2014). As Rule 23(a)(2) requires only one significant common question of

17   law or fact, the Court concludes that Plaintiffs have satisfied their burden.

18          In opposition, Yahoo argues that the issue of whether putative class members have

19   consented to Yahoo's interception, disclosure, and use of their emails is a "key question" that

20   defeats commonality under Rule 23(a). Opp. at 7. More specifically, Yahoo relies on this Court's

21   decision in *In re Google Inc. Gmail Litigation*, No. 13-MD-2430-LHK, 2014 WL 1102660, at *21

22   (N.D. Cal. Mar. 18, 2014), in support of its argument that consent is a "question of fact" that will

23   require individualized inquiry. In *Gmail*, the Court concluded that the "individualized questions

24   with respect to consent . . . [were] likely to overwhelm any common issues," and concluded that

25   the plaintiffs had failed to satisfy the predominance requirement under Rule 23(b)(3). *Id.* More

26   specifically, the *Gmail* plaintiffs sought to certify classes that included Gmail subscribers and non-

27   subscribers. *Id.* at *10. Some Gmail subscribers had received different privacy disclosures, making

28   
17

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

even express consent an individualized inquiry. *Id.* at *14–15. Evaluating the "full panoply of disclosures, from the news media, from Google, and from other sources," the Court concluded that at least some proposed class members would have been on notice of the alleged interceptions, and consented to Google's conduct. *Id.* at *18–19. Google produced evidence of widespread, critical media coverage of Google's scanning and interception policies as well as Google's own disclosures which had been viewed more than 1.6 million times, presumably by both Gmail subscribers and non-subscribers. *Id.* at *17–18. The Court concluded that the process of "determining [to] what disclosures each Class member was privy and determining whether that specific combination of disclosures was sufficient to imply consent" meant that the plaintiffs could not satisfy the predominance requirement under Rule 23(b)(3). *Id.* at *18.

In the instant case, Yahoo contends that these same questions of consent will "overwhelm" any common questions of fact or law. However, *Gmail* is of limited applicability here. As a threshold matter, unlike in *Gmail*, Plaintiffs in the instant action do not seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added). Moreover, Yahoo fails to note that in *Gmail*, the defendant did not challenge whether the plaintiffs satisfied the commonality requirement under Rule 23(a). *In re Gmail Litig.*, 2014 WL 1102660, at *11. The Court's decision in *Gmail* turned on the plaintiffs' failure to demonstrate predominance, not commonality. *See id.*

Furthermore, it is well established that the predominance requirement under Rule 23(b)(3) is more demanding than the commonality requirement under Rule 23(a). *See, e.g.*, *Hanlon*, 150 F.3d at 1019 ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)."); *see also* Newberg on Class Actions § 3:27 (5th ed.) (noting that "Rule 23(b)(3) most obviously builds on Rule 23(a)(2)" but "adds an additional measure of commonality"). This distinction between the commonality and predominance requirements not only distinguishes *Gmail*, but also much of the other authority upon which Yahoo relies. Plaintiffs in the instant case do not bear the burden of showing that a common

18

United States District Court
Northern District of California

1    question of law or fact predominates over individual questions. Instead, Plaintiffs need only show

2    the existence of a common question of law or fact that is significant and capable of classwide

3    resolution. *See Mazza*, 666 F.3d at 589; *Dukes*, 131 S. Ct. at 2552. Although Yahoo may be

4    correct that consent could present legal and factual questions that are not common to the proposed

5    class, that observation does not bear on whether Plaintiffs have identified *other* common legal and

6    factual questions that are significant to Plaintiffs' claims and capable of classwide resolution. *See*

7    *Mazza*, 666 F.3d at 589 ("[C]ommonality requires only a single significant question of law or fact.

8    Even assuming arguendo that we were to agree with [defendant's] 'crucial question' contention,

9    the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are

10   common issues under Rule 23(a)(2)." (internal citation omitted)).

11          Yahoo also cites *Torres v. Nutrisystem, Inc.*, 289 F.R.D 587 (C.D. Cal. 2013). In *Torres*,

12   the plaintiff put forth two "common" questions of law or fact: whether the defendant recorded or

13   monitored confidential telephone communications and whether the defendant obtained consent

14   before doing so. *Id.* at 592. In rejecting these "common" questions, the *Torres* court found that

15   neither question would result in common answers on a classwide basis. *Id.* at 593–94. Instead,

16   determining whether the defendant had recorded "confidential" conversations without "consent"

17   would require individualized factual determinations that would produce "varying answers." *Id.* As

18   the *Torres* plaintiff had failed to put forth any other common questions, the court concluded that

19   the plaintiff had failed to carry her burden under Rule 23(a). *Id.*

20          By contrast, the Court finds *Stern v. DoCircle, Inc.*, No. 12-2005, 2014 WL 486262, at *4

21   (C.D. Cal. Jan. 29, 2014), more relevant to the instant case. In *Stern*, as in *Torres* and the instant

22   case, the defendant argued that issues of consent would require individualized inquiries that

23   defeated commonality. Rejecting the defendant's argument, the *Stern* court noted that "even

24   though numerous individual inquiries may run afoul of the Rule 23(b)(3) predominance

25   requirement, not all issues have to be common to satisfy Rule 23(a)(2)'s commonality

26   requirement." *Id.* Rather, "for purposes of Rule 23(a)(2), [e]ven a single [common] question will

27   do." *Dukes*, 131 S. Ct. at 2556 (internal quotation marks omitted). The *Stern* court then found that

28
                                                  19

United States District Court
Northern District of California

1    the questions of which party bore the burden of proof as to consent and what steps the defendant

2    had taken to comply with the Telephone Consumer Protection Act ("TCPA") were "factual and

3    legal issues common to all class members," and the plaintiffs had therefore satisfied the

4    commonality requirement. *Stern*, 2014 WL 486262, at *4. Both the *Stern* and *Torres* courts

5    acknowledged that the plaintiffs' claims would require individualized factual determinations with

6    respect to consent. In *Torres*, however, the plaintiff failed to put forth even a single common

7    question of law or fact that was separate from the consent issue—a failure that distinguishes

8    *Torres* from *Stern* and the instant case.

9          Yahoo also contends that the common questions Plaintiffs have identified are not "central

10   questions" that would "resolve this case in one fell swoop." Opp. at 10. However, Yahoo cites no

11   authority for the proposition that the "common question" required under Rule 23(a) must resolve

12   an entire action. To the contrary, in *Dukes*, the United States Supreme Court held that a "common

13   contention" was one which would "resolve *an* issue," not *all* issues. *Dukes*, 131 S. Ct. at 2541

14   (emphasis added). Moreover, "[w]here the circumstances of each particular class member vary but

15   retain a common core of factual or legal issues with the rest of the class, commonality exists."

16   *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks and

17   citation omitted). Here, the Court finds that there is a "common core of factual or legal issues,"

18   that are material to Plaintiffs' class claims. *Id.* This is sufficient as a matter of law.

19         In sum, the Court finds that Plaintiffs have satisfied the commonality requirement under

20   Rule 23(a).

21         **3. Typicality**

22         Under Rule 23(a)(3) the representative party must have claims or defenses that are "typical

23   of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

24   class member's claim arises from the same course of events, and each class member makes similar

25   legal arguments to prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124 (citations

26   omitted). This requirement is "permissive and requires only that the representative's claims are

27   reasonably co-extensive with those of the absent class members; they need not be substantially

28

                                            20
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  identical." *Hanlon*, 150 F.3d at 1020. Reasonably coextensive claims with absent class members

2  will satisfy the typicality requirement, but the class must be limited to "those fairly encompassed

3  by the named plaintiff's claims." *Dukes* at 131 S. Ct. at 2550. "[C]lass certification is

4  inappropriate where a putative class representative is subject to unique defenses which threaten to

5  become the focus of the litigation." *Hanlon*, 976 F.2d at 508 (citations omitted). "The purpose of

6  the typicality requirement is to assure that the interest of the named representative aligns with the

7  interests of the class." *Id.*

8       As a threshold matter, the Court notes that typicality under Rule 23(a) is a permissive

9  requirement and requires only that Plaintiffs' claims be "reasonably co-extensive," not

10 "substantially identical" with the proposed class members' claims. *Hanlon*, 150 F.3d at 1020. In

11 the instant case, Plaintiffs' claims and those of the proposed class members arise out of Yahoo's

12 interception, scanning, and use of each class member's emails to and from Yahoo Mail

13 subscribers. Plaintiffs allege, and Yahoo does not dispute, that each class member is subject to the

14 same scanning practices by Yahoo. As such, Plaintiffs and the proposed class members "have the

15 same or similar injury, . . . the action is based on conduct which is not unique to the named

16 plaintiffs, and . . . other class members have been injured by the same course of conduct." *Hanlon*,

17 976 F.2d at 508.

18      Yahoo contends that Plaintiffs' claims are atypical because (1) Plaintiffs have continued to

19 email Yahoo Mail subscribers after discovering Yahoo's scanning practices; (2) Plaintiffs have

20 consented to scanning by other email services; and (3) Plaintiffs have differing views regarding

21 virus and malware detection and scanning to prevent spam emails. Opp. at 11–12. As discussed

22 below, the Court concludes that Plaintiffs have satisfied the typicality requirement.

23      As to Yahoo's first argument, the Court finds that Yahoo has failed to explain why

24 Plaintiffs' decisions to continue to email Yahoo Mail subscribers would render Plaintiffs' claims

25 atypical of the proposed class. Yahoo again relies on its argument that Plaintiffs have consented to

26 Yahoo's scanning, interception, and use of Plaintiffs' emails by continuing to email Yahoo Mail

27 subscribers. According to Yahoo, this is a defense that is "peculiar to" Plaintiffs, as Yahoo argues

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   that Plaintiffs accordingly lack standing to pursue injunctive relief. *See* Opp. at 11. To the extent

2   that Plaintiffs' continued emailing of Yahoo Mail subscribers arguably constitutes consent to

3   Yahoo's conduct, the Court notes that this defense is unlikely to be unique. Yahoo identifies no

4   evidentiary support for its assertion that Plaintiffs' decisions to continue to email Yahoo Mail

5   subscribers even after discovering Yahoo's scanning practices is atypical of the proposed class.

6   This is unsurprising in light of Yahoo's claim that class members have consented to Yahoo's

7   practices because class members would have seen media coverage and Yahoo's own disclosures

8   regarding Yahoo's scanning practices. Yahoo explicitly argues that "members of the putative class

9   who read certain media articles and then continued to send email to Yahoo users may have also

10  impliedly consented to such disclosure." Opp. at 5. Yahoo cannot plausibly argue that class

11  members have consented to its practices while simultaneously arguing that Plaintiffs' consent

12  renders Plaintiffs atypical. Furthermore, the Court has rejected Yahoo's arguments with respect to

13  Plaintiffs' standing to seek injunctive relief. As such, the Court concludes that Plaintiffs are not

14  subject to a unique defense that defeats typicality.

15          Yahoo also relies on a Seventh Circuit case for the proposition that "even an arguable

16  defense peculiar to the named plaintiff . . . may destroy the required typicality of the class." *J.H.*

17  *Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980). As discussed

18  above, the Court is not persuaded that Plaintiffs' continued emailing of Yahoo Mail subscribers

19  after discovering the nature of Yahoo's scanning practices is "peculiar" or atypical. Moreover,

20  even if this were the case, the Court notes that the Seventh Circuit has subsequently clarified that

21  "[t]ypicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions,

22  not with respect to particularized defenses it might have against certain class members." *Wagner v.*

23  *NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also Wahl v. Midland Credit Mgmt.*, 243

24  F.R.D. 291, 297 (N.D. Ill. 2007) (discussing *J.H. Cohn* and *Wagner* and concluding that "the

25  presence of a unique defense against [plaintiff] does not destroy typicality"). Even assuming

26  Yahoo was correct and Plaintiffs might be subject to a unique defense, the Court is not persuaded

27  that this alone defeats Plaintiffs' showing of typicality.

28

United States District Court
Northern District of California

1    Yahoo also argues that Plaintiffs' claims are "atypical of each other's." More specifically,

2    Yahoo points to Plaintiff Baker and Plaintiff Adams' consent to scanning by third party email

3    providers such as Google, and Plaintiff Nobles' statement that she chooses to email her family

4    members at their Yahoo Mail accounts despite having other means to communicate with them.

5    Again, the Court finds that Yahoo has failed to explain why these particular facts would render

6    Plaintiffs' claims atypical of those of the proposed class. To the extent Yahoo appears to be

7    arguing that these facts show that Plaintiffs Baker, Adams, and Nobles have consented to Yahoo's

8    scanning, interception, and use of Plaintiffs' emails, the Court concludes for the reasons discussed

9    above that any consent defense will likely be typical of the proposed class. If these individual facts

10   are not relevant to Plaintiffs' claims or Yahoo's defenses, then these additional facts are ultimately

11   irrelevant to the typicality analysis. *See Rodriguez*, 591 F.3d at 1124.

12        Furthermore, the Court finds Yahoo's arguments regarding spam filtering and scanning for

13   viruses and malware to be immaterial to the typicality analysis. Yahoo takes certain statements

14   made by Plaintiffs as evidence that many class members may believe that scanning for spam,

15   viruses, and malware is desirable and beneficial. However, as Plaintiffs note, that belief does not

16   necessarily mean that class members would want the contents of their emails scanned, extracted,

17   stored, and then used for commercial purposes such as targeted advertising. As discussed above,

18   "Rule 23(a)(3) focuses on "the defendants' conduct and plaintiff's legal theory." *Sisley v. Sprint*

19   *Commc'ns Co., L.P.*, 284 F. App'x 463, 468 (9th Cir. 2008). That Plaintiffs might have individual

20   subjective beliefs about the value of certain types of filtering, or have consented to scanning by

21   *other* email providers, does not vitiate the nature of Yahoo's alleged conduct or Plaintiffs' basic

22   legal claims under the SCA or CIPA.

23        Yahoo also notes in passing that Plaintiffs' claims are atypical because Plaintiffs have not

24   proven that Yahoo shared content from their emails with third parties in violation of the SCA.

25   Yahoo fails to explain why this is relevant to the typicality analysis. As an initial matter, Plaintiffs

26   are not obligated to prove the merits of their claims at the class certification stage. *See Amgen*, 133

27   S. Ct. at 1210 ("A plaintiff seeking class certification is not required to prove the elements of his

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1  [or her] claim at the certification stage . . . .”); *see also In re High-Tech Empl. Antitrust Litig.*, 985

2  F. Supp. 2d 1167, 1187 (N.D. Cal. 2013) (Plaintiffs are not required to “prove elements of their

3  substantive case at the class certification stage”). Moreover, Plaintiffs contend that Yahoo has, in

4  fact, shared extracted information from emails with third parties based on disclosures on Yahoo’s

5  FAQ page. Yahoo’s FAQ page states “4. Does Yahoo Mail automatically share my messages with

6  anyone else? Your messages are shared only with [t]he people you want. Yahoo may

7  anonymously share specific objects from a message with a 3rd party to provide a more relevant

8  experience within your mail.” Girard Decl., Exh. 24. Consequently, the Court finds Yahoo’s

9  argument unpersuasive.

10      In sum, the Court finds that Plaintiffs’ claims are typical of the proposed class.

11      **4.   Adequacy**

12      In the Ninth Circuit, to test the adequacy of a class representative, courts ask two

13  questions: “(1) do the named plaintiffs and their counsel have any conflicts of interest with other

14  class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously

15  on behalf of the class?” *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*,

16  150 F.3d at 1020).

