Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Ashley Tveit (SBN 275458)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
*as@girardgibbs.com*
*at@girardgibbs.com*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707
*lking@kaplanfox.com*

*Co-Lead Class Counsel*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
*ffox@kaplanfox.com*
*dstraite@kaplanfox.com*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: YAHOO MAIL LITIGATION | Consolidated Case No.: 5:13-cv-04980-LHK |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Date:  December 10, 2015 |
| | Time:  1:30 p.m. |
| | Place:  Courtroom 8 |
| | Judge:  Hon. Lucy Koh |

**TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................................... 1

II.    ISSUES TO BE DECIDED ......................................................................................... 2

III.   FACTUAL BACKGROUND ........................................................................................ 2

       A.    Yahoo Intercepts Incoming Email and Extracts Its Content................................ 2

       B.    Yahoo Intercepts Outgoing Email and Extracts Its Content ............................... 3

       C.    Yahoo Uses the Email Content for Targeted Advertising ................................... 3

       D.    Yahoo Has Kept the Details of Its Targeted Advertising Program Quiet.......... 4

       E.    Yahoo Shared Email Content With Third Parties ............................................... 5

IV.    SUMMARY JUDGMENT STANDARD ..................................................................... 6

V.     YAHOO IS LIABLE FOR VIOLATING THE CIPA AS A MATTER OF LAW ...... 6

       A.    Yahoo Uses a "Machine, Instrument or Contrivance"....................................... 6

       B.    Yahoo Willfully Reads or Learns the Content of Email, and Uses the Information It
             Obtains for Targeted Advertising ....................................................................... 7

             1.    Yahoo Willfully Reads or Learns the Contents of Class Members' Email .......... 7

             2.    Yahoo Uses the Email Content to Create Targeted Advertising Campaigns ........ 9

       C.    Yahoo Reads or Learns the Content of Class Members' Email While It Is in Transit
             or While It Is Being Sent or Received in California............................................ 9

             1.    The CIPA Applies to Interceptions During Transmission and Receipt .............. 10

             2.    The Federal Wiretap Act Prohibits the Interception of Email Before It Is
                   Delivered to the Recipient .................................................................... 11

             3.    Yahoo Violates the CIPA by Intercepting Email While It Is In Transit In
                   Order to Read and Learn the Contents and Meaning of the Email.................... 14

       D.    Yahoo Does Not Obtain Class Members' Consent......................................... 16

VI.    YAHOO VIOLATED THE STORED COMMUNICATIONS ACT AS A MATTER OF
       LAW ...................................................................................................................... 18

i

VII.  PLAINTIFFS REQUEST A PERMANENT INJUNCTION AND DECLARATORY RELIEF ........................................................................................................................ 19

VIII.  CONCLUSION ...................................................................................................................... 22

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1

# TABLE OF AUTHORITIES

2

3   **Cases**

4

*Ades v. Omni Hotels Management Corp.*
5      46 F. Supp. 3d 999 (C.D. Cal. 2014) ............................................................ 10

6   *Ades v. Omni Hotels Management Corp.*
7      2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ........................................... 11, 17

8   *Anderson v. Liberty Lobby, Inc.*
       477 U.S. 242 (1986) ......................................................................................... 6
9

10  *Bower v. Bower*
       808 F. Supp. 2d 348 (D. Mass. 2011) ............................................................ 18
11

*BP America Production Co. v. Burton*
12      549 U.S. 84 (2006) ......................................................................................... 10

13  *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*
14      843 F. Supp. 2d 1018 (N.D. Cal. 2012) ........................................................... 6

15  *Celotex Corp. v. Catrett*
16      477 U.S. 317 (1986) ......................................................................................... 6

17  *Colonial Life & Accident Insurance Co. v. Stentorians-L.A. County Black Fire*
18      2013 WL 6732687 (C.D. Cal. Dec. 19, 2013) ............................................... 20

19  *eBay Inc v. MercExchange, L.L.C.*
       547 U.S. 388 (2006) ....................................................................................... 19
20

21  *Facebook, Inc. v. Fisher*
       2009 WL 5095269 (N.D. Cal. Dec. 21, 2009) ............................................... 19
22

23  *Facebook, Inc. v. Power Ventures, Inc.*
       2013 WL 5372341 (N.D. Cal. Sept. 25, 2013) ............................................... 21

24  *Flanagan v. Flanagan*
25      27 Cal.4th 766 (2002) ..................................................................................... 16

26  *Gomez v. Acquistapace*
       50 Cal. App. 4th 740 (1996) ............................................................................. 8
27

28  *Hale v. Morgan*
       22 Cal.2d 388 (Cal. 1978) ................................................................................ 8

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

*In re Adobe Systems, Inc. Privacy Litig.*
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................ 22

*In re Carrier IQ, Inc.*
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................... 14, 16

*In re Google Inc. Gmail Litig.*
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......................................... 6, 16

*In re Western Asbestos Co.*
   416 B.R. 670 (N.D. Cal. 2009) ....................................................................... 20

*In re Yahoo Mail Litig.*
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................... 6, 16

*Kearney v. Salomon Smith Barney, Inc.*
   39 Cal. 4th 95 (2006) ............................................................................... 17, 20

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002) ................................................................... 11, 14

*Los Angeles Memorial Coliseum Communication v. NFL*
   634 F.2d 1197 (9th Cir. 1980) ....................................................................... 19

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) ......................................................................................... 6

*MedImmune, Inc. v. Genentech, Inc.*
   549 U.S. 117 (2007) ....................................................................................... 22

*Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*
   966 F.2d 1292 (9th Cir. 1992) ....................................................................... 22

*Noel v. Hall*
   568 F.3d 743 (9th Cir. 2009) ......................................................................... 12

*Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville*
   896 F.2d 1283 (11th Cir. 1990) ..................................................................... 19

*Opperman v. Path, Inc.*
   2014 WL 1973378 (N.D. Cal. May 14, 2014) ............................................... 11

*Orantes-Hernandez v. Thornburgh*
   919 F.2d 549 (9th Cir. 1990) ......................................................................... 21

iii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

*People v. Atkins*
  25 Cal.4th 76 (Cal. 2001) ................................................................................................ 8

*Planned Parenthood of Idaho, Inc. v. Wasden*
  376 F.3d 908 (9th Cir. 2004) ......................................................................................... 10

*Ribas v. Clark*
  38 Cal.3d 355 (1985) ............................................................................................... 10, 16

*Sardi's Restaurant Corp. v. Sardie*
  755 F.2d 719 (9th Cir. 1985) ......................................................................................... 21

*Tavernetti v. Superior Court*
  22 Cal.3d 187 (1978) ...................................................................................................... 21

