REBEKAH KAUFMAN (CA Bar No. 213222)
ROBERT PETRAGLIA (CA Bar No. 264849)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
RKaufman@mofo.com
RPetraglia@mofo.com

MARC J. ZWILLINGER (*pro hac vice*)
JACOB SOMMER (*pro hac vice*)
ZWILLGEN PLLC
1705 N. Street, NW
Washington, D.C. 20036
Telephone: (202) 706-5202
Facsimile: (202) 706-5298
Marc@zwillgen.com
Jake@zwillgen.com

*Attorneys for Defendant YAHOO! INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE YAHOO MAIL LITIGATION | Case No.   5:13-cv-4980 LHK |
| | **YAHOO! INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:    December 10, 2015 |
| | Time:    1:30 p.m. |
| | Judge:  The Honorable Lucy H. Koh |
| | Courtroom 8 |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

REBEKAH KAUFMAN (CA Bar No. 213222)
ROBERT PETRAGLIA (CA Bar No. 264849)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
RKaufman@mofo.com
RPetraglia@mofo.com

MARC J. ZWILLINGER (*pro hac vice*)
JACOB SOMMER (*pro hac vice*)
ZWILLGEN PLLC
1705 N. Street, NW
Washington, D.C. 20036
Telephone: (202) 706-5202
Facsimile: (202) 706-5298
Marc@zwillgen.com
Jake@zwillgen.com

*Attorneys for Defendant YAHOO! INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE YAHOO MAIL LITIGATION | Case No.   5:13-cv-4980 LHK |
|---|---|
| | **YAHOO! INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:    December 10, 2015 |
| | Time:    1:30 p.m. |
| | Judge:   The Honorable Lucy H. Koh |
| | Courtroom 8 |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ..............................vi

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.      INTRODUCTION ........................................................................................................1

II.     ISSUES PRESENTED ..................................................................................................3

III.    PROCEDURAL BACKGROUND ................................................................................3

IV.     FACTUAL BACKGROUND ........................................................................................3

    A.      Yahoo's Automated Email Processing on Its Servers.......................................4

    B.      Disclosure and Consent ....................................................................................7

    C.      Automated Email Analysis for Targeted Advertising........................................7

    D.      Plaintiffs' Unsubstantiated "Sharing of Content" Theory ................................8

V.      LEGAL STANDARD ...................................................................................................9

ARGUMENT ..........................................................................................................................10

I.      PLAINTIFFS CANNOT ESTABLISH A CIPA VIOLATION. ..................................10

    A.      Yahoo Has Not Engaged in Conduct That Violates CIPA. ..............................10

        1.      The Purpose of CIPA Is to Protect Privacy, Not Regulate an Email Provider's Architecture. ....................................................10

        2.      Yahoo Did Not "Tap" Any Telegraph or Telephone Wire. ....................12

        3.      Yahoo Did Not Attempt to Learn the Contents or Meaning of a Communication in Transit Over a Wire....................................12

        4.      Yahoo Did Not Use Information Obtained as a Result of Wiretapping or Attempting to Read or Learn the Contents of Emails.................................................................................16

    B.      Interpreting Section 631 to Apply to Email Scanning Would Transform Ordinary Conduct into a Criminal Offense and Lead to Absurd Results. ..........16

    C.      Application of CIPA to Yahoo in This Case Violates the Constitution..............17

        1.      Application of CIPA to Yahoo Runs Afoul of the Commerce Clause.......................................................................................17

        2.      The SCA Preempts CIPA. ......................................................................18

        3.      CIPA is Unconstitutionally Vague as Applied to Yahoo.........................20

    D.      Plaintiffs Lack Article III Standing..................................................................21

    E.      Plaintiffs Lack Standing to Seek Prospective Relief Under CIPA. ...................22

II.     PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THE SCA.........................23

    A.      Plaintiffs Lack Standing...................................................................................23

    B.      Yahoo Has Consent to Share Email Content for Targeted Advertising.............24

III.    CONCLUSION ............................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Allen v. Wright*,
468 U.S. 737 (1984) ............................................................................................... 22

*Arizona v. United States*,
132 S. Ct. 2492 (2012) ........................................................................................... 18

*Backhaut v. Apple Inc.*,
2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ........................................................ 22

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. Nev. 1996) .................................................................... 13, 19

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................................. 19

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) (*en banc*) ................................................................. 24

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................. 22

*Clapper v. Amnesty International USA*,
133 S. Ct. 1138 (2013) ........................................................................................... 23

*Connally v. Gen. Constr. Co.*,
269 U.S. 385 (1926) ............................................................................................... 20

*Edwards v. First American Corporation*,
610 F.3d 514 (9th Cir. 2010) .................................................................................. 22

*Healy v. Beer Inst.*,
491 U.S. 324 (1989) ......................................................................................... 17, 18

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ........................................................................................... 21

*In re DoubleClick, Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................... 14

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................................................... 12

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......................................................... 7

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011) ................................................................. 20

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................... 14, 19

*In re Yahoo Mail Litig.*,
  2015 WL 3523908 (N.D. Cal. May 26, 2015) ........................................... 3, 18, 22

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................ *passim*

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ........................................................................ *passim*

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985) .............................................................................. 23

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) .................................................................................................. 15

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) .............................................................................. 23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 21, 22

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) ............................................................................ 17, 18

*Neal v. Naturalcare, Inc.*,
  2014 WL 346639 (C.D. Cal. Jan. 30, 2014) ........................................................ 23

*Neilson v. Chang (In re First T.D. & Inv. Inc.)*,
  253 F.3d 520 (9th Cir. 2001) .......................................................................... 10, 11

*NovelPoster v. Javitch*,
  2014 WL 3845148 (N.D. Cal. Aug. 4, 2014) ....................................................... 13

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................................. 23

*Opperman v. Path, Inc.*,
  2014 WL 1973378 (N.D. Cal. May 14, 2014) ...................................................... 13

*Papachristou v. City of Jacksonville*,
  405 U.S. 156 (1972) .............................................................................................. 21

*People v. Conklin*,
  12 Cal. 3d 259 (1974) ........................................................................................... 20

Yahoo! Inc.'s Motion for Summary Judgment
Case No. 5:13-cv-4980 LHK
sf-3576875

iii

*People v Massie*,
  19 Cal. 4th 550 (1998) ........................................................................ 11

*People v. Nuckles*,
  56 Cal. 4th 601 (2013) ........................................................................ 16

*People v. Roberts*,
  184 Cal. App. 4th 1149 (2010)............................................................. 13

*People v. Wilson*,
  17 Cal. App. 3d 598 (1971).................................................... 14, 15, 21

*Quiroz v. Short*,
  2015 WL 1482744 (N.D. Cal. Mar. 31, 2015)........................... 9, 10, 24

*Quon v. Arch Wireless Operating Co., Inc.*,
  445 F. Supp. 2d 1116 (C.D. Cal. 2006)............................................... 20

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ......................................................................... 11

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975).......................................................... 11, 21

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996).......................................................... 22, 24

*SPGGC, LLC v. Ayotte*,
  488 F.3d 525 (1st Cir. 2007) ............................................................... 20

*Spokeo, Inc. v. Robins*,
  135 S. Ct. 1892 (2015) ........................................................................ 22

*State v. Lott*,
  879 A.2d 1167 (N.H. 2005) ................................................................. 17

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).............................................................................. 22

*Theofel* v. *Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2003)......................................... 13, 14, 15, 19

*United States v. Councilman*,
  418 F.3d 67 (1st Cir. 2005) ............................................................ 14, 15

*United States v. Harris*,
  705 F.3d 929 (9th Cir. 2013)............................................................... 21

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012)............................................................... 16

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013), *cert. denied sub nom.*,
    *Arizona v. Valle del Sol, Inc.*, 134 S. Ct. 1876 (2014) .......................................................... 20

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1st Dist. 1979) ........................................................... 15

*We Are Am. v. Maricopa Cnty. Bd. of Supervisors*,
    297 F.R.D. 373 (D. Ariz. 2013) ........................................................... 20

*Werdebaugh v. Blue Diamonds Growers*,
    2014 WL 2191901 (N.D. Cal. May 23, 2014) ........................................................... 23

STATUTES

18 U.S.C.
    § 2510(17)(A).................................................................................. 14, 19
    §§ 2510-2520 ................................................................................. 20
    § 2701(a)(2), (c)(1).......................................................................... 19
    § 2701(c)(1)................................................................................. 18
    § 2702(a)(1), (b)(3) ......................................................................... 23
    § 2702(b)(3) ................................................................................. 24

Cal. Penal Code
    § 629.51(b) .................................................................................. 13
    § 629.51(c) .................................................................................. 14
    § 630........................................................................................ 11
    § 631................................................................................... *passim*
    § 631(a) ............................................................................ 12, 16, 22
    § 1524.2 .................................................................................... 15

Cal. Code of Civ. P. § 1859 ..................................................................... 10

RULES

Fed. Rule of Civ. P. 23(b)(2) ..................................................................... 3

OTHER AUTHORITIES

California Constitution ........................................................................... 3

S. Rep. No. 99-541 (1986) ........................................................................ 19

U.S. Const. art. I, § 8, cl. 3 .................................................................... 17

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 10, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Lucy H. Koh, United States District Judge, Northern District of California, located at 280 South First Street, San Jose, CA 95113, Defendant Yahoo! Inc. ("Yahoo") will and hereby does move for summary judgment or, in the alternative, summary adjudication of Plaintiffs' claims brought under the Stored Communications Act (SCA), 18 U.S.C. § 2702, and the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631.

Yahoo's motion for summary judgment or, in the alternative, summary adjudication is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Robert Petraglia and exhibits attached thereto, the accompanying Declaration of Gareth Shue, the accompanying Declaration of Doug Sharp, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated: September 18, 2015

MORRISON & FOERSTER LLP

ZWILLGEN PLLC


By:     /s/ Rebekah Kaufman
           REBEKAH KAUFMAN

Attorney for Defendant
YAHOO! INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Yahoo respectfully submits this brief in support of its motion for summary judgment or, in the alternative, summary adjudication on Plaintiffs' CIPA and SCA claims.

## I.    INTRODUCTION

Plaintiffs brought this litigation contending Yahoo violates *criminal* wiretapping statutes by allegedly scanning their emails for advertising purposes while "in transit."  After obtaining tens of thousands of Yahoo's internal documents and deposing Yahoo employees, their theory of the case turned into a hypothesis proven wrong.  Extensive discovery has shown that Yahoo does not analyze emails for advertising purposes until after they reach the inboxes of the intended recipients.  At that point, there is no conceivable "interception" or communication "in transit."

Faced with this undisputed evidence, Plaintiffs have revamped their claims, focusing on an automated process called ███████████████████s used by providers of widely used free email services like Yahoo to process and deliver email while performing critical functions like spam filtering and malware detection to benefit and protect hundreds of millions of email users every day. ████████████████████████████o be more easily, and effectively, processed by Yahoo's computer servers that work together in "grids" to allow people to send and receive billions of emails each day over the Internet for free.  Its use does not violate CIPA.  No court ever has interpreted CIPA so broadly.

This is not a case where a third party has surreptitiously engaged in wiretapping on an email provider's network or intercepted a message in transit to eavesdrop on that communication.  It is an improper attack on a provider of free email services that publicly describes its practices and obtains its users' explicit consent to conduct automated processes on its own servers to (1) protect its users from harmful spam and malware; (2) provide useful email product features (such as the ability to search within one's inbox, receive timely flight updates or information related to the status of a package shipped after a retail purchase); and (3) show more relevant, personalized advertising.  Discovery has shown conclusively that ████████████████████████████████ ███████████████████████████—because protection against spam and malware, of course, requires analysis before delivery occurs.

Yahoo! Inc.'s Motion for Summary Judgment
Case No. 13-CV-4980-LHK
sf-3576875

1

By attempting to stretch CIPA's provisions to cover this type of automated processing *on a provider's own servers*, Plaintiffs improperly ask the Court to regulate the way in which national email service providers design their internal processing architecture and infrastructure. Plaintiffs have turned what they described as a significant user privacy case into one about milliseconds of timing. Their complaint under CIPA is not *that* Yahoo █████ and scans emails, but that it does so on its servers for some purposes after Yahoo receives the email but *before* those emails are placed in recipients' inboxes. The Court, however, already decided that—under the SCA—Yahoo can access its users' emails while they are in electronic storage (*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1032 (N.D. Cal. 2014)), and CIPA does not apply to stored content. Plaintiffs can offer no legal or rational basis for the Court to prohibit Yahoo from accessing their email once received by Yahoo's first set of servers, yet allow Yahoo access a moment later when the email is routed to a second set of servers.

Plaintiffs' theory would lead only to public harm. Yahoo would be prohibited from protecting users and non-users from deleterious spam and malware by analyzing emails for that purpose before they reach the recipient's inbox. CIPA does not regulate such minutia of email system architecture, particularly where there would not be any corresponding privacy protections. Further, if applied in that manner, CIPA would result in the direct regulation of interstate commerce in violation of the Commerce Clause. It would also undermine Congress's efforts to regulate email providers in violation of the preemption doctrine. Moreover, if CIPA applies here, it violates the void for vagueness doctrine because the statute is insufficiently clear to provide Yahoo with the required notice that its conduct is prohibited.

Plaintiffs' SCA claim fares no better. Plaintiffs claim that Yahoo has improperly shared email content with third parties in order to serve targeted advertising. It hasn't. Discovery has shown only that Yahoo uses ███████████       not class members' emails—to identify its users' ████████████████████████████████████████████████████████o let users know that a flight is delayed or the status of a retail purchase package shipment. The only other factual basis for their SCA claim is a limited test that Yahoo ran for ██████████ ██████ During this test, Yahoo used Google's AdSense for Content (AFC) product to serve Google

Yahoo! Inc.'s Motion for Summary Judgment
Case No. 13-cv-4980-LHK
sf-3576875

2

1  ads to Yahoo Mail users.  Plaintiffs have adduced no evidence that their emails were implicated by

2  the limited test.  Further, Yahoo ███████████████████████████████████ making

3  Plaintiffs' claims for prospective relief moot.  Yahoo, as shown below, is entitled to summary

4  judgment.

5  **II.    ISSUES PRESENTED**

6       Yahoo's motion presents the following issues:  (1) Whether Plaintiffs can establish a

7  violation of CIPA or the SCA; (2) Whether the SCA preempts Plaintiffs' CIPA claim; (3) Whether

8  CIPA violates the Commerce Clause or is unconstitutionally vague; and (4) Whether Plaintiffs have

9  Article III standing or standing to seek relief under CIPA or the SCA.

10  **III.    PROCEDURAL BACKGROUND**

11       Plaintiffs originally alleged violations of the federal Wiretap Act, the SCA, CIPA, and the

12  California Constitution.  (Consolidated Class Action Complaint, ECF No. 35.)  The Court dismissed

13  the Wiretap Act claim, finding Yahoo Mail users give express consent to scanning and analysis of

14  their emails.  *Yahoo Mail*, 7 F. Supp. 3d at 1031.  The Court also dismissed Plaintiffs' claim under

15  the California Constitution because Plaintiffs failed to allege a reasonable expectation of privacy in

16  their emails.  *Id.* at 1042.  Plaintiffs later abandoned their claims for damages under CIPA and the SCA

17  and sought only prospective relief, requesting certification under Federal Rule of Civil Procedure

18  23(b)(2).  (Plaintiffs' Motion for Class Certification ("Mot. for Class Cert.") at 1, ECF No. 60-3.)

19       The Court has certified two classes:  For the SCA claim:  "All persons in the United States

20  who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo

21  Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails

22  from a Yahoo Mail subscriber in the future."  *In re Yahoo Mail Litig.*, 2015 WL 3523908, at *24-25

23  (N.D. Cal. May 26, 2015).  For the CIPA claim:  "All persons in California who are not Yahoo Mail

24  subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

25  October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail

26  subscriber in the future."  *Id.* at *25.

27  **IV.    FACTUAL BACKGROUND**

28       Yahoo offers a number of widely used online services, including free email through Yahoo

Mail.  (Declaration of Doug Sharp in Support of Yahoo! Inc.'s Motion for Summary Judgment ("Sharp Decl.") ¶ 2.)  Yahoo has spent many years and millions of dollars developing the internal architecture and technical platform supporting Yahoo Mail.  (Declaration of Gareth Shue in Support of Yahoo! Inc.'s Motion for Summary Judgment ("Shue Decl.") ¶ 2.)  Yahoo processes billions of incoming and outgoing emails each day, and has created an infrastructure of thousands of servers that allow Yahoo to process those emails and provide cutting-edge email features for its users. (Shue Decl. ¶ 2; Declaration of Robert Petraglia in Support of Yahoo! Inc.'s Notice of Motion and Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Petraglia Decl.") Ex. A at 41:5-42:7.)

### A. Yahoo's Automated Email Processing on Its Servers

In ruling on Yahoo's motion to dismiss, the Court determined that it "must defer resolution of whether Yahoo accessed the [Plaintiffs'] emails only after the emails were on Yahoo's servers until after discovery makes clear where and how Yahoo's scanning technology intercepted the emails." *Yahoo Mail*, 7 F. Supp. 3d at 1036.  Discovery has shown that Yahoo only accesses emails on its own servers.  Accordingly, Yahoo should have no liability as a matter of law, as discussed below.  The material facts relevant to Yahoo's automated processing of emails sent to and from its users are as follows.

1. Inbound Emails Are Processed on Yahoo's MTAs:  When an email that is sent to a Yahoo Mail user arrives at Yahoo, it arrives on a server called a "Mail Transfer Agent" (MTA), where the email is processed.  (Petraglia Decl. Ex. B at 34:5-7, 65:25-66:3; Ex. C ¶ 2; Shue Decl. ¶ 3.)  Yahoo operates about 1,800 MTAs in the United States at Lockport, New York; La Vista, Nebraska; and Quincy, Washington.  (Petraglia Decl. Ex. A at 42:8-13; Ex. D at Response No. 15; Shue Decl. ¶ 3.)

Yahoo's MTAs perform many important functions needed to process an email.  The MTAs determine whether the addressee's email address is valid.  (Shue Decl. ¶ 4.)  The MTAs also check whether ████████████████████████████████████████████████████████████ (Shue Decl. ¶ 4.)  ████████████████████████████████████ (Shue Decl. ¶ 5.) ████████████████████████████████████████████████████████ Shue Decl. ¶ 5; Petraglia Decl. Ex. A at 54:25-56:10.)  ████████████████████████████████ *Id*.)

1          2. Underline Emails Are ██████████████████████████████████████

2   ████████████████████████████████████████████████ not while an email is in

3   transit between servers).  (Petraglia Decl. Ex. B at 26:19-20; Ex. A at 52:25-53:24;  Ex. C ¶ 3; Shue

4   Decl. ¶ 6.)  ███████████ s a commonly used process in computing that █████████████

5   ███████████████████ Petraglia Decl. Ex. A at 85:16-23; Shue Decl. ¶ 8.) ████████████

6   ██████████████████████████ The results are called ██████████ (Shue Decl ¶ 7; Petraglia Decl.

7   Ex. A at 53:2-5.)  For example, a ███████ is created that ██████████████████ (Shue Decl. ¶ 7.)

8   Another ████████████████████████████████████ (Shue Decl. ¶ 7; Petraglia Decl. Ex. B at

9   24:11-18; Ex. C ¶ 4.) ████████████████████████████████████████████████

10  ████████ (Shue Decl. ¶ 7; Petraglia Decl. Ex. A at 50:4-24, 71:12-21; Ex. E ¶ 10.) ██████████

11  ██████████████████████████████████████████████████████████████

12  ████████████████████████ (Shue Decl. ¶¶ 9-10; Petraglia Decl. Ex. C ¶¶ 3, 4; Ex. B at 26:21-25.)

13         3. Underline Spam Filtering Occurs:  Yahoo has created proprietary algorithms that help it detect spam

14  and malware, phishing schemes, and emails that facilitate fraud, identity theft, and other scams.  (Shue

15  Decl. ¶¶ 9-10, 17; Petraglia Decl. Ex. A at 46:13-48:2.)  These algorithms look for a number of things,

16  such as ████████████████████████████████████████████████████████

17  ████████████████████ (Petraglia Decl. Ex. A at 46:13-24, 47:8-48:2; Shue Decl. ¶¶ 9-10.)  Yahoo

18  continuously updates these algorithms, as spammers and hackers change their practices in an effort to

19  get past Yahoo's anti-spam protections.  (Petraglia Decl. Ex. A at 64:17-65:18; Ex. B at 110:6-10.)

20  After the billions of emails that make it through Yahoo's initial spam filtering are ██████████ Yahoo

21  then ████████████████████████████████████████████████████████████

22  (Petraglia Decl. Ex. C ¶ 4; Ex. A at 46:13-47:1; Ex. B at 26:21-27:3; Shue Decl. ¶¶ 8-13.) ██████████

23  ██████████████████████████████ (Shue Decl. ¶¶ 9, 13; Petraglia Decl. Ex. C ¶ 3.)

24         The emails that Yahoo determines are harmful to users, such as emails containing viruses, or

25  phishing schemes, are rejected.  (Petraglia Decl. Ex. A at 70:16-25; Shue Decl. ¶ 11.)  Only after all

26  of this processing occurs ██████████████ are the remaining emails sent to another set of servers where

27  they are made available to the user either in her inbox or spam folder.  (Petraglia Decl. Ex. C ¶ 6;

28  Ex. A at 54:8-11; Shue Decl. ¶ 13.)

1    4. <u>Tokens and Email Data Are Later Sent to a Grid for Analysis</u>:  Yahoo routes ██████ rom

2    its MTAs to a "grid" of interconnected Yahoo computers that work together for enhanced

3    processing powers.[1]  (Shue Decl. ¶¶ 14-16; Sharp Decl. ¶ 3; Petraglia Decl. Ex. B at 18:22-23,

4    65:11-68:21; Ex. F at YAH0068107; Ex. G at 27:22-28:15; Ex. A at 102:9-16; Ex. C ¶ 5.) ████

5    ███████████████████████████████████████ the email reaches the user's inbox.

6    (Petraglia Decl. Ex. G at 25:10-19; Ex. B at 109:22-24; Ex. F at YAH0068107; Ex. H at

7    YAH00011493████████████████████████████████████████████████████

8    ████████████████ Ex. B at 96:8-10; Sharp Decl. ¶ 4; Shue Decl. ¶ 14.)

9    Yahoo analyzes the ████████████████████████████████ (Shue Decl.

10   ¶ 14; Petraglia Decl. Ex. A at 67:7-17; Ex. B at 27:18-22, 28:1-17.)  Yahoo sends email data—

11   including email ███████████████████████████████████████████████████

12   ads.  (Sharp Decl. ¶¶ 2-3.)  The email data ████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   (Sharp Decl. ¶ 2; Petraglia Decl. Ex. H at YAH00011493████████████████████

15   ██████████████████████████████ Ex. B at 96:8-10; Ex. A at 76:17-21.)

16   All of Yahoo's data analysis ████████████████████████ for spam purposes or email

17   data for advertising purposes, therefore ████████████████████████████████████

18   (Sharp Decl. ¶ 4; Shue Decl. ¶ 14.)

19   5. <u>Outbound Emails Are Processed on Yahoo's</u> ████████████  Yahoo's treatment of

20   outbound emails is similar to inbound emails.  Email that is sent by a Yahoo Mail user to a non-

21   user goes to a Yahoo server called the ████████████ where the email is processed.  (Shue Decl.

22   ¶ 15; Petraglia Decl. Ex. B at 96:22-97:24; Ex. I.)  Yahoo's ████████████ in the United States

23   are also located in Nebraska, New York, and Washington.  (Shue Decl. ¶ 15; Petraglia Decl. Ex. D

24   at Response No. 15.)  Yahoo's ████████████████████ emails and then ████████████████

25

26   _____
     [1] Yahoo uses a Grid called ████████████████████████████████████ (Petraglia Decl. Ex. B at 18:22-23, 65:11-68:22; Ex. F at
27   YAH0068107; Ex. G at 27:22-28:15; Ex. A at 102:9-16; Ex. C ¶ 5.) Yahoo is constantly
     improving its grid technology, and introducing new grids—however all of the differences
28   between these ████████████████████ are immaterial for this motion.

1    spam or malware.  (Shue Decl. ¶ 15; Petraglia Decl. Ex. B at 96:24-97:24; Ex. I at YAH00011659.)  If

2    none is found, the email is sent to the recipient's email service provider.  (Shue Decl. ¶ 15.)  After

3    that, ███████████████████████████████████████  (Shue Decl. ¶ 16.) ████

4    █████████████████████████████████████████████████████████

5    █████████████████████████████████████████  (Petraglia

6    Decl. Ex. G at 66:25-67:6.)  This data ████████████████████████████████████

7    sent to the recipient's email service provider or rejected by Yahoo (i.e., not sent).  (Shue Decl. ¶ 16.)

8    ### B.   Disclosure and Consent

9    Through its terms of service (ATOS) and FAQs, Yahoo informs its users that it scans and

10   analyzes emails for three purposes:  (1) to provide personally relevant product features and content,

11   (2) to match and serve targeted advertising, and (3) for spam and malware detection and abuse

12   protection.  (Petraglia Decl. Ex. J.)  The Court previously determined that "[b]y agreeing to the

13   ATOS, Yahoo Mail users consented to such conduct."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at

14   1029.  This information is also publicly available and has been the topic of considerable media

15   attention. (*See* ECF. Nos. 79 – 79-59.)  Non-users who are aware of Yahoo's scanning impliedly

16   consent to scanning of their emails and have no claim under CIPA or the SCA.  *See In re Google*

17   *Inc. Gmail Litig.*, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014).

18   ### C.   Automated Email Analysis for Targeted Advertising

19   From the outset, Plaintiffs charged Yahoo with statutory violations based on the scanning of

20   their emails for Yahoo's revenue-generation—i.e., advertising. ████████████████████

21   █████████████████████████████████████████████████████

22   ██████████████████  (Petraglia Decl. Ex. B at 29:4-34:21; Mot. for Class Cert. at 5, ECF

23   No. 60-3.)  If a Yahoo Mail user received an email from an online retailer with an order of a

24   smartphone purchase, Yahoo's systems could recognize that and allow advertisers to show the same

25   Yahoo user an ad for smartphone accessories, for example.

26   ████████████████████████████████████████████████████

27   (Petraglia Decl. Ex. B at 43:21-22, 51:21-52:3, 118:19-24; Ex. K at 60:24-62:3; Ex. G at 55:8 -

28   59:1.)  Internally, Yahoo called this process ████████  which involves automated analysis of emails

1    ████████████████████████████████████████' (*Id.* Ex. K at 33:13-34:7; Ex. B at 43:21-22,

2    109:18-21; Ex. G at 53:24-59:1.)  For example, someone who receives an email that contains the

3    word "dog" is likely to be a dog owner, and therefore ██████████████████████████████████

4    (*Id.* Ex. L (including keyword search for ███████████████) This segment of Yahoo users

5    might then receive advertisements for dog food.  None of the ██████████████████ is shared

6    with third parties.  (*Id.* Ex. B at 35:14-19, 118:25-119:6; Ex. K at 157:23-158:7.)  Yahoo only

7    shares with advertisers that it *can*, for instance, identify those Yahoo Mail users who likely own

8    dogs and serve an advertisement on that advertiser's behalf.  (*Id.* Ex. B at 128:19-129:10.)  The

9    identities of the members of █████████████████ used to find them are not shared.  (*Id.*

10   at 35:14-19, 118:25, 128:19-129:10.)

11          All of Yahoo's automated email analysis for advertising purposes occurs on a Yahoo grid of

12   servers ████████████████████████████████

13      **D.      Plaintiffs' Unsubstantiated "Sharing of Content" Theory**

14          Plaintiffs provide two bases for their SCA claim.  First, Yahoo informs its users that it may

15   share specific objects from emails with third parties to provide product features in its FAQs. (Mot.

16   for Class Cert. at 6:16-17, ECF No. 60-3.)  Second, Yahoo tested AFC for Mail. (*Id.* at 6:18-22.)

17          1. <u>Specific Objects from Email</u>:  Yahoo's FAQs refer to a product feature that helps Yahoo

18   Mail users keep track of flight information and shipping notifications.  (Petraglia Decl. Ex. J; Sharp

19   Decl. ¶ 10.)  Yahoo's technology is able to identify ██████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████(Sharp Decl. ¶ 6; Petraglia Decl. Ex. G at

22   15:8-21, 36:5-8.)  Yahoo's automated processes then ████████████████████████████████

23   ████████████████████████████████████████████(Sharp Decl. ¶ 6; Petraglia

24   Decl. Ex. B at 35:25-36:7; Ex. G at 15:8-21.)  This entire process ██████████████████████

25   █████████and does not involve emails sent from class members.  (Petraglia Decl. Ex. G at 31:17-

26   33:20, 36:5-12.)

27          2. <u>The AFC Test</u>:  AFC is a Google advertising product.  Yahoo used AFC to show Google

28   ads to Yahoo Mail users as part of a ███████test in ██████████████████████████████

1  ████████  (*Id*. Ex. M at 34:20-35:5, 103:15-104:25, 105:16-22; Ex. N ¶ 3.)  The AFC for Mail test

2  was ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████  (*Id*. Ex. N ¶ 2;

4  Ex. M at 102:24-103:14.)

5  During the test ████████████████████████████████████████████████████

6  ████████████████████████████  (*Id*. Ex. M at 104:1-10.)  ████████████████

7  ████████████████████████████████████████████████████  (*Id*. at 104:19-

8  25.) ████████

9  ████████████  (*Id*. at 104:19-105:3.)  There is no evidence that any named Plaintiffs' email was

10  included in the AFC for Mail test.  ████████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████  (*Id*. Ex. M at 31:16-32:2; Ex. N ¶ 3.)  Yahoo does not currently

13  use AFC for Mail, has not used it in more than two years, and does not plan to use it.  (*Id*. Ex. M at

14  34:7-9, 100:19-101:11; Ex. N ¶ 3.)

15  **V.      LEGAL STANDARD**

16      "Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

17  that there is 'no genuine issue as to any material fact and that the moving party is entitled to

18  judgment as a matter of law.'"  *Quiroz v. Short*, 2015 WL 1482744, at *3 (N.D. Cal. Mar. 31, 2015)

19  (quoting Fed. R. Civ. P. 56(c)).  "Material facts are those which may affect the outcome of the

20  case."  *Id.*  "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

21  jury to return a verdict for the nonmoving party."  *Id.*  "The party moving for summary judgment

22  bears the initial burden of identifying those portions of the pleadings, discovery and affidavits

23  which demonstrate the absence of a genuine issue of material fact."  *Id.*  "Where the moving party

24  will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

25  reasonable trier of fact could find other than for the moving party."  *Id.*  "But on an issue which the

26  opposing party will have the burden of proof at trial, . . . the moving party need only point out 'that

27  there is an absence of evidence to support the nonmoving party's case."  *Id.* (quoting *Celotex*

28  *Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

1   "Once the moving party meets its initial burden, the nonmoving party must go beyond the

2   pleadings, and by its own affidavits or discovery, 'set forth specific facts showing that there is a

3   genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).  "The court is only concerned with

4   disputes over material facts, and 'factual disputes that are irrelevant or unnecessary will not be

5   counted.'"  *Id.* (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).  "The nonmoving party has the

6   burden of identifying, with reasonable particularity, the evidence that precludes summary

7   judgment."  *Id.*  "If the nonmoving party fails to make this showing, 'the moving party is entitled to

8   judgment as a matter of law.'"  *Id.* (quoting *Celotex Corp.*, 477 U.S. at 323).

9                                            **ARGUMENT**

10  **I.       PLAINTIFFS CANNOT ESTABLISH A CIPA VIOLATION.**

11          Plaintiffs' CIPA claim fails for a host of reasons.  Plaintiffs lack standing to assert a claim or

12  to obtain prospective relief, and they cannot show liability on the face of the statute.  Even if they

13  could overcome those hurdles, Plaintiffs' CIPA claim is preempted and violates both the Commerce

14  Clause and the vagueness doctrine.

15          **A.       Yahoo Has Not Engaged in Conduct That Violates CIPA.**

16          Section 631 of CIPA (the sole provision at issue) "protects against three distinct types of

17  harms:  'intentional wiretapping, willfully attempting to learn the contents or meaning of a

18  communication in transit over a wire, and attempting to use or communicate information obtained

19  as a result of engaging in either of the two previous activities.'"  *Yahoo Mail*, 7 F. Supp. 3d at 1036

20  (quoting *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978)).  Plaintiffs cannot establish that

21  Yahoo engaged in conduct that violates CIPA.

22          **1.       The Purpose of CIPA Is to Protect Privacy, Not Regulate an Email
                       Provider's Architecture.**

23

24          Applying CIPA to prevent Yahoo from ▓▓▓▓▓▓ and scanning emails on its own servers,

25  including for spam and viruses, before they reach the recipient's inbox—but not seconds after—is

26  not consistent with CIPA's purpose.  "California Code of Civil Procedure § 1859 provides that '[i]n

27  the construction of a statute the intention of the Legislature . . . is to be pursued, if possible.'"

28  *Neilson v. Chang (In re First T.D. & Inv. Inc.)*, 253 F.3d 520, 527 (9th Cir. 2001).  "The California

Supreme Court has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.'" *Id.* (citing *People v Massie*, 19 Cal. 4th 550, 569 (1998)). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *Id.* The California legislature was explicit in describing CIPA's purpose: "The Legislature by this chapter intends to protect the right of privacy of the people of this state." Cal Penal Code. § 630. Subsequent courts have also found that CIPA is concerned with privacy and, in particular, with eavesdropping by third parties. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) ("Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("'Eavesdropping' is the problem the Legislature meant to deal with[.]").

Plaintiffs' CIPA claim has devolved into a complaint about Yahoo's email architecture; namely, that ███████ and scanning of emails occurs on Yahoo's servers *prior* to being placed in inboxes, rather than *after*. Liability under CIPA should not turn on *when* a provider automatically prepares emails for subsequent scanning and analysis and conducts that scanning. Making such a distinction makes no sense because when an email is processed by an email provider on it is own servers does not change the level of intrusion into the content of the communication caused by the scanning itself. There is no rational basis for interpreting a privacy statute to draw arbitrary lines in ways that do not protect privacy.

Plaintiffs' interpretation of CIPA does nothing to protect user privacy. It also harms users and class members by seeking to prevent Yahoo from scanning for spam and malware prior to email reaching the recipient's inbox. (Petraglia Decl. Exs. CC-FF.) Though the parties dispute whether Yahoo's scanning email content is "necessary" for "effective" spam filtering (an issue that need not be undisputed for purposes of Yahoo's motion), it is not disputed that billions more spam emails will arrive in Yahoo Mail users' inboxes if Yahoo does not scan ███████ when it filters spam. (Shue Decl. ¶ 5; Petraglia Decl. Ex. A at 54:20-57:12; Ex. C ¶ 4; Ex. O ¶¶ 16-18 ███████ ███████) Plaintiffs simply argue, using questionable

math,[2] that the increased number of spam emails routed to users should be tolerable.  (Plaintiffs' Reply in Support of Motion for Class Certification "Reply ISO Class Cert.") at 4 n.3, ECF. No. 89-3; Petraglia Decl. Ex. O ¶ 18.)  Further, the parties do not dispute that email providers cannot function today without effective spam filtering.  (Petraglia Decl. Ex. P at 84:1-5; Ex. A at 59:17-60:14; Ex. Q ¶¶ 32-36; Ex. E ¶ 13; Ex. C ¶ 11.)

Though the Court previously held that CIPA applies to email generally, *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013), it should not apply here.  This is not a situation in which, for instance, a third party intercepts emails en route to an email provider's system.  Here, the conduct involves automated processes of ████████ and scanning on a provider's server.  There is none of the "eavesdropping" or "intercepting" the legislature intended to prohibit.

### 2. Yahoo Did Not "Tap" Any Telegraph or Telephone Wire.

Section 631's prohibition on the unauthorized tapping of telephone and telegraph wires is inapplicable on its face.  Cal. Penal Code § 631(a); *Yahoo Mail*, 7 F. Supp. 3d at 1036.  There is no evidence that Yahoo places a tap on any wire and Plaintiffs do not appear to rely upon this clause of CIPA. (Amended Consolidated Class Action Compl. "Am. Compl.") at ¶¶ 54-61, ECF. No. 119.)

### 3. Yahoo Did Not Attempt to Learn the Contents or Meaning of a Communication in Transit Over a Wire.

The second provision of CIPA prohibits reading, attempting to read, or learning the contents or meaning of any communication while it is in transit, passing over any wire, line or cable or being sent from or received within the state.  Cal. Penal Code § 631(a).  Plaintiffs attempt to characterize Yahoo's ████████ of emails on its servers as reading the contents of those emails while they are in transit.

CIPA should not be broadly interpreted to equate the act of creating ████████ ████████ with the prohibited act of reading or learning the contents of communications.  Nor

---

[2] *Compare* Petraglia Decl. Ex. A at 60:18-61:5 ("Q. Your Declaration says on average there's 3 billion spam messages per day?  A. Yes. Q. If there were 3 billion users, doesn't that mean one spam message per day? . . . Do I have the math right? . . . . A. [S]pam is not evenly distributed across all users that we have.  So that's not the right calculation") *with* Reply ISO Class Cert. at 4 n.3 ("Yahoo says that approximately 3 billion spam emails are sent to Yahoo's approximately 275 million Yahoo Mail users each day, or an average of eleven spam emails per user per day.").

1   should CIPA be interpreted to prohibit Yahoo's process of applying its anti-spam algorithms to the

2   ███████ or malware and spam detection.  Scanning emails to filter spam and malware and to protect

3   users from phishing schemes, which is ████████████████████████████████████████████████

4   ███████ is not an effort to learn the contents of the communication—only to identify spam.  (Shue

5   Decl. ¶¶ 11-12, 20; Petraglia Decl. Ex. A at 50:7-17.)  Yahoo attempts to match email features to

6   determine if the email is likely spam or not spam.  (Shue Decl. ¶¶ 9, 11; Petraglia Decl. Ex. A at

7   50:7-17.)  Plaintiffs' own expert agrees that merely matching features of emails is not "reading."

8   (Petraglia Decl. Ex. R ¶ 31(b) (programs can "simply match[] keywords" without "attempting to

9   learn the meaning of content"); Ex. P at 47:22-48:7 (explaining that the "binary conclusion:  I find

10  it or I didn't find it" is not "read[ing]").)  No court has ever adopted Plaintiffs' novel interpretation

11  of CIPA to cover such automated processing by an email service provider or held such processing

12  constitutes learning or reading the contents of mail.

13          Plaintiffs also cannot establish a violation because, at the time Yahoo ████████ emails and

14  scans those ██████ for malware and spam, the emails are **_on Yahoo's servers_**, not in transit or being

15  sent or passing over any wire, line or cable.  Section 631 does not define "in transit" or "passing

16  over" a wire, line or cable.  But like the federal law, CIPA carves out stored communications from

17  its scope.  Cal. Penal Code § 629.51(b) ("This chapter applies to the interceptions of wire and

18  electronic communications.  It does not apply to stored communications or stored content.").  When

19  there are no state law decisions on point, California courts have turned to federal court

20  interpretations of the federal Wiretap Act.  *People v. Roberts*, 184 Cal. App. 4th 1149, 1166-67

21  (2010); *NovelPoster* v. *Javitch*, 2014 WL 3845148, at *12 (N.D. Cal. Aug. 4, 2014) ("The analysis

22  for a violation of CIPA is the same as that under federal Wiretap Act."); *Opperman v. Path, Inc.*,

23  2014 WL 1973378, at *29-30 (N.D. Cal. May 14, 2014) (same).  The Wiretap Act applies only

24  where an electronic communication is "acquired during transmission, not while it is in electronic

25  storage."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Theofel* v. *Farey-*

26  *Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003) (same).  The Ninth Circuit, in *Konop*, made this

27  determination based on both the ordinary meaning of "intercept" and "the structure of the ECPA,

28  which created the SCA for the express purpose of addressing 'access to *stored* . . . electronic

1  communications and transactional records." *Konop*, 302 F.3d at 878-79; *Bohach v. City of Reno*,

2  932 F. Supp. 1232, 1235 (D. Nev. 1996).

3       In both *Konop* and *Theofel*, the Ninth Circuit determined that email in a provider's

4  possession falls squarely within the definition of "electronic storage," which the SCA defines as

5  "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the

6  electronic transmission thereof."  18 U.S.C. § 2510(17)(A).  This definition encompasses emails

7  that have **reached** the service provider and are in temporary intermediate storage on the provider's

8  servers en route to the recipient's inbox.  *Theofel*, 359 F.3d at 1077 (email is in electronic storage

9  regardless of whether it is in pre-delivery storage or post-delivery storage).[3] This Court itself

10 previously analyzed the SCA's definition and found that it applies to communications that are

11 temporarily stored for further transmission.[4]  Similarly, here, because Yahoo's ██████ and

12 scanning of emails occurs **on its servers** and not while those emails are in transmission **to** or **from**

13 Yahoo, Plaintiffs' attempt to establish a claim under CIPA fails.[5]

14      California courts also have held that where communications have arrived at a service

15 provider and are in storage en route to their destination, but have not been delivered to a recipient,

16 those communications are no longer "in transit" under Section 631.  *People v. Wilson*, 17 Cal. App.

17

---

18 [3]Even before *Theofel*, courts around the country interpreted the SCA to apply to communications stored in the middle of transmission to their destination; *Theofel* only expanded the SCA's coverage to emails stored as backup even after delivery. *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511-12 (S.D.N.Y. 2001).

19

20 [4]*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1059 (N.D. Cal. 2012) ("In *In re DoubleClick*, the district court, after considering the plain language of the statute, concluded that '[the SCA] only protects electronic communications stored 'for a limited time' in the 'middle' of a transmission, i.e. when an electronic communication service temporarily stores a communication while waiting to deliver it.'").

21

22

23 [5]Most other Circuits agree with the Ninth Circuit's position.  The First Circuit has split with other Circuits and held that communications can be simultaneously in electronic storage and capable of being intercepted under the Wiretap Act. *United States v. Councilman*, 418 F.3d 67, 79-80 (1st Cir. 2005) (en banc).  This is not the law in the Ninth Circuit. *Councilman*, 418 F.3d at 87 (dissent) (noting that *Konop* and other courts concluded that the Wiretap Act's prohibition on intercepting electronic communications does not apply when they are contained in electronic storage, whether such storage occurs pre- or post-delivery, and even if the storage lasts only a few milliseconds).  Further, the distinction is less important under federal law, which allows access to communications with one-party consent.  Thus, even if courts like *Councilman* find the communications to be protected by the Wiretap Act, one-party consent is sufficient for a provider to access them.  This is not the case under CIPA.

24

25

26

27

28

3d 598, 603 (1971); Cal. Penal Code § 629.51(c) (statute authorizing wiretaps does not apply to stored communications); Cal. Penal Code § 1524.2 (providing for access to stored email content with a warrant, not a wiretap order).  In *Wilson*, an answering service received and transcribed messages for the defendant.  17 Cal. App. 3d at 603.  The court held that Section 631 did not prohibit the answering service from handing over users' messages to law enforcement without a warrant.  Instead, it found that the communication was not obtained while in transit or passing over any wire, but after transmission, even though the messages had not yet been delivered to the intended recipient.  *Id.*  The answering service, like Yahoo here, accessed the messages *on its own system*, and did not violate CIPA.

The parties do not dispute the underlying facts, namely that Yahoo is in the business of providing email services and that its █████████ of emails and scanning of █████████ occurs on Yahoo's servers before the emails are placed in the recipients' mailboxes.  The legal issue is thus whether those facts constitute an interception of a communication while "in transit," "passing over" or "being" sent or received.[6]  If this Court's function is to predict how the California Supreme Court would rule when applying CIPA to emails processed by providers on their own servers (a novel question of law), this Court should rely on *Wilson* and the Ninth Circuit's interpretation of comparable federal law in *Konop* and *Theofel* as well as California's rules of statutory interpretation.  *Wilson*, 17 Cal. App. 3d at 603; *Theofel*, 359 F.3d at 1077; *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1st Dist. 1979) (CIPA should be interpreted in favor of the alleged violator); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (under rule of lenity, criminal statutes imposing penalties must be strictly construed in favor of the defendant even when applied in a civil case).

Finally, Yahoo's scanning of email data for the purpose of targeted advertising occurs long *after* a message is available to the user.  (Sharp Decl. ¶ 3; Petraglia Decl. Ex. G 25:13-26:2, 29:19-

---

[6] Though the parties' experts disagree about whether the emails are "in transit," that is ultimately a legal issue for the Court to decide when determining whether the underlying facts constitute a violation of CIPA. Indeed, Yahoo's own expert, Robert Levine, now has a different opinion on the "in transit" issue than he offered in connection with *Councilman* due to his recognition that providers should not be blocked from accessing the contents of emails for spam filtering on their own servers. (Petraglia Decl. Ex. S at 83:19-85:13, 91:3-97:16, 103:1-21, 105:15-106:14, 107:17-110:11.)

1    24, 55:3-6.)  The same is true of Yahoo's ███████████ for the purpose of improving its

2    anti-spam algorithms (Petraglia Decl. Ex. B at 28:3-25; Ex. C ¶¶ 9, 10; Shue Decl. ¶ 14), and

3    Yahoo's scanning to provide product features.  (Petraglia Decl. Ex. G at 31:17-34:18, 147:10-

4    153:18; Ex. F; Ex. T).  Thus, the additional conduct about which Plaintiffs complain also does not

5    occur while email is "in transit."

6                    **4.      Yahoo Did Not Use Information Obtained as a Result of Wiretapping
                              or Attempting to Read or Learn the Contents of Emails.**

7

8            Plaintiffs cannot establish a violation under Section 631's final provision, which prohibits

9    attempting to use or communicate information obtained as a result of engaging in either of the two

10   previously described activities, because Plaintiffs cannot establish that Yahoo engaged in either of

11   these predicate activities.  Cal. Penal Code § 631(a).  Yahoo did not tap a wire, and Yahoo did not

12   read or attempt to learn the meaning of any communication while it was in transit.

13           **B.      Interpreting Section 631 to Apply to Email Scanning Would Transform
                      Ordinary Conduct into a Criminal Offense and Lead to Absurd Results.**

14

15           Plaintiffs' interpretation of Section 631—requiring all-party consent for recorded

16   communications, like emails and voicemails—would potentially turn ordinary and widespread

17   conduct into criminal activity.  For example, administrative assistants would suddenly need both the

18   authorization of their bosses and the consent of the senders before listening to voicemails or reading

19   emails when instructed to do so.  This is not the correct interpretation of CIPA, particularly because

20   CIPA is a criminal statute to which the rule of lenity applies.  *People v. Nuckles*, 56 Cal. 4th 601,

21   611 (2013).  In connection with another criminal statute (the Computer Fraud and Abuse Act), the

22   Ninth Circuit refused to adopt a "broad interpretation of a statute" that would "criminalize a broad

23   range of day-to-day activity."  *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012).  Applying

24   Section 631 to emails in the hands of an email provider would do just that by making it potentially

25   illegal to rely just on the consent of its users.

26           The key principle is that, once a recorded communication is sent, the recipient should have

27   complete control to consent to when a third party can hear or view that message ***before or after it is***

28   ***received by the recipient***.  This result makes sense because, unlike telephone calls, a sender of

1    email or voicemail messages knows the communication is preserved and that the recipient can

2    authorize anyone to see or hear it.  *State v. Lott*, 879 A.2d 1167, 1170-73 (N.H. 2005).  An

3    alternative ruling would prevent ordinary email or voicemail users from allowing others (like a

4    secretary) to retrieve messages on their behalf without the sender's consent.  CIPA was not meant

5    to protect written forms of stored communications against the recipient's decision to authorize

6    others to access the communications.

  **C.  Application of CIPA to Yahoo in This Case Violates the Constitution.**

  Applying CIPA to nationwide email providers like Yahoo contravenes the Constitution.

    **1.  Application of CIPA to Yahoo Runs Afoul of the Commerce Clause.**

10     Applying CIPA to email providers like Yahoo directly regulates interstate commerce in

11   violation of the Commerce Clause.  The Commerce Clause grants Congress the power to regulate

12   interstate commerce.  U.S. Const. art. I, § 8, cl. 3.  "[T]his affirmative grant of authority to

13   Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to

14   enact legislation affecting interstate commerce."  *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).

15   Under the Dormant Commerce Clause, a state statute is per se invalid if it has the practical effect of

16   regulating conduct beyond the boundaries of the state "regardless of whether the statute's

17   extraterritorial reach was intended by the legislature."  *Healy*, 491 U.S. at 336; *Nat'l Collegiate*

18   *Athletic Ass'n v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993).  The "practical effect" of a challenged

19   statute is "the critical inquiry" in determining whether the statute has an extraterritorial reach.

20   *Healy*, 491 U.S. at 336.  The "practical effect . . . must be evaluated not only by considering the

21   consequences of the statute itself, but also by considering how the challenged statute may interact

22   with the legitimate regulatory regimes of other States."  *Id.*  "Generally speaking, the Commerce

23   Clause protects against inconsistent legislation arising from the projection of one state regulatory

24   regime into the jurisdiction of another State."  *Id.* at 337.

25     The practical effect of applying CIPA to Yahoo's email service is to regulate email

26   transmissions occurring wholly outside California between residents of other states.  Yahoo

27   provides email services to users who reside in all 50 states.  (Shue Decl. ¶ 18.)  Though the Court

28   limited the CIPA class to California residents, Yahoo cannot reliably determine the state in which

non-Yahoo Mail users reside when they send email to Yahoo Mail users or the residency of the recipients of emails sent by its users.  (Petraglia Decl. Ex. B at 107:1-7; Ex. Q ¶¶ 37-42; Shue Decl. ¶¶ 18-20.)  Thus, if CIPA were interpreted to apply to Yahoo's conduct (and Plaintiffs' proposed injunction were entered prohibiting Yahoo from scanning emails without two-party consent), Yahoo would have to comply with CIPA in all 50 states with respect to all email.  Further, Yahoo's MTA and ████████████ are not located in California.  (Petraglia Decl. Ex. D at Response No. 15; Ex. A at 42:8-17; Ex. B at 43:3-18, 77:7-8; Shue Decl. ¶¶ 3, 15.)  Yahoo's handling of emails occurring wholly outside California would be subject to California law.  *Nat'l Collegiate Athletic Ass'n*, 10 F.3d at 639 ("The practical requirement that the NCAA would have to use the [Nevada] Statute in enforcement proceedings in every state in the union runs afoul of the Commerce Clause . . . .").

Further, the "practical effect" of CIPA must be evaluated by looking at how it interacts with the regulatory regimes of other states.  *Healy*, 491 U.S. at 336; *Nat'l Collegiate Athletic Ass'n*, 10 F.3d at 639.  The Court previously concluded that the wiretapping laws of other states are materially different from CIPA (*Yahoo Mail*, 2015 WL 3523908, at *21 ("some states expressly exclude email from their wiretapping statutes, others require only single party consent, and still others require plaintiffs to prove that they had either an objective or subjective expectation of privacy")) and "that the home states of non-California class members have a significant interest in applying their own wiretapping laws to their residents."  *Id.* at *24.  Application of CIPA here would effectively trump the law of other states in contravention of the Commerce Clause.

### 2.     The SCA Preempts CIPA.

The SCA preempts CIPA if CIPA applies when a provider accesses emails on its own servers.  A state statute conflicts with, and is preempted by, a federal statute if the state statute "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" with respect to the federal statute.  *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (citation omitted).  Plaintiffs claim Yahoo has violated CIPA by accessing emails on its servers for purposes of ████████ that is used for spam and malware detection and ████████ ████████ for targeted advertising.  Congress, however, has immunized that conduct from

1    liability by ***granting*** providers full access to emails on their servers.  18 U.S.C. § 2701(c)(1).

2          The Electronic Communications Privacy Act (ECPA), which encompasses the SCA, was

3    intended to promote advancements and innovation in telecommunications and computer technology

4    by giving guidance to email providers about their own permissible conduct and when they could

5    "resist unauthorized access to communications" by "law enforcement authorities as well as

6    unauthorized private parties."  S. Rep. No. 99-541 at 3 (1986) (ECF. No. 38-2).  In pursuing these

7    goals, Congress "created the SCA for the express purpose of addressing 'access to stored . . .

8    electronic communications and transactional records.'"  *Konop*, 302 F.3d at 878-79 (quoting

9    S. Rep. No. 99-541 at 3 (1986)).

10          Consistent with these goals, the SCA prohibits unauthorized access to email while it is in

11   electronic storage but expressly exempts providers from liability for such access. 18 U.S.C.

12   § 2701(a)(2), (c)(1) (authorizing "the person or entity providing a wire or electronic

13   communications service" to obtain "access to a wire or electronic communication while it is in

14   electronic storage"); *Bohach*, 932 F. Supp. at 1236 (Section 2701 "allows service providers to do as

15   they wish when it comes to accessing communications").  Congress recognized that providers need

16   to access emails on their servers and to "create electronic copies of private correspondence for later

17   reference" because "[t]his information is processed for the benefit of the user."  S. Rep. No. 99-541

18   at 3 (1986) (ECF. No. 38-2).  Access allows providers to protect themselves and their users (by

19   scanning for malware and spyware, preventing fraud, stopping hackers), to provide useful features

20   that require interaction with email content, and even to serve advertising so that free email services

21   can be offered.

22          Plaintiffs' CIPA claim is based on automated processes that occur on Yahoo's servers while

23   emails are in "electronic storage" within the meaning of the SCA.  18 U.S.C. § 2510(17)(A)

24   ("electronic storage" means "any temporary, intermediate storage of a wire or electronic

25   communication incidental to the electronic transmission thereof"); *Konop*, 302 F.3d at 878 n.6

26   (explaining that Congress determined that the SCA applies to the *en route* storage of electronic

27   storage.); *Theofel*, 359 F.3d at 1075 (same); *iPhone Application*, 844 F. Supp. 2d at 1059 (noting

28   case law holding that the SCA protects electronic communications when a provider temporarily

1   stores a communication while waiting to deliver it); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F.

2   Supp. 2d 1148, 1152 (C.D. Cal. 2007) ("Even if the storage phase is transitory and lasts only a few

3   seconds, it is still considered 'electronic storage.'").  Congress understood that providers need to

4   access emails on their servers and immunized providers from liability.  If CIPA prohibits Yahoo

5   from engaging in the conduct complained of *on its own servers*, it is unclear what automated data

6   processing would be permissible for a provider.  Plaintiffs' proposed application of CIPA subverts

7   Congress's efforts to remove uncertainty about what a provider may do with communications on its

8   own system, and frustrates Congress's intention to promote innovations in communications

9   technology.

10          Numerous cases hold that a state statute is conflict preempted when it imposes criminal or

11   civil liability for conduct specifically immunized by a federal statute.  *Valle del Sol Inc. v. Whiting*,

12   732 F.3d 1006, 1028 (9th Cir. 2013), *cert. denied sub nom.*, *Arizona v. Valle del Sol, Inc.*, 134 S. Ct.

13   1876 (2014) (finding conflict preemption where "individuals could be prosecuted [under state law]

14   for conduct that Congress specifically sought to protect through the exemption" in a federal statute);

15   *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 536 (1st Cir. 2007) (New Hampshire CPA conflict

16   preempted with respect to sale of gift cards by third parties because federal regulations allowed

17   sales, while the New Hampshire CPA prohibited the sales); *We Are Am. v. Maricopa Cnty. Bd. of

18   Supervisors*, 297 F.R.D. 373, 392 (D. Ariz. 2013) ("it defies logic to suggest, as the defendants do,

19   that the Policy, which contravenes federal law by criminalizing conduct which Congress has chosen

20   not to, is harmonious with federal law").  Similarly, here, CIPA must give way to the SCA under

21   the Supremacy Clause and the doctrine of conflict preemption.[7]

22                    **3.       CIPA is Unconstitutionally Vague as Applied to Yahoo.**

23          A fundamental principle of the Constitution is that laws must give fair notice of conduct that

24   _____

25   [7] Whether the SCA conflicts with CIPA is a novel question. Courts have only previously
    considered whether the Wiretap Act preempts CIPA, or whether the SCA completely preempts
    the field of privacy claims. *People v. Conklin*, 12 Cal. 3d 259, 273 (1974) (holding 18 U.S.C.

26   §§ 2510-2520 did not preempt Cal. Penal Code § 631); *In re Google Inc. Street View Elec.
    Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1085 (N.D. Cal. 2011) ("the federal Wiretap Act

27   preempts state wiretap statutory schemes); *Quon v. Arch Wireless Operating Co., Inc.*, 445 F.
    Supp. 2d 1116, 1138 (C.D. Cal. 2006) (holding the SCA "displaces state law claims for conduct

28   that is touched upon by the statute").

1   is forbidden or required.  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute

2   which either forbids or requires the doing of an act in terms so vague that men of common

3   intelligence must necessarily guess at its meaning and differ as to its application violates the first

4   essential of due process of law"); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)

5   (same).  The principle requires the invalidation of laws that are impermissibly vague.  *United*

6   *States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013).  CIPA fails to give sufficient notice that an

7   email provider's automated processing and tokenization of emails on its servers could violate the

8   law.

9       Courts have noted that Section 631 of CIPA is unclear.  *Rogers*, 52 Cal.App.3d at 898 ("the

10   key phrases, 'taps' and 'makes any unauthorized connection,' are vague and nowhere defined");

11   *Wilson*, 17 Cal. App. 3d at 602 ("In some aspects the provisions of Penal Code section 631 are

12   patently ambiguous.").  Further, the law appears to prohibit wiretapping and interceptions to learn

13   the contents of communications passing over telephones, telegraphs or other telephonic

14   communication systems, not an email provider's processing of emails on its own systems for

15   purposes of providing email to its own users.  Indeed, Section 631(b) expressly exempted public

16   utilities "engaged in the business of providing communications services and facilities" from

17   liability—further indicating (1) that the law was focused on interceptions of telephonic

18   communications systems (i.e., systems provided by public utilities) and (2) that the law was not

19   intended to regulate the entities providing the communication systems.  Yahoo could not have

20   anticipated that automated machine processes such as ███████ or spam filtering, which happen

21   on its own servers, could be considered to violate CIPA.  Similarly, Yahoo's computer analysis of

22   emails *long after* an email has been delivered is not the same as the "contemporaneous"

23   interception of message content that is the *sin qua non* of wiretapping.  *Konop*, 302 F.3d at 876-77.

24       **D.    Plaintiffs Lack Article III Standing.**

25       Plaintiffs lack Article III standing to assert their CIPA claim because they cannot establish

26   that they have suffered any injury as a result of Yahoo's conduct.  Article III limits the jurisdiction

27   of the federal courts to hearing cases or controversies and requires a party to have suffered a

28   concrete and particularized injury.  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013); *Lujan v.*

1 | *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiffs have not suffered any injury-in-fact

2 | caused by Yahoo's processing of their communications with Yahoo users.  Plaintiffs instead seek

3 | relief solely on the basis of Yahoo's alleged statutory violation of CIPA.  Statutory language

4 | purportedly entitling any person to sue cannot abrogate constitutionally-required standing.[8] *Allen v.*

5 | *Wright*, 468 U.S. 737, 750-52 (1984).  As Plaintiffs have no injury for this Court to redress,

6 | Plaintiffs lack standing.

7 |       **E.**        **Plaintiffs Lack Standing to Seek Prospective Relief Under CIPA.**

8 |       Plaintiffs lack standing to seek an injunction under CIPA because they now implicitly

9 | consent to Yahoo's scanning of their emails.  For injunctive relief, there must be an "actual and

10 | imminent" threat, *Lujan*, 504 U.S. at 561, and "past wrongs do not in themselves amount to that real

11 | and immediate threat of injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  Likewise,

12 | a person seeking declaratory relief must show a very significant possibility of future harm.

13 | *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).  Plaintiffs are

14 | aware of Yahoo's practices, yet continue to send emails to Yahoo users rather than abstain from

15 | sending such emails until Yahoo ceases engaging in the conduct to which Plaintiffs object.

16 | (Petraglia Decl. Ex. U at 49:4-17, 23-25, 57:8-10; Ex. V; Ex. W; Ex. X at 71:14-72:1; Ex. Y; Ex. Z

17 | at Responses Nos. 8 and 9.)  Plaintiffs have no future injury because any future scanning of

18 | Plaintiffs' email would take place only with their consent. Cal. Penal Code § 631(a) (CIPA applies

19 | only when there is no "consent.").  Plaintiffs thus lack standing to secure prospective relief.

20 | *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

21 |       This Court previously concluded that Yahoo was attempting to place Plaintiffs in a "catch-

22 | 22," requiring that Plaintiffs both stop emailing Yahoo users after discovering Yahoo's alleged

23 | wrongful conduct in order to avoid consenting to Yahoo's conduct and continue to email Yahoo

24 | users so that Plaintiffs allege a real and immediate threat of future injury.  *Yahoo Mail*, 2015 WL

---

25 | [8] Yahoo is aware that the issue of whether the actual injury requirement of Article III can be
26 | satisfied solely by an invasion of a statutory legal right is before the Supreme Court in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015). Yahoo is additionally aware of this Court's ruling in
27 | *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *15-16 (N.D. Cal. Aug. 13, 2015), as well as the Ninth Circuit's decision in *Edwards v. First American Corporation*, 610 F.3d 514 (9th Cir. 2010).
28 | Yahoo preserves this argument pending a decision of the Supreme Court.

1    3523908, at *8.  There is a third option, however, not addressed by the Court.  Plaintiffs could have

2    stopped sending email to Yahoo users once they learned of Yahoo's practices while asserting that

3    they intended to do so in the future once they had some assurance that their email would not be

4    scanned, or at least not scanned in a manner that offends them.  Courts have recognized that for

5    standing a consumer need only establish that she would purchase or use a product in the future if

6    the alleged violation were cured.  *Werdebaugh v. Blue Diamonds Growers*, 2014 WL 2191901, at

7    *9 (N.D. Cal. May 23, 2014).  Further, in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138,

8    1154 (2013), the Court declined to find standing, reiterating its long held rule that the assumption

9    that if respondents have no standing to sue, no one would, is not a reason to find standing.  *Id.* at

10   1154.

11   **II.      PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THE SCA.**

12         The SCA prohibits an email provider from knowingly divulging to any person or entity the

13   contents of a communication while in electronic storage without the consent of the sender or

14   recipient.  18 U.S.C. § 2702(a)(1), (b)(3).  Plaintiffs cannot establish a violation of the SCA.

15         **A.      Plaintiffs Lack Standing.**

16         Plaintiffs lack Article III standing or standing to seek the requested relief under the SCA.

17   First, just as with the CIPA claim, Plaintiffs do not contend they have suffered an actual injury apart

18   from the alleged statutory violation.  (*See supra*, Part VI.F.)  Second, Plaintiffs have no evidence

19   that Yahoo shared their email content with a third party.  "[I]f none of the named plaintiffs

20   purporting to represent a class established the requisite of a case or controversy with the defendants,

21   none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*,

22   414 U.S. 488, 494 (1974); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th

23   Cir. 2003) (vacating district court's certification of the class for lack of standing); *LaDuke v.

24   Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985); *Neal v. Naturalcare, Inc.*, 2014 WL 346639, at *3

25   (C.D. Cal. Jan. 30, 2014).

26         Plaintiffs initially based their SCA claim on a portion of Yahoo's FAQs page, which states

27   "4.  Does Yahoo Mail automatically share my messages with anyone else?  Your messages are

28   shared only with [t]he people you want.  Yahoo may anonymously share specific objects from a

1  message with a 3rd party to provide a more relevant experience within your mail."  (Am. Compl.

2  ¶ 47; Petraglia Decl. Ex. J.)  However, the "specific objects" are ████████████████████

3  ████████████████████████████████████████████████████████████████████████████████████████

4  ███████████████████████ not from individual consumers like Plaintiffs. (Sharp Decl. ¶ 6; *see*

5  *supra* Part IV.B for description of Yahoo's tracking process.)

6  Yahoo's ███████████ of Google's AFC for Mail platform between July 10, 2013 and

7  August 8, 2013 similarly does not confer standing.  (Petraglia Decl. Ex. N ¶ 3.)  This test involved

8  ██████████████████████████████████████████████████████████████████████ (*Id*. Ex. N ¶ 2;

9  Ex. M at 102:24-103:14.)  Plaintiffs have no evidence that they sent an email during the test period

10  that was actually part of the test.  Only Plaintiff Baker sent or received email from a Yahoo user

11  during this time period, and he has no evidence that the recipient ████████████████████████

12  ████████████████████████████ (*Id*. Ex. AA at 7.)[9] Further, during the test, Yahoo

13  did not share email content, but instead only attempted to ███████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████████████████

15  ██████████████████ (*Id*. Ex. M at 103:15-104:25, 105:16-22.)

17  Plaintiffs and the class also lack standing to seek prospective relief.  After the limited test in

18  ███████ Yahoo decided not to ████████████████████ (*Id*. Ex. N ¶ 3.)  Yahoo currently has no

19  plans to use AFC for Mail or to implement a similar program with any other partner.  (*Id*. Ex. M at

20  34:4-9, 100:14-101:4.)  Plaintiffs and class members thus lack standing for prospective relief.

21  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (*en banc*); *San Diego*

22  *Cnty.*, 98 F.3d at 1126.

23  **B.    Yahoo Has Consent to Share Email Content for Targeted Advertising.**

24  Even if Yahoo had shared email content, Yahoo has consent, through its ATOS and FAQs,

25  to share email content for targeted advertising and product features.  18 U.S.C. § 2702(b)(3)

26  (content can be shared with consent of one party to the communication).  This Court previously

---

[9] Plaintiffs bear the burden of bringing forward evidence to support their case. *Quiroz*, 2015 WL 1482744, at *3.

found "that the ATOS also established Yahoo Mail users' consent to Yahoo's practice of scanning and analyzing emails for the purposes of creating user profiles for both parties to the email communication *and sharing content from the emails with third parties*." *Yahoo Mail*, 7. F. Supp. at 1030 (emphasis added).  The Court further held "that the explicit notice in the ATOS that Yahoo scans and analyzes emails in order to 'match and serve targeted advertising' suffices to prove that by agreeing to the ATOS, users also consented to Yahoo's conduct of scanning and analyzing emails for the purpose of creating user profiles and *sharing content with third parties*."  (Petraglia Decl. Ex. J.)  Further, Yahoo's Mail FAQs, viewed millions of times, also discloses that Yahoo may "share a package tracking number with the shipping company so that you can easily see when your package will arrive, or may share your flight number with your airline to enable flight notifications within your inbox."  (*Id*. Ex. J; Ex. BB ¶ 4.)

## III.   CONCLUSION

For the foregoing reasons, Yahoo respectfully requests that the Court grant Yahoo's motion and enter judgment in favor of Yahoo on all claims.

Dated:   September 18, 2015

MORRISON & FOERSTER LLP

ZWILLGEN PLLC

By:   /s/ Rebekah Kaufman
REBEKAH KAUFMAN

Attorney for Defendant
YAHOO! INC.