Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Ashley Tveit (SBN 275458)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
*as@girardgibbs.com*
*at@girardgibbs.com*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707
*lking@kaplanfox.com*

*Co-Lead Class Counsel*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
*ffox@kaplanfox.com*
*dstraite@kaplanfox.com*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: YAHOO MAIL LITIGATION | Consolidated Case No.: 5:13-cv-04980-LHK |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT** |
| | Date:    December 10, 2015 |
| | Time:    1:30 p.m. |
| | Place:   Courtroom 8 |
| | Judge:   Hon. Lucy Koh |

Redacted

1

**TABLE OF CONTENTS**

2   I.     Introduction ................................................................................................................. 1

3   II.    Clarification of Factual Background ........................................................................... 2

4
        A.     Yahoo Does ████████████████████████████████
5               ████████████████████████ .............................................................. 2

6               1.      Email from Class Members to Yahoo Mail Subscribers ...................... 2

7
                2.      Email from Yahoo Mail Subscribers to Class Members ...................... 3
8
9       B.     Yahoo Designed Its Process to ██████████████████████ ............... 3

10  III.   Yahoo Violates the California Invasion of Privacy Act as a Matter of Law ............... 4

11      A.     Yahoo's Conduct Is Prohibited by the Plain Language and Purpose of the CIPA .......... 4

12
                1.      The CIPA Protects Communications While They Are In Transit and While
13                      They Are Being Received by the Recipient .......................................... 6

14              2.      There Is No Merit to Yahoo's Argument That It Cannot Violate the CIPA
15                      Once Emails Arrive at Its "First Set of Servers" ................................. 8

16              3.      There Is No Merit to Yahoo's Argument That It Does Not Violate the CIPA
                        by Intercepting Emails While They Are Temporarily Stored on Its Servers ........ 9
17
18              4.      There Is No Merit to Yahoo's Argument That It Does Not Violate the
                        CIPA by Not Scanning for Targeted Advertising Until After the Email
19                      Is Delivered ........................................................................................ 14

20      B.     Yahoo Is Not Engaging in "Ordinary Conduct" ............................................... 15

21      C.     Enforcing the CIPA Will Not Violate the Constitution .................................... 17

22
                1.      Enforcing the CIPA Will Not Violate the Commerce Clause ............. 17
23
24              2.      The CIPA Is Not Preempted .............................................................. 19

25              3.      The CIPA Is Not Unconstitutionally Vague ...................................... 22

26      D.     Plaintiffs Have Standing ................................................................................. 23

27  IV.    Yahoo Violated the Stored Communications Act as a Matter of Law ....................... 24

28  V.     Conclusion ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*Ades v. Omni Hotels Management Corp.*
46 F. Supp. 3d 999 (C.D. Cal. 2014) ................................................................. 17, 18, 19

*Arizona v. United States*
132 S. Ct. 2492 (2012) ................................................................................................. 20

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013)
*cert. denied,* 135 S. Ct. 398 (2014) ........................................................................ 17, 18

*Chemical Specialties Manufacturers Ass'n, Inc. v. Allenby*
958 F.2d 941 (9th Cir. 1992) ...................................................................................... 19

*City of Ontario v. Quon*
560 U.S. 746 (2010) ..................................................................................................... 20

*Cousineau v. Microsoft Corp.*
992 F. Supp. 2d 1116 (W.D. Wash. 2012) .................................................................. 21

*Edwards v. First American Corp.*
610 F.3d 514 (9th Cir. 2010) ...................................................................................... 23

*Exxon Corp. v. Governor of Maryland*
437 U.S. 117 (1978) ..................................................................................................... 18

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*
458 U.S. 141 (1982) ..................................................................................................... 19

*Fraser v. Nationwide Mutual Insurance Co.*
135 F. Supp. 2d 623 (E.D. Pa. 2001)
*aff'd in relevant part*, 352 F.3d 107 (3d Cir. 2003) .................................................. 12

*Healy v. Beer Institute*
491 U.S. 324 (1989) ..................................................................................................... 18

*In re Adobe Systems, Inc. Privacy Litig.*
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................................ 25

*In re Carrier IQ, Inc.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................ 12

*In re DoubleClick Inc. Privacy Litigation*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................ 12

*In re First T.D. & Investment, Inc.*
  253 F.3d 520 (9th Cir. 2001) ...................................................................... 10

*In re Google Inc. Gmail Litig.*
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...................................... 5, 22, 23

*In re National Security Agency Telecommunications Records Litig.*
  633 F. Supp. 2d 892 (N.D. Cal. 2007) ...................................................... 20

*In re Yahoo Mail Litig.*
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................ 25

*In re Yahoo Mail Litig.*
  2015 WL 3523908 (N.D. Cal. May 26, 2015) ....................................... 17, 24

*In re Zynga Privacy Litig.*
  750 F.3d 1098 (9th Cir. 2014) .................................................................. 25

*Jones v. Rath Packing Co.*
  430 U.S. 519 (1977) .................................................................................. 20

*Kearney v. Salomon Smith Barney, Inc.*
  39 Cal.4th 95 (2006) ................................................................................. 19

*Konop v. Hawaiian Airlines, Inc.*
  302 F.3d 868 (9th Cir. 2002) ......................................................... 10, 11, 12

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .................................................................................. 23

*McClellan v. I-Flow Corp.*
  776 F.3d 1035 (9th Cir. 2015) .................................................................. 19

*Medtronic, Inc. v. Lohr*
  518 U.S. 470 (1996) ............................................................................. 19, 20

*National Association of Optometrists & Opticians v. Harris*
  682 F.3d 1144 (9th Cir. 2012) .................................................................. 18

*National Collegiate Athletic Association v. Miller*
  10 F.3d 633 (9th Cir. 1993) ...................................................................... 19

*National Federation of the Blind v. Target Corp.*
  452 F. Supp. 2d 946 (N.D. Cal. 2006) ...................................................... 18

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

*Nationwide Biweekly Administration, Inc. v. Owen*
  2015 WL 1254847 (N.D. Cal. Mar. 18, 2015)............................................................. 17, 18

*Pacific Merchant Shipping Ass'n v. Goldstene*
  639 F.3d 1154 (9th Cir. 2011) ........................................................................................... 17

*People v. Conklin*
  12 Cal.3d 259 (1974) ........................................................................................................ 19

*People v. Leon*
  40 Cal.4th 376 (2007) ......................................................................................................... 7

*People v. Manzo*
  53 Cal.4th 880 (2012) ....................................................................................................... 13

*People v. Moreno*
  2014 WL 6809702 (Cal. Ct. App. Dec. 3, 2014) ................................................................ 6

*People v. Nuckles*
  56 Cal.4th 601 (2013) ....................................................................................................... 13

*People v. Roberts*
  184 Cal. App. 4th 1149 (2010) ......................................................................................... 10

*People v. Wilson*
  17 Cal. App. 3d 598 (1971) ........................................................................................... 9, 23

*Pharmaceutical Research & Manufacturers of America v. Walsh*
  538 U.S. 644 (2003)........................................................................................................... 18

*Quon v. Arch Wireless Operating Co., Inc.*
  529 F.3d 892 (9th Cir. 2008) ............................................................................................ 20

*Ribas v. Clark*
  38 Cal.3d 355 (1985) ................................................................................................... passim

*Rodriguez v. Ulrich*
  52 Cal. App. 3d 894 (1974) .............................................................................................. 23

*SPGGC, LLC v. Ayotte*
  488 F.3d 525 (1st Cir. 2007)............................................................................................. 22

*State v. Lombardo*
  738 N.E.2d 653 (Ind. 2000) ............................................................................................... 9

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

*State v. Lott*
    879 A.2d 1167 (N.H. 2005) ....................................................................... 16

*State v. Roden*
    321 P.3d 1183 (Wash. 2014)...................................................................... 11

*Theofel v. Farey-Jones*
    359 F.3d 1066 (9th Cir. 2003) ............................................................ 11, 12

*United States v. Agront*
    773 F.3d 192 (9th Cir. 2014) ..................................................................... 22

*United States v. Chhun*
    744 F.3d 1110 (9th Cir. 2014) ................................................................... 22

*United States v. Kilbride*
    584 F.3d 1240 (9th Cir. 2009) ................................................................... 22

*United States v. Wyatt*
    408 F.3d 1257 (9th Cir. 2005) ................................................................... 22

*United States v. Councilman*
    418 F.3d 67 (1st Cir. 2005) ....................................................................... 13

*United States v. Nosal*
    676 F.3d 854 (9th Cir. 2012) ..................................................................... 16

*United States v. Szymuszkiewicz*
    622 F.3d 703 (7th Cir. 2010) ..................................................................... 13

*Valle del Sol Inc. v. Whiting*
    732 F.3d 1006 (9th Cir. 2013) ................................................................... 21

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
    455 U.S. 489 (1982)................................................................................... 22

*We Are America v. Maricopa County Board of Supervisors*
    297 F.R.D. 373 (D. Ariz. 2013) ................................................................ 21

*Zephyr v. Saxon Mortgage Services, Inc.*
    873 F. Supp. 2d 1223 (E.D. Cal. 2012)..................................................... 17

**Federal Statutes**

18 U.S.C. § 2510(17) ....................................................................................... 10

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

18 U.S.C. § 2511(2)(a) ........................................................................................... 21

18 U.S.C. § 2520(c)(2)(B) ......................................................................................... 7

18 U.S.C. § 2707(c) ..................................................................................................... 7

18 U.S.C. § 2711(1) ................................................................................................... 10

**California Statutes**

Cal. Penal Code § 629.51(b) ...................................................................................... 6

Cal. Penal Code § 630 ............................................................................................ 4, 5

Cal. Penal Code § 631(a) .................................................................................. 4, 6, 10

Cal. Penal Code § 637.2(c) ...................................................................................... 23

**Other Authorities**

Orin S. Kerr, *The Next Generation Communications Privacy Act*
    162 U. Pa. L. Rev. 373 (Jan. 2014) .................................................................. 7, 8

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

# I.      Introduction

Yahoo does not dispute that it intercepts all of class members' emails with Yahoo Mail subscribers before the emails are delivered to the recipients, ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ Yahoo deliver the original emails to their recipients. Yahoo's conduct violates the California Invasion of Privacy Act, which was enacted to protect the privacy of communications and prohibits the reading or attempts to read or learn the content of communications in transit without the consent of all parties to the communication, and the use of the information in that manner.

In its motion for summary judgment, Yahoo makes several arguments that would require the Court to ignore the plain language and purpose of the statute and instead rely on a strained interpretation of a single California case and Ninth Circuit cases applying the federal Wiretap Act to defendants who accessed communications that had already been delivered to the recipient and were in storage. The Court would also have to disregard the California Supreme Court's holding that the "broad wording and purpose of the statute" require that it be given an expansive application in favor of protecting the privacy of communications. *Ribas v. Clark*, 38 Cal.3d 355, 360 (1985) (en banc). Yahoo also argues that enforcing the CIPA would violate the United States Constitution, but fails to show that the statute violates the dormant Commerce Clause, is preempted by the federal Stored Communications Act, or is unconstitutionally vague.

Yahoo also argues that the Court should dismiss plaintiffs' claim for violation of the SCA, but does not dispute that it ████████████████ test of Google's AdSense for Content for Mail that involved ████████████████████████████████████████████████████████████████ ████████████ Yahoo contends that its subscribers consented to the disclosure of the content of their emails for targeted advertising purposes but has not identified any statements in its agreements with subscribers that actually disclosed that it would share the content of their personal emails with third parties.

The parties' cross-motions for summary judgment establish that the material facts are undisputed. Because the undisputed facts establish that Yahoo analyzed and used the content of class

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

members' emails without their consent in violation of the CIPA, plaintiffs request that the Court deny Yahoo's motion for summary judgment and grant their motion for summary judgment. Plaintiffs also request that the Court deny Yahoo's motion and grant their motion as to their SCA claim.

## II. Clarification of Factual Background

### A. Yahoo Does Not Wait Until Emails Are Delivered to Their Recipients to Analyze the Email Content for Targeted Advertising

Yahoo says it only analyzes emails for targeted advertising after the emails reach the recipient's inbox. *See, e.g.,* Yahoo Motion at 8:11-12. But Yahoo starts the process of analyzing the content of class members' emails with Yahoo Mail subscribers before the emails are delivered to their recipients.

### 1. Email from Class Members to Yahoo Mail Subscribers

When a class member sends an email to a Yahoo Mail subscriber, the email is relayed through a series of intermediate servers called mail transfer agent servers (MTAs). Straite Decl. (ECF No. 131-5), Ex. 1 at ¶¶ 16, 19, Ex. 2 at ¶ 9. When an email arrives at Yahoo's MTAs (which Yahoo refers to as its "first set of servers"), it is not accessible to the email recipient. *Id.*, Ex. 7 (Doron Dep.) at 69:9-16, Ex. 9 (Shue Dep.) at 53:14-54:16. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*, Ex. (Shue Dep.) at 54:23-56:5. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*, Ex. 1 at ¶¶ 30-31, Ex. 7 (Doron Dep.) at 40:11-16, Ex. 9 (Shue Dep.) at 49:13-54:16. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*, Ex. 1 at ¶¶ 26-27.

Yahoo ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ from the MTAs to another set of servers it calls the "Grid" for further analysis and storage. *Id.*, Ex. 1 at ¶ 22, Ex. 7 (Doron Dep.) at 18:12-23, Ex. 31 at YAH00068107, Ex. 54 at YAH000110652. Yahoo sends the original emails, including those identified as spam, ▓▓▓▓▓▓▓▓▓ to a different set of servers where the Yahoo Mail subscriber recipients can access them. *Id.*, Ex. 1 at ¶ 26, Ex. 54 at YAH00110652. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*, Ex. 1 at ¶ 31, Ex. 11 (Sharp Dep.) at 92:14-93:22, Ex. 41. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*,

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1   Ex. 41. ████████████████████████████████████████████. *Id.*, Ex. 38 at
2   YAH00075521.

### 2.   Email from Yahoo Mail Subscribers to Class Members

4   When a Yahoo Mail subscriber sends an email to a non-subscriber, ███████████

5   ████████████████████████████████████████████████████████████████████

6   ████ Straite Decl. (ECF No. 131-5), Ex. 1 at ¶¶ 21-22, 28, 33, Ex 23, Ex. 54 at YAH000110652.

7   ████████████████████████████████████████████████████████████████████

8   ██████████████████. *Id.*, Ex. 1 at ¶¶ 26-28, Ex. 36, Ex. 42, Ex. 54 at YAH000110652.

9   The original email is transmitted via the internet, *id.*, Ex. 21 at YAH00011580, where it is eventually

10   passed along by many servers to the recipient's mailbox. *Id.*, Ex. 1 at Ex. C (RFC 5321) at 7-9. Because

11   Yahoo does not have knowledge of other email providers' internal architecture, it cannot know whether

12   an email has been delivered to its recipient when ██████████████████████████

13   █████████████ *Id.*, Ex. 9 (Shue Dep.) at 84:4-86:13.

### B.   Yahoo Designed Its Process to Facilitate Its Targeted Advertising Program

15   Yahoo suggests that the reason it ████████████████████████████████████

16   ████████████████████████ is to filter spam. *See, e.g.*, Yahoo Motion at 6:9. The vast

17   majority of incoming email—████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████ Shue Decl. (ECF No. 135-1), ¶¶ 4-5. The

20   remaining ██████████████████████████, is delivered to the subscriber. *Id.*, ¶ 13.

21   Yahoo admits that filtering spam to a separate mailbox is not necessary to provide email service to its

22   subscribers, it is merely useful. Straite Decl. (ECF No. 131-5), Ex. 7 (Doron Dep.) at 103:23-105:20. In

23   fact, Yahoo holds patents for spam filtering processes that do not rely on ██████████████

24   ███████████████████████████. *Id.*, Ex. 1 at ¶¶ 38-40. Yahoo has opted not to

25   use one of those processes to filter spam, and has instead adjusted its spam filtering process to

26

27   _____

[1] Yahoo Mail engineering director Gareth Shue testified in deposition that 90% of spam is rejected ██

28   ███████████████████ *Compare* Straite Decl. (ECF No. 131-5), Ex. 9 (Shue Dep.) at 54:23-56:24 *with*
Shue Decl. (ECF No. 135-1), ¶ 5.

accommodate the process it uses to analyze the meaning of email content for its targeted advertising program. *Id.*, Ex. 9 (Shue Dep.) at 151:9-152:21.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

. *Id.*, Ex. 9 (Shue Dep.) at 96:11-14; Straite Opp. Decl., Ex. 57 (YAH00002514-2522). ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ Straite Decl. (ECF No. 131-5), Ex. 9 (Shue Dep.) at 76:5-12. The spam analysis that Yahoo performs █████████ differs significantly from the analysis it performs for its targeted advertising program. ██████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ *Id.*, Ex. 9 (Shue Dep.) 49:10-50:24; Shue Decl. (ECF No. 135-1), ¶ 9.

## III.  Yahoo Violates the California Invasion of Privacy Act as a Matter of Law

### A.  Yahoo's Conduct Is Prohibited by the Plain Language and Purpose of the CIPA

The purpose of the CIPA is to protect the privacy of communications. Cal. Penal Code § 630. As the California Supreme Court has explained, in enacting the statute "the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal.3d 355, 359 (1985) (en banc) (alteration in original) (quoting Cal. Penal Code § 630). The CIPA achieves its purpose by prohibiting third parties from intercepting communications while they are being transmitted to or being received by the intended recipient, learning the contents of the communications, and using any information obtained from the communications. Cal. Penal Code § 631(a) (prohibiting "read[ing], or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or

1  cable, or is being sent from, or received at any place within this state" and the "use[] or attempts to use,

2  in any manner, or for any purpose, or to communicate in any way, any information so obtained").

3          Yahoo says that the statute was intended to prohibit "eavesdropping" and therefore does not

4  apply to its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and use of the content for targeted advertising. First of all, after

6  careful consideration this Court held that the CIPA applies to email communications, so Yahoo's

7  suggestion to the contrary can be readily rejected. *In re Google Inc. Gmail Litig.*, No. 13-md-02430-

8  LHK, 2013 WL 5423918, at *20-21 (N.D. Cal. Sept. 26, 2013). Second, Yahoo's conduct is akin to

9  eavesdropping on class members' communications with Yahoo Mail subscribers. As the California

10  Supreme Court has explained, section 631 "penalizes various forms of secret monitoring of

11  conversations." *Ribas*, 38 Cal.3d at 359. By intercepting and extracting the content of class members'

12  emails with Yahoo Mail subscribers while the emails are still being transmitted to their recipients and

13  using the content for targeted advertising, Yahoo is engaging in the "secret monitoring of

14  conversations." *Id.*

15          As discussed in plaintiffs' motion for summary judgment, Yahoo's conduct violates two aspects

16  of the statute: it willfully reads or learns the content of email and uses the information it obtains for

17  targeted advertising. Plaintiffs' Motion (ECF No. 131-3) at 6-17. While Yahoo's conduct may not have

18  been contemplated by the California Legislature when it enacted and amended the CIPA, the Legislature

19  intended the CIPA to address "advances in science and technology [that] have led to the development of

20  new devices and techniques" for invading the privacy of communications. Cal. Penal Code § 630. The

21  California Supreme Court has held that the "broad wording and purpose of the statute," including its

22  prohibition of attempts to learn the contents of a communication "in any unauthorized manner," requires

23  that section 631 be given an expansive application in favor of protecting the privacy of communications.

24  *Ribas*, 38 Cal.3d at 360. This Court has also recognized that "the California legislature intended for

25  CIPA to establish broad privacy protections," which "supports an expansive reading of the statute," and

26  that the California Supreme Court applies statutes to technology when it would not conflict with the

27  statutory scheme. *Google*, 2013 WL 5423918, at *21.

28

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1  Yahoo argues that it should not be held liable despite the plain language and purpose of the

2  statute. As discussed below, none of these arguments has merit.

3  **1.    The CIPA Protects Communications While They Are In Transit and While**
**They Are Being Received by the Recipient**

4

5  Yahoo contends that it would be nonsensical for the Court to enforce the CIPA against Yahoo

6  because Yahoo could just wait until class members' emails are delivered to Yahoo Mail subscribers'

7  inboxes ███████████████████████████████████████████. As an initial

8  matter, it is not clear that Yahoo can freely access its subscribers' emails once the emails arrive in the

9  subscribers' inboxes without violating the statute. The CIPA protects not only communications that are

10  in transit but also communications that are "being sent from, or received at any place within" California.

11  Cal. Penal Code § 631(a); *see also Ribas*, 38 Cal.3d at 359-60. The CIPA therefore protects

12  communications *while they are being received* by the recipient, not just communications that are in

13  transit to the recipient. In *Ribas¸* the California Supreme Court rejected the defendant's argument that

14  section 631 prohibited "only the unauthorized monitoring of communications while they are 'in transit,'

15  and that 'once a phone message reaches its place of destination it is no longer in transit ….'" *Id.* at 359

16  (alteration in original). The Court held that the defendant's argument

17
18  ignores the plain language of section 631, subdivision (a), that provides for the
punishment of one 'who willfully and without the consent of all parties … reads, or
19  attempts to read, or to learn the contents … of [a] … communication while the same is
*in transit …, or is being sent from, or received at* any place within this state ….'

20  *Id.* at 359-60 (alterations in original).

21  Yahoo claims that stored communications are exempted from CIPA liability, relying solely on

22  section 629.51(b) of the Penal Code, which states: "This chapter applies to the interceptions of wire and

23  electronic communications. It does not apply to stored communications or stored content." The

24  California court of appeal rejected this very argument in *People v. Moreno*, C072902, 2014 WL

25  6809702, at *4 (Cal. Ct. App. Dec. 3, 2014). As the court explained, the "chapter" referred to in section

26  629.51(b) is Chapter 1.4 (Interception of Wire, Electronic Digital Pager, or Electronic Cellular

27  Telephone Communications), which includes sections 629.50 through 629.96 of the Penal Code.

28  Chapter 1.4 addresses the procedures for law enforcement to obtain orders authorizing the interception

6

of communications and was enacted in 1988 and then amended in 1995 to conform to the federal Electronic Communications Privacy Act. *People v. Leon*, 40 Cal.4th 376, 383 (2007). The CIPA is a different chapter—Chapter 1.5 (Invasion of Privacy)—which includes sections 630 through 638.

This Court does not need to decide whether Yahoo could access class members' email to subscribers once they arrive in subscribers' inboxes without violating the CIPA because that is not what Yahoo does. But even if Yahoo could rummage through its subscribers' inboxes with impunity, Yahoo is wrong that there is no "rational basis for interpreting a privacy statute to draw" a line between communications that have not yet been delivered and those that have. Yahoo Motion at 11:17-18. As the California Supreme Court explained, "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Ribas*, 38 Cal.3d at 361. Once a communication has been delivered to the recipient, the privacy implications are different: "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360-61.

In enacting the federal Electronic Communications Privacy Act (ECPA), Congress also recognized different privacy implications for emails that have been delivered to the recipient and those that are intercepted while in transit. As Yahoo acknowledges, the federal Wiretap Act governs interceptions of communications while the Stored Communications Act governs access to stored communications. *See* 18 U.S.C. §§ 2510-2522 (federal Wiretap Act); 18 U.S.C. §§ 2701-2712 (SCA). That Congress put a higher value on the privacy of intercepted communications than stored communications is evidenced by, among other things, the different statutory damages provisions: the greater of $10,000 per violation or $100 per day for violations of the Wiretap Act versus $1,000 (or actual damages) for violations of the SCA. *Compare* 18 U.S.C. § 2520(c)(2)(B) *with* 18 U.S.C. § 2707(c). As one commentator has explained, the distinction between emails that were still en route and those that had been delivered "made sense" when Congress enacted these provisions in the 1980s because "[b]ack when remote storage was expensive, the difference between real time and stored access was important." Orin S. Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev.

1  373, 391 (Jan. 2014). Now that "[s]torage has become extremely cheap," internet service providers and

2  users have "switched from store-only-important-records-to-store-it-all." *Id.* at 390-91, 393.[2] The result is

3  that "stored access begins to reveal the same level of detail as real-time access" and "[t]he ability to

4  store everything makes storage the greater privacy threat." *Id.* at 393.

5        Since Yahoo acknowledges that it does *not* wait until class members' emails have been delivered

6  to its subscribers' inboxes to ▮▮▮▮▮▮▮▮▮▮▮, the Court does not need to decide whether Yahoo

7  would violate the CIPA if it did. Yahoo has not provided the Court with any principled reason to decline

8  to enforce the CIPA. Yahoo's argument also fails to account for its subscribers' outgoing emails to class

9  members, which are also ▮▮▮▮▮▮▮▮▮ and used for targeted advertising. Since class members

10  are not Yahoo Mail subscribers, Yahoo does not have access to their inboxes and cannot access these

11  emails after they are received by the class member recipient.

12             **2.**  **There Is No Merit to Yahoo's Argument That It Cannot Violate the CIPA**

13                    **Once Emails Arrive at Its "First Set of Servers"**

14        The plain language of the CIPA also confirms that there is no merit to Yahoo's argument that

15  class members' email communications with Yahoo Mail subscribers are no longer in transit once they

16  arrive at Yahoo's "first set of servers." As discussed above, the CIPA extends to communications that

17  are in transit and that are being received by the recipient. None of the emails at issue in this case are

18  addressed to Yahoo, so Yahoo is not an intended recipient and is not a party to the emails. The emails

19  are either addressed to Yahoo Mail subscribers and sent from class members or addressed to class

20  members and sent from Yahoo Mail subscribers. The emails have not reached their intended recipient

21  when they arrive at Yahoo's "first set of servers"—the MTAs for incoming email and the ▮▮▮▮

22  ▮▮▮ for outgoing email. Since Yahoo Mail subscribers cannot access incoming emails ▮▮▮

23  ▮▮ and class members cannot access emails from Yahoo's ▮▮▮▮▮▮, the emails are still in

24  transit to their intended recipients when they arrive at Yahoo's "first set of servers."

25

26

27  _____

[2] The cost of storing a gigabyte of data dropped from about \$85,000 in 1984 to about five cents in 2011.

28  *Id.* at 391. "When free email services became popular in the mid to late 1990s, they generally came with about 2 megabytes of storage space." *Id.* at 392. Yahoo Mail subscribers now have one terabyte (or 1,000,000 megabytes) of storage. *See* https://overview.mail.yahoo.com/ (last visited Oct. 16, 2015).

1    Yahoo cites *People v. Wilson*, but there was no violation in that case because the answering

2    service that disclosed the communication was the intended recipient of the communication. 17 Cal. App.

3    3d 598, 601, 603 (1971). Wilson subscribed to a telephone answering service that received messages for

4    him and wrote them down on a form called a "green slip" for Wilson to pick up. *Id.* at 600. A narcotics

5    agent obtained some of Wilson's green slip messages from the answering service. *Id.* at 600-01. The

6    court held that the agent did not violate the CIPA because it was the answering service, not the

7    defendant, who "was the addressee or recipient of the telephone communications." *Id.* at 601, 603. The

8    information in the green slips was communicated to the agent after the communication was received by

9    the recipient with the consent of both parties to the communication—the caller who chose to leave the

10   message and the answering service—so it was not a violation of the CIPA for the answering service to

11   disclose the lawfully obtained information to the narcotics agent. *Id.* at 602-03.

12   Yahoo argues that in *Wilson* the answering service "accessed the messages *on its own system*"

13   but that is an odd and inaccurate way to describe the act of answering a telephone call and writing down

14   a message. The callers in *Wilson* knew they were communicating with the answering service and not

15   Wilson, and chose to leave messages that would later be conveyed to Wilson. The callers and the

16   answering service were therefore the only parties to the communication. Yahoo is not an answering

17   service. Yahoo does not pick up class members' emails to Yahoo Mail subscribers, announce itself to

18   the class members, and engage in a communication with them that it then conveys to its subscribers. If

19   Yahoo acted as the answering service did in *Wilson*, its conduct would not violate the CIPA.

20   ### 3.   There Is No Merit to Yahoo's Argument That It Does Not Violate the CIPA
21   by Intercepting Emails While They Are Temporarily Stored on Its Servers

22   Yahoo relies solely on cases interpreting the ECPA in arguing that it does not violate the CIPA

23   by extracting the content of class members' emails with Yahoo Mail subscribers while the emails are

24   temporarily paused at the MTA. As noted above, the ECPA is not identical to the CIPA, so while it is

25   instructive to look to the more abundant case law interpreting the ECPA when interpreting certain

26   aspects of the CIPA, those cases cannot be applied without taking into account the differences between

27   the statutes. It cannot be assumed that the California Supreme Court would interpret the CIPA in the

28   same way that courts interpret the federal statute. *Cf. State v. Lombardo*, 738 N.E.2d 653, 658-60 (Ind.

9

2000) (declining to apply federal case law on interception to Indiana's Wiretap Act because "[u]nlike those states that essentially copied the language of the Federal Wiretap Act, and others that adopted the Federal Wiretap Act with only minor changes, Indiana's statutory scheme largely stands on its own").[3]

One key difference between the ECPA and the CIPA must be kept in mind. The ECPA distinguishes between intercepting communications that are in transit and accessing communications that are in storage.[4] Because the Wiretap Act and the SCA govern different conduct, courts sometimes interpret them in contrast to one another. For example, the Ninth Circuit interprets "interception" as used by the federal Wiretap Act to mean the acquisition of an electronic communication "during transmission, not while it is in storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The Ninth Circuit explained that the term "intercept" should be construed narrowly because the separate provisions of the SCA govern the unlawful access of emails in storage. *Id.* at 878-79. For purposes of the ECPA, "electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17); *see also* 18 U.S.C. § 2711(1).

Unlike the ECPA, the CIPA does not distinguish between emails in transit and emails in storage. Instead, it applies to communications in transit and communications that are being sent and being received. Cal. Penal Code § 631(a); *Ribas*, 38 Cal.3d at 359-60. Because of this key difference between the ECPA and the CIPA, it is highly unlikely that the California Supreme Court would conclude that the CIPA is not violated when email is accessed while it is pausing for milliseconds on an email service provider's servers *before the email is delivered to the recipient*, as Yahoo urges. Interpreting the CIPA in that way would be contrary to the plain language and intent of the statute. *See In re First T.D. & Investment, Inc.*, 253 F.3d 520, 527 (9th Cir. 2001) ("The California Supreme Court has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.' 'Ordinarily, the

---

[3] While plaintiffs agree that federal district courts have considered cases addressing the ECPA in interpreting provisions of the CIPA, California state courts seem less inclined to do so. Yahoo cites *People v. Roberts*, but there the court was interpreting California's Wiretap Act, Cal. Penal Code § 629.50 *et seq.*, not the CIPA. 184 Cal. App. 4th 1149, 1159 (2010).

[4] A third title of the ECPA addresses pen register and trap and trace devices, and is not relevant here.

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1   words of the statute provide the most reliable indication of legislative intent.'" (citations omitted)); *see*

2   *also State v. Roden*, 321 P.3d 1183, 1189 (Wash. 2014) (holding that federal cases on the distinction

3   between emails in transit and those in storage, including *Konop*, "are not instructive given the significant

4   differences between the state and federal statutory schemes," including the federal statute's separate

5   provision governing stored communications, "evidencing Congress' intent to treat communications

6   differently based on technical distinctions").

7        Yahoo relies on *Konop* and *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2003), but neither

8   case involved emails that had arrived on an internet service provider's server but had not yet been

9   delivered to the recipient's inbox. Rather, in both cases, the defendant accessed the plaintiffs'

10  communications when they were in storage *after* having already being transmitted to their final

11  destinations. In *Theofel*, an internet service provider accessed emails that had already been delivered to

12  their recipient and provided them to the defendants. 359 F.3d at 1075. The Ninth Circuit held that the

13  defendants violated the SCA because the emails were in storage when the internet service provider

14  accessed them but that they did not violate the Wiretap Act because the emails were no longer in transit

15  when they were accessed. *Id.* at 1077-78. In *Konop*, a Hawaiian Airlines pilot created a website critical

16  of the airline. 302 F.3d at 872. He allowed only people on a list of other pilots and employees to access

17  the website and required them to log in with a user name and password. *Id.* The company's vice

18  president logged in using the names of pilots who had been granted access and read postings on the

19  website. *Id.* at 872-73. The Ninth Circuit held that there was no "interception" of an electronic

20  communication in violation of the Wiretap Act because the vice president accessed posts that were

21  stored on a server. *Id.* at 878-79. The court explained that "website owners such as Konop transmit

22  electronic documents to servers, where the documents are stored," and users who view the website

23  "request[] that the server transmit a copy of the document to the user's computer." *Id.* at 876.

24       Yahoo has previously cited statements in *Konop* and *Theofel* that it contends stand for the

25  proposition that emails that are paused on an email service provider's servers before being delivered to

26  the recipient cannot be intercepted in violation of the Wiretap Act. In *Konop*, the Ninth Circuit said in a

27  footnote that "Congress understood that electronic storage was an inherent part of electronic

28  communication" and "chose to afford stored electronic communications less protection than other forms

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

of communication." 302 F.3d at 876 n.6. The court was responding to the arguments of "the dissent, amici and law review articles" that "if the term 'intercept' does not apply to the *en route* storage of electronic communications, the Wiretap Act's prohibition against 'intercepting' electronic communications would have virtually no effect.'" *Id.* Because the communications in *Konop* were in storage after reaching their final destination, the court's observation is dicta. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081 (N.D. Cal. 2015) (noting that the court's statement was dicta because "[t]he question of whether the term 'interception' should apply to the transient 'en route' storage stage of communication was not directly presented by the parties to the action" and "the communications at issue in *Konop* did not raise the issue of transitory 'en route' storage"). Moreover, it has no application to the CIPA, which contains no provision excluding from its scope communications that are in temporary en route storage or establishing a transit/storage dichotomy.

In *Theofel*, the Ninth Circuit noted in passing that "[s]everal courts have held that [the definition of electronic storage] covers e-mail messages stored on an ISP's server pending delivery to the recipient." 359 F.3d at 1075. This statement was not part of the court's holding, however, because the communications at issue in *Theofel* had already reached their final destination. *Id.* at 1077. Moreover, the cases the Ninth Circuit cited in *Theofel* confirm that the court was referring to emails that had been delivered to the recipient but not yet read. In *In re DoubleClick Inc. Privacy Litigation*, the court found that the defendant's accessing of cookies on the plaintiffs' hard drives was not prohibited by the SCA. 154 F. Supp. 2d 497, 511-12 (S.D.N.Y. 2001). The court said that the SCA's definition of "electronic storage" was "specifically targeted at communications temporarily stored by electronic communications services incident to their transmission—for example, when an email service stores a message until the addressee downloads it." *Id.* at 512. The *DoubleClick* court quoted a House Report on a proposed amendment to the SCA that said the "temporary, intermediate storage" referenced in section 2510(17)(A) "describes an e-mail message that is being *held by a third party Internet service provider until it is requested to be read.*" *Id.* Similarly, in *Fraser v. Nationwide Mutual Insurance Co.*, the district court held that because the defendant acquired the email after it had already been received by the recipient, "there was no 'interception.'" 135 F. Supp. 2d 623, 635 (E.D. Pa. 2001), *aff'd in relevant part*, 352 F.3d 107, 113-14 (3d Cir. 2003).

1    Subsequent circuit-level cases interpreting the Wiretap Act have addressed conduct that is

2  analogous to Yahoo's and found that it violated the Wiretap Act. In *United States v. Councilman*, the

3  defendant programmed his company's MTA to make and divert a copy of all incoming emails from

4  Amazon to a separate mailbox before the emails were delivered to their recipients. 418 F.3d 67, 70 (1st

5  Cir. 2005). Sitting en banc, the First Circuit engaged in a comprehensive analysis of the language of the

6  ECPA and its legislative history, concluding that the Wiretap Act prohibits the interception of emails

7  "during the momentary intervals, intrinsic to the communication process, at which the message resides

8  in transient electronic storage." *Id.* at 79. The First Circuit therefore held that Councilman's copying and

9  diversion of the emails on the MTA violated the Wiretap Act. *Id.* at 85. The court had the benefit of

10  amicus briefs from Senator Patrick Leahy, one of the original sponsors of the ECPA, six civil liberties

11  organizations, and five technical experts (including Yahoo's expert, Dr. John Levine), all of which

12  supported the First Circuit's holding. *See* Plaintiffs' RJN (ECF No. 132), Exs. A & C.

13    The Seventh Circuit followed *Councilman* held that similar conduct violated the Wiretap Act in

14  *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010). Szymuszkiewicz, an IRS employee, set

15  up a forwarding rule on his employer's email account to copy all incoming emails and send the copies to

16  him. *United States v. Szymuszkiewicz*, 622 F.3d 703, 703, 705 (7th Cir. 2010). The Seventh Circuit held

17  that he violated the Wiretap Act because he copied the emails while they were on the IRS's MTA rather

18  than accessing copies that had already been delivered to his employer's mailbox. *Id.* at 704.

19    Yahoo argues that the Court should apply the "rule of lenity" to interpret the CIPA in its favor.

20  But the rule of lenity applies "only if two reasonable interpretations of the statute stand in relative

21  equipoise." *People v. Nuckles*, 56 Cal.4th 601, 611 (2013) (citation omitted). It is not enough that the

22  parties argue for conflicting interpretations of a statute, since "the rule applies 'only if the court can do

23  no more than guess what the legislative body intended; there must be an *egregious* ambiguity and

24  uncertainty to justify invoking the rule.'" *Id.* (citation omitted). "The rule of lenity 'is not an inexorable

25  command to override common sense and evident statutory purpose. It does not require magnified

26  emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of

27  the whole remaining language.'" *People v. Manzo*, 53 Cal.4th 880, 889-90 (2012) (citation omitted).

28  There is no "*egregious* ambiguity" in the language of section 631(a), and the interpretation that Yahoo

13

1  urges the Court to adopt—based on an odd reading of a single California case (*Wilson*) and dicta in

2  Ninth Circuit cases interpreting provisions of the federal ECPA that differ from the CIPA—is entirely

3  unsupported by the plain language and purpose of the statute.

4          **4.       There Is No Merit to Yahoo's Argument That It Does Not Violate the CIPA**

5                 **by Not Scanning for Targeted Advertising Until After the Email Is Delivered**

6         While Yahoo asserts that its "scanning of email data for the purpose of targeted advertising

7  occurs long ***after*** a message is available to the user," Yahoo Motion at 15:22-23, Yahoo's process of

8  learning the contents and meaning of emails begins before the recipients can access the emails. Yahoo

9  ████████████████████████████████████████████████████████████████, and

10  neither the class members nor the Yahoo Mail subscribers who are parties to the emails can access them

11  while they are on those servers. ████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████

15  ██████████████████████████████████ Straite Decl. (ECF No. 131-5), Ex. 9 (Shue Dep.) at

16  151:9-152:21. ████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████.

18  Once the emails ████████████████████████████████████████████████████████ to

19  provide targeted advertising to its Yahoo Mail subscribers. ████████████████████████

20  ██████████████████████████ Yahoo is able to learn a great deal about its subscribers (and the class

21  members who correspond with them), including "where you live, what you eat, who you sleep with ...

22  you get the idea." Straite Decl. (ECF No. 131-5), Ex. 1 (quoting Ex. 37), Ex. 49 at YAH00096429, Ex.

23  52 at YAH00103264.

24         As the California Supreme Court has explained, the conduct prohibited by section 631 must be

25  construed broadly in favor of protecting the privacy of communications. *Ribas*, 38 Cal.3d at 360. In

26  *Ribas*¸ the defendant argued that "section 631 proscribes nothing more than wiretaps." *Id.* The Supreme

27  Court held that construing the statute that narrowly "is inconsistent with the broad wording and purpose

28  of the statute, and would render superfluous the language proscribing attempts 'in any unauthorized

manner … to learn the contents … of any … communication.'" *Id.* (alterations in original). Yahoo does

not dispute that it ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. Yahoo's

conduct falls squarely within the scope of conduct prohibited by section 631, particularly since the

statute applies to communications that are being received as well as those in transit.

### B.    Yahoo Is Not Engaging in "Ordinary Conduct"

Yahoo urges the Court to decline to enforce the CIPA because doing so would criminalize

ordinary conduct and lead to absurd results. But the plain language and purpose of the statute confirm

that the absurd result Yahoo posits—that an assistant who retrieves his boss's emails as part of his job

duties would face criminal liability—is not a real threat. If the boss has already received the emails,

there is no prohibition against the assistant accessing them. The California Supreme Court recognized as

much in *Ribas* when it explained the difference between firsthand and secondhand dissemination of a

communication. 38 Cal.3d at 360-61. Responding to a similar argument that enforcing the CIPA "could

lead to absurd results," the California Supreme Court said, "to the extent that the broad language and

purposes of the Privacy Act may encompass conduct that some people believe should not be proscribed,

their remedy is to ask the Legislature to draft a statute they find more palatable." *Id.* at 362 n.4.

Moreover, Yahoo's conduct cannot be equated with the ordinary conduct of an administrative

assistant who, in his role as his boss's employee, accesses communications his boss has already

received. What Yahoo does is far from ordinary. Yahoo ████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████, and uses the information it obtains from that process for its own profit. Yahoo has

not identified any other email provider that engages in this type of conduct other than Google, which has

been sued for violating the CIPA in a case currently pending before this Court. *See* Petraglia Decl. (ECF

No. 135-3), Ex. K (Yang. Dep.) at 156:6-15. Other email providers say that they do not use the content

of their subscribers' email to provide targeted advertising. *See, e.g.,* Microsoft Privacy Statement,

www.microsoft.com/en-us/privacystatement/default.aspx (last visited Oct. 14, 2015) ("However, we do

not use what you say in email, chat, video calls or voice mail, or your documents, photos or other

personal files to target ads to you."); Zoho Mail, www.zoho.com/mail/ (last visited Oct. 14, 2015) ("At

1 Zoho, we strive to be a stand out company in terms of respecting user data and privacy. We do not

2 display ads, even in our free plans. Your email exchanges are never scanned for keywords.").

3      Because applying the CIPA according to its plain language and intent would not "criminalize a

4 broad range of day-to-day activity," there is no reason for the Court to refuse to apply it to Yahoo's

5 conduct. Yahoo cites *United States v. Nosal*, but there criminal liability would have turned on differing

6 corporate policies governing the use of work computers for nonbusiness purposes, which was not in line

7 with Congress's intent in enacting the Computer Fraud and Abuse Act. 676 F.3d 854, 856-58 (9th Cir.

8 2012). The court held that "[i]f Congress meant to expand the scope of criminal liability to everyone

9 who uses a computer in violation of computer use restrictions—which may well include everyone who

10 uses a computer—we would expect it to use language better suited to that purpose." *Id.* at 857. By

11 contrast, enforcing the CIPA to prevent Yahoo from ████████████████████████████

12 ████████████ and using the content for targeted advertising will advance the CIPA's purpose of

13 protecting the privacy of communications.

14      Yahoo also relies on *State v. Lott*, in which the New Hampshire Supreme Court held that the

15 defendant "implicitly consented" to the "recording" of his instant message by Yahoo's IM program and

16 that it could therefore be used as evidence in his criminal trial. 879 A.2d 1167, 1170-73 (N.H. 2005).

17 The instant message was directed to a detective named Frank Warchol who was posing as a fourteen-

18 year-old girl in an internet chat room. *Id.* at 1168-70. The court explained that "[w]hen the defendant

19 sent an instant message to Warchol, that instant message was immediately received by Warchol,

20 recorded by the Yahoo! IM program and/or Warchol's computer, and displayed in both the defendant's

21 and Warchol's chat windows." *Id.* at 1170. The court found that the defendant "implicitly consented to

22 the recording of the communication" because "the recording of the instant message is necessary for the

23 intended recipient of that message to read the message." *Id.* at 1172. Yahoo presumably cites *Lott*

24 because the court noted that emails, like instant messages, are viewed on the recipient's computer and

25 thus can be printed or saved to the hard drive and shared with others. But the case does not support

26 Yahoo's argument that enforcing the CIPA would criminalize ordinary conduct because the CIPA does

27 not prohibit the "secondhand repetition" of communications by the recipient after receipt. *Ribas*, 38

28

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

Cal.3d at 360-61 (the California Legislature distinguished between "the right to control the nature and extent of the firsthand dissemination" of communications and their "secondhand repetition").

### C.     Enforcing the CIPA Will Not Violate the Constitution

Yahoo asserts several constitutional challenges to the Court's enforcement of the CIPA, none of which presents any reason for the Court to decline to enforce the CIPA in this case.

#### 1.     Enforcing the CIPA Will Not Violate the Commerce Clause

Yahoo argues that applying the CIPA to email providers will directly regulate interstate commerce in violation of the dormant Commerce Clause. A statute directly regulates interstate commerce only when its "*central* purpose is to regulate commerce, usually in order to benefit local interests." *Pacific Merchant Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177-78 (9th Cir. 2011) (citation omitted); *see also Nationwide Biweekly Administration, Inc. v. Owen*, No. 14-cv-05166-LHK, 2015 WL 1254847, at *4 (N.D. Cal. Mar. 18, 2015) ("For the purposes of the dormant Commerce Clause analysis, 'discrimination' means 'differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter.'" (citation omitted)). The CIPA "treat[s] all private companies exactly the same" and therefore "does not discriminate against interstate commerce." *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (citation omitted) (alteration in original), *cert. denied*, 135 S. Ct. 398 (2014).

Applying the CIPA to Yahoo's conduct will not directly regulate interstate commerce because it will only apply only to email communications in which the sender or recipient (or both) is located in California. *In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK, 2015 WL 3523908, at *24 (N.D. Cal. May 26, 2015). Other courts have held that the CIPA does not violate the Commerce Clause for this reason., Judge Snyder found that the statute "does not discriminate facially, purposefully, or practically against out-of-state commerce," "does not place any burdens on out-of-state businesses that do business in California that the law does not place on in-state businesses," and does not regulate conduct that is "wholly outside [California's] borders." *Ades v. Omni Hotels Management Corp.*, 46 F. Supp. 3d 999, 1012-13 (C.D. Cal. 2014) (citation omitted); *see also Zephyr v. Saxon Mortgage Services, Inc.,* 873 F. Supp. 2d 1223, 1230-31 (E.D. Cal. 2012) (the CIPA "does not regulate conduct that occurs in entirely another state" and its purpose "does not appear to be to regulate out-of-state commerce or conduct").

1    Yahoo contends that the CIPA has the *practical* effect of regulating out-of-state commerce

2  because Yahoo cannot reliably determine where class members and Yahoo Mail subscribers reside.

3  "[T]o show that a statute's practical effect is to discriminate against interstate commerce, the

4  challenging party must adduce 'substantial evidence' that the law has an 'actual discriminatory effect'

5  on interstate commerce." *Nationwide Biweekly Admin.*, 2015 WL 1254847, at *8 (citation omitted).

6  Yahoo has not satisfied this burden. Yahoo has not shown that the CIPA "erects barriers to entry 'that in

7  effect creates a burden that alters the proportional share of the [relevant] market in favor of instate

8  [businesses],' or that the law has an 'effect on the flow of interstate commerce,' or that the law 'creates a

9  system under which local goods constitute a larger share, and goods with an out-of-state source

10 constitute a smaller share, of the total sales in the market.'" *Id.*

11   Moreover, "the dormant Commerce Clause does not ... guarantee [companies] their preferred

12 method of operation." *National Association of Optometrists & Opticians v. Harris,* 682 F.3d 1144, 1151

13 (9th Cir. 2012); *see also Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978) (rejecting the

14 "notion that the Commerce Clause protects the particular structure or methods of operation in a retail

15 market"). Yahoo would obviously prefer to continue to disregard California's two-party consent

16 requirement, but it cannot evade application of the CIPA by invoking the dormant Commerce Clause.

17 "[L]egislation that may cause businesses to decide to conform nationwide conduct to meet the

18 requirements of a given state does not necessarily constitute direct regulation of out-of-state commerce."

19 *Omni Hotels*, 46 F. Supp. 3d at 1014 ("That Omni may find it more convenient to warn all callers that

20 their calls may be recorded, rather than attempt to differentiate between callers from single-consent and

21 dual-consent states, does not create a constitutional violation."); *see also National Federation of the*

22 *Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Courts have held that when a

23 defendant chooses to manufacture one product for a nationwide market, rather than target its products to

24 comply with state laws, defendant's choice does not implicate the commerce clause.").

25   Yahoo relies on *Healy v. Beer Institute*, 491 U.S. 324 (1989), but the Ninth Circuit has explained

26 that *Healy* is "not applicable to a statute that does not dictate the price of a product and does not 't[ie]

27 the price of its in-state products to out-of-state prices.'" *Association des Eleveurs,* 729 F.3d at 951

28 (alteration in original) (quoting *Pharmaceutical Research & Manufacturers of America v. Walsh*, 538

1    U.S. 644, 669 (2003)). Yahoo also cites *National Collegiate Athletic Association v. Miller*, but there the

2    Ninth Circuit found that the state statute was "directed at interstate commerce and only interstate

3    commerce." 10 F.3d 633, 638 (9th Cir. 1993). In fact, the statute "regulate[d] only interstate

4    organizations which are engaged in interstate commerce, and it [did] so directly" and without applying

5    similar regulations to organizations that operated wholly within the state. *Id.*; *see also Omni Hotels*, 46

6    F. Supp. 3d at 1013 ("This is case therefore different from cases cited by Omni in which a state

7    'projected its legislation' into other states to affect conduct with no California nexus," like *NCAA*).

### 2.    The CIPA Is Not Preempted

9            Yahoo concedes that Congress did not intend to completely preempt the regulation of electronic

10   communications. The legislative history of the ECPA confirms that states are free to enact their own

11   statutes governing electronic communications if they "meet the minimum standards reflected as a

12   whole" in the federal statute, since "States would be free to adopt more restrictive legislation, or no

13   legislation at all, but not less restrictive legislation." Plaintiffs' RJN (ECF No. 132), Ex. B (Senate

14   Report Number 1097, April 29, 1968) at 2187. As the California Supreme has said, "Congress intended

15   that the states be allowed to enact more restrictive laws designed to protect the right of privacy."

16   *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 105 (2006) (quoting *People v. Conklin*, 12

17   Cal.3d 259, 271 (1974)).

18           Yahoo asserts conflict preemption, arguing that in enacting the SCA Congress granted email

19   service providers "full access to emails on their servers." Yahoo Motion at 18:28-19:1. Conflict

20   preemption arises when state law "stands as an obstacle to the accomplishment and execution of the full

21   purposes and objectives of Congress," or when "compliance with both federal and state regulations is a

22   physical impossibility." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152-153

23   (1982) (citations omitted). There is a presumption against preemption. *Chemical Specialties*

24   *Manufacturers Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992); *see also McClellan v. I-Flow*

25   *Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) ("The presumption against preemption applies with equal

26   force to conflict preemption."). Congress does not "cavalierly pre-empt state-law causes of action."

27   *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996). Therefore, "courts should assume that 'the historic

28

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1   police powers of the States' are not superseded 'unless that was the clear and manifest purpose of

2   Congress." *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (citation omitted).

3      Yahoo does not contend that it is impossible to comply with both the CIPA and the SCA.

4   Instead, Yahoo argues that the CIPA "stands as an obstacle to the accomplishment and execution of the

5   full purposes and objectives of Congress" with respect to the SCA. Yahoo Motion at 18:23-26 (quoting

6   *Arizona*, 132 S. Ct. at 2501). "What is a sufficient obstacle is a matter of judgment, to be informed by

7   examining the federal statute as a whole and identifying its purpose and intended effects." *Arizona*, 132

8   S. Ct. at 2501 (citation omitted). In making this determination, courts "consider the relationship between

9   state and federal laws as they are interpreted and applied, not merely as they are written." *Jones v. Rath*

10  *Packing Co.,* 430 U.S. 519, 526 (1977). The focus is on "both the objective of the federal law and the

11  method chosen by Congress to effectuate that objective, taking into account the law's text, application,

12  history and interpretation." *In re National Security Agency Telecommunications Records Litig.*, 633 F.

13  Supp. 2d 892, 907 (N.D. Cal. 2007). "[T]he purpose of Congress is the ultimate touchstone." *Medtronic*,

14  518 U.S. at 485 (citation omitted).

15     The purpose of the SCA is "to protect privacy interests in personal and proprietary information,

16  while protecting the Government's legitimate law enforcement needs." Plaintiffs' Opp. RJN, Ex. M

17  (Senate Report 99-541) at *3; *see also Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900

18  (9th Cir. 2008) ("The SCA was enacted because the advent of the Internet presented a host of potential

19  privacy breaches that the Fourth Amendment does not address."), *rev'd on other grounds by City of*

20  *Ontario v. Quon*, 560 U.S. 746 (2010). The broader privacy protections provided by the CIPA do not

21  conflict with this purpose—in fact, the CIPA advances the purpose of protecting the privacy interests

22  and expectations of American citizens. Enforcing the CIPA to prohibit email service providers like

23  Yahoo from intercepting non-subscribers' emails, extracting the content, and using the content for

24  targeted advertising will not conflict with the SCA's purpose of protecting both privacy interests and

25  legitimate law enforcement needs.

26     Both the Wiretap Act and the SCA provide certain exemptions from liability for providers of

27  electronic communications services (like Yahoo) and their employees, including the exemption in

28  section 2701(c)(1) that Yahoo cites. But these exemptions are intended to allow service providers to

1   perform functions necessary to maintain and protect the system and provide the service. Plaintiffs' Opp.

2   RJN, Ex. M (Senate Report 99-541) at *20 ("The provider of electronic communications services may

3   have to monitor a stream of transmissions in order to properly route, terminate, and otherwise manage

4   the individual messages they contain."); *id.* at *37-38 (explaining that "exceptions to the general rule of

5   nondisclosure" of emails accessed while in storage include "disclosures which are necessary for the

6   efficient operation of the communications systems" and those that relate to "service provider activities

7   designed to protect the system and perform the service"); *see also* 18 U.S.C. § 2511(2)(a) (exempting

8   from Wiretap Act liability an employee or agent of an electronic communication service who is

9   "engaged in any activity which is a necessary incident to the rendition of his service or to the protection

10  of the rights or property of the provider of that service"). As one court explained, the "provider-consent

11  exception" in section 2701(c)(1) "was intended to ensure that [electronic communications service]

12  providers were able to access certain private information where necessary to maintain service."

13  *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1126 (W.D. Wash. 2012).[5]

14      Enforcing the CIPA will not obstruct Congress's purpose and objective in including the SCA

15  exemption. Yahoo will still be free to maintain and protect the security of its system. Yahoo can still

16  filter for spam and malware. Yahoo will only be prohibited from using the content of class members'

17  email for targeted advertising without their consent.

18      The cases Yahoo cites are readily distinguishable. In two of the cases the courts held that

19  Arizona immigration statutes were field preempted because the federal government had broadly

20  occupied the field of immigration, and that provisions of the Arizona statutes conflicted with the federal

21  regulatory framework. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023-26, 1028 (9th Cir. 2013); *We

22  Are America v. Maricopa County Board of Supervisors*, 297 F.R.D. 373, 392 (D. Ariz. 2013). In

23  *SPGGC, LLC v. Ayotte*, the First Circuit found that the Home Owners Loan Act and regulations

24  promulgated by the Office of Thrift Supervision authorized national thrifts to "engage third parties to

25

26  [5] The "provider-consent exception" was likely added in response to comments from email service
    providers like Source Telecomputing Corporation, whose General Counsel advised Congress that
27  changes were necessary to authorize email service providers to engage in "technical assistance activities,
    record retrieval, resolution of billing disputes, and security investigations." STC also urged Congress to
28  include a preemption provision so that service providers would not be subject to conflicting state
    standards, something Congress evidently declined to do. Plaintiffs' Opp. RJN, Ex. N.

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

1    market and sell stored value gift cards," and that a New Hampshire statute restricting the sale of certain

2    giftcards issued by national thrifts by third parties "would frustrate the purpose of the HOLA and the

3    OTS regulations enacted thereunder."  488 F.3d 525, 534-36 (1st Cir. 2007). The court explained that

4    the OTS regulations "explicitly state that they are 'preemptive of any state law purporting to address the

5    subject of the operations of a Federal savings association.'" *Id.* at 535. The SCA does not include a

6    similar preemption provision.

### 3.       The CIPA Is Not Unconstitutionally Vague

8           Yahoo argues that section 631 is unconstitutionally vague and the Court should therefore

9    invalidate it. Because Yahoo has challenged the statute as applied to its conduct, the Court "need only

10   examine the vagueness challenge under the facts of the particular case and decide whether, under a

11   reasonable construction of the statute, the conduct in question is prohibited." *U.S. v. Agront*, 773 F.3d

12   192, 195 (9th Cir. 2014) (citation omitted). A criminal statute is only void for vagueness "if it is not

13   sufficiently clear to provide guidance to citizens concerning how they can avoid violating it." *U.S. v.*

14   *Chhun*, 744 F.3d 1110, 1116-17 (9th Cir. 2014) (citation omitted). But "due process does not require

15   impossible standards of clarity." *U.S. v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (citation omitted).

16   A scienter requirement (like the CIPA's willfulness requirement) "can help a law escape a vagueness

17   problem" by eliminating good faith conduct from its scope. *U.S. v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir.

18   2005). And since Yahoo is a corporation rather than an individual, a greater degree of vagueness should

19   be tolerated. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)

20   (noting that "businesses, which face economic demands to plan behavior carefully, can be expected to

21   consult relevant legislation in advance of action" and have means of clarifying the meaning of a

22   governing statute).

23          Yahoo has not shown that section 631 is too vague for it to have known that the CIPA applies to

24   its conduct. The fact that the statute does not expressly address email does not make the statute

25   unconstitutionally vague. This Court held that the CIPA applies to email communications in September

26   2013, before this case was filed. *Google*, 2013 WL 5423918, at *20-21 (rejecting Google's argument

27   that section 631 applies only to the interception of communications on telephone and telegraphic wires).

28   The Court recognized that "the California Supreme Court regularly reads statutes to apply to new

1   technologies where such a reading would not conflict with the statutory scheme. *Id.* at *21 (citing cases).

2   In the same order, the Court held that the "public utility" exception did not apply to Google because

3   "'public utility' is a precisely defined entity subject to an expansive and exacting regulatory regime." *Id.*

4   Given this Court's unequivocal rulings on these issues, Yahoo cannot credibly argue that it could not

5   have known that the CIPA applied to its conduct.

6       Yahoo relies on statements from two cases decided in the 1970s to support its argument that

7   section 631 is unconstitutionally vague. In *Rodriguez v. Ulrich*, the court observed that the terms "taps"

8   and "makes any unauthorized connection" were "vague and nowhere defined," but neither term is at

9   issue in this litigation. 52 Cal. App. 3d 894, 898 (1974). Yahoo has not identified any terms that it

10  contends are unclear. In *Wilson*, the court noted in passing that "[i]n some aspects the provisions of

11  [section 631] are patently ambiguous," but did not explain what those provisions were. 17 Cal. App. 3d

12  at 602. Since then, numerous courts, including this Court and the California Supreme Court, have

13  interpreted and applied section 631.

14      **D.     Plaintiffs Have Standing**

15      Yahoo argues that plaintiffs have not suffered an injury-in-fact and therefore lack Article III

16  standing. But it is well established in the Ninth Circuit that the injury-in-fact requirement is satisfied

17  when plaintiffs have shown an invasion of a statutory legal right. *See Edwards v. First American Corp.*,

18  610 F.3d 514, 516-17 (9th Cir. 2010); *see also Google*, 2013 WL 5423918, at *16-17 (plaintiffs who

19  alleged "an invasion of statutory CIPA rights" had pled Article III standing); *see also* Cal. Penal Code

20  § 637.2(c) ("It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has

21  suffered, or be threatened with, actual damages."); *Ribas*, 38 Cal.3d at 364 ("In view of the manifest

22  legislative purpose to accord every citizen's privacy the utmost sanctity, section 637.2 was intended to

23  provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating

24  their right."). Plaintiffs' "concrete interest" in the privacy of their email communications was impaired

25  by Yahoo's use of the content of their communications for its own profit. *See Lujan v. Defenders of

26  Wildlife*, 504 U.S. 555, 572 (1992). Plaintiffs Brian Pincus and Rebecca Abrams (who reside in

27  California) emailed with Yahoo Mail subscribers during the class period, establishing their standing to

28  sue Yahoo for violating the CIPA. Petraglia Decl. (ECF No. 135-3), Exs. V & Y.

1    Yahoo also argues that plaintiffs lack standing to seek injunctive relief because they have

2    impliedly consented to Yahoo's conduct. The Court addressed and rejected this argument in ruling on

3    plaintiffs' class certification motion. *See Yahoo Mail*, 2015 WL 3523908, at *7-8. Yahoo also raised this

4    issue in its Rule 23(f) petition, which the Ninth Circuit denied. ECF No. 125. Yahoo has made no new

5    arguments in its summary judgment motion, so there is no reason for the Court to revisit its prior ruling.

6    **IV.    Yahoo Violated the Stored Communications Act as a Matter of Law**

7    Yahoo does not dispute that it ran a ███████████ on Google's AdSense for Content for Mail

8    between July 10, 2013 and August 8, 2013███████████████████████████████████████

9    ██████████████████████████████████████ to Google, one of Yahoo's two

10   main competitors. Straite Decl. (ECF No. 131-5), Ex. 8 (Day Dep.) at 39:11-40:1, Ex. 28, Ex. 30;

11   Answer (ECF No. 53), ¶ 21 (admitting plaintiffs' allegation that Yahoo Mail competes primarily with

12   Google and Microsoft). Yahoo contends that plaintiffs lack standing because they cannot demonstrate

13   that their emails were used in the test, but because Yahoo claims it ████████████████████

14   ████████████████████████████████████████████████████████

15   Straite Decl. (ECF No. 131-5), Ex. 8 (Day Dep.) at 29:22-30:25. Plaintiffs are only seeking declaratory

16   relief, and Yahoo acknowledges that at least one plaintiff (Cody Baker), emailed with a Yahoo Mail

17   subscriber during the time that Yahoo performed the test. Yahoo Motion at 24:10-11.

18   Yahoo argues that it obtained its subscribers' consent to disclose information from their emails to

19   third parties, but cites "Exhibit J" to the Petraglia Declaration, which is a voluminous exhibit containing

20   numerous versions of webpages that are identified only as "various iterations" of the Communications

21   Terms of Service, Privacy Policy, and Mail FAQ pages. Yahoo Motion at 25:7-8; Petraglia Decl. (ECF

22   No. 135-3), Ex. J at ¶¶ 3-5, Exs. 1-74. Yahoo does not say which of these documents was in effect at the

23   time of the AFC for Mail test, or cite to any specific provision. A review of the "various iterations" of

24   the Communications Terms of Service and Privacy Policy confirms that none discloses that Yahoo

25   shares email content with third parties. Straite Opp. Decl., ¶ 3. The version of the Privacy Policy that

26   was in effect at the time merely says that Yahoo shares "personal information," defined as "information

27   about you that is personally identifiable like your name, address, email address, or phone number," with

28   "trusted partners" and that it "displayed targeted advertisements based on personal information."

1    Amended Complaint (ECF No. 119), Ex. B (updated January 7, 2013 and printed February 2, 2014). The

2    disclosed "personal information" does not include the "contents" of email, *In re Yahoo Mail Litig.*, 7 F.

3    Supp. 3d 1016, 1034 (N.D. Cal. 2014), whereas the ████████████████████████████████████

4    ████████████. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014). Yahoo

5    also cannot credibly argue that its competitor is a "trusted partner." Yahoo also cites the Mail FAQ,

6    which is not part of Yahoo's agreement with subscribers,[6] but Yahoo has confirmed that the cited

7    provision refers only to ████████████████ not AFC for Mail. Sharp Decl. (ECF No. 135-2), ¶ 10.

8    Yahoo has thus not established consent to the AFC test. *See Yahoo Mail*, 7 F. Supp. 3d at 1028 (under

9    the similar consent provision of the Wiretap Act, the burden is on Yahoo to prove it obtained consent).

10         Finally, Yahoo argues that plaintiffs lack standing to seek prospective relief because Yahoo

11   ████████████████████████████. Because Yahoo has demonstrated its willingness to disclose the

12   content of its subscribers' personal emails with class members to one of its main competitors, plaintiffs

13   request a declaration that Yahoo's conduct violated the SCA to deter Yahoo from engaging in similar

14   conduct in the future. Declaratory relief is appropriate because there is a "definite and concrete" and

15   "real and substantial" dispute about whether Yahoo's conduct violated the SCA. *See In re Adobe*

16   *Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014).

17   **V.    Conclusion**

18         Because Yahoo has not shown that it is entitled to judgment as a matter of law, plaintiffs request

19   that the Court deny Yahoo's motion for summary judgment.

20   Dated: October 19, 2015                          Respectfully Submitted,

21

22                                                    By:    */s/ Daniel C. Girard*

23                                                    Daniel C. Girard (SBN 114826)
                                                      Amanda M. Steiner (SBN 190047)
24                                                    Ashley Tveit (SBN 275458)
25                                                    **GIRARD GIBBS LLP**
                                                      601 California Street, 14th Floor
26

27   ─────────────────────
     [6] The Terms of Service states that it "constitutes the entire agreement between you and Yahoo" in
28   combination with the additional terms that govern the particular service (the Communications Terms of
     Service, for email). Amended Complaint (ECF No. 119), Ex. A at ¶ 28 (updated March 16, 2012 and
     printed February 12, 2014). Neither document incorporates the Yahoo Mail FAQ. *Id.*, Exs. A & D.

San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
*lking@kaplanfox.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:   (212) 687-7714
*dstraite@kaplanfox.com*

*Co-Lead Class Counsel*

PLAINTIFFS' OPPOSITION TO YAHOO'S MOTION FOR SUMMARY JUDGMENT
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK