Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
*lking@kaplanfox.com*

Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Ashley Tveit (SBN 275458)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
*dstraite@kaplanfox.com*

*Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: YAHOO MAIL LITIGATION

Consolidated Case No.: 5:13-cv-04980-LHK

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: February 4, 2016
Time: 1:30 p.m.
Place: Courtroom 8
Judge: Hon. Lucy H. Koh

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 4, 2016 at 1:30pm, in Courtroom 8 of the above-entitled court, Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles move, pursuant to Federal Rule of Civil Procedure 23(e) for entry of an order preliminarily approving the settlement agreement reached with Defendant Yahoo Inc., attached as Exhibit 1 to the Declaration of Laurence D. King, directing notice of the settlement, and scheduling a hearing for final approval of the settlement.

This motion is made on the grounds that the settlement is the product of arm's-length, good faith negotiations, is fair, reasonable and adequate, and should be preliminarily approved. The motion is based on this Notice of Motion and Motion, the supporting Memorandum, the accompanying declarations of Laurence D. King, Nick Huang, and Cathy Yanni, the argument of counsel, and all papers and records on file in this matter.

**TABLE OF CONTENTS**

I. Introduction ..... 1

II. Procedural History ..... 2

A. Plaintiffs' Claims and Yahoo's Motion to Dismiss ..... 2

B. Discovery ..... 2

C. Class Certification ..... 3

D. Cross-Motions for Summary Judgment and *Daubert* Motions ..... 3

III. Settlement Negotiations ..... 4

IV. Terms of the Settlement ..... 4

A. Yahoo's Changes to Its System Architecture and Website ..... 4

B. Release ..... 5

C. Attorneys' Fees and Expenses ..... 6

D. Class Representative Service Awards ..... 6

V. The Court Should Grant Preliminary Approval of the Proposed Settlement ..... 6

A. The Settlement Is the Product of Serious, Informed, and Non-Collusive Negotiations ..... 7

B. The Settlement Does Not Grant Preferential Treatment to the Class Representatives or Segments of the Settlement Class ..... 8

C. The Settlement Is Within the Range of Possible Approval and Has No Obvious Deficiencies ..... 9

VI. Notice ..... 12

VII. Proposed Schedule for Final Approval ..... 14

VIII. Conclusion ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Carter v. Anderson Merchandisers, LP*,
Nos. EDCV 08-00025-VAP (OPx), et al., 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) .......................... 8

*Chavez v. PVH Corp.*,
No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) ........................................ 11, 14

*Churchill Village, L.L.C. v. General Electric Co.*,
361 F.3d 566 (9th Cir. 2004) .......................................................................................... 6

*Foti v. NCO Fin. Sys., Inc.*,
No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008) .................................. 12

*Grant v. Capital Management Services, L.P.*,
No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) .................................. 10

*Green v. American Express Co.*,
200 F.R.D. 211 (S.D.N.Y. 2001) ...................................................................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 7

*Harris v. Vector Marketing Corp.*,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................ 8

*Hawthorne v. Umpqua Bank*,
No. 11-cv-6700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014) ............................................ 13

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing & Sales Practices Litig.*,
No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) .................................................. 10

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ......................................... 10

*In re Google Inc. Gmail Litigation*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................ 3

*In re High-Tech Employee Antitrust Litig.*,
No. 11-cv-02509-LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ............................................... 7

*In re High-Tech Employee Antitrust Litig.*,
No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................................ 11

*In re Mego Financial Corp. Securities Litig.*,
213 F.3d 454 (9th Cir. 2000) .......................................................................................... 8

*In re Nat'l Football League Players' Concussion Injury Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014) .................................................................................. 7

*In re Portal Software, Inc. Securities Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................................ 9

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007)....................7

*Jermyn v. Best Buy Stores, L.P.*,
No. 08 CIV 214 CM, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012)....................12

*Lilly v. Jamba Juice Co.*,
No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)....................7, 10, 12, 13

*Lilly v. Jamba Juice Co.*,
No. 3:13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015)....................1

*Linney v. Cellular Alaska Partnership*,
Nos. C-96-3008 DLJ et al., 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)....................7

*National Rural Telecommunications Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)....................7, 9

Officers for Justice v. Civil Service Commission of City & County of San Francisco,
688 F.2d 615 (9th Cir. 1982)....................7

*Philips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)....................11

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009)....................6, 9

*Satchell v. Federal Express Corp.*,
Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)....................8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)....................8

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)....................6

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)....................12

**Rules**

Fed. R. Civ. P. 23(c)(2)....................1, 12

Fed. R. Civ. P. 23(e)....................6, 13

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .......... 14

**Other Authorities**

2 McLaughlin on Class Action § 6:20 .......... 12

William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015) .......... 7

**I. Introduction**

After two years of zealously defending this litigation, through class certification, the completion of fact and expert discovery, and fully briefed cross-motions for summary judgment, Yahoo has agreed to process *all* incoming and outgoing email in a manner that plaintiffs believe complies with the California Invasion of Privacy Act. The settlement will therefore benefit individuals who email with Yahoo Mail subscribers nationwide, not just those in California. Yahoo has also agreed to make changes to its website that will disclose additional information about its conduct, and has agreed to certify that that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs contend violated the Stored Communications Act.

Plaintiffs and class representatives Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles are four individuals who email with Yahoo Mail subscribers from their non-Yahoo Mail accounts. Since plaintiffs filed this case in late 2013, they have opposed Yahoo's motion to dismiss their claims, successfully moved for class certification, completed fact and expert discovery, and briefed cross-motions for summary judgment. The parties negotiated the settlement with the assistance of Cathy Yanni, a highly qualified mediator. Having litigated their claims for over two years, plaintiffs are well informed of the strengths and weaknesses of their case and the risks of continued litigation. The proposed settlement achieves the main goal of this litigation, as Yahoo has agreed to adopt practices that, in plaintiffs' view, comply with the CIPA.

Because the proposed settlement is the product of informed, non-collusive negotiations, does not grant preferential treatment to the class representatives, and falls within the range of possible approval, plaintiffs request that the Court grant preliminary approval of the proposed settlement. The settlement will resolve all of the claims of the nationwide class and California class that the Court certified on May 26, 2015. Class members will release their claims for equitable relief but not for monetary relief. Although courts sometimes dispense with class notice when, as here, a settlement involves only injunctive relief, the parties propose to provide notice to the class by publishing notice online across a network of websites. *See* Fed. R. Civ. P. 23(c)(2), (e); *Lilly v. Jamba Juice Co.*, No. 3:13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, *25-26 (N.D. Cal. Mar. 18, 2015) (holding that class notice was not

necessary when the relief was injunctive, and the settlement did not release class member claims for monetary relief). Plaintiffs request that the Court approve the notice plan and proposed form of notice, and schedule a hearing under Federal Rule of Civil Procedure 23(e) to determine whether the proposed settlement is fair, reasonable and adequate and should be finally approved.

## II. Procedural History

### A. Plaintiffs' Claims and Yahoo's Motion to Dismiss

On January 22, 2014, the Court consolidated four related class actions against Yahoo and appointed Girard Gibbs and Kaplan Fox to serve as co-lead interim class counsel. ECF No. 29. Plaintiffs filed a consolidated complaint on February 12, 2014, asserting claims for violation of the CIPA, the SCA, the federal Wiretap Act, and the California Constitution and seeking damages and injunctive and declaratory relief. ECF No. 35. Yahoo moved to dismiss and the Court upheld plaintiffs' CIPA claim and the portion of the SCA claim alleging that Yahoo shared the content of email with third parties. ECF No. 49.

### B. Discovery

The parties held their Rule 26(f) conference on January 14, 2014, and commenced discovery shortly thereafter. In response to plaintiffs' requests for production, Yahoo produced more than 136,000 pages of documents relating to its system architecture and targeted advertising programs. Plaintiffs also served two sets of interrogatories and one set of requests for admission. Plaintiffs took a Rule 30(b)(6) deposition of Yahoo's Director of Engineering, Amir Doron, on topics related to Yahoo's technology and targeted advertising. Plaintiffs also deposed five Yahoo employees: Gareth Shue, the Engineering Director of Mail and Delivery, Douglas Sharp, the Vice President of Communications Engineering, Shoen Yang, the Senior Director of Business Planning, Matthew Thompson, the Director of Product Management, and Kevin Day, the Senior Product Manager.

Plaintiffs responded to interrogatories and requests for production and produced documents. Yahoo deposed all four plaintiffs. The parties exchanged opening and rebuttal expert reports on topics related to Yahoo's email delivery, spam filtering, and data analysis processes, as well as the feasibility of technological and commercial modifications to Yahoo's architecture to comply with the relevant privacy laws. Plaintiffs deposed Yahoo's expert and Yahoo deposed plaintiffs' expert twice. Although the parties had several disputes over the appropriate scope of discovery in this case, they were able to resolve the disputes without requiring the Court's intervention.

**C. Class Certification**

Plaintiffs filed a motion for class certification on February 5, 2015. ECF No. 60-65. Following the Court's denial of class certification in *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), plaintiffs chose to pursue only injunctive and declaratory relief and therefore sought certification under Rule 23(b)(2). Yahoo opposed, arguing among other things that individualized issues of consent precluded certification and that the plaintiffs were atypical and inadequate representatives. ECF No. 77-80. In their reply, plaintiffs argued that the individualized issues of consent that precluded certification in the *Gmail* case were not present because plaintiffs sought certification under Rule 23(b)(2), which requires only that Yahoo acted on grounds generally applicable to the class and that the plaintiffs seek "indivisible" injunctive relief. ECF No. 89.

On May 26, 2015, the Court granted plaintiffs' motion, although it declined to certify a nationwide class for plaintiffs' CIPA claim. The Court certified two classes: (1) as to plaintiffs' CIPA claim, a class of all persons in California who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future; (2) as to plaintiffs' SCA claim, a class of all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future. ECF No. 105.

Yahoo filed a Rule 23(f) petition, which the Ninth Circuit denied.

**D. Cross-Motions for Summary Judgment and *Daubert* Motions**

Following the close of fact and expert discovery, the parties filed cross-motions for summary judgment and motions to exclude each other's expert witness. ECF Nos. 131-135, 143-146, 151-152, 154-156, 158, 161-163, 164, 166, 167. Plaintiffs argued that Yahoo violates the CIPA as a matter of law because it intercepts and extracts the content of all incoming and outgoing email before the email is delivered to the recipient for the purpose of learning the meaning and content for its targeted advertising program. Plaintiffs also argued that Yahoo violated the SCA when it tested Google's AdSense for Mail in 2013. Plaintiffs requested that the Court grant judgment in their favor and enter a permanent injunction and declaratory relief. In its summary judgment motion, Yahoo argued that its conduct does

not violate the CIPA because it does not read or learn the content of emails for advertising purposes until after the emails have been delivered to the intended recipients. Yahoo also argued that several constitutional defenses precluded application of the CIPA. Finally, Yahoo argued that it did not violate the SCA because its test of AdSense for Mail did not involve sharing email content with a third party and that it discontinued its limited use of AdSense for Mail after the 2013 test. In opposing plaintiffs' motion, Yahoo argued that plaintiffs failed to show classwide lack of consent, that plaintiffs lack Article III standing, and that they are not entitled to injunctive relief.

## III. Settlement Negotiations

The motions for summary judgment and *Daubert* motions were fully briefed when the parties reached the proposed settlement. An early mediation was conducted by Bruce Friedman of JAMS on December 11, 2014. Those efforts were unsuccessful. The parties then retained the services of Cathy Yanni of JAMS and conducted a day-long mediation on November 4, 2015. After an additional month of negotiations facilitated by Ms. Yanni, the parties reached an agreement in principle and notified the Court the same day. ECF No. 172.

The parties then exchanged several drafts of the Settlement Agreement and related settlement documents before agreeing to final versions. All four class representatives support the settlement. King Decl., ¶ 11.

## IV. Terms of the Settlement

The terms of the settlement are set forth in the Settlement Agreement attached as Exhibit 1 to the declaration of Laurence D. King. They are summarized below.

### A. Yahoo's Changes to Its System Architecture and Website

Yahoo has agreed to adopt practices that plaintiffs believe comply with the CIPA. Yahoo will make technical changes such that, for incoming email, email content will be retrieved from the servers from which email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox. For outgoing email, Yahoo will make technical changes such that email content will be retrieved from the servers from which outgoing email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email folder. Yahoo

has agreed to make these significant structural changes to its system architecture for the processing of *all* incoming and outgoing email, not just emails sent to and from the California class members. As a result of these changes, Yahoo will only access incoming email content for advertising purposes after it has been delivered to Yahoo Mail subscribers' inboxes, and will only access outgoing email for advertising purposes after it has been placed in Yahoo Mail subscribers' sent email folders. These changes will remain in place for three years, although Yahoo has no intention of eliminating these changes to its email architecture after the term of the injunction expires. The settlement will not prohibit Yahoo from analyzing incoming and outgoing email for spam, malware, and abuse detection and protection. Settlement Agreement, ¶¶ 31(d).

Yahoo has also agreed to make the following changes to its website (Settlement Agreement, ¶ 31):

- Add a standalone paragraph to its Yahoo Privacy Center webpage under the heading "Information Collection and Use—General" that states: "Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail."
- On the Yahoo Mail webpage, replace the heading "Information Collection and Use Practices" with "Premium Services," and replace the heading "Personally Relevant Experiences" with "Information Collection and Use Practices."
- Also on the Yahoo Mail webpage, add a bullet point that states, "Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads." This bullet point will follow the bullet point that states, "This information may also be used for interest-based advertising. To learn more you can visit Yahoo's control tool for interest-based advertising."

Yahoo will also certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs contend violated the SCA. Settlement Agreement, ¶ 31(g).

**B. Release**

In exchange for Yahoo's agreement to provide the benefits above, plaintiffs and class members will release Yahoo from all claims asserted in this case and claims arising from the same nucleus of

operative fact as the claims asserted in this case. Class members release claims for declaratory, injunctive and non-monetary equitable relief only. Only the four class representatives will release claims for damages. Settlement Agreement, ¶ 32.

**C. Attorneys' Fees and Expenses**

Co-Lead Class Counsel intend to move for an award of attorneys' fees and costs of no more than $4,000,000, to be paid by Yahoo. The request will be based on the lodestar the firms have incurred in the more than two years they spent successfully opposing Yahoo's motion to dismiss and moving for class certification, completing fact and expert discovery, and moving for summary judgment and opposing Yahoo's motion for summary judgment. Co-Lead Class Counsel will file their motion separately from the motion for final approval and sufficiently in advance of the deadline for objections to the settlement to allow class members the opportunity to review it. Yahoo has agreed not to oppose the fee request so long as it does not exceed $4 million. Settlement Agreement, ¶ 47 The parties did not negotiate the attorneys' fee provision until after they agreed to the class relief. King Decl., ¶ 7.

**D. Class Representative Service Awards**

The Class Representatives have actively participated in this litigation. They have responded to discovery requests, been deposed, and provided assistance throughout the litigation. Co-Lead Counsel will therefore request the Court's approval of a $5,000 service award for each Class Representative, to be paid by Yahoo. Settlement Agreement, ¶ 51.

**V. The Court Should Grant Preliminary Approval of the Proposed Settlement**

In the Ninth Circuit, "there is an overriding public interest in settling and quieting litigation … particularly … in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Electric Co.*, 361 F.3d 566, 576 (9th Cir. 2004). Courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (citation omitted).

Proposed class action settlements are not effective unless approved by the Court. Fed. R. Civ. P. 23(e). The main purpose of the Court's supervision of class action settlements is to ensure "the

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Service Commission of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Courts use a "two-step process for the approval of class action settlements," in which "the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (quoting *National Rural Telecommunications Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

At the preliminary approval stage, courts consider whether the proposed settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted); *see also Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 18, 2015); William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015) ("The general rule is that a court will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.'"). In assessing whether a settlement falls within the range of possible approval, courts "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re High-Tech*, 2014 WL 3917126, at *3 (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014)).

### A. The Settlement Is the Product of Serious, Informed, and Non-Collusive Negotiations

The proposed settlement is the result of hard-fought litigation and arm's-length negotiations between experienced counsel. "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, Nos. C-96-3008 DLJ et al., 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997) (citations omitted), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste

or in the absence of information illuminating the value of plaintiffs' claims"). The parties had the opportunity to fully develop their claims and defenses through fact and expert discovery, and summary judgment and *Daubert* motions. Plaintiffs and their counsel were therefore well informed of the strengths and weaknesses of the claims in this case.

The non-collusive nature of the settlement negotiations is also evidenced by the fact that they were supervised by JAMS mediator Cathy Yanni in a private mediation session and numerous follow up discussions over two months. *See Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-00025-VAP (OPx), et al., 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (citation omitted)); *see also Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (finding the fact that the settlement was negotiated during a mediation with an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion of bad faith by the parties or counsel"); *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same).

### B. The Settlement Does Not Grant Preferential Treatment to the Class Representatives or Segments of the Settlement Class

The settlement will provide the same relief to all class members and the class representatives, resulting in no preferential treatment to any class member. Because of their role in this litigation, which included not only stepping forward on behalf of the proposed class but also responding to discovery, producing their personal emails, and being deposed, Co-Lead Class Counsel intend to request a $5,000 service award for each of the four class representatives. These modest service awards do not constitute preferential treatment, as courts routinely approve similar service awards to class representatives who spearhead class action litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs … are eligible for reasonable incentive payments."); *see also In re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving services awards of $5,000 to each class representative). In addition, the class representatives are releasing all claims for damages as part of the settlement, while class members are not releasing claims for damages.

### C. The Settlement Is Within the Range of Possible Approval and Has No Obvious Deficiencies

Plaintiffs have achieved their principal goal in this litigation through this settlement. Yahoo has agreed to process *all* incoming and outgoing email in a manner that plaintiffs believe does not violate the CIPA for a period of at least three years. Yahoo has also represented that it has no intention of eliminating the changes it is making to its email architecture after three years. Settlement Agreement ¶ 31(b). Throughout this litigation, plaintiffs' position has been that Yahoo's conduct violates the CIPA because Yahoo intercepts email without obtaining the consent of both parties before the email arrives in the recipient's mailbox. Though Yahoo disagreed with plaintiffs' position, Yahoo has nonetheless agreed to make technical changes such that it will not retrieve incoming email content for advertising purposes until after Yahoo Mail subscribers can access the emails in their inboxes, and will retrieve outgoing email content for advertising purposes only after Yahoo Mail subscribers can access the emails in their sent email folders. These technical changes will require significant modifications to Yahoo's email infrastructure. As Yahoo's Senior Manager of Engineering explains, "[t]hese changes are substantial and require a considerable investment of time, money, and resources." Huang Decl., ¶ 5. Moreover, the technical changes apply to *all* incoming and outgoing email, not just emails to and from California residents.[1]

While plaintiffs are confident in the merits of their case, continued litigation presents significant risks, including the possibility that the Court will grant Yahoo's motion for summary judgment, or that plaintiffs will lose at trial or on appeal. *See Rodriguez*, 563 F.3d at 966; *see also In re Portal Software, Inc. Securities Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) (recognizing "the risk of summary judgment, which defendants had filed before settlement … and the anticipated expense and complexity of further litigation"); *National Rural Telecommunications,* 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in the hand

[1] The settlement does not impact Yahoo's ability to analyze incoming and outgoing email for the purposes of spam, malware, and abuse detection. Plaintiffs recognize the value to Yahoo Mail subscribers and class members of these protections, and did not contend that Yahoo's performance of these functions violated the law.

instead of a prospective flock in the bush.'" (citation omitted)). There is not much case law interpreting section 631 of the CIPA, and even less case law applying it in the context of email. In the *Gmail* case, this Court held that section 631 does apply to email communications, but did not have the opportunity to delve into the merits of the plaintiffs' claims. *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20-21 (N.D. Cal. Sept. 26, 2013). Thus, while plaintiffs have proffered their interpretation of the statute based on cases addressing telephone communications and provisions of the federal Wiretap Act, they recognize that the law is unsettled and the Court or the Ninth Circuit could agree with Yahoo that its conduct does not violate the CIPA. Further, Yahoo argued in its motion for summary judgment that the undisputed evidence demonstrated that it did not analyze email content for advertising purposes until after the email had been delivered to the intended recipient.

Given these risks, and because Yahoo has agreed to change its practices in a way that plaintiffs agree complies with the CIPA, the settlement is within the range of possible approval. Other courts have granted preliminary approval of settlements in which defendants have agreed to change their conduct to comply with the law. *See, e.g., Lilly*, 2015 WL 1248027, at *6-8 (granting preliminary approval of a stipulated injunction that required the defendants to relabel certain products so they did not describe the products as "all natural" but not requiring the defendants to remove or recall products already in inventory or destroy or discontinue the use of products labeled before final approval); *Grant v. Capital Management Services, L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *1, 5 (S.D. Cal. Dec. 11, 2013) (granting preliminary approval of a settlement that required the defendant to change its procedures for a period of three years to prevent automated calls to and from cell phones, which the court noted "stops Defendant's allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent the class members from seeking legal recourse"); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *2, 10-13 (D.N.H. Nov. 16, 2015) (granting final approval of settlement that required the defendant to cease using allegedly misleading marketing statements and did not release class members' monetary claims because "[t]he proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation").

The changes Yahoo has agreed to make to the disclosures on its website provide an additional benefit to class members, and to the public generally. The changes will highlight some of the information Yahoo already has available on its website—such as providing revised headings on the Privacy Center webpage that make it easier to locate information about the email content Yahoo collects and uses—and will provide additional information about Yahoo's practices. Plaintiffs are realistic about the number of people who read these types of disclosures, but believe these changes provide a class benefit and that the disclosures should be modified as part of the settlement so that they are available to those who seek out more information about Yahoo's information collection practices. Yahoo has also agreed to certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs contend violated the SCA.

The scope of the release is appropriate because plaintiffs and class members will release Yahoo from all claims that were actually asserted in this case and claims arising from the same nucleus of operative fact as the claims asserted in this case. Settlement Agreement, ¶ 32. "In the Ninth Circuit when a district court approves a class action settlement, 'a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Chavez v. PVH Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)). Class members will only release claims for injunctive, declaratory and non-monetary equitable relief. Settlement Agreement, ¶ 32.

Co-Lead Class Counsel's request for attorneys' fees and reimbursement of costs is also within the range of possible approval. The fee request will be based on the lodestar counsel accrued in litigating this case for over two years, including opposing Yahoo's motion to dismiss, conducting fact and expert discovery, successfully moving for class certification, and briefing the cross-motions for summary judgment and *Daubert* motions, as well as the unreimbursed costs counsel incurred. The Court has previously approved Girard Gibbs's billing rates, *see In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015), and Kaplan Fox's billing rates are comparable. Co-Lead Counsel believe that the fee request is reasonable given the vigor with which Yahoo has defended the case and Yahoo's decision to defer mediation until after the parties

filed their summary judgment motions. The Court will, of course, have the opportunity to review and rule on the reasonableness of the fee request when Co-Lead Class Counsel file their motion. Plaintiffs' counsel intend, in accordance with this Court's practice in other cases, to file their time records with the fee application.

**VI. Notice**

Because the Court certified the classes under Rule 23(b)(2) and the settlement involves only injunctive relief, notice is not mandatory. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Lilly*, 2015 WL 1248027, at *9 (finding that notice was unnecessary for a (b)(2) settlement because "even if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members"); *Green v. American Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (explaining that "some courts have adopted a functional interpretation of Rule 23(e) under which notice is not uniformly required" when, for example, "the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV 214 CM, 2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release class members' monetary claims, notice to class members is not required."); *Foti v. NCO Fin. Sys., Inc.*, No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511, at *14 (S.D.N.Y. Feb. 19, 2008) ("Because the Agreement explicitly preserves the individual rights of class members to pursue statutory damages against the defendant, and because the relief in this Rule 23(b)(2) class action is injunctive in nature, notice was not required."); *see also* Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." (emphasis added)); 2 McLaughlin on Class Action § 6:20 ("[a]lthough the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or compromise be provided to class members in all class actions, many courts have adopted a 'functional interpretation of the Rule that permits courts to approve certain settlements without any notice to class members-even in classes certified under Rule 23(b)(3). This approach is sound.").

When notice is provided to class members of a (b)(2) settlement, it need only be made "in a reasonable manner." Fed. R. Civ. P. 23(e)(1); *see also Lilly*, 2015 WL 1248027, at *8 ("Courts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members."). Individual notice is not required because class members are not required to take any action to benefit from the settlement. *Cf.* Fed. R. Civ. P. 23(e)(1)(B) advisory committee's note (2003) ("Reasonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class. Individual notice is appropriate, for example, if class members are required to take action—such as filing claims—to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3).").

The parties propose to provide class members with notice of the settlement in accordance with the Media Plan submitted with the Agreement. Pursuant to this Media Plan, Kinsella Media, Inc. shall disseminate notice via Advertising.com, which will place banner ads on a collection of popular websites. These banner ads will direct internet users to the Settlement Website through a link, which provides the notice to Class Members found in Exhibit C to the Agreement. The Settlement Website will be established and maintained by Rust Consulting, Inc. Advertising.com will ensure that these ads will make 75,000,000 unique impressions[2] upon internet users—with no single user receiving more than three impressions. Advertising.com's network of partner websites is large, and includes some of the most frequently visited websites on the internet. It will take up to thirty days for Advertising.com to make these 75,000,000 impressions. The parties propose to give Class Members ninety days from the date that notice is initially disseminated to file any objections to the settlement. This schedule will afford Class members adequate time after the media campaign to comment on or object to the settlement. The cost of notice is estimated to be approximately $89,500. The proposed form of notice, attached as Exhibit D to the Settlement Agreement, is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and also describes "the action and the plaintiffs' rights in it." *Hawthorne v. Umpqua Bank*, No. 11-cv-6700-JST, 2014 WL 4602572, at *6 (N.D. Cal. Sept. 15, 2014) (quoting *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). The notice is written in plain English, and will include the

[2] An "impression" occurs when an ad is viewed by an internet user.

dates for class members to object to the settlement and the final approval hearing. *See Chavez,* 2015 WL 581382, at *6 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

Yahoo will also provide notice to appropriate federal and California government officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. Settlement Agreement, ¶ 39.

## VII. Proposed Schedule for Final Approval

The parties propose the following schedule for final approval of the settlement:

| Event | Date |
|---|---|
| Notice of settlement to be disseminated | Within 15 days of the Court's order granting preliminary approval |
| Co-Lead Counsel's motions for final approval and for attorneys' fees, costs, and service awards | Within 60 days of the dissemination of notice. |
| Objection deadline | 90 days after dissemination of notice |
| Notice administrator affidavit of compliance with notice requirements | 14 days before final approval hearing |
| Replies in support of motion for final approval and motion for attorneys' fees, costs and service awards | 7 days before final approval hearing |
| Final approval hearing | _________________, 2016 |

## VIII. Conclusion

Plaintiffs request that the Court grant their motion for preliminary approval, direct notice of the settlement to the classes, and enter a schedule for final approval.

Dated: January 7, 2015

Respectfully Submitted,

By: *_/s/ Laurence D. King_*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400

San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
*lking@kaplanfox.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
*dstraite@kaplanfox.com*

Daniel C. Girard (SBN 114826)
Amanda M. Steiner (SBN 190047)
Ashley Tveit (SBN 275458)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

*Co-Lead Class Counsel*