# EXHIBIT 1

## SETTLEMENT AGREEMENT

Plaintiffs Cody Baker, Halima Nobles, Rebecca Abrams, and Brian Pincus, on their own behalf and on behalf of Class Members, and Yahoo! Inc. ("Yahoo") hereby enter into this Settlement Agreement ("Agreement"), subject to the approval of the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Capitalized terms used in this Agreement shall have the meaning defined immediately below.

## RECITALS

1.      WHEREAS, on January 22, 2014 the Court consolidated four related, putative class actions (*Holland, et al., v. Yahoo! Inc.*, 5:13-cv-04980-LHK, *Nobles, et al. v. Yahoo! Inc.*, 5:13-cv-04989-LHK, *Pincus v. Yahoo! Inc.*, 5:13-cv-05326, *Abrams v. Yahoo! Inc.*, 5:13-cv-05388-LHK) and ordered Plaintiffs to file an amended consolidated pleading.  At that time, the Court granted Plaintiffs' stipulation to appoint co-lead interim counsel, and set a schedule for Plaintiffs to file a consolidated complaint as well as a briefing schedule for Yahoo's motion to dismiss.  Plaintiffs filed their Consolidated Class Action Complaint in this Action on February 12, 2014, captioned *In re: Yahoo Mail Litigation*, case number 5:13-CV-4980-LHK.  Yahoo moved to dismiss certain claims for relief alleged in that complaint, which the Court granted in part and denied in part.  The Court granted leave to amend, and Plaintiffs declined to file an amended complaint.  Yahoo answered the consolidated complaint on August 26, 2014.

2.      WHEREAS, Plaintiffs filed a motion for class certification on February 5, 2015.  Yahoo filed its opposition to the motion for class certification on March 12, 2015.  Plaintiffs filed a reply on April 9, 2015.  The Court granted in part and denied in part Plaintiffs' motion for class certification on May 26, 2015.  The Court certified two classes under Federal Rule of Civil Procedure 23(b)(2):  A class of "all persons in California who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future;" and a class of "all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from

1

October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future."

3.      WHEREAS, the Parties filed cross-motions for summary judgment on September 18, 2015, oppositions to motions for summary judgment on October 19, 2015, and replies in support of summary judgment on November 16, 2015.

4.      WHEREAS, on December 7, 2015, the Parties filed a Stipulation and Proposed Order seeking to vacate the summary judgment hearing, and representing that the Parties had reached an agreement in principle to settle the Action on a class-wide basis.  The Court denied the stipulation, rescheduled the hearing on summary judgment to January 21, 2016, and ordered the Parties to file their motion for preliminary approval of class action settlement by January 7, 2016.

5.      WHEREAS, Yahoo denies any wrongdoing whatsoever.  This Agreement shall in no event be construed or deemed to be evidence of or an admission, presumption or concession on the part of Yahoo of any fault, liability, or wrongdoing as to any facts or claims asserted in the Action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Yahoo in any other action or proceeding, whether civil, criminal or administrative.

6.      WHEREAS, likewise, this Agreement shall not be construed or deemed to be a concession by any Class Representative or Plaintiffs' Co-Lead Counsel of any infirmity in the claims asserted in the Action.

7.      WHEREAS, the Parties recognize that continued prosecution of this litigation would be protracted and expensive.

8.      WHEREAS, counsel for the Parties have conducted arm's length negotiations with the assistance of a Mediator, Cathy Yanni, with respect to a resolution of the claims in the Action

and to achieve relief that is consistent with the interests of the Class Members and that recognizes the strengths and weaknesses of the asserted claims and defenses.

9.      WHEREAS, Plaintiffs' Co-Lead Counsel have conducted substantial discovery relating to the claims and the underlying events and transactions alleged in the Action.  Plaintiffs' Co-Lead Counsel conclude, in light of the substantial benefits the Agreement confers on the Classes, the applicable law, the uncertainties in the outcome of the Action and the expense and length of time necessary to prosecute the Action through trial and possible appeals, that the terms of the Agreement are fair, adequate and reasonable and that it is in Class Members' interest that the Action be fully and finally settled as against Yahoo on the terms set forth herein.  Yahoo also believes that a settlement should be consummated as set forth herein.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and satisfaction of the conditions set forth herein, in consideration of the benefits flowing to the Parties hereto from the Agreement that all Released Claims shall be compromised, settled, released and dismissed with prejudice, upon and subject to the foregoing and following terms and conditions:

<u>DEFINITIONS</u>

10.     "Agreement" means this Settlement Agreement.

11.     "Action" means the consolidated litigation captioned *In re Yahoo Mail Litigation*, United States District Court for the Northern District of California, San Jose Division, Case No. 5:13-cv-4980 LHK, and all claims proceeding therein.

12.     "CIPA Class" means all natural persons in California who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

13.     "Class Members" means all members of the CIPA Class and SCA Class.

3

**14.**     "Class Representatives" means Plaintiffs Cody Baker, Halima Nobles, Rebecca Abrams, and Brian Pincus.

**15.**     "Court" means the United States District Court for the Northern District of California, San Jose Division.

**16.**     "Effective Date" means the first date after which the following events and conditions have occurred: (a) the Court has entered a Final Judgment; and (b) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be a Final Judgment.

**17.**     "Final Approval Hearing" means a hearing scheduled by the Court to determine the final fairness of the settlement embodied in this Agreement, provided that it grants preliminary approval and orders the Notice, as provided for herein.

**18.**     "Final Judgment" means the Court's Final Judgment and Order of Dismissal, substantially in the form attached hereto as Exhibit B.

**19.**     "Media Plan" means the plan for publishing notice to Class Members, which is attached as Exhibit C.

**20.**     "Notice" means the form of written notice of the proposed settlement and the Settlement Approval hearing as provided in this Agreement and the Preliminary Approval Order and attached hereto as Exhibit D.

**21.**     "Parties" means the Class Representatives and Yahoo.

**22.**     "Person" or "Persons" means all natural persons and all entities including, but not limited to, corporations, sole proprietorships, partnerships, joint ventures or other entities or business associations of any kind in which a natural person may have a legal or equitable interest, together with any of their heirs, predecessors, successors, assigns, present and former partners, parents,

4

subsidiaries, related entities, affiliated and sister corporations, divisions, officers, principals, owners, directors, minority or controlling shareholders, employers, employees, representatives or agents.

23.     "Plaintiffs' Co-Lead Counsel" means Girard Gibbs LLP and Kaplan Fox & Kilsheimer LLP.

24.     "Released Claims" means the claims released in Paragraph 32.

25.     "SCA Class" means all natural persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

26.     "Settlement Website" means the website containing Notice and other settlement documents.

27.     "Class" means the CIPA Class and SCA Class certified by the Court on May 26, 2015.

28.     "Unknown Claims" means any and all Released Claims that the Class Representatives or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of Yahoo, which if known by him or her would materially affect his or her release of Yahoo.

29.     "Yahoo" means Yahoo! Inc., its subsidiaries, predecessors, successors, related entities, affiliated and sister corporations, divisions, officers, principals, owners, directors, minority or controlling shareholders, employees, representatives and agents.

30.     "Yahoo's Counsel" means Morrison & Foerster, LLP and Zwillgen PLLC.

### SETTLEMENT CONSIDERATION

31.     In consideration for the releases set forth below, and the dismissal with prejudice of the Action, Yahoo shall provide the following settlement benefits to Class Members.

(a) **Stipulated Injunction.** Yahoo agrees to entry of a Stipulated Injunction for a period of not less than three years from the Effective Date regarding its access of emails for the

5

purposes of targeted advertising.  In particular, Yahoo represents and warrants it will make technical changes such that, for incoming email, email content will be retrieved from the servers from which email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox.  For outgoing email, Yahoo represents and warrants it will make technical changes such that email content will be retrieved from the servers from which outgoing email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email folder.  Yahoo represents that these are material changes to its existing email architecture and will be made with substantial effort and cost no later than the Effective Date.  Yahoo will, upon making the changes required under this paragraph, deliver a written certification under oath to Plaintiffs' Co-Lead Counsel at the addresses set forth herein at paragraph 56, stating that it has made the technical changes required under this paragraph.  The technical changes will apply to all incoming and outgoing email sent to and from Yahoo Mail users in the United States.  Yahoo agrees to make these technical changes without any admission that its current email architecture and systems that have been in place in any way violated any law.  The parties acknowledge that Yahoo's internal architecture for processing incoming and outgoing email is highly confidential.  Should the Court require additional information regarding the technical changes required by this injunction, Yahoo agrees to provide such information *in camera* or under seal to protect Yahoo's confidentiality interest in its internal email architecture.

(b)  Yahoo has no intention of eliminating the architectural change that is described above after the expiration of the term of the injunction.  Yahoo believes, however, that the architecture and technical requirements for providing email services on a large scale evolve and change dynamically and that a longer commitment may hinder Yahoo's ability to improve and change its architecture and technology to meet changing demands.

6

(c)  If Yahoo's new email architecture described above becomes outdated and must be improved or replaced during the pendency of the injunction, then Yahoo may change its system design in a manner that will continue to comply with the requirements of the injunction above.  If Yahoo changes its system design materially from that set forth in paragraph 31(a) during the pendency of the injunction, it will deliver an updated version of the certification required under subparagraph (a) above to Plaintiffs' Co-Lead Counsel upon making any such change.

(d)  Nothing in this injunction shall prohibit Yahoo for purposes unrelated to targeted advertising from analyzing incoming and outgoing emails for the purposes of spam, malware, and abuse detection and protection at any time on any Yahoo servers.

(f)  **Yahoo Website Modifications**.  No later than the Effective Date, Yahoo will implement the following modifications to its website:

(i)  The Yahoo Privacy Center Webpage will include a standalone paragraph under the heading "Information Collection and Use—General" stating:

> Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail.

(ii)  On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), the heading "Information Collection and Use Practices" will be replaced with the heading "Premium Services."  The heading "Personally Relevant Experiences" will be replaced with the heading "Information Collection and Use Practices."

(iii)  On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), under the bullet that states "This information may also be used for interest-based advertising.  To learn more, you can visit Yahoo's control tool for interest-based advertising," an additional bullet point will be added stating:

> Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads.

7

(iv)  Yahoo agrees to make these changes without any admission that the disclosures currently on its websites, or the disclosures that it has previously provided, were or are insufficient to notify the public of its practices or to obtain its users' express consent to the above described conduct.

(g) **Certification**.  Yahoo will certify that no email data of class members was collected and stored for the purpose of its test of Google's AdSense for Content product that was at issue in the action.

## <u>RELEASES</u>

32.     Upon the Effective Date and thereafter, the Class Representatives and all other Class Members, and their respective heirs, executors, administrators, representatives, agents, partners, successors and assigns shall, pursuant to the Final Judgment, be deemed to have released and forever discharged Yahoo from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, costs, attorneys' fees (except as otherwise provided herein), losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or Unknown Claims, which they have or may claim now or in the future to have, that were alleged or asserted against Yahoo in the Action or that could have been alleged or asserted against Yahoo arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action (the "Released Claims").  Notwithstanding the foregoing, the release provided for hereunder shall extend to claims for declaratory, injunctive and non-monetary equitable relief only.  No member of the CIPA Class, with the exception of the Class Representatives, hereby releases any claim for damages under California Penal Code Section 637.2(a)(1)-(2).  No member of the SCA Class, with the exception of the Class Representatives, hereby releases any claim for damages under 18 U.S.C. § 2707(c).

8

33.      Upon the Effective Date and thereafter, Yahoo shall release the Class Members, Class Representatives, Plaintiffs' Co-Lead Counsel, and other plaintiffs' counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Action.  The foregoing sentence notwithstanding, Yahoo does not release and in fact retains any claim(s) which do not arise from or relate to the institution, prosecution or settlement of the Action that it may otherwise have against any Class Representative or Class Members.

34.      Except as explicitly provided herein, nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course of business to any relationship that may exist between Yahoo and the Class Representatives or any other Class Members.

35.      With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives and all Class Members shall be deemed to have, and by operation of the Final Judgment shall have: (a) acknowledged that Unknown Claims may exist and that they may later discover such Unknown Claims through the discovery of facts in addition to or different from those they now know or believe to be true regarding the subject matter of this Agreement; (b) agreed that no Unknown Claims would have materially affected their decisions with respect to this Agreement or settlement of their claims; and (c) expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

9

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representatives acknowledge, and other Class Members by operation of law shall be deemed to have acknowledged, that the release of "Unknown Claims" was separately bargained for and was a key element of the settlement embodied in this Agreement.

36.     Upon entry of the Final Judgment, the Class Representatives and other Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against Yahoo or based on any actions taken by Yahoo that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that the settlement may be pleaded as a complete defense to any proceeding subject to this section.

**NOTICE**

37.     The parties agree to provide notice of the settlement to Class Members in accordance with the Media Plan.  Rust Consulting will serve as settlement administrator and Kinsella Media, Inc. shall be responsible for disseminating notice.  The Settlement Administrator shall be responsible for operating the Settlement Website.  Any material deviation from the Media Plan must be approved by the Parties and the Court.

**APPROVAL OF SETTLEMENT & SETTLEMENT IMPLEMENTATION**

38.     The Parties agree to the following procedures for obtaining preliminary Court approval of the settlement, notifying Class Members, obtaining final Court approval of the settlement, and implementing the settlement.

39.     **Preliminary Approval Hearing.** The Court will hear the Class Representatives' motion for preliminary approval of the Agreement on such date and time as the Court may order.  In conjunction with the Preliminary Approval Hearing, Plaintiffs' Co-Lead Counsel will submit this Agreement and Exhibits hereto.  Plaintiffs' Co-Lead Counsel will also file a motion for

10

preliminary settlement approval and supporting papers, including a proposed Order Granting Preliminary Settlement Approval substantially in the form attached hereto as Exhibit A.

40.     **Class Action Fairness Act.**  Yahoo will arrange for service of notice of this Agreement that meets the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on the appropriate federal and state officials not later than ten calendar days after the Agreement is filed with the Court, and Yahoo shall bear the costs of such notice.

41.     **Procedure for Objecting to Class Action Settlement.**

(a)  Class Members who wish to object to the settlement must file with the Court and serve on counsel for the Parties a written statement objecting to the settlement.  Such written statement must be filed with the Court and served on Plaintiffs' Co-Lead Counsel and Yahoo's Counsel at the addresses specified in Paragraph 56 below no later than the deadline for objections set by the Court in its Order Granting Preliminary Approval of Class Action Settlement.  No Class Member shall be entitled to be heard at the Final Approval Hearing, whether individually or through counsel, unless written notice of the Class Member's intention to appear at the Final Approval Hearing shall have been timely filed with the Court and served on counsel for the Parties.

(b)  Any objection must contain: (i) the objector's name, address and personal signature, (ii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, and (iii) a statement of the grounds for his or her objection, and (iv) a detailed list of any other objections by the objector as well as by the objector's attorney, to any class action settlements submitted to any court in the United States in the previous five years.

(c)  The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event a postmark is illegible, the date of mailing shall be deemed to be three days prior to the date reflected on the Court's file stamp.

11

Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the proposed settlement by appearing at the Final Approval Hearing, appeal, collateral attack, or otherwise.

42.     **No Solicitation of Settlement Objections or Exclusions.**  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the settlement, or encourage an appeal from the Court's Final Judgment.  None of the Parties shall initiate unsolicited contact with any Class Member for any purpose prohibited under this Agreement.

43.     **Final Settlement Approval Hearing and Entry of Final Judgment.**  A Final Approval Hearing shall be conducted to determine final approval of the settlement.  Upon final approval of the settlement by the Court at or after the Final Approval Hearing, the Parties shall present a Final Judgment to the Court for its approval and entry, substantially in the form attached hereto as Exhibit B.

44.     **Costs of Notice and Administration.**  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.  Yahoo shall pay the costs and expenses incurred in the administration of the settlement, including the cost of providing notice.

45.     **Termination**  The Parties shall have the right to terminate and nullify this Agreement if any of the following events occurs:

        (a)  The Court does not enter an order granting preliminary approval of the settlement, as provided herein;

        (b)  The Court does not enter an order granting final approval of the settlement, as provided herein;

        (c)  The Court does not enter a Final Judgment that is materially the same as the form attached hereto as Exhibit B;

12

(d)  The Court requires Yahoo to provide any class benefit other than those listed in Paragraph 31 above;

(e)  The Court requires material alteration of any provision of the Agreement for the settlement to be approved, including without limitation, the releases set forth in Paragraph 32 or the notice plan for class notice set forth in Paragraph 37; or

(f)  Any state or the Federal government elects to join the Action and amend the operative complaint; or

(g)  The Court orders Yahoo to pay an award of attorneys' fees, expenses, and Class Representative service awards that in the aggregate is greater than $4,020,000.

Yahoo shall give written notice to Plaintiffs' Co-Lead Counsel of its intent to terminate and nullify the agreement within thirty (30) calendar days after receiving notice that any of the foregoing events above has occurred.  In the event Yahoo exercises its right to terminate and nullify the Agreement, the Parties shall be returned to their respective positions as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed.

46.    **Effect of Termination.**  In the event that this Agreement is voided, terminated or cancelled, or fails to become effective for any reason whatsoever, then the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and they shall proceed in all respects as if this Agreement, its exhibits, and any related agreements or orders, had never been executed or entered.

47.    **Delay of Administration Pending Appeal.**  In the event one or more appeals are filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the settlement shall be stayed pending final resolution of the appeal or other appellate review as set forth in Paragraph 16.  Nothing, however, shall prohibit Yahoo from fulfilling any of its obligations above, if in the exercise of its sole discretion it chooses to do so.

<u>**ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**</u>

13

**48.**     If the Court grants preliminary approval of the settlement embodied by this Agreement, Plaintiffs' Co-Lead Counsel shall submit a motion for approval of, and award of reasonable attorneys' fees and costs to be heard at the Final Approval Hearing.  Plaintiffs' Co-Lead Counsel shall seek an aggregate award not greater than $4.0 million.  Yahoo will not oppose or in any way undermine Plaintiffs' Co-Lead Counsel's motion or solicit others to do so.  The Parties negotiated this settlement term only after all of the substantive settlement terms were resolved.

**49.**     Within ten (10) business days after the entry of Final Judgment by the Court, Yahoo will deposit the Court-approved amount of attorneys' fees, costs, and Class Representative service awards, into an interest bearing account in Yahoo's name until the Effective Date.  Plaintiffs' Co-Lead Counsel have specified that such sum should be deposited into an interest bearing account at Union Bank of California, and Plaintiffs' Co-Lead Counsel expressly assume any and all risk of loss that may result from the dissolution, bankruptcy, failure, nationalization, acquisition, Federal Deposit Insurance Corporation seizure, or any other form of insolvency of Union Bank of California.

**50.**     Within three (3) business days after the Effective Date, Yahoo shall instruct Union Bank of California or its successor (if any) to transfer the sum approved by the Court, plus all accrued interest, by wire transfer to the trust account of Girard Gibbs LLP.  Plaintiffs' Co-Lead Counsel shall distribute service awards in the amount approved by the Court to each of the Class Representatives and shall distribute the remainder of the monies plus all remaining accrued interest between or among plaintiffs' counsel in accordance with the Court's order awarding attorneys' fees.

**51.**     Deposit of the Court approved award into the account at Union Bank of California shall constitute full satisfaction of Yahoo's obligation to pay any amounts to any Person, attorney or law firm for attorneys' fees, or costs and expenses incurred in the Action on behalf of the Class Representatives and the Classes, and shall relieve Yahoo and Yahoo's Counsel of any and all other claims or liability to any Person, attorney or law firm for any attorneys' fees, expenses,

14

awards and/or costs to which any of them may claim to be entitled with respect to the Action, including without limitation for representation of Class Representatives, and the CIPA Class, or the SCA Class.  Once Yahoo has deposited the Court-approved sum into the account at Union Bank of California, its sole and exclusive remaining obligation with respect to the payment, distribution or allocation of attorneys' fees, expenses, awards and/or costs resulting from this Action shall be to instruct Union Bank of California or its successor (if any) to transfer the Court-approved sum plus all accrued interest by wire transfer to the trust account of Girard Gibbs LLP within three (3) business days of the Effective Date as discussed in this paragraph. Yahoo's instruction to Union Bank of California or its successor (if any) to make that transfer shall release Yahoo for any and all attorneys' fees, expenses, awards and/or costs resulting from this Action, regardless of whether the instruction is carried out.  In the event Union Bank of California no longer exists and has no known successor, Yahoo shall be released for any and all attorneys' fees, expenses, awards, and/or costs resulting from this Action as of the date it gives notice to Plaintiffs' Co-Lead Counsel that Union Bank of California no longer exists and has no known successor.

52.     The Class Representatives may apply to the Court for a service award up to $5,000 each. Yahoo agrees to pay each Class Representative a service award of up to $5,000.

53.     Yahoo shall not be liable for any additional attorneys' fees and expenses in the Action.

## ADDITIONAL PROVISIONS

54.     **Best Efforts.**  The Parties agree to cooperate in good faith and use their best efforts to effectuate all their respective obligations under the Agreement, including obtaining preliminary and final settlement approval, and all steps that may be necessary in order to reach the Effective Date, and to do so as quickly and efficiently as practicable.

55.     **Limited Admissibility of Agreement.**  Regardless of whether the Court approves this Agreement, neither this Agreement nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered

15

or admitted in evidence as, received as, or deemed to be an admission for any purpose adverse to the Class Representatives or Yahoo (including, but not limited to, as evidence of an admission, concession, presumption or indication by or against Yahoo of any liability, fault, wrongdoing, omission, concession or damage) in the Action or in any other action or proceeding, except for the sole purposes of settling this Action pursuant to this Agreement, effectuating the terms of this Agreement, and enforcing the releases in this Agreement.  Notwithstanding the foregoing restrictions in this paragraph, Yahoo may file this Agreement and Final Judgment (if and when such Final Judgment is entered) in any action that may be or has been brought against it in order to support a defense, counterclaim or cross claim.

56.   **Notices.**  Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of electronic mailing.  Postal mailing will be provided as well, addressed as follows:

Plaintiffs' Co-Lead Counsel

Daniel C. Girard
Amanda Steiner
Ashley Tveit
Girard Gibbs LLP
601 California Street, 14th Floor
San Francisco, California 94104

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104

Frederic S. Fox
David Straite
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Yahoo's Counsel

Rebekah Kaufman
Robert Petraglia
Morrison & Foerster LLP
425 Market Street

16

San Francisco, CA 94105

Marc Zwillinger
Jacob Sommer
Zwillgen PPLC
1705 N. Street, NW
Washington D.C. 20036

**57.    Privacy.**  The Parties and all counsel agree that all orders and agreements regarding the

confidentiality of documents and information remain in effect, including the Stipulated

Protective Order entered on February 28, 2014, and all Parties and counsel remain bound to

comply with them.  Nothing contained in this Agreement or any order of the Court related to this

Agreement, nor any act required to be performed pursuant to this Agreement is intended to

constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work

product protection or any other privilege or protective doctrine afforded by law.

**58.    Exhibits and Headings.**  The terms of this Agreement include the terms set forth in the

attached Exhibits, which are incorporated by this reference as though fully set forth herein.

Exhibits to this Agreement are an integral part of the settlement.  The descriptive headings of any

paragraphs or sections of this Agreement are inserted for convenience of reference only and do

not constitute a part of this Agreement.

**59.    Defined Terms.**  Terms defined in this Agreement shall have their defined meanings

whenever and wherever they occur herein (including in Exhibits).

**60.    Materiality.**  The Parties have negotiated all of the terms and conditions of this

Agreement at arm's-length.  All terms, conditions, and exhibits in their exact form have been

individually negotiated and bargained for at arm's-length, are material and necessary to this

Agreement, and have been relied upon by the Parties in entering into this Agreement.

**61.    Interim Stay of Proceedings.**  To the extent approved by the Court, the Parties agree to

stay all proceedings in the Action, except such proceedings necessary to implement and complete

the settlement, pending the entry of Final Judgment.

**62.    Amendment or Modification**.  This Agreement may be amended or modified only by a

written instrument signed by counsel for all Parties.

17

63.     **Waiver of Compliance.**  Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition, shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

64.     **Entire Agreement.**  This Agreement and the attached Exhibits constitute the entire agreement among the Parties and no oral or written representations, warranties or inducements have been made to any party concerning this Agreement, its Exhibits, other than the representations, warranties and covenants contained and memorialized in such documents.  In the event a dispute arises between the Parties over the meaning or intent of this Agreement, including the attached Exhibits, the Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Agreement, including the attached Exhibits, shall not be offered or admitted into evidence. Rather, the interpretation of such documents shall be based only on the final language, terms and conditions set forth in the fully executed Agreement, including the attached Exhibits.

65.     **Communications with Class Members.**  Yahoo reserves the right to continue any and all ordinary-course-of-business communications with Class Members.  Should it become evident in the course of any such communication with Yahoo that a Class Member is inquiring regarding the settlement memorialized in this Agreement, Yahoo shall refer the inquiry to Plaintiffs' Co-Lead Counsel.

66.     **Communications Regarding the Litigation.**  From the date on which the motion for preliminary approval has been filed until the Effective Date, the Parties agree to limit their public statements concerning this litigation or the Action, the Agreement, and/or the parties' compliance therewith to confirming the terms of the Agreement in response to press inquiries, in private discussions, on Plaintiffs' Co-Lead Counsel's firm websites, on Yahoo's Websites and on

18

the Settlement Website, and making statements that do not undermine approval of the settlement. No party shall initiate contact with the press concerning the settlement.  All obligations set forth in this Paragraph expire as of the Effective Date.

67.     **Authorization to Enter Agreement.**  The Parties warrant and represent they are authorized to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement, to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Class Representatives further warrant and represent that they have not designated, hypothecated, transferred, or otherwise granted any interest in the Released Claims to any other person or entity.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the settlement, or on any supplemental provisions that may become necessary to effectuate the terms of the settlement embodied in this Agreement, the Parties shall mediate the disagreement before Cathy Yanni.  The Parties shall not seek the Court's intervention until they have exhausted the mediation process.

68.     **No Third Party Beneficiaries.**  This Agreement is not intended to create any third party beneficiaries other than Class Members for whom a direct benefit is specifically provided hereunder.

69.     **Agreement Binding on Successors in Interest.**  This Agreement shall be binding on and inured to the benefit of the respective heirs, successors, and assigns of the Parties.

70.     **No Additional Persons with Financial Interest.**  Yahoo shall not be liable for any additional attorneys' fees and expenses of any Class Members' counsel, including any potential objectors or counsel representing a Class Member, other than what is expressly provided for in this Agreement.

19

71.     **Jurisdiction of the Court.**  The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including all Class Members, and over the interpretation, implementation, administration and enforcement of this Agreement.

72.     **Cooperation and Drafting.**  The Parties agree and stipulate that this Agreement was negotiated on an arm's-length basis between parties of equal bargaining power.  The Agreement has been drafted jointly by Plaintiffs' Co-Lead Counsel and Yahoo's Counsel.  Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties.  The Parties expressly waive the presumption of California Civil Code section 1654 that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

73.     **Waiver of Objections by Class Representatives.**  The Class Representatives agree not to object to any of the terms of this Agreement.

74.     **Extensions of Time.**  The Parties may agree upon a reasonable extension of time for any deadline or date reflected in this Agreement, without further notice (subject to Court approval as to Court dates).

75.     **Fees Not a Penalty.**  No Consideration or amount or sum paid, credited, offered, or expended by Yahoo in its performance of this Agreement constitutes a penalty, fine, punitive damages or other form of assessment for any alleged claim against Yahoo.

76.     **Collateral Attack.**  This Agreement shall not be subject to collateral attack by any Class Members at any time on or after the Effective Date.

77.     **Counterparts.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.  Facsimile and electronic signatures will be accepted if the original signature is provided within seven calendar days.  Any executed counterpart shall be admissible in evidence to prove the existence and contents of this Agreement.

20

78.    **Governing Law and Venue.**  All terms of this Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of California without regard to conflict of law principles.  Any action or proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

79.    **Signatures.**  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

**Plaintiffs' Co-Lead Counsel**

_Jordan Elias_ for DCG
_____
Daniel C. Girard (SBN 114826)
Girard Gibbs LLP


_____
Laurence D. King
Kaplan Fox & Kilsheimer LLP


**Yahoo's Counsel**


_____
Rebekah Kaufman
Morrison & Foerster LLP

21

78.     **Governing Law and Venue.**  All terms of this Agreement and the Exhibits hereto shall
be governed by and interpreted according to the laws of the State of California without regard to
conflict of law principles.  Any action or proceeding to enforce the Agreement shall, pursuant to
the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

79.     **Signatures.**  Each person executing this Agreement warrants that such person has the full
authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly
authorized attorneys.

**Plaintiffs' Co-Lead Counsel**


_____

Daniel C. Girard (SBN 114826)
Girard Gibbs LLP

_____

Laurence D. King
Kaplan Fox & Kilsheimer LLP


**Yahoo's Counsel**


_____

Rebekah Kaufman
Morrison & Foerster LLP

21

78.   **Governing Law and Venue.**  All terms of this Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of California without regard to conflict of law principles.  Any action or proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

79.   **Signatures.**  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

**Plaintiffs' Co-Lead Counsel**


_____
Daniel C. Girard (SBN 114826)
Girard Gibbs LLP


_____
Laurence D. King
Kaplan Fox & Kilsheimer LLP


**Yahoo's Counsel**

_____
Rebekah Kaufman
Morrison & Foerster LLP

21

Exhibit A

1

2

3

4

5

6

7

8

9

10

11

12

13          UNITED STATES DISTRICT COURT

14         NORTHERN DISTRICT OF CALIFORNIA

15              SAN JOSE DIVISION

16

17   IN RE YAHOO MAIL LITIGATION          Case No. 5:13-CV-04980-LHK

18                                        **[PROPOSED] ORDER GRANTING
                                          PRELIMINARY APPROVAL OF CLASS**
19                                        **ACTION SETTLEMENT**

20

21

22

23

24

25

26

27

28

1      This matter is before the Court on Plaintiffs' motion for preliminary approval of the

2   proposed class action settlement (the "Settlement") among individual and representative

3   Plaintiffs Cody Baker, Halima Nobles, Rebecca Abrams, and Brian Pincus and the Class they

4   represent ("Plaintiffs") and Yahoo! Inc. ("Yahoo"), as set forth in the Settlement Agreement.

5   Having considered the Motion, the Settling Parties' Settlement Agreement, the proposed

6   form of notice to the Class, the pleadings and other papers filed in this Action, and the

7   statements of counsel and the parties, and for good cause shown, **IT IS HEREBY**

8   **ORDERED** as follows:

9      1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the

10   meanings ascribed to those terms in the Settlement Agreement.

11      2.      The Court has jurisdiction over this Action, Plaintiffs, Class Members, and Yahoo

12   pursuant to 28 U.S.C. §§ 1332(d)(2) & (6), the Class Action Fairness Act of 2005 ("CAFA").

13      3.      To grant preliminary approval of the proposed Settlement, the Court need only

14   find that it falls within "the range of reasonableness." Alba Conte et al., *Newberg on Class*

15   *Actions* § 11.25, at 11-91 (4th ed. 2002). *The Manual for Complex Litigation (Fourth)* (2004)

16   ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness

17   of the proposed settlement made by the court on the basis of written submissions and informal

18   presentation from the settling parties. *Manual* § 21.632. A proposed settlement may be finally

19   approved by the trial court if it is determined to be "fundamentally fair, adequate and reasonable."

20   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). While consideration of the

21   requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in

22   favor of approving the Settlement proposed here.

23      4.      Accordingly, the Court GRANTS preliminary approval of the Settlement and all of

24   the terms and conditions contained in it, finding as follows. The Agreement appears to be the

25   result of serious, informed, non-collusive negotiations conducted at arms' length by the parties'

26   experienced counsel.  The terms of the Settlement Agreement appear to be fair, reasonable, and

27   adequate under Federal Rule of Civil Procedure 23. The terms do not improperly grant

28   preferential treatment to any individual or segment of the class, and fall within the range of

1

possible approval. The Court bases these preliminary findings on the nature of the claims, the benefits to be conferred in the Settlement, and the fact that a settlement represents a compromise of the parties' respective positions in lieu of trial.

5.      The Court approves the proposed notice and finds that the dissemination of the Notice substantially in the manner and form set forth in the Settlement Agreement complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process of law. The notice procedures set forth in the Settlement Agreement are hereby found to be the best practicable means of providing notice of the Settlement Agreement under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the applicable requirements of Federal Rule of Civil Procedure 23 and due process.

6.      Pursuant to the Media Plan attached as Exhibit C to the Agreement, notice shall be published via Advertising.com, which will place banner ads on a collection of popular websites. Advertising.com represents that it will ensure these ads will make 75,000,000 unique impressions upon internet users—with no single user receiving more than three impressions. The banner ads will direct internet users, via a link, to the Settlement website providing fulsome notice to Class Members. This is sufficient to inform Class Members, who are all internet users, of the proposed Settlement and their right to object to it.

7.      The Court will hold a Final Approval Hearing at _____ on _____, 2016. At the Final Approval Hearing, the Court will consider: (1) whether the Agreement should be finally approved as fair, reasonable, and adequate for the Class, (2) whether a judgment dismissing the Action with prejudice, based on final settlement approval, should be entered; and (c) whether Plaintiffs' Co-Lead Counsel's application for attorneys' fees and expenses and for service awards to the Class Representatives should be granted.

8.      No later than 14 days before the final approval hearing Yahoo shall file a declaration attesting that notice was provided in accordance with the Settlement and this Order.

9.      Within 60 days after the date of this Order the Class Representatives shall file their memorandum in support of final approval of the Settlement, and Plaintiffs' Co-Lead Counsel shall file their application for attorneys' fees and expenses and for service awards to the Class Representatives.

10.      Yahoo shall file with the Court a Notice of Compliance with 28 U.S.C. § 1715 within 30 days after the date of this Order.

11.      The Court ORDERS that each class member shall be given a full opportunity to comment on or object to the Agreement, and to participate at a Final Approval Hearing to be held in this Court on _____, 2016. The Class Notice shall state the date, time and location of the hearing. Any Class Member wishing to comment on or object to the Agreement shall file such comment or objection in writing with the Court and shall serve such comment or objection on Plaintiffs' Co-Lead Counsel and counsel for Yahoo within 90 days after the dissemination of notice. Should any party wish to file a written response to any comment or objection filed by a Class Member, such response shall be filed no later than 10 days before the Final Approval Hearing. No Class Member shall be entitled to be heard at the Final Approval Hearing, whether individually or through counsel, unless written notice of the Class Member's intention to appear at the Final Approval Hearing shall have been timely filed with the Court and served on counsel for the Parties.

12.      Any objection must contain: the objector's name, address, and personal signature; a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number; and a statement of the grounds for his, her, or its objection. The objection must also contain a detailed list of any other objections by the Objector, as well as by the Objector's attorney, to any class action settlements submitted to any court in the United States in the previous five years.

13.      The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted. In the event a postmark is

illegible, the date of mailing shall be deemed to be three days prior to the date reflected on the Court's file stamp. Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be barred from objecting to the proposed Settlement in any manner.

**IT IS SO ORDERED.**

Dated: _____

_____
LUCY H. KOH
United States District Judge

# Exhibit B

1

2

3

4

5

6

7

8

9

10

11

12

13            UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16

17   IN RE YAHOO MAIL LITIGATION        Case No.    5:13-CV-04980-LHK

18                                      **[PROPOSED] FINAL ORDER
                                        APPROVING SETTLEMENT AND
19                                      DISMISSING CLAIMS OF CLASS
                                        MEMBERS**

20

21

22

23

24

25

26

27

28

This matter came on for hearing on _____, 2016.  The Court has considered the Settlement Agreement ("Settlement"), objections and comments received regarding the Settlement, the record in the Action, and the arguments and authorities of counsel.  Good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     The Court, for purposes of this Final Judgment Approving Settlement and Dismissing Claims of Class Members with Prejudice ("Judgment"), adopts the terms and definitions set forth in the Settlement.

2.     The Court has jurisdiction over this Action, the subject matter of the Action, and all parties to the Action, including Class Members, and venue is proper in this District.

3.     The Court finds that the notice to the Class of the pendency of the Action and of this Settlement, Class Counsel's application for attorneys' fees and expenses, and the application for service awards for Class Representatives, as provided for in the Settlement and by Order of this Court, has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.     The Court finds that Yahoo properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

5.     The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Class Members.  The Court has specifically considered the factors relevant to class settlement approval (*see, e.g.*, *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, *inter alia*, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and the mediator; and the reaction of Class Members to the proposed settlement.

6.     The Court has also scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.  This

finding is supported by, among other things: the fact that the Settlement was negotiated by

experienced, well-qualified counsel and with the active involvement and assistance of a

neutral, well-qualified mediator; the Settlement provides substantial benefits to Class

Members and such benefits are not disproportionate to the attorneys' fees and expenses

sought by Class Counsel; the benefits provided to Class Members are appropriate under the

circumstances of this case; and the parties began negotiating regarding attorneys' fees and

expenses only after reaching an agreement regarding the key deal terms.

7.      Pursuant to the Settlement, Yahoo shall provide the following benefits to

Class Members:

(a) **Stipulated Injunction.**  For a period of three years from the Effective Date, Yahoo

shall be bound by the Stipulated Injunction set forth in the Settlement regarding its access of

emails for the purposes of targeted advertising.  Under the terms of the Stipulated Injunction,

Yahoo shall make technical changes such that, for incoming email, email content will be retrieved

from the servers from which email is accessible by Yahoo Mail users, and only sent to servers for

analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox.

For outgoing email, Yahoo shall make technical changes such that email content will be retrieved

from the servers from which outgoing email is accessible by Yahoo Mail users, and only sent to

servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing

email in his or her sent email folder.  Yahoo shall, upon making the changes required under this

paragraph, deliver a written certification under oath to Class Counsel stating that it has made the

technical changes required under this paragraph.

(b)  If Yahoo's new email architecture described above becomes outdated and must be

improved or replaced during the pendency of the injunction, then Yahoo may change its system

design in a manner that will continue to comply with the requirements of the injunction above.  If

Yahoo changes its system design materially from that set forth in paragraph 5(a) during the

pendency of the injunction, it will deliver an updated version of the certification required under

paragraph 5(a) above to Class Counsel upon making any such change.

(c)  Nothing in the injunction shall prohibit Yahoo for purposes unrelated to targeted advertising from analyzing incoming and outgoing emails for the purposes of spam, malware, and abuse detection and protection at any time on any Yahoo servers.

(d)  **Yahoo Website Modifications**.  No later than the Effective Date, Yahoo will implement the following modifications to its website:

(i)  The Yahoo Privacy Center Webpage shall include a standalone paragraph under the heading "Information Collection and Use—General" stating:

> Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail.

(ii)  On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), the heading "Information Collection and Use Practices" shall be replaced with the heading "Premium Services."  The heading "Personally Relevant Experiences" shall be replaced with the heading "Information Collection and Use Practices."

(iii)  On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), under the bullet that states "This information may also be used for interest-based advertising.  To learn more, you can visit Yahoo's control tool for interest-based advertising," an additional bullet point shall be added stating:

> Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads.

(e) **Certification**.  Within thirty days of the Effective Date, Yahoo will certify to Class Counsel that no email data of class members was collected and stored for the purpose of its test of Google's AdSense for Content product.

10.  The Parties and Class Members are bound by the terms and conditions of the Settlement.  Upon the Effective Date of this Settlement, Plaintiffs and each and every Class Member shall be deemed to have released, acquitted and forever discharged Yahoo from any and all Released Claims.

11.     Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Class Members shall be deemed to have agreed not to sue or otherwise make any claim against Yahoo relating to Released Claims.

12.     The benefits described above are the only consideration Yahoo shall be obligated to give to the Class Representatives and Class Members.

13.     The Action and all claims asserted in the Action are dismissed with prejudice as to the Class Representative and all Class Members.

14.     The Court reserves exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class Members, and Yahoo for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Judgment.

The Clerk is ordered to enter this Order and Judgment forthwith.

**IT IS SO ORDERED.**

Dated: _____                    _____
                                                                              THE HONORABLE LUCY H. KOH
                                                                              United States District Judge

# Exhibit C

# Media Estimate



## Yahoo Email Privacy - Online Activity

3000

January 06, 2016

## Media

### Online Media

Advertising.com is a massive premium, cross-screen network with 596M global unique visitors, programmatic buying, a proprietary DSP, and network-exclusive access to AOL inventory. Advertising.com enables the world's top marketers and media brands to reach consumers across desktop, mobile, tablet and connected TVs with impact through premium experiences, programmatic buying and performance driven campaigns. We are the global partner of choice for leading publishers, advertisers and agencies seeking to maximize the value of their online brands.

 KM works with Advertising.com to deliver impressions across their network of AOL partner sites in the most cost-efficient method available and we do not dictate the exact sites that the banner will appear.

A sample site is attached showing the variety of sites that are in the Advertising.com network.  This is only a partial list and does not show all sites where the banner ad may appear.

A total estimated **75,000,000** impressions will be purchased across the sites/network. KM will closely monitor the online ad activity to ensure optimal ad delivery. Impressions will not be delivered to a specific IP address more than 3 times to ensure that the heaviest Internet users are not over-delivered the banner ad.

| Website(s) | Delivery Timeframe | Ad Type/Size |
|---|---|---|
| Advertising.com Network | 4 weeks | 300 x 250 - box |

| | | |
|---|---|---|
| | Sub-Total: | **$88,500.00** |

### Other Costs

| | |
|---|---|
| Production and Distribution: Web Ad | $1,050.00 |

### Estimated Total Program Cost

| | | |
|---|---|---|
| | Total: | **$89,550.00** |

# Display Network
# Sample Site List 2013

Advertising.com's display network is a leading third party ad network providing inventory from over 6,000 relevant and content-rich websites, including over 70 of comScore's Top 100 ad supported sites.

10Best.com
123Greetings.com
Abbreviations.com
About.com
AccuWeather.com
AIM
Alexa.com
Answers.com
AOL Autos
AOL Healthy Living
AOL Homepages
AOL Jobs
AOL Mail
AOL Mobile
AOL News
AOL Personals
AOL Real Estate
AOL Shopping
AOL Travel
AppleInsider.com
Autoblog.com
BabyCenter.com
BarnesandNoble.com
BedandBreakfast.com
BirthdayPartyIdeas.com
BostonHerald.com
BrightHub.com
BroadcastInteractive.com
BuddyTV.com
BusinessInsider.com
CafeMom.com
CarandDriver.com
CareerBuilder.com
CitySearch.com
Classmates.com

Cooking.com
CyberRentals.com
DailyFinance.com
Dictionary.com
Dilbert.com
Earthlink.net
EconomicTimes.com
Elle.com
Engadget.com
Essence.com
EW.com
Examiner.com
Excite.com
GameDaily.com
GamesRadar.com
Gannett Sites
Gifts.com
Gorilla Nation
Hallmark.com
Hearst.com
HomeAway.com
Homes.com
HopStop.com
HuffPost BlackVoices
HuffPost Comics
HuffPost Entertainment
HuffPost Food
HuffPost Kids
HuffPost Latino
HuffPost Local
HuffPost Music
HuffPost Small Business
HuffPost Sports
HuffPost TV
IDGTechNetwork.com

Joystiq.com
Kayak.com
KSTP.com
LasVegasSun.com
Legacy.com
LendingTree.com
LifeScript.com
Lycos.com
MapQuest.com
Match.com
MensFitness.com
Menuism.com
Minyanville.com
MLB.com
Moviefone.com
Movoto.com
Music.com
myDaily.com
NationalGeographic.com
Netscape.com
NYPost.com
OnlineRadioStations.com
Overstock.com
ParentDish.com
People.com
Philly.com
PoemHunter.com
Powerball.com
RadarOnline.com
ReadersDigest.com
RealEstate.com
Rhapsody.com
SalemNews.com
Salon.com
Seed.com

Shape.com
ShopLocal.com
SHOUTcast.com
Slashfood.com
Snagajob.com
SonyPictures.com
SouthernLiving.com
Spinner.com
SportsFanLive.com
StyleList.com
TechCrunch.com
ThomsonReuters.com
Time.com
TinBu.com
TownHall.com
Travelocity.com
True.com
TUAW.com
TVGuide.com
Ugo.com
VacationRentals.com
Verizon.com
WalletPop.com
WashingtonTimes.com
WeatherBug.com
WhitePages.com
Winamp.com
WWE.com
Zimbio.com
Zwinky.com

Advertising.com internal data. © 2013 Advertising.com. Advertising.com is a trademark of AOL Inc. and may not be used without written permission. June 2013



# Exhibit D

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: YAHOO MAIL LITIGATION

Consolidated Case No.: 5:13-cv-04980-LHK

**SUMMARY NOTICE OF CLASS ACTION SETTLEMENT**

**TO:    ALL PERSONS IN THE UNITED STATES WHO ARE NOT YAHOO! MAIL SUBSCRIBERS AND WHO HAVE SENT EMAILS TO OR RECEIVED EMAILS FROM A YAHOO! MAIL SUBSCRIBER FROM OCTOBER 2, 2011 TO THE PRESENT, OR WHO WILL SEND EMAILS TO OR RECEIVE EMAILS FROM A YAHOO! MAIL SUBSCRIBER IN THE FUTURE.**

**ALL PERSONS IN CALIFORNIA WHO ARE NOT YAHOO! MAIL SUBSCRIBERS AND WHO HAVE SENT EMAILS TO OR RECEIVED EMAILS FROM A YAHOO! MAIL SUBSCRIBER FROM OCTOBER 2, 2012 TO THE PRESENT, OR WHO WILL SEND EMAILS TO OR RECEIVE EMAILS FROM A YAHOO! MAIL SUBSCRIBER IN THE FUTURE.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Northern District of California (the "District Court"), that a hearing will be held at [time ] on [month]        [ day  ], 2016 before the Honorable Lucy H. Koh, United States District Court Judge, in Courtroom 8, at the Robert F. Peckham Federal Building, 280 South First Street, San Jose, California, for the purpose of determining whether: (1) the proposed settlement of above-captioned class action against defendant Yahoo, Inc. ("Yahoo") (the "Action") should be approved by the District Court as fair, reasonable, and adequate; (2) the Judgment and Order of Final Approval should be entered by the District Court to dismiss the Action with prejudice; and (3) the Fee and Expense Application should be approved.  In connection with the Fee and Expense Application, Class Counsel will request attorneys' fees and reasonable expenses incurred in connection with the prosecution of this Action to be paid

1

1  solely by Yahoo, which Yahoo will not oppose if the aggregate amount requested does not exceed $4
2  million.  Class Counsel will also request that the four named plaintiffs in the Action each receive a
3  service award of $5,000.

**Summary of the Action and the Proposed Settlement**

4
5      In the Action, four plaintiffs, on behalf of a class of non-subscribers of Yahoo Mail, alleged
6  that Yahoo "scanned" emails sent to, or received from, Yahoo Mail subscribers for advertising
7  purposes while the emails were in transit in violation of the California Invasion of Privacy Act, Penal
8  Code § 630 *et seq.*, (the "CIPA").  The plaintiffs also alleged that Yahoo violated the federal Stored
9  Communications Act ("SCA") during a one-month test of Google's AdSense for Content in 2013.
10  Two other claims were asserted, one for breach of privacy under the California Constitution, and one
11  for violation of the federal Wiretap Act.

12      Yahoo moved to dismiss all four claims.  The Court granted the motion except for the CIPA
13  claim and the SCA claim described above.  The Court later certified a class of California email users
14  with respect to the CIPA claim and a nationwide class of email users with respect to the SCA claim.
15  Both classes are defined (in bold, all caps text) above.  Discovery began in 2014, and after extensive
16  private mediation, on January 7, 2016 the parties agreed to settle all claims to avoid the costs and
17  disruption of further litigation.  Yahoo does not admit any wrongdoing, or any violation of the law,
18  and the Court did not make a legal determination of any wrongdoing by Yahoo.  Yahoo has asserted
19  throughout the Action that it does not scan email communications while they are in transit for
20  advertising purposes, and that its test of Google's AdSense for Content did not violate the SCA.

21      In the settlement Yahoo has agreed to process all incoming and outgoing email in a manner
22  that plaintiffs agree does not violate the CIPA.  Yahoo will make technical changes such that, for
23  incoming email, email content will be retrieved from the servers from which email is accessible by
24  Yahoo Mail users, and will only be sent to other servers for analysis for advertising purposes after a
25  Yahoo Mail user can access the email in his or her in-box folder.  For outgoing email, Yahoo will
26  make technical changes such that email content will be retrieved from the servers from which outgoing
27  email is accessible by Yahoo Mail users, and will only be sent to other servers for analysis for
28  advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email

2

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

folder.  With respect to the SCA claim, Yahoo will certify that it did not collect and store any data used in the limited test of AdSense for Content.  In addition, Yahoo has agreed to make changes to its website to provide more information about its practices related to the use of email content.

### Your Rights May Be Affected by the Settlement

If you are not a Yahoo Mail subscriber but you sent emails to or received emails from Yahoo Mail subscribers after October 2, 2011, or if you intend to do so in the future, your rights may be affected by the settlement of the Action.  If approved by the Court, the settlement will affect your right to seek injunctive, declaratory and other non-monetary equitable relief against Yahoo for the alleged practices at issue in this Action.  You may obtain copies of the Settlement Agreement and related court filings, including the Fee and Expense Application, by writing to *[                                        ]* or on the internet at [                          ], or from Class Counsel's websites at www.kaplanfox.com or www.girardgibbs.com.

### No Opt-Outs

Because the plaintiffs are seeking only injunctive relief and Yahoo is only agreeing to injunctive relief, class members cannot opt out of the settlement.  This means that all members of the classes defined above will be bound by the proposed settlement if the Court approves it.

### Release

If the settlement is approved, you will be deemed to have released Yahoo from and for any and all claims, whether known or unknown, which you have or may have in the future, that were alleged or asserted against Yahoo in the Action or that could have been alleged or asserted against Yahoo in the Action.  Notwithstanding the foregoing, you will only be deemed to have released claims for declaratory, injunctive and non-monetary equitable relief.

### Fairness Hearing, Comments and Objections

The proposed Settlement Agreement will not be final unless and until the United States District Court approves it.  The Court has set a fairness hearing about the proposed settlement at [time ] on [month] [ day    ], 2016 before the Honorable Lucy H. Koh, United States District Court Judge, in Courtroom 8, at the Robert F. Peckham Federal Building, 280 South First Street, San Jose, California.  Any comments or objections from class members regarding the proposed Settlement Agreement must

be submitted in writing by [date], 2016.  To be considered, any objection must contain: (i) the objector's name, address, and personal signature, (ii) a statement whether the objector intends to appear at the fairness hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, (iii) a statement of the grounds for the objection, and (iv) a detailed list of any other objections by the objector, as well as by the objector's attorney, to any class action settlements submitted to any court in the United States in the previous five years.  If you do not submit a timely written objection to the Court, Class Counsel, and Yahoo's counsel, or if do not request participation in the fairness hearing, you will not be able to participate in the fairness hearing. Submit comments or objections to the Court at the address below, referencing "In re: Yahoo Mail Litigation, 5:13-CV-4980," and also send copies to Class Counsel and to Yahoo's counsel.

*To the Court*:

Clerk of the Court
U.S. District Court for the Northern District of California
Robert F. Peckham Federal Building
280 South First Street
San Jose, CA  95113
Re:  In re: Yahoo Mail Litigation, 5:13-CV-4980

*Copy to Class Counsel*:

**KAPLAN, FOX & KILSHEIMER LLP**
Laurence D. King
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707
*lking@kaplanfox.com*

**GIRARD GIBBS LLP**
Daniel C. Girard
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

*Copy to Yahoo's Counsel:*

**Morrison & Foerster LLP**
Rebekah Kaufman
Robert Petraglia
425 Market Street
San Francisco, CA 94105

**Zwillgen PPLC**
Marc Zwillinger
Jacob Sommer
1705 N. Street, NW
Washington D.C. 20036

**More Information**

More information can be obtained by examining the file for *In re Yahoo Mail Litigation*, Case No. 5:13-cv-4980 LHK, at the U.S. District Court for the Northern District of California, San Jose Division, Robert F. Peckham Federal Building, 280 South First Street, San Jose, CA 95113, during business hours.  Alternatively, you may obtain more information by contacting Class Counsel.

**PLEASE DO NOT CONTACT THE DISTRICT COURT OR THE CLERK'S OFFICE WITH QUESTIONS REGARDING THIS NOTICE.**

The publication of this Notice is not an expression of any opinion by the Court as to the merits of the lawsuit or as to the fairness of the proposed settlement. This notice is published to advise you of the pendency of the Actions, the proposed settlement, and your associated rights.

DATED: [month] [day ], 2016          BY ORDER OF THE DISTRICT COURT, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION
CONSOLIDATED CASE NO.: 5:13-CV-04980-LHK

sf-3611476