1  Daniel C. Girard (SBN 114826)
2  Jordan Elias  (SBN 228731)
   **GIRARD GIBBS LLP**
3  601 California Street, 14th Floor
   San Francisco, CA  94108
4  Telephone:  (415) 981-4800
   Facsimile: (415) 981-4846
5  *dcg@girardgibbs.com*

6  Laurence D. King (SBN 206423)            Frederic S. Fox (admitted *pro hac vice*)
7  **KAPLAN FOX & KILSHEIMER LLP**          David A. Straite (admitted *pro hac vice*)
   350 Sansome Street, Suite 400            **KAPLAN FOX & KILSHEIMER LLP**
8  San Francisco, CA 94104                  850 Third Ave., 14th Floor
   Telephone:  (415) 772-4700               New York, NY  10022
9  Facsimile:  (415) 772-4707               Telephone:  (212) 687-1980
   *lking@kaplanfox.com*                    Facsimile:  (212) 687-7714
10                                          *dstraite@kaplanfox.com*

11
12 *Co-Lead Class Counsel*

13                    **UNITED STATES DISTRICT COURT**
14                   **NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN JOSE DIVISION**
15

16
17 IN RE: YAHOO MAIL LITIGATION          Consolidated Case No.: 5:13-cv-04980-LHK

18                                       **PLAINTIFFS' NOTICE OF MOTION AND**
                                         **MOTION FOR FINAL APPROVAL OF**
19                                       **CLASS ACTION SETTLEMENT AND**
                                         **ENTRY OF STIPULATED INJUNCTION;**
20                                       **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT**
21
22                                       Date:     August 25, 2016
                                         Time:     1:30 p.m.
23                                       Place:    Courtroom 8
                                         Judge:    Hon. Lucy H. Koh
24

25

26

27

28

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 25, 2016 at 1:30 p.m., in Courtroom 8 of the above-entitled Court, or at such other time as may be designated by the Court, plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles move, pursuant to Federal Rule of Civil Procedure 23(e) for entry of an order granting final approval of the settlement agreement reached with Defendant Yahoo!, Inc. dated January 7, 2016 (the "Settlement Agreement," ECF No. 174-3, as amended March 15, 2016, ECF No. 181) and entry of the stipulated injunction provided in paragraph 31 thereof.

This motion is made on the grounds that the settlement is fair, reasonable and adequate, and should be granted final approval.  The motion is based on this Notice of Motion and Motion, the supporting Memorandum, the argument of counsel, and all papers and records on file in this matter.  The motion is also supported by the accompanying declarations of Daniel C. Girard (the "Girard Decl.") and Laurence D. King (the "King Decl."), which provide a more detailed summary of the litigation.

Dated:  May 31, 2016                                    Respectfully Submitted,


**KAPLAN FOX & KILSHEIMER LLP**              **GIRARD GIBBS LLP**

By:   _/s/ Laurence D. King_                        By:   _/s/ Daniel C. Girard_
Laurence D. King (SBN 206423)              Daniel C. Girard (SBN 114826)
350 Sansome Street, Suite 400               Jordan Elias  (SBN 228731)
San Francisco, CA 94104                       601 California Street, 14th Floor
Telephone:  (415) 772-4700                    San Francisco, CA  94108
Facsimile:  (415) 772-4707                     Telephone:  (415) 981-4800
_lking@kaplanfox.com_                           Facsimile: (415) 981-4846
                                                      _dcg@girardgibbs.com_
Frederic S. Fox (admitted _pro hac vice_)
David A. Straite (admitted _pro hac vice_)      _Co-Lead Class Counsel_
850 Third Ave., 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
_dstraite@kaplanfox.com_

_Co-Lead Class Counsel_

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. TERMS OF THE SETTLEMENT AGREEMENT ............................................. 2

    A. Stipulated Injunction: Yahoo's Changes to Its System Architecture and Website ........... 2

    B. Limited Release .................................................................................... 3

    C. Attorneys' Fees and Expenses ............................................................ 4

    D. Class Representative Service Awards .................................................. 4

    E. Objections .......................................................................................... 4

III. PROCEDURAL HISTORY ................................................................................. 4

    A. Plaintiffs' Claims and Yahoo's Motion to Dismiss .............................. 4

    B. Discovery ........................................................................................... 5

    C. Class Certification .............................................................................. 5

    D. Cross-Motions for Summary Judgment and *Daubert* Motions .......... 6

    E. Settlement Negotiations ...................................................................... 7

IV. THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND SATISFIES DUE PROCESS ......................................................................... 7

V. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ............. 8

    A. The settlement is fair relative to the strength of plaintiffs' case ......... 9

    B. The settlement is preferable to the risk, expense, and complexity of continued litigation. ................................................................... 12

    C. The risk of maintaining class status favors approval of the settlement. ........ 13

    D. The settlement provides valuable injunctive relief without releasing money damage claims by the class. .................................................. 13

    E. The parties had sufficient information to reach the settlement. ......... 14

    F. Experienced counsel recommend the settlement. .............................. 15

    G. Presence of a governmental party. ................................................... 15

ii

H.      Reaction of class members.................................................................16

VI.     CONCLUSION..........................................................................................17

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:13-cv-04980-LHK

# TABLE OF AUTHORITIES

**Cases**

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ........................... 11, 13

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ...........................................................................passim

*Campbell v. Facebook Inc.*,
  No. 13-CV-5996-PJH, 2016 WL 2897936 (N.D. Cal. May 18, 2016) ............................... 14

*Chavez v. PVH Corp.*,
  No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) ............................... 11

*Ching v. Siemens Indus., Inc.*,
  No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................... 12, 13, 15

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .......................................................................................... 8

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................ 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................... 8, 15

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing & Sales Practices Litig.*,
  No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ............................... 10, 13

*In re Google Inc. Gmail Litig.*,
  No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................... 10

*In re Google Inc. Gmail Litigation*,
  No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................. 5

*In re HP Laser Printer Litig.*,
  No. SACV 07-0667, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ........................... 12, 13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................................ 8, 9

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................... 10

*LaGarde v. Support.com, Inc.*,
   No. C 12-0609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ........................................ 12, 15, 16

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................................... passim

*Lilly v. Jamba Juice Co.*,
   No. 3:13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)........................................... 7

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................................................................... 14

*Nat'l Rural Telecomm. Cooperative v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................................. 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ........................................................................................................ 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................... 9, 10, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) .................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23(c)(2)........................................................................................................................ 7

Fed. R. Civ. P. 23(e)(2)........................................................................................................................ 8

**Statutes**

28 U.S.C. § 1715............................................................................................................................. 8, 15

v

## I.      INTRODUCTION

Plaintiffs Cody Baker, Brian Pincus, Rebecca Abrams, and Halima Nobles respectfully move for final approval of the Settlement Agreement with Yahoo.  In October 2011, Yahoo announced a plan to scan incoming and outgoing email for keywords for targeted advertising purposes, and updated its terms of service to reflect the new practice.  Plaintiffs are four individuals who occasionally correspond with Yahoo Mail subscribers.   Plaintiffs do not use Yahoo Mail and never agreed to Yahoo's new terms of service.  Plaintiffs sued, alleging that Yahoo was required to obtain their consent to scan their emails with Yahoo Mail subscribers while the emails were in transit.

After more than two years of litigation, and with cross motions for summary judgment fully briefed, the parties settled.  The settlement was negotiated with the assistance of Cathy Yanni, an experienced JAMS mediator.  Yahoo will restructure its email delivery architecture to ensure that incoming and outgoing email is no longer intercepted while in transit.  The changes will be complex and expensive, but they will bring Yahoo's email scanning practices into compliance with California law. Yahoo will also make corrective changes to its website that will disclose additional information about its conduct, and certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs alleged was a violation of the Stored Communications Act ("SCA").

This Court granted preliminary approval of the settlement and set a schedule for class notice, motions for final approval and fees, objections, and a final approval hearing.  *See* Order Granting Mot. for Prelim. Approval of Class Action Settlement, Mar. 15, 2016, ECF No. 182 ("Preliminary Approval Order").  As directed in the Preliminary Approval Order, plaintiffs now move for final approval of the settlement, including entry of a stipulated injunction provided in paragraph 31(a) of the Settlement Agreement, which will resolve all equitable claims of the nationwide class and California class that the Court certified on May 26, 2015.  *See* Order Granting in Part and Denying in Part Mot. for Class Certification, ECF No. 105.  The settlement was reached on a fully developed record and approximates the relief plaintiffs could expect to achieve if they prevailed on the merits.  The settlement does not release any money damage claims for any class members (other than the four representative plaintiffs),

and individual class members are free to pursue such claims without the need to opt out of the class. Likewise, the settlement does not bar future litigation if Yahoo ever resumes the challenged practices.

For all the reasons discussed below, the settlement should be approved as fair, reasonable and adequate.

## II.    TERMS OF THE SETTLEMENT AGREEMENT

On January 7, 2016, the parties agreed to settle this litigation on a class-wide basis, and provided a copy of the Settlement Agreement to the Court as Exhibit 1 to Laurence D. King's declaration in support of plaintiffs' motion for preliminary approval. ECF No. 174-3.  At the preliminary approval hearing on March 10, 2016, the Court instructed the parties to modify the procedures for objections. Girard Decl. ¶ 58; King Decl. ¶ 48.  The parties therefore amended paragraph 41 of the Settlement Agreement on March 15, 2016 and made conforming changes to the proposed class notice (Exhibit D to the Settlement Agreement).  ECF No. 181 ("Settlement Addendum").  A copy of the amendment was provided to the Court. *Id*.  The Court preliminarily approved the settlement terms, as amended.  ECF No. 182; Girard Decl. ¶ 58; King Decl. ¶ 48.  These terms are summarized below.

### A.    Stipulated Injunction: Yahoo's Changes to Its System Architecture and Website

Yahoo has agreed to adopt practices that comply with California's Invasion of Privacy Act ("CIPA").  Settlement Agreement ¶ 31.  Yahoo will make fundamental technical changes such that, for incoming email, email content will only be retrieved from servers from which email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox.  *Id.* ¶ 31(a).  For outgoing email, Yahoo will make technical changes such that email content will only be retrieved from servers from which outgoing email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email folder.  *Id.*  Yahoo has agreed to make these significant structural changes to its system architecture for the processing of *all* incoming and outgoing email, not just emails sent to and from the California class members.  *Id.* ¶¶ 13 (defining "Class Members"), 31(a) (relief applies to all "Class Members").

As a result of these changes, Yahoo will only access incoming email content for advertising purposes after it has been delivered to Yahoo Mail subscribers' inboxes, and will only access outgoing

email for advertising purposes after it has been placed in Yahoo Mail subscribers' sent email folders. Settlement Agreement ¶ 31(a). These changes will remain in place for at least three years. *Id.* Yahoo counsel confirmed at the preliminary approval hearing that Yahoo has no intention of eliminating these changes to its email architecture after the three-year injunction expires. Preliminary Approval Hearing Tr. 37:3-38:4. Should Yahoo nevertheless do so, renewed litigation would not be foreclosed. *Id.*; Preliminary Approval Order ¶ 6. The settlement does not prohibit Yahoo from analyzing incoming and outgoing email for spam, malware, and abuse detection and protection. Settlement Agreement ¶ 31(d).

Yahoo has also agreed to make several changes to its website, described in detail in paragraph 31(f) of the Settlement Agreement. First, in its Yahoo Privacy Center webpage, Yahoo will disclose that "Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail." Settlement Agreement ¶ 31(f)(i). Second, Yahoo will replace the heading "Information Collection and Use Practices" with "Premium Services," and replace the heading "Personally Relevant Experiences" with "Information Collection and Use Practices." *Id.* ¶ 31(f)(ii). Finally, Yahoo will disclose that "Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads" and such information "may also be used for interest-based advertising." *Id.* ¶ 31(f)(iii).

In addition, Yahoo will certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs contend violated the SCA. Settlement Agreement ¶ 31(g).

**B.      Limited Release**

In exchange for Yahoo's agreement to provide the benefits above, plaintiffs and class members will release Yahoo from all equitable claims asserted in this case and claims arising from the same nucleus of operative fact as the claims asserted in this case. Settlement Agreement ¶ 32. Class members release claims for declaratory, injunctive and non-monetary equitable relief only. *Id.* The four named class representatives will also release claims for damages. *Id.* The settlement does not release future claims if Yahoo reverts to past practice after the injunction expires. *Id.*

### C.      Attorneys' Fees and Expenses

Co-Lead Class Counsel are contemporaneously moving for an award of attorneys' fees and costs. If approved, that award would be paid solely by Yahoo and in no way impact any class member who elects to pursue future money damage claims.  Settlement Agreement ¶ 48.  Yahoo has agreed not to oppose a fee request of $4 million.  *Id.*  The parties negotiated this attorneys' fee provision after they agreed to the class relief.  *Id.*; Decl. of Laurence D. King ¶ 7, Jan. 7, 2016, ECF No. 174-2.

### D.      Class Representative Service Awards

The Class Representatives, who actively participated in this litigation, request that the Court approve a $5,000 service award for each of them.  Yahoo does not oppose the request.  Settlement Agreement ¶ 52.  The request for service awards appears in the motion for attorneys' fees and expenses, which as noted above is being filed separately.

### E.      Objections

At this Court's direction, the parties modified the objection procedure.  *See* Settlement Addendum 1-2.  Any class member wishing to object to the settlement need only mail the objection to the Court.  *Id.*  Counsel need not be copied on the objection, and the objector need not register with ECF.  *Id.*  The Court's courtroom deputy has confirmed that, as of this date, no objections have been received.  The deadline to object is July 1, 2016.  *See* Preliminary Approval Order ¶ 21.

## III.    PROCEDURAL HISTORY

### A.      Plaintiffs' Claims and Yahoo's Motion to Dismiss

On January 22, 2014, the Court consolidated four related class actions against Yahoo and appointed Girard Gibbs and Kaplan Fox to serve as co-lead interim class counsel.  ECF Nos. 27, 29; Girard Decl. ¶ 18.  Plaintiffs filed a consolidated complaint on February 12, 2014, asserting claims for violations of the CIPA, the SCA, the federal Wiretap Act, and the California Constitution, seeking damages and injunctive and declaratory relief.  ECF No. 35; Girard Decl. ¶ 19.  Yahoo moved to dismiss, (ECF No. 37), and the Court upheld plaintiffs' CIPA claim and the portion of the SCA claim alleging that Yahoo shared the content of email with third parties, (ECF No. 49).  Girard Decl. ¶¶ 20-22. The Court dismissed the remaining claims.  ECF No. 49.

### B. Discovery

The parties held their Rule 26(f) conference on January 14, 2014, and commenced discovery shortly thereafter.  Girard Decl. ¶ 24; King Decl. ¶ 30.  In response to plaintiffs' requests for production, Yahoo produced more than 136,000 pages of documents relating to its system architecture and targeted advertising programs.  Girard Decl. ¶ 26; King Decl. ¶ 31.  Plaintiffs also served two sets of interrogatories and one set of requests for admission.  Girard Decl. ¶¶ 27, 34. Yahoo produced two corporate executives in response to plaintiffs' Rule 30(b)(6) deposition notice: Director of Engineering Amir Doron (on topics related to Yahoo's technology and targeted advertising) and Senior Product Manager Kevin Day (on the topic of AdSense for Content for Mail).  King Decl. ¶ 35.  In addition, plaintiffs deposed the following Yahoo employees: Gareth Shue, Engineering Director of Mail and Delivery; Douglas Sharp, Vice President of Communications Engineering; Shoen Yang, Senior Director of Business Planning; and Matthew Thompson, Director of Product Management.  *Id.*  Plaintiffs deposed Kevin Day in his individual capacity as well as in his capacity as a Rule 30(b)(6) corporate representative.  *Id.*

Plaintiffs responded to interrogatories and requests for production and produced documents. Girard Decl. ¶ 30; King Decl. ¶ 32.  Yahoo deposed all four plaintiffs.  Girard Decl. ¶ 33; King Decl. ¶ 35.  The parties exchanged opening and rebuttal expert reports on topics related to Yahoo's email delivery, spam filtering, and data analysis processes, as well as the feasibility of technological and commercial modifications to Yahoo's architecture to comply with the relevant privacy laws.  Girard Decl. ¶¶ 28, 37; King Decl. ¶ 38.  Plaintiffs deposed Yahoo's expert and Yahoo deposed plaintiffs' expert twice.  Girard Decl. ¶¶ 38-39; King Decl. ¶¶ 39-40.  The parties resolved a number of discovery disputes without Court intervention.  King Decl. ¶ 33.

### C. Class Certification

Plaintiffs filed a motion for class certification on February 5, 2015.  ECF Nos. 60-66.  Following the Court's denial of class certification in *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), plaintiffs chose to pursue only injunctive and declaratory relief and therefore sought certification under Rule 23(b)(2).  Yahoo vigorously opposed certification, arguing among other things that individualized issues of consent precluded certification and that the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:13-cv-04980-LHK

plaintiffs were atypical and inadequate representatives.  ECF Nos. 77-80; Girard Decl. ¶ 43.  In their

reply, plaintiffs argued that the individualized issues of consent that precluded certification in the *Gmail*

case were not present because plaintiffs sought certification under Rule 23(b)(2), which requires only

that Yahoo have acted on grounds generally applicable to the class and that the plaintiffs seek

"indivisible" injunctive relief.  ECF No. 89; Girard Decl. ¶ 44.

On May 26, 2015, the Court granted plaintiffs' motion, but declined to certify a nationwide class

for plaintiffs' CIPA claim.  ECF No. 105; Girard Decl. ¶ 46.  The Court certified two classes: (1) as to

plaintiffs' CIPA claim, a class of all persons in California who are not Yahoo Mail subscribers and who

have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the

present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future; (2) as

to plaintiffs' SCA claim, a class of all persons in the United States who are not Yahoo Mail subscribers

and who have sent emails to or received emails from a Yahoo mail subscriber from October 2, 2011 to

the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

ECF No. 105.

Yahoo filed a Rule 23(f) petition, which the Ninth Circuit denied.  No. 15-80101, ECF Nos. 1, 5;

Girard Decl. ¶ 47.

### D.   Cross-Motions for Summary Judgment and *Daubert* Motions

Following the close of fact and expert discovery, the parties filed cross-motions for summary

judgment and motions to exclude each other's expert witnesses.  ECF Nos. 131-135, 143-146, 151-152,

154-156, 158-159, 161-164, 166, 167.  Plaintiffs argued that Yahoo violates CIPA as a matter of law

because it intercepts and extracts the content of all incoming and outgoing email before the email is

delivered to the recipient.  Plaintiffs also argued that Yahoo violated the SCA when it tested Google's

AdSense for Mail in 2013.  Plaintiffs requested that the Court grant judgment in their favor and enter a

permanent injunction and declaratory relief.  In its summary judgment motion, Yahoo argued that its

conduct does not violate CIPA because it does not read or learn the content of emails for advertising

purposes until after the emails have been delivered to the intended recipients.  Yahoo also argued that

several constitutional defenses precluded application of CIPA.  Finally, Yahoo argued that it did not

violate the SCA because its test of AdSense for Mail did not involve sharing email content with a third

party and that it discontinued its limited use of AdSense for Mail after the 2013 test.  In opposing plaintiffs' motion, Yahoo argued that plaintiffs had failed to show class-wide lack of consent, that plaintiffs lacked Article III standing, and that they were not entitled to injunctive relief.

### E.    Settlement Negotiations

Following an unsuccessful December 2014 mediation, Yahoo advised the Court that it believed any further mediation should take place after summary judgment and *Daubert* motions were fully briefed.  *See* Supplemental Joint Case Management Conference, Apr. 30, 2015, ECF No. 94, *and* Case Management Order, May 27, 2015, ECF No. 107. Accordingly, upon completion of briefing on cross-motions for summary judgment and *Daubert*, the parties mediated before Cathy Yanni of JAMS on November 4, 2015.  Girard Dec. ¶ 54; King Decl. ¶ 43. After an additional month of arms-length negotiations facilitated by Ms. Yanni, the parties reached an agreement in principle and notified the Court.  ECF No. 172; Girard Decl. ¶ 55; King Decl. ¶ 45.   The parties then exchanged several drafts of the Settlement Agreement and related settlement documents before agreeing to a final version dated January 7, 2016.  Girard Decl. ¶ 56; King Decl. ¶¶ 45-46.

## IV.    THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND SATISFIES DUE PROCESS

Courts sometimes dispense with class notice when a settlement involves only injunctive relief. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).  Because the Court certified the classes here under Rule 23(b)(2) and the settlement involves only injunctive relief, notice is not mandatory.  *See id.* ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); Fed. R. Civ. P. 23(c)(2), (e); *Lilly v. Jamba Juice Co.*, No. 3:13-cv-02998-JST, 2015 WL 1248027, at *8-9 (N.D. Cal. Mar. 18, 2015) (class notice was not necessary when the relief was injunctive, and where, as here, the settlement did not release class member claims for monetary relief).

Although class notice was not required, the parties agreed to provide notice to the class by publishing notice online across a network of websites.  *See* Settlement Agreement ¶ 37, Ex. C.  Under the plan, Kinsella Media, Inc. disseminated notice via Advertising.com, which placed banner ads on a collection of popular websites.  *Id.* at Ex. C.  These banner ads directed internet users to a settlement

website through a link, which provides the notice to class members found in Exhibit D to the Settlement Agreement.  The settlement website was established by Rust Consulting, Inc., and Advertising.com will ensure that these ads will make 75,000,000 unique impressions[1] upon internet users—with no single user receiving more than three impressions.  *Id.* at Ex. C.  The Court approved the proposed form of notice on March 15, 2016, finding that it complied with due process of law.  *See* Preliminary Approval Order ¶ 12.  Yahoo also agreed to provide notice to appropriate federal and state government officials in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  Settlement Agreement ¶ 40.

In accordance with the Preliminary Approval Order, Yahoo has filed a "declaration attesting that the Notice was provided in accordance with the Settlement Agreement and this Order."  *See* Decl. of Brittney Barr, May 27, 2016, ECF No. 185.  Also in accordance with the Preliminary Approval Order, Yahoo has filed a Notice of Compliance with CAFA, 28 U.S.C. § 1715.  ECF No. 183.

## V.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Before approving a class action settlement, a court must determine that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). The Ninth Circuit has recognized "the strong judicial policy that favors settlements, particularly where complex class litigation is concerned," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), and "'[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,'" *In re Online DVD-Rental*, 779 F.3d at 944 (quoting *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998)).  To assess the fairness of a settlement, courts look to the eight so-called *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

---

[1] An "impression" occurs when an ad is viewed by an internet user.

*In re Online DVD-Rental*, 779 F.3d at 944 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  Here, as explained below, each of the *Churchill* factors weigh in favor of final approval of the settlement.

### A.   The settlement is fair relative to the strength of plaintiffs' case

The first *Churchill* factor—the strength of plaintiff's case—weighs in favor of settlement approval because plaintiffs achieved their goal of enforcing compliance with CIPA.  Yahoo has agreed to process *all* incoming and outgoing email in a manner that complies with CIPA for a period of at least three years. Yahoo has also represented that it has no intention of eliminating the changes to its email architecture after three years.  Settlement Agreement ¶ 31(b).  Throughout this litigation, plaintiffs' position has been that Yahoo's conduct violates CIPA because Yahoo intercepts email without obtaining the consent of both parties before the email arrives in the recipient's mailbox.  Though Yahoo disagrees with plaintiffs' position, it has agreed to make technical changes such that it will not retrieve incoming email content for advertising purposes until after Yahoo Mail subscribers can access the emails in their inboxes, and will retrieve outgoing email content for advertising purposes only after Yahoo Mail subscribers can access the emails in their sent email folders.  These changes will require significant modifications to Yahoo's email infrastructure.  As Yahoo's Senior Manager of Engineering explains, "[t]hese changes are substantial for Yahoo and require a considerable investment of time, money, and resources."  Decl. of Nick Huang in Supp. of Mot. For Prelim. Approval of Settlement ¶ 5, Jan. 7, 2016, ECF No. 174-4.  Moreover, the technical changes apply to *all* incoming and outgoing email, not just emails to and from California residents.[2]

Ultimate success in this case was far from guaranteed.  In assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be tested.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).  "Rather, the Court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'"  *Id.* (quoting *Rodriguez*,

---

[2] The settlement does not impact Yahoo's ability to analyze incoming and outgoing email for the purposes of spam, malware, and abuse detection.  Plaintiffs recognize the value to Yahoo Mail subscribers and class members of these protections, and did not contend that Yahoo's performance of these functions violated the law.

563 F.3d at 965).  When the parties settled, cross-motions for summary judgment remained undecided. *See Rodriguez*, 563 F.3d at 966; *see also In re Portal Software, Inc. Secs. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) (recognizing "the risk of summary judgment, which defendants had filed before settlement . . . and the anticipated expense and complexity of further litigation"); *Nat'l Rural Telecomm. Cooperative v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'It has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" (citation omitted)).  While plaintiffs believe they would ultimately have prevailed had litigation continued, the outcome was not guaranteed.  *See* Preliminary Approval Order ¶ 11 (following briefing on summary judgment, "the Court's initial analysis suggested some vulnerability in Plaintiffs' case.").

Other legal issues raised by Yahoo involve relatively untested propositions.  There is scant case law interpreting section 631 of the CIPA, and even less case law applying it in the context of email.  In the *Gmail* case, this Court held that section 631 applies to email communications, but the Court was not called upon to address the merits of the plaintiffs' claims.  *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20-21 (N.D. Cal. Sept. 26, 2013).  Thus, while plaintiffs have proffered their interpretation of the statute based on cases addressing telephone communications and provisions of the federal Wiretap Act, the law remains unsettled and this Court or the Ninth Circuit could conclude that Yahoo's conduct does not violate the CIPA.  Further, Yahoo argued in its motion for summary judgment that the undisputed evidence demonstrated that it did not <u>analyze</u> email content for advertising purposes until after the email had been delivered to the intended recipient, even if Yahoo extracted the content in transit.

Given these risks, and because Yahoo has agreed to change its practices in a way that plaintiffs agree complies with CIPA, the settlement is fair.  Other courts have granted final approval of settlements in which defendants have agreed to change business practices to comply with the law.  *See, e.g., In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *2, *10-13 (D.N.H. Nov. 16, 2015) (granting final approval of settlement that

required the defendant to cease using allegedly misleading marketing statements, without releasing class members' monetary claims, because "[t]he proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation").

The changes Yahoo has agreed to make to the disclosures on its website provide an additional benefit to class members and the public. Settlement Agreement ¶ 31(f). The changes will highlight some of the information Yahoo already has available on its website—such as providing revised headings on the Privacy Center webpage that make it easier to locate information about the email content Yahoo collects and uses—and will provide additional information about Yahoo's practices. *Id.* Plaintiffs believe these changes benefit the Class and that the disclosures should be modified as part of the settlement so that they are available to those who seek out more information about Yahoo's information collection practices. Yahoo has also agreed to certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs alleged violated the SCA. *Id.* ¶ 31(g).

Finally, the limited scope of the release is appropriate here. Plaintiffs and class members will only release Yahoo from claims that were actually asserted in this case and claims arising from the same nucleus of operative fact as the claims asserted in this case. Settlement Agreement ¶ 32. "In the Ninth Circuit when a district court approves a class action settlement, 'a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.''" *Chavez v. PVH Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)). Importantly, class members will only release claims for injunctive, declaratory and non-monetary equitable relief. Only the four named plaintiffs are releasing Yahoo from money damage claims. Settlement Agreement ¶ 32.

Consequently, the first *Churchill* factor supports settlement approval. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("Because the strength of Plaintiffs' claims is in doubt, the first *Churchill Village* factor tips in favor of final approval of the settlement."); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal.

July 11, 2014) (finding first *Churchill* factor weighed in favor of settlement approval in light of "significant risks that lie ahead through summary judgment and trial").

**B.**      **The settlement is preferable to the risk, expense, and complexity of continued litigation.**

The second *Churchill* factor—the risk, expense, complexity, and likely duration of further litigation—also weighs in favor of settlement approval. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotations omitted). Immediate receipt of injunctive relief has value to a class, especially when compared to risky and costly continued litigation. *See LaGarde v. Support.com, Inc.*, No. C 12-0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013) ("In light of the risks and costs of continued litigation, the immediate rewards to class members are preferable."); *In re HP Laser Printer Litig.*, No. SACV 07-0667, 2011 WL 3861703, at *2-3 (C.D. Cal. Aug. 31, 2011) (approving injunctive relief consisting of change to business practices and enhanced disclosures as superior to continued litigation).

Continued litigation would have been risky for plaintiffs. The hurdles noted above make the outcome of continued litigation uncertain, and present "a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen*, 306 F.R.D. at 255. This factor is particularly important because Yahoo continued the challenged practice during the litigation. It would have made little sense for plaintiffs to press on when Yahoo was offering to bring its scanning practices into line with plaintiffs' understanding of the law.

Continued litigation also would have been costly, in terms of both time and money. *See Ching*, 2014 WL 2926210, at *4 (noting that this *Churchill* factor looks to "the probable costs, in both time and money, of continued litigation" (citation and internal quotations omitted)). Yahoo has steadfastly maintained that it would vigorously defend this case to judgment and beyond, and both sides were preparing for trial at the time of settlement. Expert testimony would have been required at trial. *See LaGarde*, 2013 WL 1283325, at *4 (*Churchill* factor met where continued litigation would turn on the resolution of complicated factual issues regarding technical design and functionality of software). Given

12

the novelty of several legal issues, the losing party would likely have appealed, leading to further

expense and delay.  *See Bayat*, 2015 WL 1744342, at *4 ("[R]egardless of who prevails on the merits of

[a contested issue], the losing party would likely appeal, thus significantly prolonging this litigation and

increasing its expense and complexity."); *Larsen*, 2014 WL 3404531, at *4 ("Avoiding such

unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as

conserve judicial resources."); *Ching*, 2014 WL 2926210, at *3 (same).  Consequently, because

continued litigation would be risky, costly, complex, and long, the second *Churchill* factor favors

settlement approval.

### C.     The risk of maintaining class status favors approval of the settlement.

The third *Churchill* factor—the risk of maintaining class action status throughout the trial—

weighs in favor of approving the settlement.  From the outset of this litigation, Yahoo challenged the

ability of plaintiffs to proceed on a class basis, including by filing a Rule 23(f) petition following this

Court's certification of a national class and California subclass.  While the 23(f) petition was denied,

Yahoo was likely to seek decertification of the national class if the SCA claim failed.  As the Supreme

Court has noted, a district court may decertify a class at any time.  *See Gen. Tel. Co. of Sw. v. Falcon*,

457 U.S. 147, 160 (1982).

### D.     The settlement provides valuable injunctive relief without releasing money damage claims by the class.

The fourth *Churchill* factor—the relief achieved in settlement—"is generally considered the

most important." *Bayat*, 2015 WL 1744342, at *4.  Injunctive relief may provide greater benefits to a

class than monetary relief, especially when the defendant agrees to change fundamental business

practices.  *See, e.g., In re Colgate-Palmolive*, 2015 WL 7282543 at *10-11 (defendant agreed to stop

misleading marketing statements regarding triclosan on its Softsoap Antibacterial products); *In re HP

Laser Printer Litig.*, 2011 WL 3861703 at *2-4 (defendant agreed to stop using a mechanism that

stopped printing after a set number of pages).

The settlement will benefit all class members and the public—not just the California subclass—

by requiring Yahoo to change its email delivery architecture.  Given the unusual posture of this case (an

alleged ongoing harm during the pendency of the litigation), the timing of this benefit is as important as

the substance.  Every day that the litigation dragged on was another day that plaintiffs contend Yahoo was violating California law.  Furthermore, the settlement will promote privacy rights going forward.  By securing Yahoo's agreement to modify its systems to refrain from scanning emails for advertising purposes until the email is in storage (either the inbox or sent items box), the settlement signals to the market and to privacy advocates that scanning for spam can be disaggregated from scanning for content for advertising purposes.  Privacy advocates can be expected to look to this settlement as establishing that spam control programs do not give email service providers (ESPs) free rein to disregard two-party consent laws like CIPA.  More broadly, this settlement empowers privacy advocates to challenge internet service providers (ISPs) who may in the future scan electronic communications sent to or received by their customers but who do not act as the ESP (and thus do not provide email storage).[3]

### E.    The parties had sufficient information to reach the settlement.

The next *Churchill* factor—the extent of discovery completed and the stage of the proceedings—"evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'"  *Larsen*, 2014 WL 3404531, at *5 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).  This factor strongly supports granting approval here.  Formal discovery is not a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution."  *Bellinghausen*, 306 F.R.D. at 257 (citation and internal quotations omitted).  The parties in Yahoo! Mail completed all fact discovery, including production and review of more than 136,000 pages of documents, Girard Decl. ¶ 26, King Decl. ¶ 31; took depositions of all fact witnesses, Girard Decl. ¶ 35, King Decl. ¶ 35; took depositions of all four named plaintiffs, *id*.; and produced and responded to interrogatories.  Girard Decl. ¶¶ 27, 30, 34.  The parties completed all expert discovery, including exchanging initial report and rebuttal reports, and deposing both sides' experts.  Girard Decl. ¶¶ 37-40; King Decl. ¶¶ 38-42.  The parties also filed cross-motions for summary judgment and reply briefing, and participated in mediation before an experienced neutral.  Girard Decl. ¶¶ 48-56; King Decl. ¶¶ 41, 43-46.

---

[3] The Court's class certification opinion has also provided a road map on certification issues in other privacy cases, most recently in an analogous case against Facebook.  *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-5996-PJH, 2016 WL 2897936, at *5 (N.D. Cal. May 18, 2016) (citing this Court's analysis in addressing ascertainability and challenges to (b)(2) certification).

1      In short, counsel had more than sufficient information to make an informed decision on resolving
2  this case on fair and reasonable terms. *See Bellinghausen*, 306 F.R.D. at 257 (factor supported approval
3  where parties had litigated multiple motions to dismiss, engaged in formal and informal discovery,
4  produced and analyzed hundreds of pages of documents, prepared detailed mediation briefs, and
5  participated in mediation); *LaGarde*, 2013 WL 1283325, at *7 (factor supported approval where
6  plaintiff had presented technology expert's conclusions to defendant and parties had engaged in limited
7  motion practice).

### F.    Experienced counsel recommend the settlement.

9      The sixth *Churchill* factor—the experience and views of counsel—also weighs in favor of final
10  settlement approval.  Class counsel are experienced in prosecuting and settling class actions generally
11  and are recognized leaders in the emerging field of data privacy specifically.  *See, e.g*., Firm Resume of
12  Kaplan Fox & Kilsheimer LLP, Ex. A to King Decl., Feb. 5, 2015, ECF No. 61; Firm Resume of Girard
13  Gibbs LLP, Ex. 44 to Girard Decl., Feb. 5, 2015, ECF No. 60-7.  Further, class counsel have been
14  litigating this case since the end of 2013.  As other courts have noted, "[t]he opinions of counsel should
15  be given considerable weight both because of counsel's familiarity with this litigation and previous
16  experience with cases."  *Larsen*, 2014 WL 3404531, at *5; *Ching*, 2014 WL 2926210, at *5.  On the
17  other side of this action are highly qualified counsel from two well-known law firms (Morrison &
18  Foerster LLP and Zwillgen PLLC) who skillfully defended their client, but nevertheless agree that this
19  settlement is preferable to continued litigation.  Lead Counsel believe the settlement is in the best
20  interests of the class, especially in light of the ongoing nature of the alleged privacy violation and the
21  fact that claims for money damages for past harm are not being released.  Girard Decl. ¶ 56; King Decl.
22  ¶ 4. Thus, the recommendation of counsel supports final approval of the settlement. *Bellinghausen*, 306
23  F.R.D. at 257 (citing *Hanlon*, 150 F.3d at 1026).

### G.    Presence of a governmental party.

25      The next *Churchill* factor looks to the presence of a governmental party.  There has been no
26  involvement of any federal or state government in this litigation.  Further, consistent with CAFA, 28
27  U.S.C. § 1715, Rust Consulting, Inc., at the direction of counsel for defendant Yahoo, certified that a
28  notice of the proposed settlement was provided to appropriate state and federal officials on January 15,

2016, and identified each official.  [ECF No. 183-1].  Rust also certified that it sent a CD to each identified official containing the Settlement Agreement, complaint and relevant motions.  There have been no objections or communications from regulators, which weighs in favor of final approval.  *See LaGarde*, 2013 WL 1283325, at *7 ("CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of class action settlement procedures." (citation and internal quotations omitted)).

### H.    Reaction of class members.

The final *Churchill* factor—the reaction of class members—likewise supports final approval of the settlement.  "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *Bellinghausen*, 306 F.R.D. at 258 (citation and quotations omitted).  Thus, this Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (citation and quotations omitted).

Plaintiffs estimated hundreds of thousands if not millions of class members in their discussion of the "numerosity" prong of Rule 23(a); Yahoo did not dispute numerosity or this estimate.  *See* ECF No. 105 at 15.  Counsel are not aware of any objections to date, and the lack of any objection from any class member in a class of this size shows an overall exceptionally positive reaction by the class so far, which supports final approval.  *See, e.g., Rodriguez*, 563 F.3d at 967 (approving district court's finding of "favorable reaction" to settlement where 52,000 class members submitted claims and 54 objected); *Larsen*, 2014 WL 3404531, at *5 (finding "positive response" where nearly 60,000 class members submitted claims, 23 opted out, and 16 objected).

1

## VI.    CONCLUSION

2

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for

3

final approval of the settlement.

4

5

Dated:  May 31, 2016                                  Respectfully submitted,

6

**KAPLAN FOX & KILSHEIMER LLP**              **GIRARD GIBBS LLP**

7

8

By:    */s/ Laurence D. King*                          By:    */s/ Daniel C. Girard*
Laurence D. King (SBN 206423)              Daniel C. Girard (SBN 114826)

9

350 Sansome Street, Suite 400              Jordan Elias  (SBN 228731)
San Francisco, CA 94104                    601 California Street, 14th Floor

10

Telephone:  (415) 772-4700                 San Francisco, CA  94108
Facsimile:  (415) 772-4707                 Telephone:  (415) 981-4800

11

*lking@kaplanfox.com*                      Facsimile: (415) 981-4846
                                           *dcg@girardgibbs.com*

12

Frederic S. Fox (admitted *pro hac vice*)

13

David A. Straite (admitted *pro hac vice*)     *Co-Lead Class Counsel*
850 Third Ave., 14th Floor

14

New York, NY  10022
Telephone:  (212) 687-1980

15

Facsimile:   (212) 687-7714

16

*dstraite@kaplanfox.com*

17

*Co-Lead Class Counsel*

18

19

## ATTESTATION STATEMENT

20

I, Daniel C. Girard, am the ECF User whose identification and password are being used to file

21

this Motion for Final Approval of Class Action Settlement.  Pursuant to Civil L.R. 5-1(i)(3), I attest

22

under penalty of perjury that concurrence in this filing has been obtained from all counsel.

23

/s/ *Daniel C. Girard*

24

Daniel C. Girard

25

26

27

28

17