Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*

Laurence D. King (SBN 206423)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
*lking@kaplanfox.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
*dstraite@kaplanfox.com*

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

IN RE: YAHOO MAIL LITIGATION

Consolidated Case No.: 5:13-cv-04980-LHK

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND LEAD PLAINTIFF SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:     August 25, 2016
Time:     1:30 p.m.
Place:    Courtroom 8
Judge:   Hon. Lucy H. Koh

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 25, 2016 at 1:30 p.m., in Courtroom 8 of the above-entitled Court, or at such other time as may be designated, Court-appointed Lead Counsel Girard Gibbs LLP and Kaplan Fox & Kilsheimer LLP, having prosecuted this action successfully to a class-wide settlement, respectfully move pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2) for an award of attorneys' fees and expenses in the amount of $4 million to be paid by Yahoo!, Inc. Lead Counsel also request service awards to the four court-appointed class representatives in the amount of $5,000 each.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum, the argument of counsel, and all papers and records on file in this matter. The motion is also supported by the accompanying declarations of Laurence D. King (the "King Declaration") and Daniel C. Girard (the "Girard Declaration"), which provide a more detailed summary of the litigation efforts of Lead Counsel and the class representatives, and lodestar and expense data for all counsel.

Dated: May 31, 2016                                    Respectfully Submitted,

**KAPLAN FOX & KILSHEIMER LLP**          **GIRARD GIBBS LLP**

By:  */s/ Laurence D. King*                      By:  */s/ Daniel C. Girard*
Laurence D. King (SBN 206423)              Daniel C. Girard (SBN 114826)
350 Sansome Street, Suite 400                Jordan Elias (SBN 228731)
San Francisco, CA 94104                          601 California Street, 14th Floor
Telephone:  (415) 772-4700                     San Francisco, CA  94108
Facsimile:  (415) 772-4707                       Telephone:  (415) 981-4800
*lking@kaplanfox.com*                             Facsimile: (415) 981-4846
                                                              *dcg@girardgibbs.com*

Frederic S. Fox (admitted *pro hac vice*)
David A. Straite (admitted *pro hac vice*)
850 Third Ave., 14th Floor
New York, NY  10022                              *Co-Lead Class Counsel*
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
*dstraite@kaplanfox.com*

I. INTRODUCTION ................................................................................................. 1

II. SUMMARY OF COUNSEL'S WORK IN THIS LITIGATION ............................ 2

    A. Case Investigation and Factual Research ................................................. 2

    B. Pleadings and Motion Practice ................................................................ 3

    C. Fact and Expert Discovery ...................................................................... 3

    D. Class Certification ................................................................................... 5

    E. Cross-Motions for Summary Judgment and *Daubert* Motions ............... 6

    F. Mediation and Settlement ........................................................................ 7

III. ARGUMENT ...................................................................................................... 7

    A. Counsel's Fee Request Is Reasonable and Appropriate Under the Circumstances. .......... 7

        1. Lead Counsel Obtained an Excellent Result. ............................... 8

        2. The Fee Was Negotiated and Agreed Upon at Arms' Length by Skilled and Experienced Counsel. ................................ 10

        3. Application of the Lodestar Method Supports the Reasonableness of the Fee. ........ 11

            a. The Time Lead Counsel Devoted to This Case Was Appropriately Spent in Light of the Favorable Result and the Litigation Risks. ............ 12

            b. Counsel's Hourly Rates Are Reasonable and Have Been Repeatedly Approved by Courts. ............................ 13

            c. The Requested Fee Represents a Negative Multiplier. ............ 14

    B. Lead Counsel's Out-of-Pocket Litigation Expenses Were Reasonably Incurred in Furtherance of the Prosecution of the Claims, and Should Be Awarded. ............ 15

    C. Because Lead Counsel Are in the Best Position to Assess the Contributions of Non-Lead Counsel, the Court Should Permit Lead Counsel to Allocate the Fee in the First Instance. ............ 16

    D. The Requested Service Awards Are Reasonable and Should Be Approved. ............ 17

IV. CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*,
 465 U.S. 886 (1984) ..................................................................................... 13

*Cabrales v. County of Los Angeles*,
 935 F.2d 1050 (9th Cir. 1991) ...................................................................... 10

*Camacho v. Bridgeport Fin., Inc.*,
 523 F.3d 973 (9th Cir. 2008) ........................................................................ 13

*Center for Biological Diversity v. County of San Bernardino*,
 185 Cal. App. 4th 866 (2010) ....................................................................... 10

*Chun-Hoon v. McKee Foods Corp.*,
 716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................... 15

*Covillo v. Specialtys Cafe*,
 No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ............ 18

*Cunningham v. County of Los Angeles*,
 879 F.2d 481 (9th Cir. 1988) ........................................................................ 11

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
 307 F.3d 997 (9th Cir. 2002) ........................................................................ 14

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
 100 F.3d 691 (9th Cir. 1996) ........................................................................ 11

*Guidiville Rancheria of California v. United States*,
 12-cv-1326-YGR (N.D. Cal., Aug. 18, 2015), ECF No. 289 ...................... 14

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ................................................................ 11, 14

*Harless v. Clorox Co.*,
 273 F.R.D. 630 (S.D. Cal. 2011) .................................................................. 17

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) ............................................................................ 11

*Hensley v. Eckerhart*,
 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ................. 10, 11

*In re Adobe Systems Inc. Privacy Litig.*,
 No. 5:13-cv-05226-LHK (N.D. Cal. Aug. 13, 2015), ECF No. 107 ............. 14

*In re Ampicillin Antitrust Litig.*,
    81 F.R.D. 395 (D.D.C. 1978) ............................................................................... 17

*In re Apple Computer, Inc. Deriv. Litig.*,
    No. C 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ..................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 11

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......................... 15

*In re Copley Pharm., Inc.*,
    50 F. Supp. 2d 1141 (D. Wyo. 1999) ..................................................................... 17

*In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*,
    No. 3:08-md-01998-TBR, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ........................ 12

*In re CSO Hedge Fund Litig.*,
    No. 1:12-cv-7717-GHW (S.D.N.Y. Jan. 28, 2016), ECF No. 171 ................................. 14

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ....................................... 10

*In re Google Inc. Gmail Litigation*,
    No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................... 5

*In re High-Tech Employee Antitrust Litig.*,
    No. 5:11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................... 13, 14

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................................... 17

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ..................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................... 18

*In re Residential Capital, LLC, et al.*,
    No. 12-BK-12020 (Bankr. S.D.N.Y., June 26, 2012), ECF No. 506 ............................. 14

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*,
    No. 3:11-md-02258-AJB-MDD (S.D. Cal. Apr. 30, 2015), ECF No. 204-1 ..................... 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) .......... 17

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS
CASE NO. 5:13-cv-04980-LHK

*In re Toys R Us FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................... 11, 16, 18

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ................................................................................................ 14

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ............................................................................................... 10, 14

*Kevranian v. Yahoo! Inc.*,
   No. 5:13-cv-04547-LHK (N.D. Cal. Jan. 8, 2014), ECF No. 36 ........................................ 13

*Mangold v. California Public Utilities Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ............................................................................................... 8

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) .............................................................................. 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................................................. 11

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009) ......................................................................... 15

*Pierce v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ............................... 18

*Rodriguez v. W. Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................. 17

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
   No. CV 11-00665-BRO (AGRx), 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............ 8, 10, 11, 15

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ......................................................................................................... 8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................. 7, 11, 15

*Stetson v. Grissom*,
   2016 WL 2731587 (9th Cir. May 11, 2016) ....................................................................... 13

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................................................................. 18

*Wing v. Asarco Inc.*,
   114 F.3d 986 (9th Cir. 1997) ............................................................................................. 15

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS
CASE NO. 5:13-cv-04980-LHK

*Winterrowd v. American General Annuity Insurance Co.*,
  556 F.3d 815 (9th Cir. 2009)..................................................................................12

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..........................18

*Zalaya v. Yahoo! Inc.*,
  No. 5:13-cv-04619-LHK (N.D. Cal. Jan. 9, 2014), ECF No. 23 ...............................13

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*,
  7 J. Empir. L. Stud. 248 (2010) ..............................................................................15

**Rules**

Cal. Civ. Proc. Code § 1021.5 .......................................................................................8

Fed. R. Civ. P. 23(h) .....................................................................................................7

## I. INTRODUCTION

Lead Counsel Girard Gibbs LLP and Kaplan Fox & Kilsheimer LLP (together, "Lead Counsel") respectfully move for attorneys' fees, reimbursement of litigation expenses, and service awards pursuant to the settlement agreement with defendant Yahoo!, Inc. Decl. of Laurence D. King in Supp. of Mot. for Prelim. Approval of Class Action Settlement Ex. 1, Jan. 7, 2016, ECF No. 174-3 (the "Settlement Agreement"). Lead Counsel seek—and Yahoo has agreed not to oppose—a combined fee and expense award of $4,000,000, to be paid by Yahoo separately from the Class benefits. This amount is fair and reasonable based upon the relief Lead Counsel achieved for the Class and the contingent nature of the representation. The reasonableness of the fee request is further evidenced by the fact that actual lodestar and expenses incurred slightly exceed $4 million such that the agreed-upon award represents a negative multiplier. Lead Counsel dedicated 6,857.20 hours—a total "lodestar" value of $3,841,533.50—to investigation, depositions, document review, expert discovery, motion practice (including the motion for class certification and cross-motions for summary judgment), and successful settlement negotiations, and incurred $206,566.40 in expenses.[1]

The settlement was negotiated on a developed record and at an advanced stage of the litigation. The settlement achieves the litigation's main goal, delivering the core relief plaintiffs could expect to obtain had they prevailed on the merits of their claim under the California Invasion of Privacy Act ("CIPA"). Yahoo has agreed to fundamentally restructure its email delivery architecture to process incoming and outgoing email in a manner that complies with CIPA. Yahoo will no longer intercept emails in transit, effectively enhancing the value to consumers of their personal communications. The settlement thus establishes important pro-consumer benchmarks that may guide law enforcers and privacy law advocates in the future. In addition, Yahoo has agreed to modify its website to disclose its relevant conduct more fully. Significantly, the settlement does not release money damage claims for any class member other than the four representative plaintiffs—absent class members are free to

---

[1] Additional counsel Sydney Hall (counsel for plaintiff Nobles) and additional counsel Glancy Prongay Murray LLP (counsel for plaintiff Abrams) provided some assistance on this matter. Lodestar and expenses of additional counsel are <u>not</u> included in the figures above and Lead Counsel are not requesting any additional fee and expense awards. Instead, Lead Counsel propose to compensate additional counsel for their efforts out of the requested $4 million. *See* Section III.C.

pursue such claims without the need to opt out of the settlement. The settlement also preserves the threat of future litigation should Yahoo resume the challenged practices.

Lead Counsel further request, and Yahoo does not oppose, awards of $5,000 to each of the four Class Representatives in recognition of their service and the risk they undertook in bringing these claims. These service awards will not affect the class relief.

## II. SUMMARY OF COUNSEL'S WORK IN THIS LITIGATION

### A. Case Investigation and Factual Research

In October and November 2013, six suits were filed in this District challenging Yahoo's new practice of scanning Yahoo! Mail email content for advertising purposes, a practice that mirrored a similar practice at Google with respect to its Gmail service. Girard Decl. ¶¶ 14-15; *see also* King Decl. ¶ 22. Before filing, Lead Counsel interviewed potential class members about their use of Yahoo, Gmail, and other email service providers and their experiences with data collection and targeted advertising; reviewed and compared Yahoo's policies and procedures with those of other email service providers; analyzed news reports and other relevant publicly available information; researched and analyzed applicable case law and legal principles; and studied the pleadings, briefing, and this Court's rulings in *In re Google Inc. Gmail Litigation*, N.D. Cal. No. 13-md-02430-LHK. Girard Decl. ¶¶ 14-18; King Decl. ¶¶ 22-27.

The Court granted Yahoo's motion to relate the cases on December 18, 2013. ECF No. 14; Girard Decl. ¶ 14. Lead Counsel negotiated with other plaintiffs' counsel to coordinate their respective cases. *Id.* ¶ 16. Lead Counsel also prepared for and attended a meeting with Yahoo's counsel. *Id.* At the meeting, the content of which is subject to a non-disclosure agreement, Yahoo provided technical information regarding its scanning practices. Girard Decl. ¶ 16; King Decl. ¶ 26.

Lead Counsel Girard Gibbs also retained and worked closely with a consultant at this early stage to understand the technology that companies like Yahoo use to collect personal data and create targeted advertising. Girard Decl. ¶ 17. The consultant provided expert guidance regarding Yahoo's patents and patent applications, as well as the type of information and documents plaintiffs should seek from Yahoo in discovery. *Id.*

### B.     Pleadings and Motion Practice

On January 22, 2014, the Court consolidated the related class actions against Yahoo and approved a stipulation appointing Girard Gibbs and Kaplan Fox to serve as co-lead interim class counsel.  ECF Nos. 27, 29; Girard Decl. ¶ 18.  Plaintiffs filed a consolidated complaint on February 12, 2014, asserting claims for violation of CIPA, the Stored Communications Act ("SCA"), the federal Wiretap Act, and the California Constitution and seeking damages and injunctive and declaratory relief.  ECF No. 35; Girard Decl. ¶ 19.  Yahoo moved to dismiss (ECF No. 37), and the Court upheld plaintiffs' CIPA claim and the portion of the SCA claim alleging that Yahoo shared the content of email with third parties (ECF No. 49).  Girard Decl. ¶¶ 20-22.  Yahoo filed its Answer on August 26, 2014.  ECF No. 53; Girard Decl. ¶ 23.

### C.     Fact and Expert Discovery

Plaintiffs were required to rely on formal discovery to pin down the critical details of Yahoo's scanning practices—Yahoo did not provide this information voluntarily.  *See* Girard Decl. ¶¶ 24-40. The facts developed through discovery ultimately laid the groundwork for plaintiffs' summary judgment motion and eventual settlement negotiations.  From the outset, the parties held opposing views on many discovery issues, such as the terms of the protective order, dozens of confidential documents, and the scope of discovery.  Lead Counsel were able to overcome these obstacles to obtain the necessary information about the Yahoo's email scanning practices and their consequences.

Formal discovery began soon after the parties' Rule 26(f) conference on January 14, 2014. Girard Decl. ¶ 24; King Decl. ¶ 30.  The parties exchanged initial disclosures on January 23, 2014, and negotiated a Stipulated Protective Order, which Magistrate Judge Howard R. Lloyd entered with modifications on February 28, 2014.  Girard Decl. ¶ 24; ECF No. 34.  Lead Counsel served requests for production of documents on March 7, 2014.  Girard Decl. ¶ 25; King Decl. ¶ 30.  The requests focused on Yahoo's disclosures and subscriber agreements, the type of data Yahoo collects from subscribers' emails, regulatory inquiries, and related communications.  Girard Decl. ¶ 25.  Plaintiffs designated one attorney as their e-discovery liaison to discuss steps taken to preserve evidence and negotiate custodians and search terms with Yahoo's counsel.  *Id.*

Yahoo produced documents on a rolling basis starting on April 30, 2014, ultimately producing more than 136,000 pages relating to its email delivery architecture and targeted advertising programs. Girard Decl. ¶ 26; King Decl. ¶ 31. Lead Counsel reviewed the production to identify documents relevant to plaintiffs' claims and Yahoo's defenses, "hot" documents, and documents to use in support of plaintiffs' motions. *Ids.* Associate attorneys prepared memoranda summarizing the key documents, and identified and compiled documents to provide to plaintiffs' expert for analysis. Girard Decl. ¶ 26. Lead Counsel also served interrogatories on Yahoo on July 23, 2014. *Id.* ¶ 27. Plaintiffs responded to Yahoo's document requests and interrogatories on October 13, 2014. *Id.* ¶ 30.

Plaintiffs disclosed Robert Sherwood as a proposed expert on August 6, 2014. Girard Decl. ¶ 28. Yahoo objected, and Lead Counsel met and conferred with Yahoo's counsel to resolve the objection. *Id.* ¶ 28. Lead Counsel did not object to Yahoo's choice of expert.

In September 2014, many of the filings and transcripts in Yahoo's litigation with the federal government before the U.S. Foreign Intelligence Surveillance ("FISA") Court of Review were declassified and made publicly available by the Director of National Intelligence. Girard Decl. ¶ 29; King Decl. ¶ 34. Marc Zwillinger, counsel for Yahoo in this case, argued for Yahoo before the FISA Court, raising many points of interest to Lead Counsel. Lead Counsel reviewed the declassified documents and prepared a memorandum summarizing matters relevant to this litigation. Plaintiffs later used several of the documents in support of their motion for summary judgment. *See* Pls.' Req. for Judicial Notice in Supp. of Mot. for Summ. Judgment Exs. F-H, Sept. 19, 2015, ECF No. 132; Girard Decl. ¶ 29; King Decl. ¶ 34.

Depositions began in early 2015. Girard Decl. ¶ 31. The parties prioritized depositions relating to class certification. Plaintiffs took a Rule 30(b)(6) deposition of Yahoo on January 14, 2015, on the topics of Yahoo's scanning and analysis of email, collection and storage of data from email, and sharing of email content with third parties. *Id.* Yahoo then deposed all four named plaintiffs in January and February 2015. *Id.* ¶ 33. While Lead Counsel coordinated strategy for all depositions, named plaintiffs Nobles and Abrams were also represented by their own individual counsel at the depositions. King Decl. ¶ 35.

On March 4, 2015, plaintiffs served a second set of interrogatories on Yahoo directed at issues relevant to class certification and Yahoo's defenses. Girard Decl. ¶ 34. After the motion for class certification was filed, plaintiffs took the depositions of six additional fact witnesses. *Id.* ¶ 35. Plaintiffs requested that Yahoo produce documents from additional custodians in April 2015 based on information obtained from the Yahoo documents and depositions. *Id.* ¶ 36. Yahoo agreed to search the files of three additional custodians and apply one additional search term. *Id.*

Both sides retained technology experts, and the parties exchanged expert disclosures and reports on July 10, 2015. Girard Decl. ¶ 37; King Decl. ¶ 38. Both experts were deposed (and at Yahoo's insistence, plaintiffs' expert was deposed twice, on July 30, 2015 and September 10, 2015). Girard Decl. ¶¶ 38-39; King Decl. ¶ 39. Plaintiffs deposed Yahoo's expert on July 31, 2015. Girard Decl. ¶ 39. The parties also exchanged expert rebuttal reports on August 5, 2015. *Id.* ¶ 40.

### D. Class Certification

Plaintiffs moved for class certification on February 5, 2015. ECF Nos. 60-66; Girard Decl. ¶ 41. Informed by the Court's opinion on class certification in *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), plaintiffs chose to pursue only injunctive and declaratory relief and therefore sought certification under Rule 23(b)(2). Yahoo moved to seal portions of plaintiffs' class certification filing. ECF No. 69; Girard Decl. ¶ 42. Lead Counsel reviewed Yahoo's confidentiality designations and concluded they were overly broad and failed to comply with this Court's rules governing filing under seal. ECF Nos. 72-73; Girard Decl. ¶ 42. The Court ultimately denied many of Yahoo's proposed redactions and requests to file documents under seal. ECF No. 108; Girard Decl. ¶ 42.

Yahoo opposed plaintiffs' motion for class certification on March 12, 2015, arguing among other things that individualized issues of consent precluded certification and that the plaintiffs were atypical and inadequate representatives. ECF Nos. 77-80; Girard Decl. ¶ 43. Yahoo moved to seal much of the evidence submitted with the opposition. *Id.* Lead Counsel filed a response to Yahoo's motion challenging many of Yahoo's designations (but supporting the sealing of plaintiffs' confidential information). ECF No. 82; Girard Decl. ¶ 43. The Court ultimately denied many of Yahoo's proposed

redactions and requests to file documents under seal.  ECF No. 108; Girard Decl. ¶ 43.  Plaintiffs filed their reply in support of class certification on April 9, 2015.  ECF No. 89; Girard Decl. ¶ 44.

On May 26, 2015, the Court granted plaintiffs' motion, although it declined to certify a nationwide class for plaintiffs' CIPA claim.  ECF No. 105; Girard Decl. ¶ 46.  The Court certified two classes: (1) as to plaintiffs' CIPA claim, a class of all persons in California who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future; (2) as to plaintiffs' SCA claim, a class of all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.  ECF No. 105.  The Court also confirmed the appointment of Girard Gibbs and Kaplan Fox as Lead Counsel, and appointed four Class Representatives (plaintiffs Abrams, Baker, Nobles and Pincus).  *Id.*

Yahoo filed a Rule 23(f) petition with the Ninth Circuit on June 9, 2015, which plaintiffs opposed.  No. 15-80101, ECF Nos. 1-1, 2; Girard Decl. ¶ 47.  On August 11, 2015, the Ninth Circuit denied Yahoo's petition challenging this Court's class certification order.  No. 15-80101, ECF No. 5; Girard Decl. ¶ 47.

### E.    Cross-Motions for Summary Judgment and *Daubert* Motions

The parties filed cross-motions for summary judgment on September 19, 2015.  ECF Nos. 131-33; Girard Decl. ¶ 48.  Lead Counsel's motion for summary judgment was accompanied by a request for judicial notice and an administrative motion to file portions of the motion under seal.  ECF No. 140; Girard Decl. ¶ 48.  The parties filed oppositions to summary judgment on October 19, 2015 (ECF Nos. 156, 158-59), and replies on November 16, 2015 (ECF Nos. 166-68).  Girard Decl. ¶ 50.  The parties also filed cross-motions to exclude the testimony of the other party's expert.  ECF Nos. 144-46; Girard Decl. ¶ 52; King Decl. ¶ 42.  In light of the Court's March 15, 2016 preliminary approval of the settlement, the Court denied as moot the motions for summary judgment, requests for judicial notice, motions to seal, and motions to exclude expert testimony.  ECF No. 182.

F.      **Mediation and Settlement**

The parties participated in mediation with Bruce Friedman of JAMS on December 11, 2014. In advance of the mediation, the parties exchanged mediation briefs. Girard Decl. ¶ 53; King Decl. ¶ 43. The mediation was unsuccessful. *Ids.*

The parties participated in a second mediation on November 4, 2015 before Cathy Yanni of JAMS. Girard Decl. ¶ 54; King Decl. ¶ 43. In advance, the parties exchanged mediation briefs that reflected the supplemental documents, depositions, expert reports and the Court's ruling on class certification. Girard Decl. ¶ 54. The parties did not reach agreement at the mediation, but continued discussions for an additional month with Ms. Yanni's assistance. *Id.*; King Decl. ¶ 44. Counsel for the parties met in person on December 4, 2015, and reached an agreement in principle. Girard Decl. ¶ 55; King Decl. ¶ 45. The parties notified the Court of their agreement the same day. *Id.* The parties then continued to negotiate the specific terms of the settlement. Girard Decl. ¶ 56; King Decl. ¶¶ 45-46.

Lead Counsel moved for preliminary approval of the settlement on January 7, 2016. ECF No. 174; Girard Decl. ¶ 57. The Court held a hearing on March 10, 2016, and ordered a modification of the agreement to simplify the objection procedure. Girard Decl. ¶ 58; King Decl. ¶ 48. With that change, the Court granted the motion on March 15, 2016. ECF Nos. 181 ("Settlement Addendum"), 182.

III.    **ARGUMENT**

A.      **Counsel's Fee Request Is Reasonable and Appropriate Under the Circumstances.**

Lead Counsel respectfully request that the Court award $4,000,000 as "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Yahoo has agreed to pay this award, which will not affect the benefits for the Class. *See* Settlement Agreement ¶ 48. The requested fee is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Because Yahoo has agreed to pay this fee, "the court need not inquire into the reasonableness . . . with precisely the same level of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966. The Court's role is instead "to ensure that the Parties' agreement on fees and expenses is

reasonable and does not reflect a collusive settlement placing the interests of counsel above the interests of the Class." *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013).

California law governs the accompanying award of fees because the claim settled here arises under California law. *See Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). As such, this Court may approve the requested award pursuant to California's "private attorney general" statute. *See* Cal. Civ. Proc. Code § 1021.5 (providing for an award of attorneys' fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if . . . a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons"); *Serrano v. Unruh*, 32 Cal. 3d 621, 632 (1982) (explaining that such an award advances "the policy of encouraging private actions to vindicate important rights affecting the public interest"). The Legislature enacted the private attorney general statute so that the costs of enforcing important rights in the public interest would be shifted from private plaintiffs to defendants in various circumstances. *See* Cal. Civ. Proc. Code § 1021.5; *see also Serrano*, 32 Cal. 3d at 632-33 (holding that "absent facts rendering the award unjust, parties who qualify for a fee should recover for all hours reasonably spent, including those on fee-related matters").

**1.      Lead Counsel Obtained an Excellent Result.**

The proposed settlement accomplishes the primary goal of this case. Yahoo has agreed to adopt practices that bring its information scanning practices into compliance with CIPA. Yahoo will make fundamental technical changes such that, for incoming email, email content will be retrieved from the servers from which email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox. For outgoing email, Yahoo will make technical changes such that email content will be retrieved from the servers from which outgoing email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email

folder.  Yahoo has agreed to make these significant changes to its system architecture for *all* incoming and outgoing emails, not just those sent to and from Yahoo subscribers in California.

As a result of these changes, Yahoo may only scan incoming email content for advertising purposes after it has already been delivered to Yahoo Mail subscribers' inboxes, and may only access outgoing email after it has been placed in Yahoo Mail subscribers' sent email folders.  These changes will remain in place for three years.  *See* Settlement Agreement ¶ 31(a).  Yahoo counsel confirmed at the preliminary approval hearing that Yahoo has no intention of reversing these changes to its email architecture after the three-year injunction expires, but if Yahoo does so, new litigation would not be foreclosed.  Preliminary Approval Hearing Tr. 37:3-38:4; Order Granting Mot. for Prelim. Approval of Class Action Settlement ¶ 6, Mar. 15, 2016, ECF No. 182 ("Preliminary Approval Order").  The settlement does not prohibit Yahoo from analyzing incoming and outgoing email for spam, malware, and abuse detection and protection.  Settlement Agreement ¶ 31.

Yahoo has also agreed to make several changes and corrections to its website, described in detail in paragraph 31(f) of the Settlement Agreement.  First, in its Yahoo Privacy Center webpage, Yahoo will disclose that "Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail."  Second, Yahoo will replace the heading "Information Collection and Use Practices" with "Premium Services," and replace the heading "Personally Relevant Experiences" with "Information Collection and Use Practices."  Third, Yahoo will disclose that "Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads," and that such information "may also be used for interest-based advertising."  Yahoo will also certify that it did not collect and store any class member's email content for the purposes of its 2013 test of Google's AdSense for Content, the conduct that plaintiffs contend violated the SCA.  Settlement Agreement ¶ 31(g).

Lead Counsel's successful enforcement of privacy rights confers a benefit not only on the class but also on the public at large.  Privacy advocates may well look to this settlement as precedent that an anti-spam program can be effective without violating two-party consent laws like CIPA.  The record in this case also empowers privacy advocates to challenge internet service providers (ISPs) who may in the future scan electronic communications sent to or received by their customers but who, unlike

Yahoo, do not act as the email service provider (and thus do not provide email storage). Yahoo's decision to modify its scanning practices enforces CIPA's prohibition on interception of email in transit for advertising purposes. Requiring compliance with CIPA advances the public interest and the proposition that companies like Yahoo that monetize the collection and resale of private consumer information for advertising purposes must obtain consent before collecting that information in transit. *See, e.g.*, *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133-34 (2001) (holding that a fee award should be "fully compensatory" and that "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent"); *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991); *Center for Biological Diversity v. County of San Bernardino*, 185 Cal. App. 4th 866, 897-98 (2010) (declining to reduce an award of attorneys' fees where the plaintiff "achieved its primary objective," because such a reduction "would impede the Legislature's intent of 'encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the public interest'") (quoting *Ketchum*, 24 Cal. 4th at 1133-34)).

### 2. The Fee Was Negotiated and Agreed Upon at Arms' Length by Skilled and Experienced Counsel.

"Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Thus, a court "should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (awarding attorneys' fees based on "the terms of the settlement"). Courts therefore apply lessened scrutiny to fee agreements "negotiated at arm's length with sophisticated defendants by the attorneys . . . intimately familiar with the case" and where the fee "neither detracts from nor diminishes the payments and benefits that will flow to Plaintiffs themselves." *In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (approving agreed-upon fee of $8 million); *accord Sadowska*, 2013 WL 9600948, at *8.

These circumstances mark the situation here. There is no basis to upset the parties' fee agreement reached at an advanced stage of the case. The parties did not reach an agreement on settlement until after discovery was completed, motions to dismiss were decided, the class was

certified, *Daubert* motions and motions for summary judgment were filed, and settlement negotiations mediated by respected neutral parties had occurred. These proceedings ensured that experienced Lead Counsel were fully apprised of the strengths and weaknesses of the case. And it was only after reaching an agreement on settlement terms that the parties negotiated the fee. *Cf. Sadowska*, 2013 WL 9600948, at *8. Further demonstrating that the agreed-upon fee is fair and the product of good-faith negotiations, its payment will have no bearing on the relief for the class. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that the amount of attorneys' fees should not result in "less injunctive relief for the class than could otherwise have been obtained") (citing *Staton*, 327 F.3d at 964). Thus, as the Court found in granting preliminary approval, the settlement "appears to be the result of serious, informed, non-collusive negotiations conducted at arms length . . . ." Preliminary Approval Order ¶ 4.

         **3.    Application of the Lodestar Method Supports the Reasonableness of the Fee.**

The "lodestar" method and the "percentage of the fund" method are the two primary methods courts employ to determine a reasonable attorneys' fee in connection with a class action settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). While courts often rely on the percentage method where a settlement creates a common fund, they rely on the lodestar method where—as here—the fees are being paid separately from the class relief and the value of that relief is uncertain. *Id.*; *see also In re Toys R Us FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014).

"Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis omitted). Counsel's lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As this figure approximates the market value of the legal services, it "'presumptively provides an accurate measure of reasonable attorney's fees.'" *In re Toys R Us FACTA Litig.*, 295 F.R.D. at 460 (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)); *see also Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996).

The accompanying declarations of Lead Counsel set forth the hours worked and the billing rates used to calculate the lodestar. *See Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("'Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.'" (quoting *Martino v. Denevi*, 182 Cal.App.3d 553, 558 (1986)). Lead Counsel and their professional staffs spent 6,857.20 hours working on this case, for a lodestar of $3,841,533.50 as of May 27, 2016, and incurred $206,566.40 in expenses. As noted below, expenses do not include the costs associated with self-hosting the electronic documents produced by Yahoo and the plaintiffs, a cost absorbed by Lead Counsel. King Decl. ¶ 21.

### a. The Time Lead Counsel Devoted to This Case Was Appropriately Spent in Light of the Favorable Result and the Litigation Risks.

Lead Counsel's efforts were necessary to achieving the settlement and are consistent with efforts in other data privacy cases. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, No. 3:08-md-01998-TBR, 2010 WL 3341200, at *10 (W.D. Ky. Aug. 23, 2010) (11,453 hours in case that settled about one year after filing of complaint); *In re Sony Gaming Networks & Customer Data Security Breach Litig.*, No. 3:11-md-02258-AJB-MDD (S.D. Cal. Apr. 30, 2015), ECF No. 204-1 (5,580 hours where class certification had not been briefed). Lead Counsel met by phone on a weekly basis to assign upcoming tasks. Girard Decl. ¶ 3; King Decl. ¶ 11. Additional counsel only worked at the direction of Lead Counsel and primarily with respect to depositions or discovery responses of plaintiffs Nobles and Abrams. King Decl. ¶ 14. Lead Counsel also monitored monthly time records to avoid inefficiencies and to determine if further safeguards could be employed to reduce any duplication of efforts. Girard Decl. ¶ 3; King Decl. ¶ 12.

Lead Counsel assumed considerable risk in taking this matter on a contingent basis. While Yahoo admitted scanning email, Yahoo sharply disputed scanning content while in transit. Yahoo was represented by counsel of the highest caliber who mounted a vigorous defense. The Court was persuaded to dismiss several of the claims, and later noted in granting preliminary approval that "the Court's initial analysis suggested some vulnerability in plaintiffs' case. Had the Court granted Yahoo's motion for summary judgment, the Class and Lead Counsel would not have received any

injuctive, declaratory, or monetary relief." Preliminary Approval Order ¶ 11. The decision of plaintiffs and their experienced counsel in the *Kevranian* and *Zalaya* actions to stipulate to dismiss their claims at the outset is indicative of the risk assumed by Lead Counsel. *See* Order Granting Stipulation to Dismiss Case, *Kevranian v. Yahoo! Inc.*, No. 5:13-cv-04547-LHK (N.D. Cal. Jan. 8, 2014), ECF No. 36, *and* Order Granting Stipulation for Dismissal, *Zalaya v. Yahoo! Inc.*, Case No. 5:13-cv-04619-LHK (N.D. Cal. Jan. 9, 2014), ECF No. 23.

### b. Counsel's Hourly Rates Are Reasonable and Have Been Repeatedly Approved by Courts.

Counsel's hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).[2] To the extent "the relevant community is the forum in which the district court sits," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), Counsel's rates also conform to those generally prevailing in the San Jose legal marketplace.

Billing rates at each firm in this litigation vary appropriately based on experience. As detailed in the accompanying Lead Counsel declarations, current rates for partners involved in this litigation range from $575 to $875 per hour; rates for attorneys with the intermediate "counsel" or "of counsel" titles are $630; rates for associates and other junior attorneys are $350 to $525; and rates for paraprofessionals range from $125 to $305 per hour. *See also In re: Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (in multi-year litigation, courts to use either current rates or historical rates with "a prime rate enhancement" to account for passage of time); *accord, Stetson v. Grissom*, 2016 WL 2731587, at *5 (9th Cir. May 11, 2016) (courts to use current hourly rates or prime rate enhancement "to compensate class counsel for delays in payment in contingency-fee cases"). This Court last year found sufficient evidence that each of these rate ranges is appropriate in the present market for legal services. *In re High-Tech Employee Antitrust Litig.*, No. 5:11-cv-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving partner rates of

---

[2] Lead Counsel base their rates upon the experience and skill of the attorney or paralegal performing the work. Lead Counsel set rates through periodic review of the rates charged by other law firms involved in similar complex litigation, and survey results published by trade periodicals such as the National Law Journal.

$490 to $975, counsel and associates from $310 to $800 per hour, and paraprofessionals from $190 to $430 per hour).

These rates are comparable to or lower than the rates reported by Yahoo's counsel in other actions. *See, e.g.,* Debtor's Appl. for Order Authorizing Retention of Morrison & Foerster LLP, *In re Residential Capital, LLC, et al.*, No. 12-BK-12020 (Bankr. S.D.N.Y. June 26, 2012), ECF No. 506 (reporting hourly rates of $695 to $1,125 per hour for partners; $550 to $950 for counsel; $380 to $685 for associates, and $185 to $360 for paraprofessionals); Order Granting Motion for Attorney's Fees at 5, *Guidiville Rancheria of California v. United States*, No. 12-cv-1326-YGR (N.D. Cal., Aug. 18, 2015), ECF No. 289 (noting rates for attorneys in Morrison & Foerster's San Francisco office range from $350 per hour for associates to more than $1,000 per hour for partners).

Lead Counsel's rates have been repeatedly evaluated and approved by federal courts as reasonable. *See, e.g., Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1173 (C.D. Cal. 2010) (approving Girard Gibbs's rates); Order Granting Pls.' Mot. for Approval of Attorney Fees, *In re Adobe Systems Inc. Privacy Litig.*, No. 5:13-cv-05226-LHK (N.D. Cal. Aug. 13, 2015), ECF No. 107 (same); *In re High-Tech Employee*, 2015 WL 5158730, at *9 (approving Girard Gibbs's rates); Order Awarding Attorneys' Fees and Expenses, *In re CSO Hedge Fund Litig.*, 1:12-cv-7717-GHW (S.D.N.Y. Jan. 28, 2016), ECF No. 171 (approving Kaplan Fox's rates).

### c. The Requested Fee Represents a Negative Multiplier.

For the purpose of awarding class counsel a reasonable fee, the lodestar may be enhanced in light of the (1) results obtained, (2) novelty and complexity of the questions presented, (3) skill exhibited by counsel, (4) preclusion of other legal work as a result of counsel's acceptance and prosecution of the case, and (5) risk of nonpayment. *Hanlon*, 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *Ketchum*, 24 Cal. 4th at 1132. Nevertheless, "although a court can adjust the lodestar upward or downward based on certain factors, adjustments are the exception rather than the rule." *Fischel v. Equitable Life Assur. Soc'y of the United States,* 307 F.3d 997, 1007 (9th Cir. 2002) (citation and quotations omitted).

The award sought here—even when excluding additional counsel's fees and expenses for purposes of the calculation—reflects a modest *negative* adjustment. The remaining work required to

complete the settlement will further amplify the negative multiplier. Even at present, the negative multiplier falls below the range of multipliers awarded in similar class action cases that involved complex, novel issues and high-caliber defense counsel. *See, e.g., Sadowska*, 2013 WL 9600948, at *9 (approving negotiated fee representing a 1.37 multiplier); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving 1.82 multiplier where "the demanding nature of this action precluded Class Counsel from accepting other potentially profitable work"); *Wing v. Asarco Inc.*, 114 F.3d 986, 988-89 (9th Cir. 1997) (approving 2.0 multiplier in part because of "the quality of the [defendant's] opposition"); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empir. L. Stud. 248, 272 (2010) (finding that, in the Ninth Circuit, the mean multiplier for attorneys' fees awarded in connection with class settlements is 1.54).[3]

The negative multiplier here confirms the fairness of the agreed-upon fee award. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ("Th[e] resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel.").

### B. Lead Counsel's Out-of-Pocket Litigation Expenses Were Reasonably Incurred in Furtherance of the Prosecution of the Claims, and Should Be Awarded.

Lead Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this action. *See* Girard Decl. ¶ 63; King Decl. ¶ 20. These expenses are properly recoverable by counsel who secure settlements in class actions. *See In re Media Vision Tech. Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *Staton*, 327 F.3d at 974; *see also In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (noting that in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted). Because

---

[3] *Available at*:
http://scholarship.law.cornell.edu/cgi/viewcontent.cgi?article=1066&context=clsops_papers.

litigation expenses here were incurred on a contingent basis without guarantee of reimbursement, counsel were motivated to keep such expenses as low as possible given the needs of the case.

It bears emphasis that the agreed-upon award of $4,000,000 includes the expenses that Lead Counsel advanced for the benefit of the Class; Lead Counsel are not requesting a separate award for expenses on top of the $4 million. *See* Settlement Agreement ¶ 48. As of May 27, 2016, Lead Counsel have incurred $206,566.40 in unreimbursed costs to investigate the case, hire a mediator, retain experts, obtain deposition transcripts, travel, engage in legal research, and cover other customary litigation expenses. As detailed in the accompanying declarations of counsel, these costs were reasonably incurred in furtherance of the investigation, prosecution, and settlement of the action and should be reimbursed. *See In re Toys R Us FACTA Litig.*, 295 F.R.D. at 469 ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable. . . . [and the court has] discretion to reimburse consulting and expert witness fees." (quotations and citation omitted)). As an additional note, Lead Counsel self-hosted all electronic documents produced in this litigation—expenses associated with this service are not included in the expense figures stated above. King Decl. ¶ 21.

### C. Because Lead Counsel Are in the Best Position to Assess the Contributions of Non-Lead Counsel, the Court Should Permit Lead Counsel to Allocate the Fee in the First Instance.

As mentioned above, additional counsel for Class Representatives Abrams and Nobles provided some assistance in the successful prosecution of this matter. *See generally* King Decl. The services consisted of gathering and reviewing Ms. Nobles' and Ms. Abrams' documents in response to Yahoo's document requests; preparing Ms. Nobles' and Ms. Abrams' interrogatory responses; and helping prepare for and defend their depositions. Additional counsel Lesley Portnoy also assisted with additional projects. Lead Counsel approved work only after determining it to be non-duplicative. King Decl. ¶ 14.

Lead Counsel respectfully submit that they have the best vantage point to assess the value of other law firms' contributions to this litigation, and therefore they should be afforded the discretion to allocate these fees and expenses, subject to this Court's review and subject to the right of additional

counsel to petition the Court to challenge any allocation. As Judge Selna held in the Toyota MDL, efficiency and common sense support granting class counsel leeway to allocate fees "in a manner that they believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of the claims" because "class counsel are the most familiar with the amount of work actually contributed by each of the [other] firms." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *316 (C.D. Cal. July 24, 2013).

Judge Selna's approach is particularly appropriate where fees allocated to additional counsel will be paid from Lead Counsel's award. Numerous other courts have so held. *See, e.g.*, *Harless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (finding that "federal courts routinely affirm the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions for each firm and attorney") (citations omitted); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (noting that this approach "relieves the Court of the difficult task of assessing counsel's relative contributions.") (citation and quotations omitted); *In re Copley Pharm., Inc.*, 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999) (stating that "class counsel were there, working side by side, communicating frequently, and can better assess the relative worth of co-counsels' contributions"); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C. 1978) ("[I]t is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk.").

**D.    The Requested Service Awards Are Reasonable and Should Be Approved.**

Finally, Lead Counsel seek, and Yahoo does not oppose, service awards in the amount of $5,000 for each of the four named plaintiffs. If approved, Yahoo will pay these awards separately. Yahoo's agreement to pay them will not diminish the value of the injunctive relief, nor will there be any effect on the amount of any monetary relief any class member might achieve in future individual litigation. Settlement Agreement ¶ 52.

Service or incentive awards "are fairly typical in class action cases." *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Such awards are "intended to compensate class

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. Relevant considerations are the actions the class representative has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the class representative expended. *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013); *see also, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving $5,000 service awards); *Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) ("As Plaintiffs correctly note, there is ample case law finding $5,000 to be a reasonable amount for an incentive payment.").

The requested $5,000 awards for each of the four named plaintiffs in this case are warranted. The named plaintiffs actively participated in the prosecution of this case by regularly communicating and working with Lead Counsel. They produced personal and work-related emails, responded to interrogatories, and took time away from work to testify at a deposition. Notably, in opposing plaintiffs' motion for class certification, Yahoo quoted from and included as exhibits the interrogatory responses of all four named plaintiffs and excerpts of each of their deposition transcripts. *See* Decl. of Rebekah Kaufman Exs. A-L, Mar. 12, 2015, ECF No. 78-9, *et seq.*

In seeking to hold Yahoo accountable to the law, the plaintiffs also subjected themselves to public attention and exposure of their personal information. Plaintiffs pursued these claims notwithstanding the risks that private emails would likely be discoverable and that private information might be unsealed; in effect, they risked forfeiting their own privacy rights to vindicate the privacy rights of others like them. Under all the circumstances of this case, the requested service awards are justified. *See, e.g.*, *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) ($10,000); *In re Toys R Us FACTA Litig.*, 295 F.R.D. at 472 ($5,000); *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) ("In this district, a $5,000 incentive award is presumptively reasonable.").

IV.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that the Court should award $4,000,000 in attorneys' fees and expenses, direct this award to Lead Counsel to allocate among non-lead counsel as appropriate, and approve service awards of $5,000 to each of the four named plaintiffs.

Dated: May 31, 2016                                  Respectfully Submitted,


**KAPLAN FOX & KILSHEIMER LLP**          **GIRARD GIBBS LLP**

By:    _/s/ Laurence D. King_                       By:    _/s/ Daniel C. Girard_
Laurence D. King (SBN 206423)               Daniel C. Girard (SBN 114826)
350 Sansome Street, Suite 400                 Jordan Elias (SBN 228731)
San Francisco, CA 94104                          601 California Street, 14th Floor
Telephone: (415) 772-4700                       San Francisco, CA 94108
Facsimile: (415) 772-4707                         Telephone: (415) 981-4800
_lking@kaplanfox.com_                           Facsimile: (415) 981-4846
                                                              _dcg@girardgibbs.com_
Frederic S. Fox (admitted _pro hac vice_)
David A. Straite (admitted _pro hac vice_)      _Co-Lead Class Counsel_
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
_dstraite@kaplanfox.com_

_Co-Lead Class Counsel_


## ATTESTATION STATEMENT

I, Daniel C. Girard, am the ECF User whose identification and password are being used to file Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards. Pursuant to Civil L.R. 5-1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

/s/ _Daniel C. Girard_
Daniel C. Girard