17      The Court finds Plaintiffs to be adequate class representatives. Plaintiffs and the proposed

18  class share the same claims and interest in obtaining relief, and Plaintiffs are vigorously pursuing

19  relief on behalf of the proposed class. The Court also finds that Plaintiffs’ counsel has experience

20  in prosecuting consumer fraud and data privacy class actions. *See* ECF Nos. 60-44, 61 (exhibits of

21  class counsel detailing experience prosecuting data privacy and consumer protection class

22  actions).

23      In opposition, Yahoo argues that Plaintiffs are inadequate class representatives because (1)

24  Plaintiffs have continued to email Yahoo Mail subscribers; (2) Plaintiffs have abandoned claims

25  for monetary relief; and (3) class members would oppose the relief sought. Opp. at 12–14.

26  Yahoo’s first argument is nearly identical to Yahoo’s arguments with respect to the typicality of

27  Plaintiffs’ claims. Yahoo does not explain why Plaintiffs’ alleged subsequent consent to Yahoo’s

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    conduct would render Plaintiffs inadequate class representatives. As discussed above, any

2    defenses with respect to consent are likely to be typical of the class. The existence of this potential

3    defense does not create a conflict of interest between Plaintiffs and proposed class members or

4    otherwise affect Plaintiffs' ability to vigorously prosecute this action. *See Staton*, 327 F.3d at 957.

5           The Court further concludes that Plaintiffs' decision to only pursue certification of an

6    injunctive relief class under Rule 23(b)(2) does not affect Plaintiffs' adequacy to serve as class

7    representatives. Here, Yahoo takes issue with Plaintiffs' decision to pursue class certification only

8    under Rule 23(b)(2) and not also under Rule 23(b)(3). Yahoo appears to be arguing that Plaintiffs

9    should have also sought certification of a damages class under Rule 23(b)(3). As Yahoo is well

10   aware, however, the Court found in *Gmail* that issues of implied consent defeated predominance

11   as required under Rule 23(b)(3), and the *Gmail* plaintiffs were unsuccessful in certifying a Rule

12   23(b)(3) class. *See* 2014 WL 1102660, at *21. Indeed, Yahoo relies heavily on the "individualized

13   factual inquiry" language that this Court used in *Gmail* in arguing that Plaintiffs cannot satisfy the

14   commonality requirement of Rule 23(a). In light of the Court's decision in *Gmail*, Plaintiffs have

15   made the strategic decision to seek certification only under Rule 23(b)(2), which does not require

16   common questions to predominate over individual issues. As Plaintiffs note, Plaintiffs are not

17   required to pursue claims or remedies that would preclude class certification. *See, e.g.*, *Kennedy v.*

18   *Jackson Nat'l Life Ins. Co*, No. 10-07-0371 CW, 2010 WL 2524360, at *5 (N.D. Cal. June 23,

19   2010) ("Defendant cannot claim that Plaintiff is inadequate because she declines to assert a theory

20   that could unravel the putative class.").

21          Yahoo further argues that Plaintiffs' decision to forgo moving to certify a damages class

22   under Rule 23(b)(3) "impermissibly prioritizes potential success in the litigation over the rights of

23   individual class members to pursue monetary relief." Opp. at 13. Yahoo appears to be arguing that

24   certifying a Rule 23(b)(2) class in the instant case would somehow prevent or preclude proposed

25   class members from bringing individual claims for statutory damages. *See id.* As Yahoo notes,

26   CIPA provides for statutory damages of at least $5,000, Cal. Penal Code § 637.2(a), and the SCA

27   provides for statutory damages of at least $1,000, 18 U.S.C. § 2707(c). *See* Opp. at 13 n.5.

28

United States District Court
Northern District of California

25

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    However, Yahoo cites little authority for the proposition that certification of a Rule 23(b)(2) class

2    would preclude individual claims for damages,[7] and the Court concludes that certification of a

3    Rule 23(b)(2) class would not necessarily preclude such claims. In the Ninth Circuit, "the general

4    rule is that a class action suit seeking only declaratory and injunctive relief does not bar

5    subsequent individual damages claims by class members, even if based on the same events." *Hiser*

6    *v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996). Indeed, "every federal court of appeals that has

7    considered the question has held that a class action seeking only declaratory or injunctive relief

8    does not bar subsequent individual suits for damages." *Id.* (quoting *In re Jackson Lockdown/MCO*

9    *Cases*, 568 F. Supp. 869, 892 (E.D. Mich. 1983)). As another court in this District concluded, the

10   United States Supreme Court's decision in *Dukes* only "confirms what common sense suggests: a

11   Rule 23(b)(2) judgment, with its one-size-fits-all approach and its limited procedural protections,

12   will not preclude later claims for individualized relief." *In re TFT-LCD (Flat Panel) Antitrust*

13   *Litig.*, No. 7-1827 SI, 2012 WL 273883, at *3 (N.D. Cal. Jan. 30, 2012).

14        Yahoo also contends that class members would "not want or benefit from" the injunctive

15   relief Plaintiffs seek. More specifically, Yahoo argues that "Plaintiffs thus in essence seek to shut

16   down scanning," which would result in Yahoo being unable to prevent the delivery of spam emails

17   and malware. *See* Opp. at 14. Plaintiffs contend that they challenge only the method that Yahoo

18   uses to filter for spam. Reply at 5. Plaintiffs also dispute whether Yahoo's particular scanning

19   methods, which allegedly involve "extracting, learning the meaning of, and using the content of

20   non-subscribers' emails," are actually necessary to filter for spam or malware. Plaintiffs contend

21   that Yahoo "can and does provide email services" to some Yahoo Mail subscribers without

22   intercepting, scanning, and analyzing emails "for commercial purposes." According to Plaintiffs,

23

24   [7] Yahoo cites *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 558 (C.D. Cal. 2012), but
     that case is inapposite. The *Cholakyan* court concluded that none of the remedies proposed by the

25   plaintiff would result in classwide relief, as required under Rule 23(b)(2). *Id.* at 559. It did not
     discuss whether certification of an injunctive relief class would preclude individual damages

26   claims. Moreover, the Court agrees with the *In re TFT-LCD* court's conclusion that cases like
     *Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271, 274 (C.D. Cal. 2002),

27   the only other case Yahoo cites, involved putative classes seeking monetary damages and not
     injunctive relief. *See In re TFT-LCD*, 2012 WL 273883, at *3 n.5 (discussing cases).

28
                                              26
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    Yahoo "cannot use email to target ads to users" without consent from both the sender and receiver

2    in the ████████. Yahoo therefore does not provide targeted advertising to Yahoo Mail

3    subscribers in the ████████. Girard Decl., Exh. 20 (YAH00009864–65). Ultimately, these

4    disputes are not particularly relevant here. "A difference of opinion about the propriety of the

5    specific relief sought in a class action among potential class members is not sufficient to defeat

6    certification." *Californians for Disability Rights*, 249 F.R.D. at 348; *see also* 1 Newberg on Class

7    Actions § 3:30 ("As a general rule, disapproval of the action by some class members should not be

8    sufficient to preclude a class action on the ground of inadequate representation."). Here, the Court

9    finds that the relief that Plaintiffs seek does not conflict with the interests of proposed class

10   members.

11        The Court therefore concludes that Plaintiffs are adequate class representatives.

12        **5.  Ascertainability**

13        The parties dispute whether and to what degree the ascertainability requirement applies to

14   proposed classes under Rule 23(b)(2). As the parties recognize, courts addressing motions to

15   certify classes under Rule 23(b)(3) have held that "apart from the explicit requirements of Rule

16   23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable

17   class exists." *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal.

18   Feb. 13, 2014) (motion to certify class under Rule 23(b)(3)). Under this line of cases, a class is

19   ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible

20   to determine whether a particular individual is a member of the class." *See Wolph v. Acer Am.*

21   *Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23, 2012) (certifying a Rule

22   23(b)(3) class where "the identity and contact information for a significant portion of these

23   individuals can be obtained from the warranty registration information and through Acer's

24   customer service databases").

25        Plaintiffs contend that the ascertainability requirement does not apply to Rule 23(b)(2)

26   classes, and that even if it did apply, Plaintiffs' proposed class definition satisfies the

27   ascertainability requirement. As a threshold matter, the Court notes that the Ninth Circuit has not

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   expressly addressed the issue of whether the judicially implied ascertainability requirement applies

2   when a plaintiff moves to certify a class only under Rule 23(b)(2). However, every other circuit to

3   address the issue has concluded that the ascertainability requirement does not apply to Rule

4   23(b)(2) classes. *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule

5   23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of

6   [sic] other federal courts all lead us to conclude that ascertainability is not a requirement for

7   certification of a (b)(2) class seeking only injunctive and declaratory relief . . . ."); *Shook v. El

8   Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[M]any courts have found Rule 23(b)(2) well

9   suited for cases where the composition of the class is not readily ascertainable . . . ."); *Yaffe v.

10  Powers*, 454 F.2d 1362, 1366 (1st Cir. 1976) (no ascertainability requirement for Rule 23(b)(2)

11  classes).

12          In the absence of Ninth Circuit authority to the contrary, the Court finds the Third Circuit's

13  decision in *Shelton* to be instructive. As the *Shelton* court explained, the ascertainability

14  requirement "requires something more than a class capable of clear definition by a court; it

15  requires that the class's members be identifiable." 775 F.3d at 560. This additional specificity is

16  necessary in Rule 23(b)(3) classes, as Congress has imposed "additional 'procedural safeguards

17  for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members.'" *Shelton*, 775

18  F.3d at 560 (quoting *Comcast*, 133 S. Ct. at 1432). More specifically, in Rule 23(b)(3) classes,

19  potential class members must be given the opportunity to opt out and the "best notice that is

20  practicable under the circumstances, including individual notice to all members who can be

21  identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In order to satisfy these

22  procedural safeguards, the Court must be able to ascertain, i.e., identify potential class members.

23          Rule 23(b)(2) classes, in contrast, serve a different purpose than Rule 23(b)(3) classes and,

24  consequently, do not impose the same procedural safeguards. "The key to the (b)(2) class is the

25  indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

26  is such that it can be enjoined or declared unlawful only as to all of the class members or as to

27  none of them." *Dukes*, 131 S. Ct. at 2257 (internal quotation marks omitted). As the focus of a

28

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Rule 23(b)(2) class is "on the nature of the remedy sought . . . the identities of individual class

2    members are less critical in a (b)(2) action than in a (b)(3) action." *Shelton*, 775 F.3d at 561.

3    Accordingly, Rule 23(b)(2) does not impose the same procedural safeguards as Rule 23(b)(3). *See*

4    *Dukes*, 131 S. Ct. at 2558–59 ("The procedural protections attending the (b)(3) class—

5    predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not

6    because the Rule considers them unnecessary, but because it considers them unnecessary *to a*

7    *(b)(2) class*."). As the Third Circuit explained, "the enforcement of the remedy usually does not

8    require individual identification of class members in (b)(2) class actions: 'If relief is granted . . .

9    the defendants are legally obligated to comply, and it is usually unnecessary to define with

10   precision the persons entitled to enforce compliance . . . .'" *Shelton*, 775 F.3d at 561 (quoting *Rice*

11   *v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974)). Thus as a matter of practical

12   application, the ascertainability requirement serves little purpose in Rule 23(b)(2) classes, as there

13   will generally be no need to identify individual class members.

14        The Court therefore concludes that the ascertainability requirement does not apply to Rule

15   23(b)(2) actions.[8] This does not obviate the basic requirement that Plaintiffs provide a clear class

16   definition under Rule 23(c)(1)(B). *See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class

17   action must define the class and the class claims, issues, or defenses . . . ."). In the instant case,

18   Plaintiffs propose a class of "all persons in the United States who are not Yahoo Mail subscribers

19   and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2,

20

21   _____

22   [8] The Court also notes that to the extent an ascertainability requirement might apply to Rule
     23(b)(2), Plaintiffs' proposed class definition would satisfy it. "In this Circuit, it is enough that the

23   class definition describes a set of common characteristics sufficient to allow a prospective plaintiff
     to identify himself or herself as having a right to recover based on the description." *McCrary v.*

24   *Elations Co., LLC*, No. 13-00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). As
     Plaintiffs note, class member self-identification may be more reliable in the instant case than in

25   others, as potential class members can check their emails to see whether they sent or received
     emails from Yahoo Mail subscribers within the class period. To the extent Yahoo objects to the

26   class definition's inclusion of future class members, the Court finds Yahoo's objection
     unpersuasive. *See Williams v. City of Antioch*, No. 08-2301, 2010 WL 3632197, at *6 (N.D. Cal.

27   Sept. 2, 2010) ("[It] is well-settled that a class may be defined to include individuals who may not
     become part of the class until later." (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir.

28   2010))).

                                                    29
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in

2  the future." Mot. at 1. Yahoo does not argue that this proposed definition is so unclear as to fail to

3  satisfy Rule 23(c)(1)(B), and the Court concludes that Plaintiffs' proposed class definition is

4  sufficiently clear.

5         In addition to its ascertainability arguments, Yahoo also asserts that the class definition is

6  overbroad because CIPA has a one year statute of limitations. *See* Opp. at 15 (citing *Montalti v.*

7  *Catanzariti*, 191 Cal. App. 3d 96, 98 (Ct. App. 1987)). As Plaintiffs note, however, claims under

8  the SCA are subject to a two year statute of limitations. For the reasons discussed in Part D, the

9  Court certifies a nationwide class as to Plaintiffs' SCA claim and a California-only subclass as to

10  Plaintiffs' CIPA claim. As the first class action complaint related to this consolidated action was

11  filed on October 2, 2013, [9] the class period as to the SCA claim properly commences on October

12  2, 2011, and the class period as to the CIPA claim properly commences on October 2, 2012. *See*

13  *Kevranian v. Yahoo!*, 13-cv-04547-LHK, ECF No. 1.

14         In sum, the Court finds that Plaintiffs have satisfied the numerosity, commonality,

15  typicality, and adequacy requirements of Rule 23(a).

16  **C. Rule 23(b)(2)**

17         In addition to the Rule 23(a) requirements, Plaintiffs also bear the burden of showing that

18  the proposed class satisfies the requirements of Rule 23(b)(2). An injunctive class can be certified

19  under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds

20  that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

21  appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a

22  plaintiff does not need to show predominance of common issues or superiority of class

23  adjudication to certify a Rule 23(b)(2) class. Rather, "[i]t is sufficient if class members complain

24

25  ───────────────

26  [9] The Court granted the *Kevranian* plaintiff's stipulation to dismiss his action without prejudice on January 8, 2014. *See* Case No. 13-cv-04547-LHK, ECF No. 36. The Court had previously related *Kevranian* to the instant cases. *See* ECF No. 27. The Court granted Plaintiffs' motion to

27  consolidate the remaining individual cases on January 22, 2014. *See* Case No. 13-cv-4980-LHK, ECF No. 26.

28         30
   Case No.13-CV-04980-LHK
   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters*, 145 F.3d at 1047.

Here, the Court concludes that the proposed class satisfies the requirements of Rule 23(b)(2). Plaintiffs contend that all emails sent from and to Yahoo Mail subscribers are subject to the same interception and scanning processes. Girard Decl., Ex. 1 (Doron Depo.) at 22:4–10, 38:19–40:23, 47:14–49:1; Exh. 3, ¶ 1.c. As such, Plaintiffs challenge a "pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. Moreover, Plaintiffs seek only injunctive and declaratory relief, which is appropriate under Rule 23(b)(2). *See id.*; *see also Ries*, 287 F.R.D. at 540–41 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011)).

Yahoo contends that Plaintiffs' proposed class lacks cohesiveness because consent to Yahoo's practices cannot be determined on a class basis. Opp. at 19. More specifically, Yahoo argues that "[t]he need for individualized inquiries" would make it too difficult to determine whether any class member "has a claim and has suffered a common injury." *Id.* This argument presumes, however, that individual class members must prove their claims or individualized injuries in order for Rule 23(b)(2) certification to be appropriate. As the Ninth Circuit explained in *Walters*, "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." 145 F.3d at 1047 (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed.) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).")). In contrast to Rule 23(b)(3) classes, the focus is not on the claims of individual class members, but rather whether Yahoo has engaged in a "common policy." *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Walter*s, 145 F.3d at 1047.

Yahoo's focus on whether a potential class member has consented to Yahoo's interception and use of his or her emails loses sight of the purpose of Rule 23(b)(2). It may be the case that some class members, i.e., individuals who sent or received emails from Yahoo Mail subscribers

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   during the class period, did so knowing that Yahoo would intercept, scan, and disclose the

2   contents of their emails to third parties. However, "[t]he rule does not require us to examine the

3   viability or bases of class members' claims for declaratory and injunctive relief, but only to look at

4   whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*,

5   591 F.3d at 1125; *see also Zinser*, 253 F.3d at 1195. More importantly, under Rule 23(b)(2), a

6   class may be certified even where "some class members may have suffered no injury or different

7   injuries from the challenged practice." *Id.* (citing *Walters*, 145 F.3d at 1047; *Gibson v. Local 40,*

8   *Supercargoes & Checkers*, 543 F.2d 1259, 1264 (9th Cir. 1976)).

9         The Court finds *Rodriguez* to be illustrative. In *Rodriguez*, a class of individuals detained

10   without bond hearings pending immigration proceedings moved to certify a class under Rule

11   23(b)(2). 591 F.3d at 1111. Specifically, the plaintiffs sought injunctive relief providing individual

12   bond hearings to all class members, in which the government would bear the burden of proof. *Id.*

13   The defendants argued that certification under Rule 23(b)(2) was inappropriate because some class

14   members might not be entitled to bond hearings under mandatory detention rules and other class

15   members were subject to regulations governing the burden of proof. *Id.* at 1125. As such, the

16   individual class members would have different bases for relief, be entitled to different levels of

17   relief, and potentially be ineligible for relief altogether. *Id.* In rejecting the defendants' argument,

18   the Ninth Circuit made clear that Rule 23(b)(2) certification was appropriate even though some

19   class members might not be entitled to any relief and the legally detained class members might not

20   have actually suffered a cognizable injury. *See id.* at 1125–26. As the Ninth Circuit explained, the

21   defendants' arguments "miss[ed] the point of Rule 23(b)(2)." *Id.* at 1125. Rule 23(b)(2), "does not

22   require us to examine the viability or bases of class members' claims for declaratory and

23   injunctive relief, but only to look at whether class members seek uniform relief from a practice

24   applicable to all of them." *Id.* Focusing on the requested relief from a uniform practice, the Ninth

25   Circuit concluded that certification under Rule 23(b)(2) would be appropriate.

26         Like the defendants in *Rodriguez*, Yahoo contends that certification under Rule 23(b)(2) is

27   inappropriate because some class members may not be entitled to relief or may not have suffered a

28                                                              32
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    cognizable injury. *See id.* As in *Rodriguez*, Yahoo's arguments "miss the point of Rule 23(b)(2)."

2    *Id.* at 1125. "The fact that some class members may have suffered no injury or different injuries

3    from the challenged practice does not prevent the class from meeting the requirements of Rule

4    23(b)(2)." *Id.* Instead, the Court must examine whether Plaintiffs "seek uniform relief from a

5    practice applicable to" the entire class. *Id.* Yahoo may well be correct that some class members do

6    not have viable SCA or CIPA claims because they consented to Yahoo's conduct. That does not,

7    however, vitiate the operative fact that the proposed Rule 23(b)(2) class challenges Yahoo's

8    uniform policy of intercepting, scanning, and using contents of emails sent to and from Yahoo

9    Mail subscribers by non-Yahoo Mail subscribers. *See id.* at 1126. As in *Rodriguez*, Plaintiffs

10   "complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*,

11   145 F.3d at 1047. This is sufficient to satisfy Rule 23(b)(2).

12        In opposition, Yahoo cites *Lemon v. International Union of Operating Engineers*, 216 F.3d

13   577, 580 (7th Cir. 2000), but that case addressed the appropriateness of certifying a Rule 23(b)(2)

14   class where the plaintiffs sought money damages in addition to injunctive and declaratory relief. In

15   *Lemon*, the plaintiffs alleged discrimination on the basis of race and gender under Title VII of the

16   Civil Rights Act. *Id.* at 579. The district court certified a Rule 23(b)(2) class, notwithstanding the

17   fact that plaintiffs also sought compensatory and punitive damages. *Id.* at 579–80. On appeal, the

18   Seventh Circuit concluded that the individualized inquiries required to determine each class

19   members' entitlement to monetary damages were incompatible with Rule 23(b)(2)'s requirements

20   that the "interests of the class members are cohesive and homogeneous such that the case will not

21   depend on adjudication of facts particular to any subset of the class nor require a remedy that

22   differentiates materially among class members." *Id.* at 580. The court's analysis was specific to

23   the damages issue: "A suit for money damages, even if the plaintiffs seek uniform, class-wide

24   equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because

25   individual claims for compensatory or punitive damages typically require judicial inquiry into the

26   particularized merits of each individual plaintiff's claim." *Id.* Here, in contrast, Plaintiffs do not

27   seek monetary damages that will require "judicial inquiry into the particularized merits of each

28
                                          33
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    individual plaintiff's claim." *Id. Lemon* is therefore of little relevance here.

2         Yahoo also argues that Plaintiffs' requested injunctive relief is not "indivisible" because

3    Yahoo would have to determine consent on an individual basis. *See* Opp. at 20. Plaintiffs seek

4    injunctive relief "that requires Yahoo to cease scanning the emails of non-Yahoo Mail subscribers

5    without their consent, permanently delete all data it has collected and stored from non-subscribers'

6    email without their consent, and identify all individuals and entities with which [Yahoo] has

7    shared or sold information or data [Yahoo] collected from non-subscribers' emails." Mot. at 1.

8    According to Yahoo, there is "no 'single injunction' that would provide relief to class members"

9    because Yahoo would have to "on an e-mail by email basis, determine whether" class members

10   consented. Opp. at 20.

11        However, the Court concludes that Yahoo misunderstands the "indivisibility" requirement

12   under Rule 23(b)(2). The "indivisibility" requirement precludes certification where "each

13   individual class member would be entitled to a *different* injunction or declaratory judgment against

14   the defendant." *Dukes*, 131 S. Ct. at 2557. Here, while Yahoo appears to be contesting the

15   feasibility or ease of complying with an injunction requiring Yahoo to obtain a class member's

16   consent prior to scanning the class member's emails, this does not go to the indivisible nature of

17   the relief sought.[10] As discussed above, in *Rodriguez*, not all of the proposed class members would

18   have been entitled to an individual bond hearing with the burden of proof on the government, as

19   some class members were subject to mandatory detention or subject to a different burden of proof.

20

21   [10] The Court finds Yahoo's description of the requested injunctive relief as "setting back email
     services for decades" to be overly dramatic in light of the evidence in this case. Plaintiffs contest
22   the accuracy of Yahoo's characterization of the feasibility of determining consent. Relying on
     testimony from Yahoo's engineering director, Plaintiffs argue that ████████████████████████
23   ████████████████████████████████████████████████████████████████
     would ostensibly require a non-Yahoo Mail subscriber to consent to Yahoo's scanning and
24   interception prior to delivering the email to a Yahoo Mail subscriber. Plaintiffs further contend
     that ████████████████████████████████████████████████████████████████
25   Reply at 11 (citing Straite Decl., Exh. 1 (Shue Depo.), at 105:5–25, 121:19–123:12). Furthermore,
     Plaintiffs argue that Yahoo "can and does provide email services" to some Yahoo Mail subscribers
26   without intercepting, scanning, and analyzing emails "for commercial purposes." According to
     Plaintiffs, Yahoo "cannot use email to target ads to users" without consent from both the sender
27   and receiver in the ████████████. Yahoo therefore does not provide targeted advertising to
     Yahoo Mail subscribers in the ████████████. Girard Decl., Exh. 20 (YAH00009864–65).
28
     34
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   591 F.3d at 1125–26. As the Ninth Circuit concluded, however, the mere fact that a class

2   member's entitlement to relief might differ from individual to individual did not render the

3   requested injunctive relief improperly divisible. *Id.* As a practical matter, implementing the

4   requested injunctive relief in *Rodriguez* would have inevitably involved individualized

5   determinations of whether a class member was entitled to a bond hearing where the government

6   bore the burden of proof. Ultimately, the fact that the plaintiffs sought "relief from a single

7   practice," was sufficient to satisfy the "indivisibility" requirement. *Id.* at 1225–26. Likewise,

8   Yahoo may have to, as a practical matter, adjust its scanning practices on an individual basis. That

9   does not, however, change the fact that Plaintiffs seek uniform relief from a common policy that

10   Yahoo applies to all class members.

11          Furthermore, the fact that some class members might not want Yahoo to cease its

12   interception and scanning of non-Yahoo Mail subscribers' emails does not render Plaintiffs' Rule

13   23(b)(2) class improper. The cases on which Yahoo relies involved situations where class

14   members were no longer subject to the defendant's alleged wrongful conduct and would therefore

15   no longer benefit from the requested relief. *See* Opp. at 21. Consequently, certification under Rule

16   23(b)(2) was inappropriate. For instance, in *Schulken v. Washington Mutual Bank*, No. 09-2708,

17   2012 WL 28099, at *7 (N.D. Cal. Jan. 5, 2012), this Court concluded that class members who "*no*

18   *longer have* [lines of credit] with Chase" would not need the requested relief because "they are not

19   currently in a position to benefit from a change in Chase's policies and practices." Here, in

20   contrast, Yahoo does not argue that class members are no longer subject to its interception and

21   scanning practices and would therefore not benefit from the requested relief, but instead asserts

22   that some class members might not want the requested relief.[11] As such, the cases Yahoo cites are

23   not applicable to the instant case. Moreover, the Court notes that Yahoo has failed to put forth any

24

25   ────────────────────

26   [11] Yahoo also takes issue with the specific injunctive relief that Plaintiffs request, including the
     deletion of all data that Yahoo has stored from non-subscribers' emails. *See* Opp. at 21 n.11. At
     the class certification stage, however, Yahoo's "concern about the possible scope of an injunction

27   if Plaintiffs are successful on the merits is premature." *See, e.g.*, *McMillion v. Hawaii*, 261 F.R.D.
     536, 546 (D. Haw. 2009).

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    evidence of any proposed class member's opposition to the requested relief. Further, to the extent

2    any such opposition might exist, it would not preclude certification under Rule 23(b)(2). *See*

3    *Walters*, 145 F.3d at 1047 (citing 7A Wright, Miller & Kane, Federal Practice & Procedure § 1775

4    (2d ed.) ("All the class members need not be aggrieved by or desire to challenge the defendant's

5    conduct in order for some of them to seek relief under Rule 23(b)(2).")).

6        The Court therefore concludes that certification of an injunctive and declaratory relief class

7    under Rule 23(b)(2) is appropriate.

8      **D.  Choice of law**

9        While certification of a class might be appropriate under Rule 23(b)(2), the Court must

10   also determine whether application of California law to a nationwide class is appropriate as to

11   Plaintiffs' CIPA claim.[12]

12       A court must ensure that the certification of a nationwide class under the laws of a single

13   state comports with due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). In a

14   CAFA diversity action, this Court applies California's choice of law rules. *See Klaxon Co. v.

15   Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bruno v. Quten Research Institute, LLC*, 280

16   F.R.D. 524, 538 n.7 (C.D. Cal. 2011). "Under California's choice of law rules, the class action

17   proponent bears the initial burden to show that California has significant contact or significant

18   aggregation of contacts to the claims of each class member." *Mazza*, 666 F.3d at 589. "Once the

19   class action proponent makes this showing, the burden shifts to the other side to demonstrate that

20   foreign law, rather than California law, should apply to class claims." *Id*. at 590.

21       "[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and

22   is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state

23   interests.'" *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013)

24   ────────────────

25   [12] The Court notes that in *Mazza* the defendant argued the choice of law issue in the context of
     Rule 23(b)(3)'s predominance requirement. 666 F.3d at 589 ("Honda contends that common

26   issues of law do not predominate because California's consumer protection statutes may not be
     applied to a nationwide class with members in 44 jurisdictions."). The parties do not dispute that

27   this Court must apply choice of law principles to the proposed class even though Plaintiffs do not
     seek certification under Rule 23(b)(3).

28                       36

1  (citations omitted). Yahoo does not dispute that California has a constitutionally sufficient

2  aggregation of contacts to the claims of each putative class member in this case. The Court agrees,

3  as Yahoo's corporate headquarters are in California, the vast majority of Yahoo's executive

4  decision makers responsible for Yahoo Mail are located in California, and the processes used to

5  intercept, scan, and store email are developed and directed by Yahoo employees in California.

6  Reply at 13. Accordingly, the Court finds that Plaintiffs have met their initial burden. "California

7  has a constitutionally significant aggregation of contacts to the claims of each putative class

8  member in this case," and application of California law here poses no constitutional concerns.

9  *Mazza*, 666 F.3d at 591; *see also Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987)

10  (concluding application of California law was constitutionally permissible where defendant's

11  principal offices were in California and the allegedly fraudulent misrepresentations emanated from

12  California); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009)

13  (location of the defendant's headquarters is also a relevant factor in significant contact or

14  aggregation of contacts analyses).

15  Because the Court is satisfied that California has sufficient contacts with the proposed

16  class claims, the burden is on Yahoo to show "that foreign law, rather than California law, should

17  apply." *Mazza*, 666 F.3d at 590. California law may be applied on a classwide basis only if "the

18  interests of other states are not found to outweigh California's interest in having its law applied."

19  *Id.* (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). To determine

20  whether the interests of other states outweigh California's interest, courts administer the following

21  three-step government interest test. The court must first determine whether the law of the other

22  states is materially different from California law. *Mazza*, 666 F.3d at 590. Second, if there are

23  differences, the court determines whether the other state has an interest in having its law applied.

24  *Id.* at 591–92. Third, if another state has an interest, the court determines which state's interest

25  would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593.

26  **1. Material Differences in State Law**

27  The Court finds that Yahoo has met its burden on the first step of California's choice-of-

28  
37

United States District Court
Northern District of California

United States District Court
Northern District of California

1    law analysis. Plaintiffs concede, as they must, that there are material differences between CIPA

2    and the wiretapping statutes of the other 49 states. For example, some states expressly exclude

3    email from their wiretapping statutes, others require only single party consent, and still others

4    require plaintiffs to prove that they had either an objective or subjective expectation of privacy.

5    *See* Opp. at 22; Opp. at Attachment A. These differences are material, as their application would

6    "spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591.

7    Moreover, there are also "material differences in the remedies given by state laws," as some states

8    provide for injunctive relief while others do not, and the states vary as to whether damages may be

9    recovered. *See* Opp. at 22; Opp. at Attachment A.

10       **2.   Other States' Interests**

11       As for the second step, the Court finds that the other 49 states each have an interest in

12   applying their own law. As the Ninth Circuit explained in *Mazza*, "each foreign state has an

13   interest in applying its law to transactions within its borders," which means that "if California law

14   were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate

15   liability to foster commerce." 666 F.3d at 593. This reflects the "principle of federalism that each

16   State may make its own reasoned judgment about what conduct is permitted or proscribed within

17   its borders." *Id.* at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422

18   (2003)). Here, the purported nationwide class consists of members from 50 states, as Plaintiffs

19   allege that individuals from each of the 50 states that sent emails to and received emails from

20   Yahoo Mail subscribers had their emails intercepted and scanned by Yahoo. Each state has "an

21   interest in being able to delineate the appropriate standard of liability and the scope of recovery

22   based on its understanding of the balance between the interests of individuals and corporate

23   entities operating within its territory." *Frezza v. Google Inc.*, No. 12-237, 2013 WL 1736788, at

24   *7 (N.D. Cal. Apr. 22, 2013).

25       **3.   Comparative Impairment**

26       At the final step, where the states have conflicting policies, the Court must determine

27   which state's interest would be more impaired if its policy was subordinated to the policy of the

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   other state. *See Mazza*, 666 F.3d at 593–94. This last step of the analysis does not permit the Court

2   to weigh the conflicting state interests to determine which conflicting state law manifests the

3   "better" or "worthier" social policy. *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97

4   (2010)). Rather, "the Court must recognize the importance of federalism and every state's right to

5   protect its consumers and promote those businesses within its borders." *Gianino*, 846 F. Supp. 2d.

6   at 1103. Here, for the reasons stated below, the Court finds that other states' interests would be

7   most impaired by applying California law to non-Californian class members. The Court begins by

8   outlining California's interest in applying CIPA to California residents, before turning to

9   California's interest in applying CIPA to non-California residents and other states' comparative

10   interests in applying their own laws to their own residents.

11       Here, the Court agrees with Plaintiffs that California has an interest in applying its own

12   privacy laws to communications and putative class members within California, as well as to

13   entities operating within California. Yahoo is headquartered in Sunnyvale, California, the vast

14   majority of Yahoo's executive decision makers responsible for Yahoo Mail are located in

15   California, and the processes used to intercept, scan, and store email are developed and directed by

16   Yahoo employees in California. Compl. ¶ 19; Reply at 13. Moreover, Yahoo does not contest that

17   California has an interest in applying its own laws to its own residents. Having concluded that

18   California has a greater interest in applying its own laws to its own residents does not, however,

19   address whether California has a greater interest in applying its own laws to a non-resident than

20   the non-resident's home state.

21       The Court therefore turns to California's interest in applying its laws to non-residents. As

22   Plaintiffs must concede, California's interest in applying its law to nonresidents who send or

23   receive emails from Yahoo Mail subscribers in other states is more attenuated. *See Mazza*, 666

24   F.3d at 594 ("California's interest in applying its law to residents of foreign states is attenuated.")

25   (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). As a general matter, "California

26   recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the

27   wrong has the predominant interest." *Mazza*, 666 F.3d at 593 (quoting *Hernandez v. Burger*, 102

28

United States District Court
Northern District of California

1    Cal. App. 3d 795, 802 (Ct. App. 1980)). The Court recognizes that the "place of the wrong" is less

2    clear in the instant case than it was in *Mazza*. As Plaintiffs note, the actual interception and

3    scanning of emails occurs in data centers located throughout the country and the physical location

4    of the sender or receiver does not necessarily determine whether an email will be intercepted in

5    one state or another. *See* Straite Decl., Exh. 1 ("Shue Depo.") at 125:3–10. There is no easily

6    identifiable "place of the wrong," as emails sent by a proposed class member in New York to a

7    Yahoo Mail subscriber in Texas may be intercepted in New York, Virginia, Nebraska, or any other

8    state where Yahoo maintains a data center. This is in contrast to the scenario presented in *Mazza*,

9    where the physical location where a consumer saw and relied on an allegedly misleading

10   advertisement could be easily identified. *Mazza*, 666 F.3d at 593–94 ("[T]he last events necessary

11   for liability as to the foreign class members—communication of the advertisements to the

12   claimants and their reliance thereon in purchasing vehicles—took place in the various foreign

13   states, not in California.").

14          While the "place of the wrong" analysis offers less direct guidance here, it is not entirely

15   inapplicable. The Court sees little reason why California's interest would be more greatly impaired

16   than the class member's home state's interest where a putative class member is located outside of

17   California, his or her emails are intercepted in data centers outside of California, and the Yahoo

18   Mail subscriber is located outside of California. Plaintiffs do not dispute Yahoo's claim that the

19   majority of emails sent and received by putative class members would not be routed through

20   California. Shue Decl. ¶ 2; Kaufman Decl. Exh. M at 48:1–5. Instead, Plaintiffs argue that

21   California has a strong interest in regulating conduct that "emanates from within its borders." Mot.

22   at 20. While that generic interest might be sufficient to satisfy constitutional due process

23   requirements as to Yahoo, California's specific interest in applying its privacy laws to non-

24   residents under choice-of-law rules is less clear. *See, e.g.*, *Keilholtz v. Lennox Hearth Prods. Inc.*,

25   268 F.R.D. 330, 340 (N.D. Cal. 2010) (finding the defendant's conduct "emanated from

26   California" which satisfied due process concerns before turning to the choice-of-law analysis).

27          Moreover, the Court finds further support for its conclusion that California has a

28
                                                       40
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    comparatively lesser interest in applying CIPA to non-residents in the statute itself. Plaintiffs fail

2    to acknowledge that in enacting CIPA, the California legislature specifically stated that its intent

3    was to "protect the right of privacy of the *people of this state*." Cal. Penal Code § 630 (emphasis

4    added); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 124–26 (2006) ("[T]he

5    objective of protecting individuals in California from the secret recording of confidential

6    communications by or at the behest of another party to the communication was one of the

7    principal purposes underlying the 1967 invasion-of-privacy enactment."). This statement of intent

8    "lie[s] at the heart of virtually all the decisions construing [CIPA]." *Ribas v. Clark*, 38 Cal. 3d

9    355, 359 (1985); *see also Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1011 (C.D. Cal.

10   2014) (discussing "California's clearly expressed interest in protecting its residents from secretly

11   recorded phone calls").

12          The cases on which Plaintiffs rely for the general proposition that California has an interest

13   in protecting non-resident plaintiffs against "conduct emanating from California" are pre-*Mazza*

14   cases discussing the applicability of California consumer protection laws, including California's

15   Unfair Competition Law ("UCL"). *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL

16   8742757 (N.D. Cal. Dec. 21, 2010) (UCL and California Cartwright Act claims); *Wolph v. Acer

17   Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) (UCL, California Consumers Legal Remedies Act,

18   and California False Advertising Law claims); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580

19   (C.D. Cal. 2008) (UCL and California Consumers Legal Remedies Act claims). Even assuming

20   these cases remain good law after *Mazza*, these cases do not address whether CIPA should be

21   applied extraterritorially to non-resident plaintiffs.[13] Unlike the more limited purpose of CIPA,

22

23   _____

24   [13] Plaintiffs cite *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026 (N.D. Cal. 2011), in
     support of their argument that CIPA should apply to non-resident plaintiffs, but that case is
25   inapposite. In *Valentine*, the court concluded that non-resident plaintiffs had standing to bring
     claims under CIPA against a resident defendant where the intercepted communications were
26   routed to the defendant's California headquarters for analysis. *Id.* at 1024, 1026. The *Valentine*
     court did not address whether CIPA should apply to a nationwide class where there are material
27   conflicts of law and the intercepted communications may never pass through California.

28
     Case No.13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   California's UCL serves the broader purposes of protecting "the Public . . . from fraud and deceit,"

2   and preserving "fair business competition." *Jonczyk v. First Nat'l Capital Corp.*, No. 13-959, 2014

3   WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (quoting *Barquis v. Merchants Collection Ass'n*, 7

4   Cal. 3d 94, 110 (1972), and *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

5   163, 180 (1999)). Accordingly, California "has [an] interest in applying the UCL to the activities

6   of California businesses, regardless of whether injuries resulting from those activities are

7   experienced by a California resident." *Jonczyk*, 2014 WL 1689281, at *4. It is less evident how

8   much interest, if any, California has to applying CIPA to protect non-residents when the stated

9   purpose of the law is to protect the privacy rights of Californians.

10          Consequently, the Court concludes that for proposed class members who are not California

11   residents, California has less interest in applying CIPA in the first instance. Accordingly,

12   California's lesser interest in applying CIPA to non-residents would not be significantly impaired

13   by applying the laws of other states. *See Jonczyk*, 2014 WL 1689281, at *4 ("Because Plaintiff is

14   not a California resident, California's interest in applying the CIPA will not be significantly

15   impaired if Missouri law is applied in this action.").

16          The Court now turns to the comparative interest that the other 49 states have in applying

17   their own laws to their own residents. Here, the Court finds that the home states of non-California

18   class members have a significant interest in applying their own wiretapping laws to their residents.

19   The 50 states' variations in degrees of protection, requirements for consent, and available

20   remedies reflect the states' "valid interest in shielding out-of-state businesses from what the state

21   may consider to be excessive litigation," because "[i]n our federal system, states may permissibly

22   differ on the extent to which they will tolerate a degree of lessened protection for consumers to

23   create a more favorable business climate for the companies that the state seeks to attract to do

24   business in the state." *Mazza*, 666 F.3d at 592–93. The individual states also have valid interests in

25   balancing the privacy interests of their residents with free speech considerations. *Cf. People v.*

26   *Clark*, 6 N.E. 3d 154 (Ill. 2014) (balancing "governmental interest" in "protecting individuals

27   from the surreptitious monitoring of their conversations," with First Amendment free speech

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1   considerations).

2   Plaintiffs further argue that "class members' home states do not have an interest in

3   depriving their residents of greater privacy protections available" under California law. *See* Mot.

4   at 20. However, the choice-of-law analysis does not permit the Court to weigh the conflicting state

5   interests to determine which conflicting state law manifests the "better" or "worthier" social

6   policy. *Mazza*, 666 F.3d at 593–94 (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97

7   (2010)). The Court may not second guess the decisions of other states that choose to strike a

8   different balance in deciding how to best protect the privacy rights of their residents while

9   balancing the desire to attract businesses that provide valuable services to their residents. *See*

10  *Gianino*, 846 F. Supp. 2d. at 1103 ("[T]he Court must recognize the importance of federalism and

11  every state's right to protect its consumers and promote those businesses within its borders.").

12  In sum, the Court concludes that for non-California class members, other states' interests

13  would be more impaired by applying California law than would California's interests by applying

14  other states' laws. Certification of the nationwide class under California law therefore would be

15  improper. Each nonresident class member's state law claims should be governed by and decided

16  under the wiretapping laws of the state in which the class member resides. Because adjudication of

17  the state law claims will require application of the laws of 50 states, a nationwide class would not

18  satisfy the cohesiveness requirement under Rule 23(b)(2). Significantly different legal issues will

19  arise out of the claims of class members from the various states, and these different legal issues

20  eclipse any common issues of law that exist.

21  Plaintiffs request, in the alternative, that the Court certify a California-only subclass as to

22  their CIPA claim. *See* Mot. at 22; Reply at 14. Plaintiffs note that Plaintiff Pincus and Plaintiff

23  Abrams are California residents and can adequately represent the class. *See* Reply at 14. As the

24  Court has found that the Rule 23(a) and Rule 23(b)(2) requirements would otherwise be satisfied,

25  the Court grants Plaintiffs' request and certifies a California-only subclass as to the CIPA claim.

26  **IV.   CONCLUSION**

27  For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs'

28
43
Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   motion for class certification. The Court grants Plaintiffs' motion to certify a nationwide class as

2   to Plaintiffs' SCA claim, but denies Plaintiffs' motion to certify a nationwide class as to Plaintiffs'

3   CIPA claim. The Court grants Plaintiffs' motion to certify a California-only subclass as to

4   Plaintiffs' CIPA claim. The Court therefore certifies the following class and subclass:

5        As to Plaintiffs' SCA claim: All persons in the United States who are not Yahoo Mail

6   subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

7   October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail

8   subscriber in the future.

9        As to Plaintiffs' CIPA claim: All persons in California who are not Yahoo Mail

10   subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

11   October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail

12   subscriber in the future.

13        The Court appoints Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima

14   Nobles as representatives of the nationwide SCA class, and Plaintiffs Brian Pincus and Rebecca

15   Abrams as representatives of the California-only CIPA subclass. The Court appoints Girard Gibbs

16   and Kaplan Fox as class counsel. Within 14 days of the date of this Order, Plaintiffs shall file an

17   amended complaint that amends the class definition to comport with the Court's certified class

18   definitions. Plaintiffs may not make any other substantive change to the complaint, unless Yahoo

19   stipulates to the change.

20   **IT IS SO ORDERED.**

21   Dated: May 26, 2015

22

23   LUCY H. KOH
     United States District Judge

24

25

26

27

28

Case No.13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE YAHOO MAIL LITIGATION | ) Case No.: 5:13-CV-04980 )<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART DEFENDANT'S<br>) MOTION TO DISMISS<br>)<br>)<br>) |

This case involves putative class action claims regarding Defendant Yahoo!, Inc.'s ("Yahoo") practice of scanning and analyzing emails of non-Yahoo Mail users in purported violation of federal and California anti-wiretapping laws. Plaintiffs Cody Baker, Brian Pincus, Halima Nobles, and Rebecca Abrams, individually and on behalf of those similarly situated ("Plaintiffs"), allege that Yahoo's operation of its Yahoo Mail service violates their expectation of privacy under the Electronic Communications Privacy Act (ECPA), California's Invasion of Privacy Act (CIPA), and the California Constitution. Plaintiffs filed a Consolidated Class Action Complaint on February 12, 2014. ECF No. 35 ("Compl."). Before the Court is Yahoo's Motion to Dismiss. ECF No. 37 ("Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without a hearing and hereby VACATES the hearing set for August 29, 2014. The Case Management Conference set for August 29, 2014 at 10 a.m. remains as set. For the reasons stated below, the Court DENIES in part and GRANTS in part Yahoo's Motion to Dismiss.

1

**United States District Court**
For the Northern District of California

1  transit." Yahoo does not provide the Court with any judicially noticeable information as supporting

2  evidence for its claim that the emails had already reached Yahoo's servers when Yahoo accessed

3  them. The Court will consider Yahoo's argument that the term "intercept" under the Wiretap Act

4  does not apply to the en route storage of electronic communications if and when Yahoo shows, at

5  the summary judgment stage after discovery, that Yahoo intercepted users' emails after those

6  emails had already reached Yahoo's servers. Accordingly, the Court DENIES Yahoo's Motion to

7  Dismiss Plaintiffs' Wiretap Act claim on the basis that the Wiretap Act does not apply to the

8  emails at issue.

9  **b.    Consent**

10  Plaintiffs allege Yahoo's operation of Yahoo Mail involves the knowing and purposeful

11  interception of emails "in transit to and from Yahoo Mail accounts" without consent and "for

12  [Yahoo's] own profit." Compl. ¶¶ 79-81. Yahoo moves to dismiss the Wiretap Act claim on the

13  ground that Yahoo obtained express consent for its interception and email scanning from all Yahoo

14  Mail users when they signed up for Yahoo Mail. Mot. at 7. Plaintiffs respond there is no consent by

15  Yahoo Mail users because none of Yahoo's terms adequately discloses that Yahoo engages in this

16  conduct. Opp'n at 11. The Court GRANTS Yahoo's Motion to Dismiss for the reasons stated

17  below.

18  Consent to an interception under the Wiretap Act may be either explicit or implied, but it

19  must be actual. *See United States v. Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v.*

20  *Amen*, 831 F.3d 373, 378 (2d Cir. 1987); *United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th

21  Cir. 2003). The Wiretap Act only requires one party to the communication to consent to an

22  interception to relieve the provider of liability. 18 U.S.C. § 2511(2)(d). Thus, Yahoo has not

23  violated the Wiretap Act if Yahoo's agreements with Yahoo Mail users suffice to show consent.

24  However, consent under § 2511(2)(d) is "not an all-or-nothing proposition." *See In Re: Google Inc.*

25  *Gmail Litigation*, 13-md-02430-LHK, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013)

26  (hereinafter "*Gmail*"); *see also Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983)

27  ("[C]onsent within the meaning of section 2511(2)(d) . . . can be limited. It is the task of the trier of

28  fact to determine the scope of the consent and to decide whether and to what extent the interception

12

Case No.: 13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   exceeded that consent."). In other words, "[a] party may consent to the interception of only part of

2   a communication or to the interception of only a subset of its communications." *In re Pharmatrack,*

3   *Inc.*, 329 F.3d 9, 19 (1st Cir. 2003). Furthermore, as "the party seeking the benefit of the

4   exception," the burden is on Yahoo to prove it obtained consent. *Id.* This Court applies a

5   reasonable user standard to determine consent under the Wiretap Act. *See Perkins v. LinkedIn*

6   *Corp.*, 13-CV-04303-LHK, 2014 WL 2751053, at *14 (N.D. Cal. June 12, 2014); *Gmail*, 2013 WL

7   5423918, at *14.

8           Yahoo argues that Yahoo Mail users explicitly consented[1] to Yahoo's conduct by agreeing

9   to the ATOS. Mot. at 1, 7-8. As a preliminary matter, Yahoo is correct that Yahoo Mail users

10  agreed to the ATOS. When registering for Yahoo Mail, users must click a "Create Account" button

11  that appears below the sentence: "I agree to the Yahoo Terms and Privacy." Compl. ¶ 31; Mot. at 7.

12  The "Yahoo Terms" hyperlink directs users to view the ATOS. Compl. ¶ 31. The word "Privacy"

13  is an individual hyperlink to Yahoo's Privacy Policy. *Id.* Thus, it is clear based on the allegations in

14  the Complaint that Yahoo Mail users agreed to at least the ATOS and Privacy Policy when they

15  created an account. Notably, Plaintiffs do not argue that Yahoo Mail users did not read and agree to

16  these documents when creating accounts, and do not dispute that users can view these agreements

17  when they sign-up for Yahoo Mail and click "Create Account." Compl. ¶ 31. To the contrary,

18  Plaintiffs concede that the ATOS, TOS, and Privacy Policy all "comprise the agreement between

19  Yahoo and its users." Opp'n at 11.

20          The question thus becomes whether the ATOS sufficiently establishes user consent by

21  putting users on notice of Yahoo's alleged conduct, and if so, to what extent. Plaintiffs allege that

22  Yahoo scanned and analyzed emails to "provide personally relevant product features and content,"

23  "to match and serve targeted advertising," for "spam and malware detection and abuse protection,"

24  to use the information from the emails to create user profiles, to share the information from the

25  emails with third parties, and to "collect" and "store" the information for "future use." Compl. ¶¶ 1,

26  3-4, 26-27, 29, 41, 46-49, 50, 70-71. The Court thus evaluates whether the ATOS adequately

27  ─────────────────

28  [1] Yahoo does not argue there was implied consent by either party to the communication, nor does
    Yahoo contend that non-users consented to the alleged interceptions.

**United States District Court**
For the Northern District of California

13

Case No.: 13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    notifies the reasonable Yahoo Mail user that their emails with non-Yahoo Mail users will be

2    intercepted for these various purposes.

3          The Court concludes that the ATOS establishes explicit consent by Yahoo Mail users to

4    Yahoo's conduct. Notably, Section 1(c) of the ATOS explicitly acknowledges that Yahoo scans

5    and analyzes users' email for various purposes: "Yahoo's automated systems *scan and analyze* all

6    incoming and outgoing communications content sent and received from your account (such as Mail

7    and Messenger content including instant messages and SMS messages) including those stored in

8    your account to, without limitation, *provide personally relevant product features and content, to*

9    *match and serve targeted advertising and for spam and malware detection and abuse protection. . .*

10   *.* Unless expressly stated otherwise, you will not be allowed to opt out of this feature. If you

11   consent to this ATOS and communicate with non-Yahoo users using the Services, you are

12   responsible for notifying those users about this feature." Compl. ¶ 41; ECF No. 35-4 (ATOS)

13   (emphases added). In light of the clarity of the language in this disclosure, to which Yahoo Mail

14   users agreed when creating an account, the Court finds that the ATOS provides explicit and

15   sufficient notification to Yahoo Mail users that any communication sent via Yahoo Mail will be

16   scanned and analyzed for the stated purposes of providing personal product features, providing

17   targeted advertising, and detecting spam and abuse. By agreeing to the ATOS, Yahoo Mail users

18   consented to such conduct. Plaintiffs provide no convincing argument to the contrary other than to

19   say that "the ATOS does not explicitly inform Yahoo Mail users what Yahoo does with the

20   contents of its users' email." Opp'n at 11. This argument fails in light of the specific statements in

21   the ATOS that Yahoo scans the emails *in order to* "provide personally relevant product features

22   and content, to match and serve targeted advertising and for spam and malware detection and abuse

23   protection." ECF No. 35-4 at 1. Plaintiffs' other argument that the TOS and Privacy Policy "say

24   nothing about the scanning and analysis of email," Opp'n at 11, is unavailing in light of how the

25   language in the ATOS itself suffices to establish explicit consent. Accordingly, the Court

26   concludes that Yahoo obtained consent from one party to the electronic communications to scan

27   and analyze emails for the purposes of providing personal product features, providing targeted

28   advertising, and detecting spam and abuse. *See Mortensen v. Bresnan Commun., L.L.C.*, CV 10-13-

14

1   BLG-RFC, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010) (dismissing ECPA claim because

2   "through the *OnLine Subscriber Agreement*, the *Privacy Notice* and the NebuAd link on Bresnan's

3   website, Plaintiffs did know of the interception and through their continued use of Bresnan's

4   Internet Service, they gave or acquiesced their consent [under § 2511(2)(d)] to such interception").

5        The Court further finds that the ATOS also established Yahoo Mail users' consent to

6   Yahoo's practice of scanning and analyzing emails for the purposes of creating user profiles for

7   both parties to the email communication and sharing content from the emails with third parties.

8   Compl. ¶ 27. Notably, Plaintiffs allege that Yahoo's creation of user profiles serves to "enhance

9   Yahoo's ability to target advertising" and that Yahoo's sharing of information with third parties is

10  for "advertising purposes." *Id.*[2] Plaintiffs do not allege that creation of user profiles or sharing of

11  information with third parties serves any other purpose other than targeted advertising. Thus, the

12  Court concludes that the explicit notice in the ATOS that Yahoo scans and analyzes emails in order

13  to "match and serve targeted advertising" suffices to prove that by agreeing to the ATOS, users

14  also consented to Yahoo's conduct of scanning and analyzing emails for the purpose of creating

15  user profiles and sharing content with third parties. In light of the ATOS, the Court concludes that

16  additional allegations cannot save Plaintiff's claim that there was no consent to scan and analyze

17  emails for the purposes of providing personal product features, providing targeted advertising,

18  detecting spam and abuse, creating user profiles, and sharing information with third parties. Thus,

19  the Court GRANTS Yahoo's Motion to Dismiss Plaintiffs' Wiretap Act claim with respect to

20  scanning and analyzing for these purposes with prejudice.

21       The only remaining question is whether there was consent to Yahoo's conduct of

22  "collecting" and "storing" the content from emails for "future use." Plaintiffs claim Yahoo

23  provided Yahoo Mail users no notice of this conduct. Opp'n at 12. Plaintiffs note that for part of

24  the class period, the ATOS did not inform users that Yahoo collects and stores email content on its

---

[2] The Complaint also alleges that "Yahoo can increase revenues by obtaining more detailed background information about users of the service," and that "Yahoo benefits from gathering as much personal information about its Yahoo Mail users, and non-users who email with its users, as it can." *Id.* ¶ 28. Plaintiffs' allegations do not explain how Yahoo increases its revenues other than to provide targeted advertisements. *Id.* ("Yahoo can charge advertisers substantially more to place ads that are 'targeted' to certain demographic groups and even to specific individuals.").

15

Case No.: 13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1    servers. *Id.*; Compl. ¶ 42. Plaintiffs concede that "at some time during the proposed class period,"

2    Yahoo revised ATOS § 1(c) by adding the line: "By scanning and analyzing such communications

3    content, Yahoo collects and stores the data." Compl. ¶¶ 41-42; Opp'n at 12. Nonetheless, Plaintiffs

4    argue that even after Yahoo added this statement, Yahoo did not provide sufficient notice of

5    collection and storage because Yahoo failed to explain to users "what it does with the data" it

6    stores or what Yahoo "plans to do with it in the future." Opp'n at 12. The Court disagrees and finds

7    users were on notice and thus consented to how Yahoo "collects" and "stores" the content from

8    emails for "future use," as explained below.

9           Plaintiffs concede that for at least the latter part of the class period, the ATOS explicitly

10   notified users that Yahoo "collects and stores" their email communications. Compl. ¶¶ 41-42;

11   Opp'n at 12. The Court concludes that this explicit language contained in the agreement between

12   Yahoo and its users sufficed to put a reasonable user on notice of such collection and storage for

13   the latter part of the class period. The Court further concludes that even for the portion of the class

14   period during which the ATOS did not explicitly reference collection and storage, the reasonable

15   user was nonetheless similarly on notice that Yahoo engages in collection and storage of email

16   content. This is because the reasonable user would know that the ATOS's language that Yahoo

17   "scan[s] and analyze[s]" email content necessarily means Yahoo simultaneously collects and stores

18   the email content, i.e., the reasonable user would know that "scanning and analyzing" *requires*

19   Yahoo to collect and store the email content. In other words, the Court finds it implausible that

20   users did not – after agreeing, based on the ATOS, to Yahoo's scanning and analysis of emails –

21   realize that in order to engage in analysis of emails, Yahoo would have to store the emails

22   somewhere on its servers. Indeed, Plaintiffs do not provide any plausible reason why scanning and

23   analyzing email content does not require the collection and storage of that content. If anything,

24   Plaintiffs' allegation that Yahoo "scans [email] content, storing the data it collects" suggests that

25   the very process of scanning simultaneously stores the content. Compl. ¶ 1. Furthermore, the

26   ATOS stated, at *all* times during the class period, that Yahoo "store[s]" emails in users' accounts,

27   which would have put the reasonable user on notice that Yahoo already stores at least some emails

28   on its servers. ECF No. 35-4 (ATOS) ("Yahoo's automated systems scan and analyze all incoming

16

Case No.: 13-CV-04980-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    and outgoing communications content sent and received from your account . . . including those

2    *stored* in your account[.]") (emphasis added). Thus, the Court concludes that the reasonable user

3    was on notice and thus consented to Yahoo's collection and storage of email content when the user

4    agreed to the ATOS.

5         The only remaining issue is whether Yahoo informed users that Yahoo was going to use the

6    information it was collecting and storing in the "future." Plaintiffs claim there was no notice of

7    such future conduct because users had no notice of what specific *use* Yahoo would make of the

8    email content in the future. Opp'n at 12. Plaintiffs' argument is unconvincing. Given the explicit

9    statements in the ATOS that Yahoo scans and analyzes email content to provide personal product

10   features, provide targeted advertising, and detect spam and abuse. It is logical that Yahoo's future

11   uses would be the same. Further, Plaintiffs do not allege what they believe Yahoo was planning to

12   do with the email content in the future separate and apart from the various uses of which this Court

13   has already found users were on notice: to provide personal product features, provide targeted

14   advertising, and detect spam and abuse. Accordingly, the Court finds that Yahoo Mail users

15   consented to Yahoo's collection and storage of their emails for future use, and GRANTS Yahoo's

16   Motion to Dismiss the Wiretap claim with respect to this conduct. However, the Court GRANTS

17   leave to amend in order to allow Plaintiffs to allege any other "future use" they believe Yahoo

18   would make of their email content, separate and apart from the uses of which this Court has found

19   users had notice.[3]

20              **2.       The Stored Communications Act**

21        In the alternative to a Wiretap Act violation, Plaintiffs argue that Yahoo's scanning

22   practices violate the Stored Communications Act. Compl. ¶ 6. Plaintiffs assert this claim in the

23   alternative "in the event the Court concludes that Yahoo accesses plaintiffs' emails after they have

24   been delivered to the recipients" and are thus in storage. Opp'n at 3; Compl. at ¶ 87 ("Plaintiffs

25

26   _____

     [3] Because the Court GRANTS Yahoo's Motion to Dismiss the Wiretap Act claim on consent
     grounds, the Court need not reach Yahoo's argument that the "ordinary course of business"
27   exception to Wiretap Act liability applies. The Court also need not reach Yahoo's argument, raised
     for the first time in Reply, that Plaintiffs' "bare allegation" that Yahoo intercepts emails while they
28   are "in transit" fails to state a Wiretap Act claim under *Twombly*. Reply at 2.

                                                    17
     Case No.: 13-CV-04980-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1  Daniel C. Girard (SBN 114826)
   Amanda M. Steiner (SBN 190047)
2  Matthew B. George (SBN 239322)
   **GIRARD GIBBS LLP**
3  601 California Street, 14th Floor
   San Francisco, CA  94108
4  Telephone:  (415) 981-4800
   Facsimile: (415) 981-4846
5  *dcg@girardgibbs.com*
   *mbg@girardgibbs.com*
6

7  Laurence D. King (SBN 206423)          Frederic S. Fox (admitted *pro hac vice*)
8  **KAPLAN FOX & KILSHEIMER LLP**        David A. Straite (admitted *pro hac vice*)
   350 Sansome Street, Suite 400          **KAPLAN FOX & KILSHEIMER LLP**
9  San Francisco, CA 94104                850 Third Ave., 14th Floor
   Telephone:  (415) 772-4700             New York, NY  10022
10 Facsimile:  (415) 772-4707             Telephone:  (212) 687-1980
11 *lking@kaplanfox.com*                  Facsimile:   (212) 687-7714
                                          *dstraite@kaplanfox.com*
12

13 *Co-Lead Interim Class Counsel*

14
                    **UNITED STATES DISTRICT COURT**
15                **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN JOSE DIVISION**
16

17 IN RE YAHOO MAIL LITIGATION            Case No.: 5:13-cv-04980-LHK

18                                        **PLAINTIFFS' MOTION FOR CLASS**
19                                        **CERTIFICATION**

20                                        Date:   April 23, 2015
                                          Time:  1:30 p.m.
21                                        Place: Courtroom 8
                                          Judge: The Honorable Lucy H. Koh
22

23

24              **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

25

26                              REDACTED

27

28

                   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
                        CASE NO.: 5:13-CV-04980-LHK

**I.      INTRODUCTION**

California-based Yahoo! Inc. operates a web-based email service called Yahoo Mail.  In exchange for providing "free" email, Yahoo subscribers agree to allow Yahoo to intercept, scan, analyze and store their emails for the purpose of providing targeted advertising, one of the company's main sources of revenue.  Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams and Halima Nobles are four individuals who do not subscribe to Yahoo Mail, but who do occasionally correspond with subscribers of Yahoo Mail.  Plaintiffs allege that Yahoo intercepts the email they send to and receive from Yahoo Mail subscribers while it is in transit and scans and analyzes the content.  They also allege that Yahoo provides some of the information it obtains from their email to third parties without their consent.  Unlike subscribers, however, Yahoo does not obtain the consent of non-subscribers to its practices, warn non-subscribers of its practices, or give non-subscribers a way of avoiding the interception of their communications.  Plaintiffs allege that Yahoo therefore violates the California Invasion of Privacy Act (CIPA), which requires all parties to consent to the interception of a communication, and the Stored Communications Act (SCA).

Plaintiffs move for certification under Federal Rule of Civil Procedure Rule 23(b)(2) of a class of all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.  Class certification under Rule 23(b)(2) is appropriate because plaintiffs do not seek monetary relief.  Instead, they are requesting solely declaratory and injunctive relief for Yahoo's unlawful interception, scanning and sharing of the content of their emails, conduct that is "generally applicable to the class as a whole."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).  Plaintiffs seek a declaration that Yahoo's conduct violates the CIPA and the SCA, as well as injunctive relief that requires Yahoo to cease scanning the emails of non-Yahoo Mail subscribers without their consent, permanently delete all data it has collected and stored from non-subscribers' email without their consent, and identify all individuals and entities with which it has shared or sold information or data it collected from non-subscribers' emails.

Class certification is also appropriate because the proposed class satisfies the requirements of Rule 23(a).  While the precise size of the class is unknown, with more than 75 million Yahoo Mail

1    subscribers it can reasonably be inferred that the class has more than forty members, the minimum

2    number required by the Ninth Circuit to satisfy the numerosity requirement.  Numerous common

3    questions of law and fact exist, including whether Yahoo intercepts email while it is in transit.  Because

4    plaintiffs and class members are all subject to the same conduct by Yahoo, the typicality requirement is

5    satisfied.  The adequacy requirement is also satisfied, as plaintiffs have no conflicts with class members,

6    have retained experienced counsel, and are diligently pursuing class members' claims.  Finally, if

7    ascertainability is required for 23(b)(2) classes, the class is ascertainable because plaintiffs have

8    precisely defined the class based on objective criteria.  Because the proposed class satisfies the

9    requirements of Rule 23(a) and (b)(2), plaintiffs request that the Court grant their motion for class

10   certification, appoint plaintiffs as class representatives, and appoint Girard Gibbs LLP and Kaplan Fox

11   & Kilsheimer LLP as class counsel.

12   **II.    ISSUES TO BE DECIDED**

13          The issue to be decided is whether plaintiffs' claims satisfy the requirements for class

14   certification under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

15   **III.   FACTUAL BACKGROUND**

16          **A.    Yahoo Scans and Analyzes Incoming and Outgoing Email Between Yahoo Mail
                    Subscribers and Non-Subscribers**

18     Yahoo acknowledges that it scans and analyzes all of its Yahoo Mail subscribers' incoming and

19   outgoing email and stores the data it collects for future use:

20              Yahoo's automated systems scan and analyze all incoming and outgoing
                communications content sent and received from your account (such as Mail and
21              Messenger content including instant messages and SMS messages) including those
                stored in your account to, without limitation, provide personally relevant product
22              features and content, to match and serve targeted advertising and for spam and
                malware detection and abuse protection.  By scanning and analyzing such
23              communications content, Yahoo collects and stores the data.

25   Declaration of Daniel C. Girard, Ex. 3, ¶ 1.c.  While Yahoo Mail subscribers purportedly agree to

26   Yahoo's interception and scanning of their email as a condition of using the email service, non-Yahoo

27   Mail subscribers like plaintiffs do not.  Plaintiffs' Declarations, ¶ 4.  They do, however, use other email

28   providers and inevitably correspond with subscribers of Yahoo Mail, and expect to do so in the future.

2

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
CASE NO.: 5:13-CV-04980-LHK

1     REBEKAH KAUFMAN (CA Bar No. 213222)
      ROBERT PETRAGLIA (CA Bar No. 264849)
2     MORRISON & FOERSTER LLP
      425 Market Street
3     San Francisco, CA 94105
      Telephone: (415) 268-7000
4     Facsimile:  (415) 268-7522
      RKaufman@mofo.com
5     RPetraglia@mofo.com

6     MARC J. ZWILLINGER (*pro hac vice*)
      JACOB SOMMER (*pro hac vice*)
7     ZWILLGEN PPLC
      1705 N. Street, NW
8     Washington, D.C. 20036
      Telephone: (202) 706-5202
9     Facsimile: (202) 706-5298
      Marc@zwillgen.com
10    Jake@zwillgen.com

11    *Attorneys for Defendant YAHOO! INC.*

12

13                UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16    IN RE YAHOO MAIL LITIGATION       Case No.   5:13-cv-4980 LHK

17                                 **DECLARATION OF MICHAEL ALBERS IN
                                SUPPORT OF DEFENDANT'S
18                                 OPPOSITION TO PLAINTIFFS' MOTION
                                FOR CLASS CERTIFICATION**

19

20

21

22

23

24

25

26

27

28

I, Michael Albers, hereby declare as follows:

1. I have been employed by Yahoo! Inc. ("Yahoo") as Vice President of Product Management – Communications Products since September of 2013. As part of my job I am familiar with the Yahoo Mail product. I have expertise in platforms, server architecture, web based applications, mobile, clients, search applications, social networking, and various web technologies. I make the statements in this declaration based upon my personal knowledge. If called upon to do so, I could and would testify thereto under oath.

2. Yahoo does not keep records in the ordinary course of business of all non-Yahoo Mail users that send emails to Yahoo Mail users. Any data that Yahoo does have regarding the non-Yahoo email addresses that are used to contact Yahoo Mail users is not comprehensive, and not searchable.

3. Yahoo does not have a reliable way to determine if the people who send emails to Yahoo Mail users from non-Yahoo Mail accounts also have Yahoo Mail accounts of their own. Likewise, Yahoo cannot reliably determine if someone who receives emails from a Yahoo Mail account at a non-Yahoo Mail account also has a Yahoo Mail account. Many Yahoo Mail users also have email accounts with other email service providers.

4. Yahoo has no way to determine whether a non-Yahoo Mail user who exchanges emails with Yahoo Mail users may have viewed any of Yahoo's webpages regarding Yahoo Mail. Yahoo can only keep track of the number of times a Yahoo webpage has been viewed, and whether the viewer was logged into his or her Yahoo account with a Yahoo user ID at the time that he or she viewed the page.

5. Yahoo has no way of knowing which non-Yahoo Mail users might email a Yahoo Mail user in the future.

6. Given the sheer volume of non-Yahoo Mail accounts that exist, Yahoo does not have a technological means to track every non-Yahoo Mail account that exists, or may be opened in the future, much less whether the user of these accounts is aware of Yahoo's automated scanning of emails, targeted advertising practices, or that email content may be stored and shared.

DECL. OF MICHAEL ALBERS IN SUPPORT OF DEFENDANT'S OPP. TO PLAINTIFFS' MOT. FOR CLASS CERTIFICATION
sf-3511128

1    I declare the following under penalty of perjury that the foregoing is true and correct.

2    Executed in Sunnyvale, California, on March 9, 2015.

3

4    _____

5                                    MICHAEL ALBERS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    REBEKAH KAUFMAN (CA Bar No. 213222)
     ROBERT PETRAGLIA (CA Bar No. 264849)
2    MORRISON & FOERSTER LLP
     425 Market Street
3    San Francisco, CA 94105
     Telephone: (415) 268-7000
4    Facsimile:  (415) 268-7522
     RKaufman@mofo.com
5    RPetraglia@mofo.com

6    MARC J. ZWILLINGER (*pro hac vice*)
     JACOB SOMMER (*pro hac vice*)
7    ZWILLGEN PPLC
     1705 N. Street, NW
8    Washington, D.C. 20036
     Telephone: (202) 706-5202
9    Facsimile: (202) 706-5298
     Marc@zwillgen.com
10   Jake@zwillgen.com

11   *Attorneys for Defendant YAHOO! INC.*

12

13                          UNITED STATES DISTRICT COURT

14                         NORTHERN DISTRICT OF CALIFORNIA

15

16   IN RE YAHOO MAIL LITIGATION        Case No.   5:13-cv-4980 LHK

17                                       **DECLARATION OF GARETH SHUE IN**
                                         **SUPPORT OF DEFENDANT'S**
18                                       **OPPOSITION TO PLAINTIFFS' MOTION**
                                         **FOR CLASS CERTIFICATION**
19

20

21

22

23        REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

24

25

26

27

28

DECL. OF GARETH SHUE IN SUPPORT OF DEF.'S OPP. TO PLTFS.' MOT. FOR CLASS CERTIFICATION
sf-3506449

1  I, GARETH SHUE, hereby declare as follows:

2      1.    I am head of the Delivery and Anti-Spam group at Yahoo! Inc. ("Yahoo"). I have

3  held this position at Yahoo since February of 2012. Before that I worked in Yahoo's Anti-Spam

4  group for three years. As part of my job duties I am familiar with the processes that Yahoo uses

5  to protect Yahoo users and non-Yahoo users from the dissemination of spam, viruses, and other

6  illicit or harmful content. I submit this declaration in support of Yahoo's Opposition to Plaintiffs'

7  Motion for Class Certification. I have personal knowledge of the facts set forth in this

8  Declaration, and if called to testify, I could and would testify competently thereto.

9  **I.    EMAIL SENT TO YAHOO MAIL USERS**

10      2.    Email that is sent to Yahoo Mail accounts is received by Yahoo at one of Yahoo's

11  Mail Transfer Agents ("MTA"). MTAs are a type of computer server operated by Yahoo which

12  accept delivery of emails. Yahoo operates about 2,500 MTA's which are located at co-location

13  data-centers ("colos") all over the world, including in numerous states in the United States.

14      3.    Once an email is delivered to one of Yahoo's MTAs it is scanned to protect Yahoo

15  Mail users from spam and malware. Scanning is necessary to route the email to the spam folder

16  of recipient(s). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This information is used by Yahoo to protect

20  users from malware and spam. An initial automated scan of an email at an MTA is necessary to

21  provide email service. Without spam filtering users' email inboxes would be so flooded by email

22  that they would not be functional.

23      4.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the email is checked for spam based on the

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮ Yahoo's automated systems will make a determination about whether the

25  email is spam or not, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For example, some IP

27  addresses are known by Yahoo to be used by spammers. Also, emails ▮▮▮▮▮▮▮ are more

28  likely to be spam. If the email is tagged as spam, it will be placed in the Yahoo Mail user(s) spam

Decl. of Gareth Shue in Support of Def.'s Opp. to Pltfs.' Mot. For Class Certification
sf-3506449

App. 59

1   folder.  Spam protection is vitally important because Yahoo Mail users collectively, on average,

2   are sent three billion spam emails a day.

3        5.    ████████████████████████████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████ ██ ████████

6   ████████████████████████████████    Instead it happens on a

7   separate grid of computers, called ██████████ which is located in Nebraska.  Email data is

8   ████████████████████████████████████████████

9   ██████████████████████████

10       **A.    The Email Pipeline**

11       6.    The Yahoo Mail pipeline functions as follows:  After email data has been

12  delivered to the MTA, it will arrive at a series of servers that store the email metadata, and the

13  email content, so that the email can be accessed by the Yahoo Mail user in their inbox.

14       7.    ██████████████████████████████████████

15  ██████████████████████████████████████████ █

16  ████████████████████ ██ ██████████████████

17  ██████

18       8.    Yahoo uses these different steps, and these different servers, in order to

19  effectively, efficiently, and safely transmit email.

20       **B.    ██████████████**

21       9.    ████████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████    First, it is used to

24  improve Yahoo's anti-spam protection.  Second, it is used to support Yahoo's targeted

25  advertising.

26       10.    The anti-spam analysis that takes place on ██████████ is necessary to

27  continually improve Yahoo's spam protection.  When Yahoo Mail users tag email in their inbox

28  as spam, or tag an email in their spam box as not spam, that information is used to improve

DECL. OF GARETH SHUE IN SUPPORT OF DEF.'S OPP. TO PLTFS.' MOT. FOR CLASS CERTIFICATION
sf-3506449

1    Yahoo's anti-spam model. ███████████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████

5    **II.     OUTGOING EMAILS**

6           11.     Yahoo scans all email sent from Yahoo Mail accounts for spam and abuse

7    protection. It is not scanned for advertising purposes. Abuse protection entails making sure that

8    Yahoo Mail users are not sending emails that violate Yahoo's terms of service. Yahoo also scans

9    attachments that users attach to their emails for viruses. Yahoo's automated process also checks

10   links in outgoing emails to determine if they contain viruses or are used in phishing schemes.

11          12.     Outgoing email passes through Yahoo's ███████████ This server scans the

12   outgoing email for features that are associated with spam. Based on an automated process the

13   email will be evaluated to determine if it is spam, and should be blocked, or if it should be sent on

14   to the recipient.

15   **III.    NON-YAHOO MAIL ADDRESSES**

16          13.     There are billions of email addresses in use in the world. Because of the sheer

17   volume of such emails Yahoo cannot and does not track every single email address that exists, or

18   may come into existence.

19

20

21          I declare the following under penalty of perjury that the foregoing is true and correct.

22   Executed in   Sunnyvale, CA on March 10, 2015.

23

24                                                 [signature]

25                                                 GARETH SHUE

26

27

28

1   REBEKAH KAUFMAN (CA Bar No. 213222)
    ROBERT PETRAGLIA (CA Bar No. 264849)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, CA 94105
    Telephone: (415) 268-7000
4   Facsimile:  (415) 268-7522
    RKaufman@mofo.com
5   RPetraglia@mofo.com

6   MARC J. ZWILLINGER (*pro hac vice*)
    JACOB SOMMER (*pro hac vice*)
7   ZWILLGEN PPLC
    1705 N. Street, NW
8   Washington, D.C. 20036
    Telephone: (202) 706-5202
9   Facsimile: (202) 706-5298
    Marc@zwillgen.com
10  Jake@zwillgen.com

11  *Attorneys for Defendant YAHOO! INC.*

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16  IN RE YAHOO MAIL LITIGATION          Case No.   5:13-cv-4980 LHK

17                                        **DECLARATION OF JAKUB
                                          SLOMCZYNSKI IN SUPPORT OF**
18                                        **DEFENDANT'S OPPOSITION TO
                                          PLAINTIFFS' MOTION FOR CLASS**
19                                        **CERTIFICATION**

20

21

22

23

24

25

26

27

28

1    I, Jakub Slomczynski, hereby declare as follows:

2         1.    I have been employed by Yahoo! Inc. ("Yahoo") since August 2007.  My current

3    position is Product Manager for Digits.  I have been in this position since April 2014.  I make the

4    statements in this declaration based upon my personal knowledge.  If called upon to do so, I could

5    and would testify thereto under oath.

6         2.    Yahoo keeps records in the ordinary course of its business regarding the number of

7    times its webpages have been viewed.  These records also indicate whether a webpage was

8    viewed by someone who was logged-in as a Yahoo user, or by someone who was not logged-in as

9    a Yahoo user.  By "Yahoo user," I mean a person with a Yahoo user ID.  These records are made

10   automatically at the time that a Yahoo webpage is viewed.  I used Yahoo software to search these

11   records to determine how many times the Yahoo Mail FAQ page, Yahoo! Mail page, and Yahoo

12   Privacy Policy were viewed by individuals logged-in as Yahoo users and by individuals not

13   logged-in as Yahoo users, and retrieved results for the time period from October 2011 to the last

14   month for which data was available.

15        3.    Through my investigation I was able to determine how many times each of these

16   webpages were viewed, and how many of these views were from Yahoo users who had signed

17   into their account, and how many of these views were not from logged-in Yahoo users.

18   Individuals who are not logged into a Yahoo account may be Yahoo users who are not logged

19   into their account, or they may not be Yahoo users at all.

20        4.    After conducting my investigation I found that between October 2011 and January

21   2014, the Yahoo Mail FAQ was viewed 597,367 times by logged-in Yahoo Users, and 1,207,914

22   times by people not logged-in as Yahoo users.  Attached hereto as Exhibit A is a copy of the

23   Yahoo Mail FAQ page.

24        5.    After I conducted my investigation I found that the Yahoo! Mail webpage was

25   viewed 11,725,509 times by logged-in Yahoo users, and 350,695 times by people not logged in as

26   Yahoo users during that same time period.  Attached hereto as Exhibit B is a copy of the Yahoo!

27   Mail page.

28
     DECL. OF JAKUB SLOMCZYNSKI IN SUPPORT OF DEFENDANT'S OPP. TO PLAINTIFFS' MOT. FOR
     CLASS CERTIFICATION
     sf-3513931

6.    Finally, I found that between October 2011, and September 2014, the Yahoo Privacy Policy webpage was viewed 9,053,174 times by logged-in Yahoo Mail users, and 30,514,337 times by people not logged-in as Yahoo Mail users.  Attached hereto as Exhibit C is a copy of the Yahoo Privacy Policy page.

I declare the following under penalty of perjury that the foregoing is true and correct. Executed in Champaign, Illinois, on March 6 , 2015.


_____
JAKUB SLOMCZYNSKI

DECL. OF JAKUB SLOMCZYNSKI IN SUPPORT OF DEFENDANT'S OPP. TO PLAINTIFFS' MOT. FOR CLASS CERTIFICATION

sf-3513931

# Exhibit B

Case5:13-cv-04980-LHK   Document120-2   Filed06/10/15   Page69 of 87

Yahoo! Mail   Case5:13-cv-04980-LHK   Document78-7   Filed03/12/15   Page2 of 3   Page 1 of 2

Home   Mail   Search   News   Sports   Finance   Weather   Games   Answers   Screen   Flickr   Install the new Firefox »

Search Web                Sign In        Mail

Home            Products         Topics         Privacy Tools         Help

**Yahoo! Mail**

Yahoo Privacy Policy  >  Yahoo Privacy Policy  >  Yahoo! Mail

Email    Print

## Yahoo! Mail

Yahoo! Mail is a free web-based email service. In order to use Yahoo! Mail, you must be a registered Yahoo! user. You may also purchase premium services such as Mail Plus for a fee. This Privacy Policy applies to the newest version of Yahoo! Mail.

**Information Collection and Use Practices**

- Premium services, such as Mail Plus, are available for a fee.

- When you sign up for premium services, you will be asked to enter your credit card information. Yahoo! takes your security seriously and takes reasonable steps to protect your information. We use industry-standard SSL (Secure Socket Layer) to encrypt the transmission of your credit card and other information used when ordering premium services.

- Billing

  - To view, edit or cancel Yahoo! premium services you have ordered, please visit Yahoo! Premium Services Account Information. It includes information about services you currently subscribe to, payment scheduling and payment history.

**Personally Relevant Experiences**

- Yahoo! provides personally relevant product features, content, and advertising, and spam and malware detection by scanning and analyzing Mail, Messenger, and other communications content. Some of these features and advertising will be based on our understanding of the content and meaning of your communications. For instance, we scan and analyze email messages to identify key elements of meaning and then categorize this information for immediate and future use.

  - Please read our FAQ to learn more.

  - This information may also be used for interest-based advertising. To learn more, you can visit Yahoo!'s control tool for interest-based advertising.

- Yahoo! Mail may include interactive mail features from 3rd parties as well. Your personally identifiable information is not directly shared with the 3rd party without your consent.

**Message Search and Access**

- Yahoo! Mail and Yahoo! Messenger now share a common search platform. You may now elect to archive Yahoo! instant messages along with Yahoo! Mail messages and search them together (including Voice Mail, SMS, and more).

- Messages stored on Yahoo! servers in this manner are accessible from any computer system or device able to access Yahoo! Mail or the latest versions of Yahoo! Messenger.

- Yahoo! may scan and analyze instant messages you elect to archive in order to provide personally relevant product features, content, and advertising, and spam and malware detection.

**Information Sharing and Disclosure Practices**

- Yahoo! Mail includes IP addresses in outgoing mail message headers, as specified by standard Internet protocol.

- When users click on the Spam and Not Spam buttons, information is sent to Yahoo!'s anti-spam team or other spam compliance service providers for review, and aspects of these messages may be shared with the sender to reduce spam. See our spam FAQ for more information.

**Practices Regarding Your Ability to Update or Delete Information**

Case5:13-cv-04980-LHK    Document120-2    Filed06/10/15    Page70 of 87

Yahoo! Mail    Case5:13-cv-04980-LHK    Document78-7    Filed03/12/15    Page3 of 3    Page 2 of 2

Home    You can modify your settings and preferences in your Yahoo! Mail account by accessing    Answers    Screen    Flickr    Install the new Firefox »
"Account Information".

**Other**

Search Web    Sign in    Mail

• When you use Yahoo! Mail, you are subject to the Yahoo! Terms of Service.

• Please see Yahoo! Mail Help if you have questions about this service.

This page describes current Yahoo! practices with respect to this particular service. This information
may change as Yahoo! revises this service by adding or removing features or using different service
providers. To find out how Yahoo! treats your personal information, please visit our Privacy Policy.

Privacy | Legal

1   REBEKAH KAUFMAN (CA Bar No. 213222)
    ROBERT PETRAGLIA (CA Bar No. 264849)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, CA 94105
    Telephone: (415) 268-7000
4   Facsimile:  (415) 268-7522
    RKaufman@mofo.com
5   RPetraglia@mofo.com

6   MARC J. ZWILLINGER (*pro hac vice*)
    JACOB SOMMER (*pro hac vice*)
7   ZWILLGEN PPLC
    1705 N. Street, NW
8   Washington, D.C. 20036
    Telephone: (202) 706-5202
9   Facsimile: (202) 706-5298
    Marc@zwillgen.com
10  Jake@zwillgen.com

11  *Attorneys for Defendant YAHOO! INC.*

12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16  IN RE YAHOO MAIL LITIGATION          Case No.   5:13-CV-04980-LHK

17                                       **DECLARATION OF REBEKAH KAUFMAN
                                         IN SUPPORT OF DEFENDANT'S**
18                                       **OPPOSITION TO PLAINTIFFS' MOTION
                                         FOR CLASS CERTIFICATION**
19

20

21

22

23

24

25

26

27

28

Decl. of Rebekah Kaufman in Support of Defendant's Opp. to Plaintiffs' Mot. for Class Certification
Case No. 5:13-CV-04980-LHK
sf-3515009

App. 68

I, Rebekah Kaufman, hereby declare:

1. I am an attorney licensed to practice law in the State of California and am admitted to practice in this Court. I am a partner at the law firm of Morrison & Foerster LLP, counsel of record for Defendant Yahoo! Inc. ("Yahoo") in the above-captioned action. I make this Declaration in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts stated herein and, if called as a witness, could testify competently thereto.

2. Attached hereto as Exhibit A is a true and correct copy of Plaintiff Cody Baker's Responses and Objections to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on October 13, 2014.

3. Attached hereto as Exhibit B is a true and correct copy of Plaintiff Brian Pincus' Reponses to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on October 13, 2014.

4. Attached hereto as Exhibit C is a true and correct copy of Plaintiff Halima Nobles' Responses to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on October 15, 2014.

5. Attached hereto as Exhibit D is a true and correct copy of Plaintiff Rebecca Abrams' Responses to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on October 13, 2014.

6. Attached hereto as Exhibit E is a true and correct copy of Plaintiff Cody Baker's Supplemental Response to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on February 11, 2015.

7. Attached hereto as Exhibit F is a true and correct copy of Plaintiff Brian Pincus' Supplemental Response to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on February 11, 2015.

8. Attached hereto as Exhibit G is a true and correct copy of Plaintiff Halima Nobles' Supplemental Response to Defendant Yahoo! Inc.'s First Set of Interrogatories, which were served on February 12, 2015.

DECL. OF REBEKAH KAUFMAN IN SUPPORT OF DEFENDANT'S OPP. TO PLAINTIFFS' MOT. FOR CLASS CERTIFICATION
CASE NO. 5:13-CV-04980-LHK
sf-3515009

App. 69

1      9.      Attached hereto as Exhibit H is a true and correct copy of Plaintiff Rebecca

2   Abrams' Supplemental Response to Defendant Yahoo! Inc.'s First Set of Interrogatories, which

3   were served on February 17, 2015.

4      10.     Attached hereto as Exhibit I are true and correct excerpts from the final

5   transcription of the February 12, 2015 deposition of Plaintiff Brian Pincus.

6      11.     Attached hereto as Exhibit J are true and correct excerpts from the final

7   transcription of the February 13, 2015 deposition of Plaintiff Halima Nobles.

8      12.     Attached hereto as Exhibit K are true and correct excerpts from the final

9   transcription of the February 16, 2015 deposition of Plaintiff Cody Baker.

10      13.     Attached hereto as Exhibit L are true and correct excerpts from the final

11   transcription of the March 4, 2015 deposition of Plaintiff Rebecca Abrams.

12      14.     Attached hereto as Exhibit M is the true and correct final transcription of the

13   February 6, 2015 deposition of Amir Doron.

14

15

16      I declare the following under penalty of perjury that the foregoing is true and correct.

17   Executed in San Francisco on March 12, 2015.

18

19                                          /s/ Rebekah Kaufman

20                                          REBEKAH KAUFMAN

21

22

23

24

25

26

27

28

DECL. OF REBEKAH KAUFMAN IN SUPPORT OF DEFENDANT'S OPP. TO PLAINTIFFS' MOT. FOR CLASS CERTIFICATION
CASE NO. 5:13-CV-04980-LHK
sf-3515009

# Exhibit A

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

1    Daniel C. Girard (SBN 114826)
2    Matthew B. George (SBN 239322)
     **GIRARD GIBBS LLP**
3    601 California Street, 14th Floor
     San Francisco, California 94104
4    Telephone: (415) 981-4800
     Facsimile: (415) 981-4846
5    *dcg@girardgibbs.com*
6    *mbg@girardgibbs.com*

7    Laurence D. King (SBN 206423)         Frederic S. Fox (admitted *pro hac vice*)
8    **KAPLAN FOX & KILSHEIMER LLP**   David A. Straite (admitted *pro hac vice*)
     350 Sansome Street, Suite 400          **KAPLAN FOX & KILSHEIMER LLP**
9    San Francisco, California 94104        850 Third Avenue, 14th Floor
     Telephone: (415) 772-4700          New York, New York 10022
10   Facsimile: (415) 772-4707          Telephone: (212) 687-1980
11   *lking@kaplanfox.com*             Facsimile: (212) 687-7714
                              *ffox@kaplanfox.com*
12                        *dstraite@kaplanfox.com*
13   *Co-Lead Interim Class Counsel*

14
15                 **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
16                   **SAN JOSE DIVISION**

17   IN RE YAHOO MAIL LITIGATION      Consol. Case No. 5:13-cv-04980-LHK
18
19                         **PLAINTIFF CODY BAKER'S RESPONSES**
                        **AND OBJECTIONS TO DEFENDANT**
20                         **YAHOO! INC.'S FIRST SET OF**
                        **INTERROGATORIES**

21
22          **PROPOUNDING PARTY:**      **DEFENDANT YAHOO! INC.**
23
24          **RESPONDING PARTY:**       **PLAINTIFF CODY BAKER**

         **LIMITED SET:**            **ONE**
25
26
27
28

     PLAINTIFF CODY BAKER'S RESPONSES AND OBJECTIONS TO DEFENDANT YAHOO!
              INC.'S FIRST SET OF INTERROGATORIES
          CONSOLIDATED CASE NO. 5:13-CV-04980-LHK

1   Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Cody Baker ("Plaintiff" or

2   "Responding Party") hereby responds to Defendant Yahoo! Inc. ("Yahoo" or "Defendant")'s First Set

3   of Interrogatories (the "Interrogatories") as follows:

4                              **PRELIMINARY STATEMENT**

5           Plaintiff has not completed discovery, investigation, or trial preparation in this case. Therefore,

6   Plaintiff provides these responses without waiving the right to later modify, supplement, or amend these

7   responses as additional information becomes available in the course of such discovery, investigation, or

8   trial preparation. Furthermore, Plaintiff reserves the right to revise, amend, supplement, or otherwise

9   change any or all of these responses in the event that information that is presently in Plaintiff's

10   possession is inadvertently omitted or mistakenly stated herein. Plaintiff responds to these

11   Interrogatories subject to the accompanying objections, without waiving, and expressly preserving, all

12   such objections.

13                          **OBJECTIONS TO INSTRUCTIONS**

14           Plaintiff objects to Defendant's Instructions because they impose obligations that are not

15   required by the Federal Rules of Civil Procedure or by the Local Rules of the U.S. District Court for the

16   Northern District of California.

17                          **CONFIDENTIALITY DESIGNATION**

18           Plaintiff designates the following responses "CONFIDENTIAL" as defined in the Protective

19   Order signed by Magistrate Judge Howard Lloyd on February 28, 2014.

20                                  **INTERROGATORIES**

21   **INTERROGATORY NO. 1:**

22           For each Plaintiff, identify each email service you have used to send and/or receive email, including

23   the dates during which you used each identified email service, the domain name of each email service, and

24   the username associated with each identified email service.

25   **RESPONSE:** Plaintiff Baker responds as follows:

26           Since October 2, 2011, Plaintiff has used Gmail to send and/or receive emails under the different

27   user and domain names: ███████████████████████

28

---

1

PLAINTIFF CODY BAKER'S RESPONSES AND OBJECTIONS TO DEFENDANT YAHOO!
INC.'S FIRST SET OF INTERROGATORIES
CONSOLIDATED CASE NO. 5:13-CV-04980-LHK

1      ████████████████████████████████████ Plaintiff has also used Outlook to send and/or

2 receive emails under user and domain name ████████████

3 **INTERROGATORY NO. 2:**

4      For each Plaintiff, identify each mail service you have used to send emails to a Yahoo subscriber,

5 including the dates during which you used each identified email service, the domain name of each email

6 service, and the username associated with each identified email service.

7 **RESPONSE:** Plaintiff Baker responds as follows:

8      Since October 2, 2011 to the present, Plaintiff has used Gmail to send and/or receive email to a

9 Yahoo subscriber under user and domain names ████████████████████

10 **INTERROGATORY NO. 3:**

11      For each Plaintiff, identify each address where you have resided since October 2, 2011 and the

12 dates of such residence.

13 **RESPONSE:** Plaintiff Baker responds as follows:

14      Since October 2, 2011, Plaintiff resided at ████████████████████

15 until April 1, 2013, followed by ████████████████████████ where he presently

16 resides.

17 **INTERROGATORY NO. 4:**

18      Do you contend that Yahoo's scanning of your email correspondence with Yahoo subscribers

19 for spam and malware detection violates California Penal Code § 637.2 and/or 18 U.S.C. § 2707?

20 **RESPONSE:** Plaintiff objects to Interrogatory No. 4 because it is a premature contention

21 interrogatory. Discovery in this action is ongoing with substantial discovery yet to occur, including

22 further document review, expert discovery, and party depositions that will be necessary to answer the

23 interrogatory. *See HTC Corp., v. Technology Properties LTD., et al.,* No. 08-00882-JF-HRL, 2011 WL

24 97787. At this stage of discovery, Yahoo has recently completed its production of documents in

25 response to Plaintiffs' First Set of Document Requests, which included a substantial amount of

26 documents regarding its email scanning technology designated "Highly Confidential – Attorneys' Eyes

27 Only" pursuant to the Protective Order. Further, Plaintiffs' proposed technical experts have only

28 recently been approved by Yahoo to review these materials through the pre-disclosure approval process

2

PLAINTIFF CODY BAKER'S RESPONSES AND OBJECTIONS TO DEFENDANT YAHOO!<br>INC.'S FIRST SET OF INTERROGATORIES<br>CONSOLIDATED CASE NO. 5:13-CV-04980-LHK

1   required under the Protective Order after Yahoo's initial objections.  Plaintiffs also have yet to take

2   depositions of Yahoo's engineers and persons most knowledgeable regarding its email scanning

3   practices and technology.  Plaintiff will respond to this Interrogatory after further discovery and

4   investigation, including expert discovery.  Plaintiff also objects to the extent that this Interrogatory may

5   require information and communications protected from disclosure by the attorney-client privilege and

6   attorney, trial preparation, and expert witness work product doctrines.

7   **INTERROGATORY NO. 5:**

8       For each Plaintiff, describe whether it was your understanding prior to filing your complaint

9   against Yahoo that Yahoo would scan your email correspondence with Yahoo subscribers for malware

10  and spam detection.

11  **RESPONSE:**  Plaintiff Baker did understand prior to filing the complaint that Yahoo would scan email

12  correspondence with Yahoo subscribers for malware and spam detection.

13  **INTERROGATORY NO. 6:**

14      Do you contend that members of the putative class as defined in the Consolidated Class Action

15  Complaint are entitled to statutory damages under California Penal Code § 637.2 and/or 18 U.S.C. §

16  2707?

17  **RESPONSE:**  Yes.

18  **INTERROGATORY NO. 7:**

19      Do you contend that members of the putative class as defined in the Consolidated Class Action

20  Complaint are entitled to actual damages under California Penal Code § 637.2 and/or 18 U.S.C. §

21  2707?

22  **RESPONSE:**  Yes.

23  **INTERROGATORY NO. 8:**

24      Describe how you first became aware that Yahoo engaged in the scanning of email alleged in

25  the Consolidated Class Action Complaint, including when you first became aware.

26  **RESPONSE:**  Plaintiff also objects to the extent that this Interrogatory may require information and

27  communications protected from disclosure by the attorney-client privilege and attorney, trial

28  preparation, and expert witness work product doctrines.  This objection includes, but is not limited to,

3

PLAINTIFF CODY BAKER'S RESPONSES AND OBJECTIONS TO DEFENDANT YAHOO!
INC.'S FIRST SET OF INTERROGATORIES
CONSOLIDATED CASE NO. 5:13-CV-04980-LHK

1  information Defendant seeks regarding communications between Plaintiff's attorneys and between

2  Plaintiff and its attorneys.

3       Subject to the foregoing, Plaintiff Baker first became aware Yahoo engaged in email scanning

4  alleged in the Consolidated Class Action Complaint in or around October 2013 in conversation with

5  counsel.

6  **INTERROGATORY NO. 9:**

7       For each plaintiff, after the date specified in response to interrogatory No. 8, have you sent any

8  emails to Yahoo users?

9  **RESPONSE:**  Plaintiff objects that Yahoo "users" is ambiguous in that it is could be anyone who has

10  visited Yahoo's website or used Yahoo products or services that might not be known to Plaintiff.

11       Subject to the foregoing, Plaintiff Baker responds that Plaintiff has sent emails to Yahoo

12  subscribers since October 2013.

13  **INTERROGATORY NO. 10:**

14       For each Plaintiff, identify every name or handle you use on social media.

15  **RESPONSE:**  Plaintiff objects to this interrogatory because it is overbroad, burdensome, harassing,

16  invades Plaintiff's rights of privacy, and is not reasonably calculated to lead to the discovery of

17  admissible evidence.  Plaintiff also objects to the definition of "social media" as overbroad, vague and

18  ambiguous.

19

20  Dated:  October 13, 2014          **GIRARD GIBBS LLP**

21

22            By:

23            Daniel C. Girard (SBN 114826)

24            Matthew B. George (SBN 239322)
          601 California Street, 14th Floor

25            San Francisco, California 94104
          Telephone: (415) 981-4800

26            Facsimile: (415) 981-4846

27            *Co-Lead Interim Class Counsel and*

28            *Attorneys for Plaintiff Cody Baker*

4

PLAINTIFF CODY BAKER'S RESPONSES AND OBJECTIONS TO DEFENDANT YAHOO!
INC.'S FIRST SET OF INTERROGATORIES
CONSOLIDATED CASE NO. 5:13-CV-04980-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I have read the foregoing PLAINTIFF CODY BAKER'S RESPONSES TO

DEFENDANT YAHOO! INC.'S FIRST SET OF INTERROGATORIES and am familiar with its

contents.

The information supplied therein is based on my own personal knowledge and/or has been

supplied by my attorneys or other agents and/or compiled from available documents. The

information contained in the foregoing document provided by me is true to the best of my

knowledge and as to those matters that were provided by my attorneys and/or agents, including

contentions and opinions, I am informed and believe they are true. Executed on this _____11th_____

day of ____October____, 2014, at _345 St. Marks Ave #4R Brooklyn, NY_

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

_____

Cody Baker

# Exhibit B

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

1    Daniel C. Girard (SBN 114826)
Matthew B. George (SBN 239322)
2    **GIRARD GIBBS LLP**
601 California Street, 14th Floor
3    San Francisco, CA  94104
Telephone:  (415) 981-4800
4    Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
5    *mbg@girardgibbs.com*

6    Laurence D. King (SBN 206423)       Frederic S. Fox (admitted *pro hac vice*)
        **KAPLAN FOX & KILSHEIMER LLP**    David A. Straite (admitted *pro hac vice*)
7    350 Sansome Street, Suite 400         **KAPLAN FOX & KILSHEIMER LLP**
San Francisco, CA 94104           850 Third Ave., 14th Floor
8    Telephone: (415) 772-4700        New York, NY  10022
Facsimile:  (415) 772-4707        Telephone:  (212) 687-1980
9    *lking@kaplanfox.com*           Facsimile:  (212) 687-7714
         *ffox@kaplanfox.com*
10                       *dstraite@kaplanfox.com*

11    *Co-Lead Interim Class Counsel*

11

## IN THE UNITED STATES DISTRICT COURT
12         ## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

13

14    IN RE: YAHOO! MAIL LITIGATION        Case No. 5:13-CV-4980-LHK

15                           **PLAINTIFF BRIAN PINCUS' RESPONSES**
                            **TO DEFENDANT YAHOO! INC.'S FIRST**
16                           **SET OF INTERROGATORIES**

17

18    **PROPOUNDING PARTY:**       **DEFENDANT YAHOO! INC.**

19    **RESPONDING PARTY:**        **PLAINTIFF BRIAN PINCUS**

20    **SET NUMBER:**            **ONE**

21

22       Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Brian Pincus ("Plaintiff" or

23    "Responding Party") hereby responds to Defendant Yahoo! Inc. ("Yahoo" or "Defendant")'s

24    First Set of Interrogatories  (the "Interrogatories") as follows:

25                          **PRELIMINARY STATEMENT**

26       Plaintiff has not completed discovery, investigation, or trial preparation in this case.

27    Therefore, Plaintiff provides these responses without waiving the right to later modify,

28    supplement, or amend these responses as additional information becomes available in the course

1   of such discovery, investigation, or trial preparation.  Furthermore, Plaintiff reserves the right to

2   revise, amend, supplement, or otherwise change any or all of these responses in the event that

3   information that is presently in Plaintiff's possession is inadvertently omitted or mistakenly stated

4   herein.  Plaintiff responds to these Interrogatories subject to the accompanying objections,

5   without waiving, and expressly preserving, all such objections.

6   **OBJECTIONS TO INSTRUCTIONS**

7   Plaintiff objects to Defendant's Instructions because they impose obligations that are not

8   required by the Federal Rules of Civil Procedure or by the Local Rules of the U.S. District Court

9   for the Northern District of California.

10   **CONFIDENTIALITY DESIGNATION**

11   Plaintiff designates the following responses "CONFIDENTIAL" as defined in the

12   Protective Order signed by Magistrate Judge Howard Lloyd on February 28, 2014.

13   **INTERROGATORIES**

14   **INTERROGATORY NO. 1:**

15   For each Plaintiff, identify each email service you have used to send and/or receive email,

16   including the dates during which you used each identified email service, the domain name of each

17   email service, and the username associated with each identified email service.

18   **RESPONSE TO INTERROGATORY NO. 1:**

19   Plaintiff Pincus responds as follows:

20   Since October 2, 2011, Plaintiff has used the following email addresses:

21   

22

23

24   **INTERROGATORY NO. 2:**

25   For each Plaintiff, identify each mail service you have used to send emails to a Yahoo

26   subscriber, including the dates during which you used each identified email service, the domain

27   name of each email service, and the username associated with each identified email service.

28

1    **RESPONSE TO INTERROGATORY NO. 2:**

2       Plaintiff Pincus responds as follows:

3       Since October 2, 2011 to the present, Plaintiff has used all three email addresses identified

4    above to send emails to a Yahoo subscriber.

5    **INTERROGATORY NO. 3:**

6       For each Plaintiff, identify each address where you have resided since October 2, 2011

7    and the dates of such residence.

8    **RESPONSE TO INTERROGATORY NO. 3:**

9       Plaintiff Pincus responds as follows:

10

11

12    **INTERROGATORY NO. 4:**

13       Do you contend that Yahoo's scanning of your email correspondence with Yahoo

14    subscribers for spam and malware detection violates California Penal Code § 637.2 and/or

15    18 U.S.C. § 2707?

16    **RESPONSE TO INTERROGATORY NO. 4:**

17       Plaintiff objects to Interrogatory No. 4 because it is a premature contention interrogatory.

18    Discovery in this action is ongoing with substantial discovery yet to occur, including further

19    document review, expert discovery, and party depositions that will be necessary to answer the

20    interrogatory. *See HTC Corp., v. Technology Properties LTD., et al.,* No. 08-00882-JF-HRL,

21    2011 WL 97787. At this stage of discovery, Yahoo has recently completed its production of

22    documents in response to Plaintiffs' First Set of Document Requests, which included a

23    substantial amount of documents regarding its email scanning technology designated "Highly

24    Confidential – Attorneys' Eyes Only" pursuant to the Protective Order. Further, Plaintiffs'

25    proposed technical experts have only recently been approved by Yahoo to review these materials

26    through the pre-disclosure approval process required under the Protective Order after Yahoo's

27    initial objections. Plaintiffs also have yet to take depositions of Yahoo's engineers and persons

28    most knowledgeable regarding its email scanning practices and technology. Plaintiff will

1   respond to this Interrogatory after further discovery and investigation, including expert discovery.

2   Plaintiff also objects to the extent that this Interrogatory may require information and

3   communications protected from disclosure by the attorney-client privilege and attorney, trial

4   preparation, and expert witness work product doctrines.

5   **INTERROGATORY NO. 5:**

6       For each Plaintiff, describe whether it was your understanding prior to filing your

7   complaint against Yahoo that Yahoo would scan your email correspondence with Yahoo

8   subscribers for malware and spam detection.

9   **RESPONSE TO INTERROGATORY NO. 5:**

10      Plaintiff Pincus did understand prior to filing the complaint that Yahoo would scan email

11  correspondence with Yahoo subscribers for malware and spam detection.

12  **INTERROGATORY NO. 6:**

13      Do you contend that members of the putative class as defined in the Consolidated Class

14  Action Complaint are entitled to statutory damages under California Penal Code § 637.2 and/or

15  18 U.S.C. § 2707?

16  **RESPONSE TO INTERROGATORY NO. 6:**

17      Yes.

18  **INTERROGATORY NO. 7:**

19      Do you contend that members of the putative class as defined in the Consolidated Class

20  Action Complaint are entitled to actual damages under California Penal Code § 637.2 and/or

21  18 U.S.C. § 2707?

22  **RESPONSE TO INTERROGATORY NO. 7:**

23      Yes.

24  **INTERROGATORY NO. 8:**

25      Describe how you first became aware that Yahoo engaged in the scanning of email

26  alleged in the Consolidated Class Action Complaint, including when you first became aware.

27

28

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff also objects to the extent that this Interrogatory may require information and communications protected from disclosure by the attorney-client privilege and attorney, trial preparation, and expert witness work product doctrines.   This objection includes, but is not limited to, information Defendant seeks regarding communications between Plaintiff's attorneys and between Plaintiff and its attorneys.

Subject to the foregoing, Plaintiff Pincus first became aware Yahoo engaged in email scanning alleged in the Consolidated Class Action Complaint in or around November 2013 in conversation with counsel.

**INTERROGATORY NO. 9:**

For each plaintiff, after the date specified in response to interrogatory No. 8, have you sent any emails to Yahoo users?

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects that Yahoo "users" is ambiguous in that it is could be anyone who has visited Yahoo's website or used Yahoo products or services that might not be known to Plaintiff.

Subject to the foregoing, Plaintiff Pincus responds that he has sent emails to Yahoo subscribers since November 2013.

**INTERROGATORY NO. 10:**

For each Plaintiff, identify every name or handle you use on social media.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this interrogatory because it is overbroad, burdensome, harassing, invades Plaintiff's rights of privacy, and is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff also objects to the definition of "social media" as overbroad, vague and ambiguous.

DATED: October 13, 2014

KAPLAN FOX & KILSHEIMER LLP

_Laurence King_

Laurence D. King

App. 83



1

2      **KAPLAN FOX & KILSHEIMER LLP**
       Laurence D. King (SBN 206423)
3      350 Sansome Street, Suite 400
       San Francisco, CA 94104
       Telephone:  (415) 772-4700
4      Facsimile:  (415) 772-4707
       *lking@kaplanfox.com*
5
       *and*
6
       **KAPLAN FOX & KILSHEIMER LLP**
7      Frederic S. Fox (admitted *pro hac vice*)
       David A. Straite (admitted *pro hac vice*)
8      850 Third Ave., 14th Floor
       New York, NY  10022
9      Telephone:  (212) 687-1980
       Facsimile:  (212) 687-7714
10     *ffox@kaplanfox.com*
       *dstraite@kaplanfox.com*
11
       *Co-Lead Interim Class Counsel*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

App. 84