*Theofel v. Farey-Jones*
  359 F.3d 1066 (9th Cir. 2003) ....................................................................................... 18

*United States v. Councilman*
  418 F.3d 67 (1st Cir. 2005) ...................................................................................... 12, 13

*United States v. Rodriguez*
  968 F.2d 130 (2d Cir. 1992) ........................................................................................... 12

*United States v. Szymuszkiewicz*
  622 F.3d 703 (7th Cir. 2010) .................................................................................... 13, 14

**Federal Rules**

Fed. R. Civ. P. 56 ................................................................................................................. 6

**Federal Statutes**

18 U.S.C. § 2510(4) ........................................................................................................... 11

18 U.S.C. § 2510(12) ......................................................................................................... 12

18 U.S.C. § 2510(15) ......................................................................................................... 18

18 U.S.C. § 2511(1)(a) ....................................................................................................... 11

18 U.S.C. § 2702(a) ........................................................................................................... 18

18 U.S.C. § 2707(a) ........................................................................................................... 18

28 U.S.C. § 2201(a) ........................................................................................................... 21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1

**California Statutes**

2   Cal. Penal Code § 630....................................................................................................... 6, 20

3   Cal. Penal Code § 631..........................................................................................................passim

4   Cal. Penal Code § 632....................................................................................................... 17, 21

5

6   Cal. Penal Code § 632.7........................................................................................................ 10

7   Cal. Penal Code § 637.2........................................................................................................ 21

8   **Other Authorities**

9   *H. Lee Van Bowen,* Electronic Surveillance in California: A Study in State Legislative Control

10      57 Cal. L. Rev. 1182 (1969) ........................................................................................... 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

**NOTICE OF MOTION AND MOTION**

TO YAHOO! INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 10, 2015, at 1:30 p.m., or as soon thereafter as counsel may be heard, Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles, by and through their attorneys of record, will move this Court for an order granting their motion for summary judgment. This motion is based upon this notice and the accompanying memorandum of points and authorities, the declaration of David A. Straite and the evidence attached thereto, the request for judicial notice and the exhibits attached thereto, the oral argument of counsel, and all other papers on file in this case.

Plaintiffs request that the Court enter judgment in their favor on their claims for violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and violation of the Stored Communications Act, 18 U.S.C. § 2702(a). Plaintiffs also request that the Court declare that Yahoo's conduct violates the CIPA and SCA, and enter a permanent injunction that requires Yahoo to cease copying and extracting the content of class members' email without their consent and permanently delete all information it has collected and stored from class members' email without their consent.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

## I.    INTRODUCTION

Yahoo! Inc. operates a web-based email service called Yahoo Mail. In exchange for receiving "free" basic service email, Yahoo subscribers agree to allow Yahoo to "scan" their incoming and outgoing email, analyze the content, and use the content for the purpose of providing targeted advertising, one of the company's main sources of revenue. Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams and Halima Nobles are four individuals who do not subscribe to Yahoo Mail, but who do occasionally correspond with Yahoo Mail subscribers. Plaintiffs allege that Yahoo intercepts the email they and other non-Yahoo Mail subscribers send to and receive from Yahoo Mail subscribers, reads or learns its contents and meaning, and then uses the content for commercial purposes, all without obtaining their consent. Plaintiffs allege that this conduct violates the California Invasion of Privacy Act (CIPA), which requires all parties to consent to the interception of a communication.

The basic facts at issue in this motion appear to be undisputed. Yahoo acknowledges that it ███████████ certain content of class members' emails to and from Yahoo Mail subscribers ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Yahoo uses a program called ██████ to analyze the email content and match advertising to its subscribers' interests. ████████████████████████████████████████████ ████████████████████████████████████████ Yahoo can then ████████████████ ████████████████████████████—a form of targeted advertising that is very valuable to Yahoo's clients.  Because this conduct constitutes a violation of the CIPA as a matter of law, plaintiffs request that the Court grant judgment in their favor.

Yahoo has also violated the federal Stored Communications Act by ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████ Plaintiffs request that the Court grant judgment in their favor on their SCA claim as well. Plaintiffs also request that the Court declare that Yahoo's conduct violates the CIPA and SCA, and enter a permanent injunction that requires Yahoo to cease copying and extracting the content of class members' email without their consent and permanently delete all information it has collected and stored

1

from class members' email without their consent.

## II.   ISSUES TO BE DECIDED

     1.      Whether Yahoo violates the California Invasion of Privacy Act as a matter of law.

     2.      Whether Yahoo has violated the Stored Communications Act.

     3.      Whether Plaintiffs are entitled to injunctive and declaratory relief.

## III.   FACTUAL BACKGROUND

### A.   Yahoo Intercepts Incoming Email and Extracts Its Content

When an email is sent to a Yahoo Mail subscriber from a non-subscriber, the email is transmitted over the internet through a series of servers just as a baton is passed in a relay race, one server passing the email to the next server in the chain. *See* Sherwood Report, ¶¶ 14-18 & Ex. C (RFC 5321) at 7-9.[1] One of the many servers in this chain is Yahoo's intake server, which is called a "Mail Transfer Agent," or MTA. Sherwood Report, ¶ 19; Declaration of David Straite ("Straite Decl."), Ex. 7 (Doron Dep.) at 25:1-2. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Sherwood Report, ¶¶ 19-25; Straite Decl., Ex. 7 (Doron Dep.) at 25:1-2, 65:25-66:3. ██████████████████████████████ ████████████████████████████████████████████████████████████████ Sherwood Report, ¶ 21; Straite Decl., Ex. 19 at YAH00011375.[2] ████████████████████████████████████ ████. Sherwood Report, ¶ 20; Straite Decl., Ex. 19 at YAH00011379. ████████████████████████████████████ email is transmitted to a mail server where it can be accessed by the recipient. Sherwood Report, ¶ 26; Straite Decl., Ex. 54 at YAH00110652. The recipient cannot access the email until it is delivered to the mail server. Straite Decl., Ex. 9 (Shue Dep.) at 54:12-16. ████████████████████████████████████████████████████████ ████████████████████ Sherwood Report, ¶ 22; Straite Decl., Ex. 7 (Doron Dep.) at 18:12-23, Ex. 31 at YAH00068107, Ex. 54 at YAH000110652. ████████████████████████████████. Straite Decl.,

---

[1] The Expert Report of Robert Sherwood is attached as Exhibit 1 to the Straite Declaration.

[2] The parties stipulated, and the Court ordered, that they will not dispute the authenticity of documents produced in this litigation. ECF No. 93.

1   Ex. 9 (Shue Dep.) at 76:5-12. ████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   Sherwood Report, ¶ 27; Straite Decl., Ex. 53. ██████████████████████████████

4   ████████ Straite Decl., Ex. 38 at YAH00075521.

5       **B.    Yahoo Intercepts Outgoing Email and Extracts Its Content**

6       When a Yahoo Mail subscriber sends an email to any recipient, including non-subscribers,

7   ███████████████████████████████████████████████. Sherwood Report ¶¶ 21-22, 28,

8   33; Straite Decl., Ex. 54 at YAH000110652.  This process is almost identical to the process for

9   incoming email ████████████████████████████████████████████████████████

10  █████████ Straite Decl., Ex. 23. ██████████████████████████████████████

11  ████████████████████████████████████. Sherwood Report, ¶¶ 26-28; Straite Decl., Exs.

12  36 & 42, Ex. 54 at YAH000110652. █████████████████████████████████████

13  ████████████████████████████████████████████████████████. Sherwood

14  Report, Ex. C (RFC 5321) at 7-9.

15      **C.    Yahoo Uses the Email Content for Targeted Advertising**

16      When Yahoo first launched its program to scan for advertising purposes in 2011, ██████████

17  ███████████████████████████████████████████████████████████████████

18  ████████████████████ Sherwood Report ¶ 29; Straite Decl., Ex. 16 at YAH00002626-2629,

19  Ex. 54 at YAH00110652. ██████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  █████████████████████████ to provide its subscribers with targeted advertising. Sherwood Report

22  ¶ 29; Straite Decl., Ex. 16 at YAH00002626-2629, Ex. 54 at YAH00110652. For example, █████████

23  ██████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ██████████████████ Straite Decl., Ex. 7 (Doron Dep.) at 34:25-35:13, Ex. 16 at

26  YAH00002626-2630, Ex. 25 at YAH00013080-13081.

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

---

3

1   ███████████████ *Id.*, Ex. 32 at YAH00070445. ███████████████████████

2   ███████████████████████████████████████████████████████████

3   ██████████████████████ *Id.*, Ex. 32 at YAH00070446-70447, Ex. 34 at YAH00070666.

4   ██████████████████████████████████████████████████████████

5   █████████████████████████████████ Sherwood Report, ¶ 30;

6   Straite Decl., Ex. 7 (Doron Dep.) at 43:19-22, Ex. 32 at YAH00070448. ███████████

7   ████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████ Sherwood Report,

9   ¶ 31; Straite Decl., Ex. 11 (Sharp Dep.) at 92:14-93:22, Ex. 41. ██████████████

10  ███████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████ Straite Decl., Ex. 11 (Sharp Dep.) at 93:4-22.

13  ██████████████████████████████████████████

14  ███████████████████████████████████████████

15  ████████████████████████████████ *Id.*, Ex. 41. ████████

16  ████████████████████████████████████████████████████

17  ████ *Id.*, Ex. 50 at YAH00097329, Ex. 51 at YAH00097367. ████████████████

18  ████████████████████████████████████████████

19  ██████████████████████████████ *Id.*, Ex. 43. █████████████

20  ██████████████████████████████ *Id.*, Exs. 39 & 40. ████████████

21  ███████████████████████████████████████████

22  █████████████████████████████████ *Id.*, Ex. 32, Ex. 52 at

23  YAH00103264; Sherwood Report, ¶ 34.

24  **D.    Yahoo Has Kept the Details of Its Targeted Advertising Program Quiet**

25  Because of concerns about public backlash, Yahoo has endeavored to keep the details of its

26  practices secret from the public. In 2010, for example, Yahoo employees were ██████████████

27  ████████████████████████████████████████████████████████

28  ███████████████████████████████████████ Straite Decl., Ex. 26 at



4

1     YAH00016831-16832. Yahoo ████████████████████████████, but has carefully avoided

2     publicity about its practices because of concerns about a backlash from consumers. *Id.*, Ex. 17. Yahoo's

3     ██████████ product manager recommended that the company "not proactively grab the attention of

4     consumers" around the company's ████████. *Id.*, Ex. 18. Yahoo avoided "PRing this product and

5     potentially getting media backlash on pri[vacy]" and avoided a "big bang announcement." *Id.*, Ex. 27.

6     Yahoo took a few steps to suggest transparency by, for example, mentioning its new scanning practices

7     on a "quiet blog," just "so we can say we have something out there if there is an issue." *Id.*, Ex. 18. But

8     even in late 2013 Yahoo's marketing department advised employees that the company would "prefer not

9     to talk about it with consumers in case it stirs up privacy debates" and would "prefer to discuss email ad

10    targeting only when we're talking to advertising-friendly audiences. It raises a lot of privacy concerns

11    …." *Id.*, Ex. 17.

12       **E.**     **Yahoo Shared Email Content With Third Parties**

13       Yahoo informs its subscribers that it provides "personal information about you … to trusted

14    partners who work on behalf of or with Yahoo under confidentiality agreements." Plaintiffs' Request for

15    Judicial Notice ("RJN"), Ex. I. ████████████████████████████

16    ██████████████████████████████. *See* Declaration of Kevin Day (ECF No. 114-2), ¶¶

17    2-3.███████████████████████████████████████████

18    ████████████████████████████████████████████

19    ██████████████ Straite Decl., Ex. 8 (Day Dep.) at 39:11-40:1, Ex. 28, Ex. 30.████████

20    ████████████████████████████████████

21    ████████████████████ *Id.*, Ex. 8 (Day Dep.) at 24:18-39:22.████████

22    ████████████████████████████████████████████

23    *Id..*, Ex. 8 (Day Dep.) at 33:21-34:2 ██████████████████████████████

24    ████████████████ *Id.*, Ex. 28 ███████████████████

25    ████████████████████████████████████

26    ██ *See*, *e.g.*, ECF No. 114-2.████████████████████████

27    █████████████████████████████████████ Straite Decl.,

28    Ex. 8 (Day Dep.) at 34:7-19.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the moving party demonstrates that there is no genuine issue as to any material fact and that judgment as a matter of law is appropriate. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Rule 56 "standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party. *Id.* at 248. "Material facts are those that may affect the outcome of the case." *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018, 1023 (N.D. Cal. 2012) (citing *Liberty Lobby*, 477 U.S. at 248). To defeat summary judgment, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## V.   YAHOO IS LIABLE FOR VIOLATING THE CIPA AS A MATTER OF LAW

The CIPA "is California's anti-wiretapping and anti-eavesdropping statute that prohibits unauthorized interceptions of communications in order 'to protect the right of privacy.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014) (quoting Cal. Penal Code § 630). The CIPA prohibits the use of any "machine, instrument or contrivance" to intentionally read or attempt to read or learn the contents or meaning of email[3] while it is in transit unless all parties to the email consent, as well as the use or communication of information obtained from the intercepted email. Cal. Penal Code § 631(a). Plaintiffs' evidence establishes that Yahoo violates CIPA as a matter of law.

### A.   Yahoo Uses a "Machine, Instrument or Contrivance"

Yahoo informs its subscribers that it uses a series of machines to intercept all incoming and

---

[3] The Court has held that section 631 applies to email. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20-21 (N.D. Cal. Sept. 26, 2013).

outgoing email (including subscribers' email with class members) and read or learn the content of the email. *See* RJN, Ex. J at ¶ 1.b ("Yahoo's automated systems scan and analyze all incoming and outgoing communications content sent [to] and received from your account … including those stored in your account …."). Incoming email (from class members to Yahoo Mail subscribers) arrives at Yahoo's MTAs, which are a type of server used for email transmission. Straite Decl., Ex. 7 (Doron Dep.) at 26:4-8, Ex. 9 (Shue Dep.) at 53:16-24. ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.*, Ex. 19 at YAH00011374- 11375. ████████████████████████████████████ ████████████████████ *Id.*, Ex. 31 at YAH00068107, Ex. 20 at YAH00011496; Sherwood Report, ¶ 13. ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ Straite Decl., Ex. 7 (Doron Dep.) at 49:7-24, 34:25-35:6; Sherwood Report, ¶¶ 22, 27.

Outgoing email (from Yahoo Mail subscribers to class members) ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Straite Decl., Ex. 22 at YAH00011653-11656; Sherwood Report, ¶ 22. ████████████████████████ ██████████████████████████████████████████. Straite Decl., Ex. 36; Sherwood Report, ¶ 33.

**B.    Yahoo Willfully Reads or Learns the Content of Email, and Uses the Information It Obtains for Targeted Advertising**

Yahoo violates the CIPA if it willfully "reads, or attempts to read, or learns the content or meaning" of class members' email or if it "uses, or attempts to use, in any manner, or for any purpose" any information it obtains from class members' email. Cal. Penal Code § 631. Yahoo does both.

**1.    Yahoo Willfully Reads or Learns the Contents of Class Members' Email**

Yahoo admits that its "automated systems will and analyze all incoming and outgoing communications content sent and received from your account (such as Mail and Messenger content including instant messages and SMS messages) to detect, among other things, certain words and phrases (we call them 'keywords') within these communications." RJN, Ex. K at ¶ 1. Yahoo adds that "[t]his

7

1   technology looks for patterns, keywords, and files in Mail, Messenger, and other communications

2   content." *Id.* On another webpage, Yahoo says that some of its advertising "will be based on our

3   understanding of the content and meaning of your communications." RJN, Ex. L. These admissions

4   leave no doubt that Yahoo willfully reads or learns the content of class members' email with Yahoo

5   Mail subscribers. *See People v. Atkins*, 25 Cal.4th 76, 85 (Cal. 2001) ("[T]he terms 'willful' or

6   'willfully,' when applied in a penal statute, require only that the illegal act or omission occur

7   'intentionally,' without regard to motive or ignorance of the act's prohibited character." (quoting *Hale v.*

8   *Morgan*, 22 Cal.2d 388, 398 (Cal. 1978)); *Gomez v. Acquistapace*, 50 Cal. App. 4th 740, 746 (1996)

9   ("[A] person who acts willfully may be said to intend 'those consequences which (a) represent the very

10  purpose for which an act is done (regardless of the likelihood of occurrence), or (b) are known to be

11  substantially certain to result (regardless of desire).'" (citation omitted)).

12          In addition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Sherwood Report, ¶ 27;

14  Straite Decl., Ex. 53. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮ Straite Decl., Ex. 9 (Shue Dep.) at 72:17-73:18. ▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, Ex. 38 at YAH00075521 ▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮ *Id.*, Ex. 52 at YAH00103264 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Straite Decl., Ex. 7 (Doron Dep.) at 43:21-22; Sherwood Report,

23  ¶ 30. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮ Straite Decl., Ex. 11 (Sharp Dep.) 94:2-95:8, Ex. 33 at YAH00070456. ▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮ *Id.*, Ex. 11 (Sharp Dep.) at 93:4-18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████ *Id.*, Ex. 49 at YAH00096429. Another Yahoo employee said

3 that █████ allows Yahoo to determine "where you live, what you eat, who you sleep with ... you get the

4 idea." *Id.*, Ex. 1 (quoting Ex. 37).

5         **2.**      **Yahoo Uses the Email Content to Create Targeted Advertising Campaigns**

6       Yahoo informs its subscribers that it uses the content of their email "to match and serve targeted

7 advertising" to its subscribers. RJN, Ex. J at ¶ 1.b. Elsewhere, Yahoo says that it detects keywords in its

8 subscribers' emails (including emails with class members) to displays ads "to you in Mail for products

9 and services that are related to those keywords." RJN, Ex. K at ¶ 1. When Yahoo identifies relevant

10 keywords in subscribers' email, it assigns them to ██████████████." Straite Decl., Ex. 11 (Sharp

11 Dep.) at 94:2-95:8, Ex. 33 at YAH00070456. For example, ████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ██████████ *Id.*, Ex. 45, Ex. 46. ██████████

16 ██████████████████████ *Id.*, Ex. 44.

17     ████████████████████████████████████████

18 ████████████████████████████████████████████

19 ██████████ *Id.*, Ex. 48, Ex.47, Ex. 55 at YAH00128954 ████████████

20 ████████████████████████████████████

21 ██████████████████ *Id.*, Ex. 40 at YAH00078221-78222.

22     **C.**    **Yahoo Reads or Learns the Content of Class Members' Email While It Is in Transit**

23            **or While It Is Being Sent or Received in California**

24       Section 631 applies to a defendant who "reads, or attempts to read, or to learn the contents or

25 meaning of any message, report, or communication while the same is in transit or passing over any wire,

26 line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a).

27 ████████████████████████████████████████████

28 ████████████████████████████████████████████████████

9

███. Straite Decl., Ex. 7 (Doron Dep.) at 41:12-15, Ex. 9 (Shue Dep.) at 54:12-16, Ex. 36. As discussed below, this conduct violates section 631.

### 1. The CIPA Applies to Interceptions During Transmission and Receipt

There are very few cases that discuss the meaning of "in transit or passing over any wire, line, or cable, or is being sent from, or received" in the context of the CIPA. The plain language of the statute, however, prohibits the interception of communications both while they are in transit and while they are being received. *See BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."); *see also* H. Lee Van Bowen, Electronic Surveillance in California: A Study in State Legislative Control, 57 Cal. L. Rev. 1182, 1202 (1969) (explaining that "[i]t was the intent of the drafters, and apparently the Legislature" to outlaw "interception during transmission and reception").[4] Construing the statute any other way would violate the canon that each word in a statute is to be given effect. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 928 (9th Cir. 2004) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation omitted)); *see also Ades v. Omni Hotels Management Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014) (interpreting Penal Code § 632.7 and finding that "the fact that the statute uses the terms 'receives' and 'intercepts' disjunctively … suggests that these terms are meant to apply to distinct kinds of conduct").

In *Ribas v. Clark¸* the California Supreme Court (sitting en banc) confirmed that "in transit" and "being sent from, or received" can be distinct events. The court held that a defendant who listened on an extension telephone to a call between California residents violated section 631 because "[i]t cannot be seriously disputed that defendant is accused of eavesdropping on plaintiff's conversation with his wife while the communication was **either** 'in transit' **or** was 'being sent from' and 'received at' a place within this state." 38 Cal.3d 355, 360 (1985) (emphasis added). The court explained that the "simultaneous dissemination" of the communication to an undisclosed third party violates section 631 because "such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361. By

---

[4] A copy of this article is attached as Exhibit 56 to the Straite Declaration.

contrast, the "secondhand repetition of the contents of a conversation" by the recipient does not impinge upon the same privacy concerns and is not a violation of the statute. *Id.* at 360-61 ("While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.").

### 2. The Federal Wiretap Act Prohibits the Interception of Email Before It Is Delivered to the Recipient

When interpreting provisions of the CIPA, federal courts often consider cases interpreting the federal Wiretap Law (Title I of the Electronic Communications Privacy Act of 1986, or ECPA). *See, e.g., Ades v. Omni Hotels Management Corp.*, No. 2:13-cv-02468-CAS, 2014 WL 4627271, at *12 (C.D. Cal. Sept. 8, 2014) (considering cases addressing consent in the context of the federal Wiretap Act); *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378, at *30 (N.D. Cal. May 14, 2014) (applying the Wiretap Act's definition of "interception" to the plaintiffs' CIPA claim). The Wiretap Act does not use the terms "in transit" or "sent" and "received." Instead, it applies to "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). As the legislative history of the CIPA demonstrates, the purpose of the CIPA is also to prohibit "various types of interception of [and] interference with" communications transmitted over wires. Legis. Counsel's Dig., Assem. Bill No. 860 (1967 Reg. Session), Summary Dig., p. 225 (RJN, Ex. D); *see also* Assem. Comm. on Criminal Procedure, Bill Digest, Assem. Bill No. 860 (1967 Reg. Session) April 25, 1967, p. 19 (RJN, Ex. E) (explaining that the bill penalizes any person "who, without the consent of all parties, intercepts any communication or uses any information so obtained"). The Wiretap Act defines "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Courts interpret "interception" as used by the federal Wiretap Act to mean the acquisition of an electronic communication "during transmission, not while it is in storage." *See, e.g., Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The Ninth Circuit explained that "[t]his conclusion is

consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (citing Webster's Ninth New Collegiate Dictionary 630 (1985)). Thus, an interception occurs "when the contents of a wire communication are captured or redirected in any way." *Noel v. Hall,* 568 F.3d 743, 749 (9th Cir. 2009) (quoting *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992)).

███████████████████████████████████████████████████████████████

███████████████████████████████████████. The First Circuit, sitting en banc, held that similar conduct violated the Wiretap Act in *United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005). Councilman was the vice president of Interloc, Inc., an online rare book listing service. *Id.* at 70. Book dealers who used Interloc's service were given an email address at "Interloc.com" and Interloc acted as the email provider. *Id.* Because Interloc competed with Amazon, Councilman had his employees program Interloc's mail transfer agent to copy all incoming emails to the dealers from Amazon and divert the copies to a separate mailbox before the emails were delivered to the dealers. *Id.*

The First Circuit began its analysis of the application of the Wiretap Act with the text of the statute, observing that the "definition of 'electronic communication' is broad and, taken alone, would appear to cover incoming e-mail messages while the messages are being processed by the MTA." *Id.* at 72-73. An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic or photooptical system that affects interstate or foreign commerce …." 18 U.S.C. § 2510(12). The court rejected Councilman's argument that "once a message enters a computer" (like Interloc's MTA) it is in "temporary, intermediate storage" rather than in transit and therefore governed by the SCA rather than the Wiretap Act. *Id.* at 72. The court held that "the term 'electronic communication' includes transient electronic storage that is intrinsic to the communication process for such communications." *Id.* at 79. It found that Councilman violated the Wiretap Act because "an e-mail message does not cease to be an 'electronic communication' during the momentary intervals, intrinsic to the communication process, at which the message resides in transient electronic storage." *Id.* at 79.

In reaching its decision, the First Circuit engaged in a comprehensive review of the legislative history, assisted by an amicus curiae brief authored by Senator Patrick Leahy, one of the original

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1    sponsors of the ECPA. *Id.* at 76-79; *see also U.S. v. Councilman*, Brief on Rehearing En Banc for

2    Senator Patrick J. Leahy as Amicus Curiae Supporting the United States and Urging Reversal, 2004 WL

3    2707307 (Nov. 12, 2004) (attached as Exhibit A to plaintiffs' RJN). Senator Leahy explained that

4    Congress intended the Wiretap Act to apply to the interception of email at any time before it arrives in

5    the recipient's mailbox:

> Congress intended for [the Wiretap Act] to protect electronic communications, like
> telephone calls, during the entirety of the transmission phase. ECPA's legislative
> history fully rebuts defendant's contention that electronic communications move in
> and out of [the Wiretap Act's] umbrella depending on whether, at a precise moment
> in time, they are between or within the computers transmitting them to the user's
> mailbox.

10   RJN, Ex. A at 4. Discussing the bills, committee reports, and hearing testimony, Senator Leahy said that

11   "absolutely nothing in the legislative record supports the view that electronic communications in

12   transmission, prior to the delivery to the user's mailbox, pass in and out of [the Wiretap Act's]

13   protection," *id.* at 8, and that "among the many discussions of transmission and storage during the ECPA

14   hearings, there is no reference to the possibility that intermittent storage during the transmission phase

15   makes a message any less in transmission, and thus [Wiretap Act]-protected, than it otherwise would

16   be." *Id.* at 9. Senator Leahy also addressed the interplay between the Wiretap Act and the SCA, noting

17   that the SCA's "protection for stored communications was designed to address concerns about the

18   security of providers' systems, not to disrupt or supplant the transmission phase protection achieved by

19   extending [the Wiretap Act] to electronic communications." *Id.* at 10.

20         The Seventh Circuit held that similar conduct constituted an interception of email during

21   transmission in *United States v. Szymuszkiewicz*, 622 F.3d 703 (7th Cir. 2010). IRS employee

22   Szymuszkiewicz set up a forwarding rule on his employer's email account that copied all incoming

23   emails and sent them to Szymuszkiewicz. *Id.* at 703, 705. Szymuszkiewicz argued that he violated the

24   SCA, not the Wiretap Act, because "he did not 'intercept' anything, for (at least in football)

25   'interception' means catching a thing in flight, and any message would have reached its destination ([his

26   employer's] inbox) before a copy was made for him." *Id.* at 703. But the evidence showed that the

27   copying occurred when the email arrived at the IRS's server, which sent a copy to both Szymuszkiewicz

28   and his employer "within the same second." *Id.* at 704. The Seventh Circuit held that Szymuszkiewicz

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

violated the Wiretap Act because he routed copies of emails from the server to his mailbox rather than

accessing copies that had already been delivered to his employer's mailbox. *Id.* In other words, the

Wiretap Act governed interceptions at any point during the transmission from sender to the recipient's

mailbox. *Id.* at 705.

Earlier this year, Judge Chen applied the Wiretap Act to allegations that a mobile software

company intercepted text messages. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015). Judge

Chen observed that the "common thread" in Ninth Circuit cases finding no violation of the Wiretap Act

"is that the challenged acquisition occurred *after the transmission was completed*—the e-mail messages

at issue were received by the destination server and no further 'movement' of the message was

necessary." *Id.* at 1078. Carrier IQ, by contrast, was alleged to intercept incoming and outgoing text

messages, and Judge Chen noted that the "'incoming' and 'outgoing' qualifiers imply interception

during transmission (as opposed, for example, to an allegation that already 'sent' or 'received' text

messages were intercepted)." *Id.* Judge Chen rejected Carrier IQ's argument "that a communication in

temporary, transient storage *as part of the transmission process* is a 'stored communication' that cannot

be intercepted." *Id.* at 1079. He noted that although the Ninth Circuit addressed a similar argument made

by amici in *Konop*, the court's statement is *dicta* as the electronic communications in that case were in

permanent storage after transmission. *Id.* at 1081. Citing the First Circuit's "exhaustive analysis of the

legislative history" in *Councilman*, which he found "thorough and convincing," Judge Chen said that to

hold that email in temporary storage during transmission could not be intercepted "would make the

Wiretap Act turn on the intricacies of a particular circuitry's design: *e.g.*, whether there is cache

memory—an engineering intricacy that has no evident relationship to the purposes of policies of the

Wiretap Act." *Id.*

### 3.  Yahoo Violates the CIPA by Intercepting Email While It Is In Transit In Order to Read and Learn the Contents and Meaning of the Email

Like Councilman, Szymuszkiewicz, and Carrier IQ, ████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

███████████████. Yahoo has argued that it does not violate the CIPA because emails are not in transit

when they arrive at one of Yahoo's servers. *See* ECF No. 37 (Yahoo's Motion to Dismiss) at 14-16. As

14

1   discussed above, however, even under the Wiretap Act transmission is not complete until email is

2   delivered to the recipient's mailbox. Dr. John Levine, Yahoo's expert, filed an amicus brief in

3   *Councilman* along with four other "technical experts" opining that an email is in transit until it reaches

4   the recipient's mailbox: "Though [an email] may be stored as part of the process of its delivery, it is still

5   in transmission for all practical purposes because it has not yet been made accessible to its intended

6   recipient." *See* Brief on Rehearing En Banc of Amicus Curiae Technical Experts in Support of

7   Appellant, Urging Reversal at 5, *U.S. v. Councilman*, No. 03-1383 (1st Dist. Nov. 12, 2004) (RJN, Ex.

8   C); *see also* Straite Decl., Exs. 13 & 14 (emails noting that Dr. Levine "helped write the brief").[5] A few

9   years later, Dr. Levine authored a blog post in which he extoled the merits of Senator Leahy's

10  "eloquent" amicus brief and said that "[t]he en banc decision is very good and shows an excellent

11  understanding of the case and the technology …." Straite Decl., Ex. 15 at LEV0000045. Dr. Levine

12  added that Councilman's argument that the email was not in transit because it had reached a server and

13  was in temporary storage was "a clever legal argument, but it would be a disaster for privacy since it

14  would in effect wipe out the ECPA. Every bit of traffic on the Internet is processed by store-and-

15  forward, and it's all stored briefly as it's relayed on its way." *Id.*, Ex. 15 at LEV0000044.

16      Yahoo also contends that it successfully evades CIPA liability █████████

17  ████████████████████████████████████████████████████████████

18  ██████████████████████████████████ Accepting this argument would require

19  the Court to ignore both the plain language and purpose of the statute. As discussed above, the CIPA

20  prohibits the interception of communications both during transmission and during receipt. There is no

21  evidence that ████████████████████████████████████████████████

22  ████████████████. Sherwood Report, ¶¶ 9, 13-14 & Ex. C (RFC 5321) at 71-72. Yahoo's argument

23  also turns on the design of its internal network.[6] Yahoo itself has said that a statutory interpretation is

24

25  [5] The brief was organized by Georgetown privacy law professor Marc Rotenberg, who is also the
    founder and current executive director of the Electronic Privacy Information Center.

26  [6] ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████ Straite Decl., Ex. 11 (Sharp Dep.) at 31:17-33:23.

1   "unworkable" when "it would cause criminal liability to turn entirely on a provider's internal network

2   design." ECF No. 41 (Reply in Support of Yahoo! Inc.'s Motion to Dismiss) at 1. In *Carrier IQ*, Judge

3   Chen rejected a similar argument as inconsistent with the federal Wiretap Act. 78 F. Supp. at 1081

4   (finding that an interpretation of the federal Wiretap Act that turns on "the intricacies of a particular

5   circuitry's design" has "no evident relationship to the purposes of policies of the Wiretap Act").

6          In addition, the CIPA must be interpreted broadly to effectuate its intent of protecting the privacy

7   of communications. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at

8   *21 (N.D. Cal. Sept. 26, 2013) ("[T]he California Supreme Court's repeated finding that the California

9   legislature intended for CIPA to establish broad privacy protections supports an expansive reading of the

10   statute."). "In enacting [the Privacy Act], the Legislature declared in broad terms its intent to protect the

11   right of privacy of the people of this state from what it perceived as a serious threat to the free exercise

12   of personal liberties [that] cannot be tolerated in a free and civilized society. This philosophy appears to

13   lie at the heart of virtually all the decisions construing the Privacy Act." *Flanagan v. Flanagan,* 27

14   Cal.4th 766, 775 (2002) (alterations in original) (citations omitted). The California Supreme Court has

15   rejected efforts by defendants to interpret the statute narrowly. *See Ribas*, 38 Cal.3d at 360 (rejecting the

16   defendant's effort to read section 631 narrowly as "inconsistent with the broad wording and purpose of

17   the statute"). The court advised that "to the extent that the broad language and purposes of the Privacy

18   Act may encompass conduct that some people believe should not be proscribed, their remedy is to ask

19   the Legislature to draft a statute they find more palatable." *Id.* at 362 n.4.

20          **D.      Yahoo Does Not Obtain Class Members' Consent**

21          Section 631 requires that all parties to a communication consent before a third party reads or

22   learns the content or meaning of the communication. Cal. Penal Code § 631(a). Yahoo requires that

23   Yahoo Mail subscribers agree to its scanning of their email when they subscribe to Yahoo Mail. *Yahoo*

24   *Mail*, 7 F. Supp. 3d at 1029. But Yahoo acknowledges that it has no mechanism in place to obtain class

25   members' consent to ████████████████████████████████

26   ████████████████   Straite Decl., Ex. 9 (Shue Dep.) at 99:13-100:4 *see also id.*, Ex. 12 (responses to

27   interrogatories 3 and 4). An internal FAQ includes the following question and evasive answer:

28

1 ███████████████████████████████████████

2 ███████████████████████████████████████

3 ███████████████████████████████████████

4 ███████████████████████████████████████

5 *Id.*, Ex. 35.

6       The California Supreme Court addressed the issue of consent in the context of Penal Code

7 section 632, which prohibits eavesdropping upon or recording confidential communications and includes

8 an identical "without the consent of all parties" provision. *Kearney v. Salomon Smith Barney, Inc.*, 39

9 Cal. 4th 95, 117-18 (2006). The court explained that "[a] business that adequately advises all parties to a

10 telephone call, at the outset of the conversation, of its intent to record the call would not violate the

11 provision." *Id.* at 118. The court rejected the appellate court's view that the defendant's customers knew

12 or had reason to know their calls were being recorded even without an explicit advisement because

13 "California consumers are accustomed to being informed at the outset of a telephone call whenever a

14 business entity intends to record the call. *Id.* at 118 n.10; *see also Omni Hotels*, 2014 WL 4627271, at

15 *12 (rejecting the defendant's argument that some class members consented where the defendant did not

16 have a uniform notification policy and had "not produced evidence that a single person meeting the class

17 definition actually consented to a call being recorded during the Class Period").

18       Yahoo could inform class members that it intends ████████████████████

19 before doing so, as discussed in *Kearney*. For example, Yahoo's engineering director said that it would

20 be feasible to generate a "bounce-back" email containing a hyperlink to Yahoo's terms of service.

21 Straite Decl., Ex. 9 (Shue Dep.) at 121:19-123:12; *see also* Sherwood Report, ¶¶ 52-54; Sherwood

22 Rebuttal Report, ¶¶ 25-29.[7] Yahoo has chosen not to implement a procedure for obtaining class

23 members' consent before ████████████████████████████████

24 ███████████████ The Court should therefore find that Yahoo does not obtain all parties'

25 consent as a matter of law.

26

27 _____

28 [7] The Rebuttal Expert Report of Robert Sherwood is attached as Exhibit 2 to the Straite Declaration.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1  **VI.   YAHOO VIOLATED THE STORED COMMUNICATIONS ACT AS A MATTER OF
2       LAW**

3       The SCA prohibits Yahoo from divulging the content of emails to third parties while the emails
4  are in storage on Yahoo servers. 18 U.S.C. § 2702(a) ("[A] person or entity providing an electronic
5  communication service shall not knowingly divulge to any person or entity the contents of a
6  communication while in electronic storage by that device."). The Ninth Circuit has noted that "[l]ike the
7  tort of trespass, the Stored Communications Act protects individuals' privacy and proprietary interests.
8  The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of
9  communications in electronic storage at a communications facility." *Theofel v. Farey-Jones*, 359 F.3d
10 1066, 1072 (9th Cir. 2003). A private right of action exist for "any … person aggrieved by any violation
11 of this chapter in which the conduct constituting the violation is engaged in with a knowing or
12 intentional state of mind." 18 U.S.C. § 2707(a).

13      Yahoo is an "entity providing an electronic communication service" and therefore subject to the
14 SCA. 18 U.S.C. § 2510(15) ("'electronic communication service' means any service which provides to
15 users thereof the ability to send or receive wire or electronic communications"); *see also Bower v.*
16 *Bower*, 808 F. Supp. 2d 348, 349 (D. Mass. 2011).



17

18                         Ex. 29 at YAH00040219

19

20

21

22                         *Id.*, Ex. 8 (Day Dep.) at 39:11-22, Ex. 24.                    . *Id.*,
23 Ex. 8 (Day Dep.) at 33:21-34:2, Ex. 28 at YAH00040219

24                                                                      "with a knowing or

25  _____
    [8]
26                                      . Day Declaration (ECF No. 114-2) ¶ 2; Complaint (ECF No. 35) ¶ 21;
27  Answer (ECF No. 53) ¶ 21.
    [9] Plaintiffs' SCA claim relates to
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1  intentional state of mind" is demonstrated by the fact that it was ████████████████

2  ████████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████ *Id.*, Ex. 8 (Day. Dep.) at

4  44:18-45:7; Ex. 30; *see also* "Yahoo! Teams with Google on Contextual Advertising,"

5  https://yodel.yahoo.com/blogs/partnerships/yahoo-teams-google-contextual-advertising-12943.html (last

6  visited Sept. 17, 2015) (████████████████████████████████).

7  **VII.  PLAINTIFFS REQUEST A PERMANENT INJUNCTION AND DECLARATORY
   RELIEF**

8

9       If the Court grants plaintiffs' motion for summary judgment, plaintiffs request that the Court

10 grant their request for injunctive and declaratory relief. Plaintiffs request that the Court enter a

11 permanent injunction that requires Yahoo to cease ██████████████████████████

12 ████  without their consent and permanently delete all information it has collected and stored from class

13 members' email without their consent. The decision to issue a permanent injunction "rests within the

14 equitable discretion of the district courts, and such discretion must be exercised consistent with

15 traditional principles of equity." *eBay Inc v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). An

16 injunction should be granted once a plaintiff demonstrates "(1) that [he] has suffered an irreparable

17 injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

18 that injury, (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

19 in equity is warranted, and (4) that the public interest would not be disserved by a permanent

20 injunction." *Id.* at 391. Each of these requirements is satisfied.

21      Yahoo's invasion of the privacy of class members constitutes an irreparable injury. See *Los

22 Angeles Memorial Coliseum Communication v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("Irreparable

23 injury is that which is substantial and not compensable by monetary damages or other legal remedies.").

24 Courts have recognized that privacy violations constitute irreparable injuries that cannot be compensated

25 by monetary damages. *See, e.g., Northeastern Florida Chapter of Ass'n of General Contractors of

26 America v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (explaining that "invasions of

27 privacy, because of their intangible nature, could not be compensated for by monetary damages; in other

28 words, plaintiffs could not be made whole"); *Facebook, Inc. v. Fisher*, No. C 09-05842 JF, 2009 WL

19

5095269, at *2 (N.D. Cal. Dec. 21, 2009) (finding "a clear possibility of irreparable injury with respect to … the personal privacy of Facebook users" who were subject to a phishing and scamming scheme that compromised their accounts); *In re Western Asbestos Co.*, 416 B.R. 670, 711-12 (N.D. Cal. 2009) (finding that the threatened disclosure of confidential information "would have resulted in irreparable harm for which monetary damages would be inadequate"); *Colonial Life & Accident Insurance Co. v. Stentorians-L.A. County Black Fire*, No. CV 13-9235 CAS, 2013 WL 6732687, at *3 (C.D. Cal. Dec. 19, 2013) (finding that the disclosure of insurance policyholders' private data constituted an irreparable injury); *see also Kearney*, 39 Cal. 4th at 130 ("ascribing a monetary value to the invasion of privacy resulting from the secret recording of a telephone conversation is difficult").

The California Legislature stated that its intent in enacting the CIPA was to "protect the right of privacy of the people of this state" in the face of "the development of new devices and techniques for the purpose of eavesdropping upon private communications" that "create[] a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Yahoo itself insisted that people have an expectation of privacy in their email communications in a case before the U.S. Foreign Intelligence Surveillance Court of Review. Yahoo argued that the government's "warrantless surveillance of Yahoo!'s communications facilities" to access email "invades the reasonable expectation of privacy of U.S. citizens"[10] and "involves the government's seizure of an individual's most private communications."[11] Yahoo also pointed out that "there is no notice to those subject to surveillance … [and] they have no opportunity to avoid the search."[12] Yahoo's counsel in that case and this case, Marc Zwillinger, argued that "wiretapping individuals' private communications is the greatest harm an individual can experience" and that "the government building a database on millions of people in the United States, even if they don't know it, I would argue would be a grave harm."[13]

---

[10] Brief of Appellant at 7, 26, *Yahoo! v. U.S.*, No. 08-01 (FISA Ct. Rev. May 29, 2008) (RJN, Ex. F).

[11] Reply Brief of Appellant at 17, *Yahoo! v. U.S.*, No. 08-01 (FISA Ct. Rev. June 9, 2008) (RJN Ex. G).

[12] *Id.* at 17-18.

[13] Transcript at 16:5-11, *In re Directives to Yahoo, Inc.*, No. 08-01 (FISA Ct. Rev. June 19, 2008) (RJN Ex. H).

1    Money damages are also inadequate because they will not prevent Yahoo from invading class

2  members' privacy in the future. *See, e.g.*, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th

3  Cir. 1990) ("Permanent injunctive relief is warranted where, as here, defendant's past and present

4  misconduct indicates a strong likelihood of future violations."); *Facebook, Inc. v. Power Ventures, Inc.*,

5  No. 08-CV-5780-LHK, 2013 WL 5372341, at *15 (N.D. Cal. Sept. 25, 2013) (same). Damages also will

6  not address the fact that Yahoo currently possesses the content of class members' email. *See Facebook*,

7  2013 WL 5372341, at *15 ("Defendants may even still possess Facebook-user data which they

8  misappropriated."). The Legislature specifically included a provision authorizing injunctive relief to

9  prevent future violations of the statute. Cal. Penal Code § 637.2(b) ("Any person may … bring an action

10  to enjoin and restrain any violation" of section 631.).

11    The balance of hardships and public interest also favor a permanent injunction. The legislative

12  purpose of the CIPA confirm the public policy favoring the privacy of communications. *See Tavernetti*

13  *v. Superior Court*, 22 Cal.3d 187, 194 (1978) (describing the "forceful expression of the constitutional

14  stature of privacy rights" that was "previously evinced by the Legislature in enacting" the CIPA). The

15  size of the nationwide and California classes is not known, but there can be no question that the class

16  members constitute a significant portion of the general public who are not aware that ███████████

17  ████████████████████████████████████████████████████████████████████████████████.

18  Even if they do learn about Yahoo's practices, it will be challenging for class members to take action

19  against a well-funded litigant like Yahoo. *See Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 726

20  (9th Cir. 1985) (holding that the relative size and strength of each party may be relevant when balancing

21  the hardships). Finally, injunctive relief would set an example to other email providers that may consider

22  engaging in the same conduct. *See Facebook*, 2013 WL 5372341, at *16.

23    Plaintiffs also request a declaration that Yahoo's conduct violates the CIPA and the SCA. The

24  Declaratory Judgment Act provides that "[i]n case of actual controversy within its jurisdiction … any

25  court of the United States … may declare the rights and other legal relations of any interested party

26  seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "A

27  claim for relief under the Declaratory Judgment Act requires a dispute that is: (1) 'definite and concrete,

28  touching the legal relations of parties having adverse legal interests'; (2) 'real and substantial'; and

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

(3) 'admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 117, 127 (2007)). "The central question … is whether 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune*, 549 U.S. at 127).

Plaintiffs have shown (and Yahoo's hard-fought defense confirms) that there is a "definite and concrete" and "real and substantial" dispute about whether Yahoo's conduct violates the CIPA and has violated the SCA. A declaration as to the lawfulness of Yahoo's conduct under these circumstances will be based on actual facts and provide a conclusive finding that will guide not only Yahoo's future conduct but that of other similar companies. *See Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency,* 966 F.2d 1292, 1299 (9th Cir. 1992) ("A court declaration delineates important rights and responsibilities and can be 'a message not only to the parties but also to the public and has significant educational and lasting importance.'" (citation omitted)).

## VIII.   CONCLUSION

The undisputed evidence demonstrates that Yahoo continues to violate the CIPA and has violated the SCA in the past and may do so again. Plaintiffs request that the Court grant their motion for summary judgment and award their requested injunctive and declaratory relief.

Dated: September 18, 2015

Respectfully Submitted,

By:   */s/ Daniel C. Girard*

Daniel C. Girard (SBN 114826)
Amanda M. Steiner  (SBN 190047)
Ashley Tveit (SBN 275458)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

22

1

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**

2

350 Sansome Street, Suite 400

3

San Francisco, CA 94104
Telephone:  (415) 772-4700

4

Facsimile:   (415) 772-4707

5

*lking@kaplanfox.com*

6

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)

7

**KAPLAN FOX & KILSHEIMER LLP**

8

850 Third Ave., 14th Floor
New York, NY  10022

9

Telephone:  (212) 687-1980
Facsimile:   (212) 687-7714

10

*dstraite@kaplanfox.com*

11

*Co-Lead Class Counsel*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK