UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE YAHOO MAIL LITIGATION | Case No. 13-CV-4980-LHK<br>Case No. 13-CV-4989-LHK<br>Case No. 13-CV-5326-LHK<br>Case No. 13-CV-5388-LHK<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Re: Dkt. Nos. 187, 188 |

Plaintiffs Cody Baker, Brian Pincus, Halima Nobles, and Rebecca Abrams (collectively, "Plaintiffs") bring this class action for injunctive and declaratory relief only against Defendant Yahoo!, Inc. ("Yahoo").  Before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Attorney's Fees and Costs and Representative Plaintiffs' Service Awards (collectively, the "Motions").  ECF No. 187 ("Final Approval Mot."); ECF No. 188 ("Att'y Fees Mot.").  The Court held a Final

1

Approval Hearing on August 25, 2016.

Having considered the Motions, the Settlement and Addendum, the Notice, the record in this case, and the statements made at the Final Approval Hearing, IT IS HEREBY ORDERED as follows:

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement and its Addendum.  ECF No. 174-3 ("Settlement"); ECF No. 181 ("Addendum").

2.      The Court has jurisdiction over this action, Plaintiffs, Class Members, and Yahoo pursuant to the Class Action Fairness Act ("CAFA").

## I.      BACKGROUND

Yahoo is a Delaware corporation headquartered in Sunnyvale, California.  *See* ECF No. 119 ("Amend. Compl.") ¶ 19.  Yahoo operates Yahoo Mail as a free web-based email service.  *Id*. ¶¶ 20–23.  More than 250 million subscribers have registered for Yahoo Mail under an @yahoo.com, @ymail.com, or @rocketmail.com email address.  *Id*. ¶¶ 20–21.

In order to provide Yahoo Mail as a free email service, Yahoo charges advertisers to display advertisements on Yahoo Mail webpages.  *Id.* ¶ 23.  Roughly 75% of Yahoo's revenue in 2013 came from advertising.  *Id.* ¶ 28.  Plaintiffs allege that Yahoo can increase its revenues by charging advertisers higher rates to display targeted advertisements to Yahoo Mail subscribers.  *Id.*

The named Plaintiffs (referred also as "Class Representatives") are four individuals who do not use Yahoo Mail but who sent emails to Yahoo Mail subscribers.  *Id.*  ¶¶ 15–18.  Cody Baker is a resident of New York.  *Id.* ¶ 15.  Halima Nobles is a resident of Texas.  *Id.* ¶ 17.  Brian Pincus and Rebecca Abrams are residents of California.  *Id.* ¶¶ 16, 18.

Beginning on October 2, 2013, six separate complaints were filed against Yahoo in the Northern District of California.  On December 18, 2013, this Court related all six pending actions because they involved the same defendant, Yahoo, and involved "substantially the same basic

allegations" that Yahoo's "interception, storage, reading and scanning of email violates . . .

consumers' rights of privacy" under state and federal law. ECF No. 14 at 2. On January 8, 2014,

two of the six actions were dismissed pursuant to two stipulations of dismissal. *See Kevranian v.*

*Yahoo!*, 13-CV-4547-LHK, ECF No. 36; *Zelaya v. Yahoo! Inc.*, 13-CV-4619-LHK, ECF No. 23.

On January 22, 2014, this Court consolidated the remaining four cases for pretrial purposes, ECF

No. 27, and appointed Girard Gibbs LLP ("Girard Gibbs") and Kaplan Fox Kilsheimer LLP

("Kaplan Fox") interim class counsel, ECF No. 29. Plaintiffs filed a consolidated class action

complaint on February 12, 2014. ECF No. 35.

 The consolidated class action complaint included four substantive causes of action, for

violation of: (1) the California Invasion of Privacy Act ("CIPA"), (2) Article I, § 1 of the

California Constitution, (3) the Wiretap Act, and (4) the Federal Stored Communications Act

("SCA"). The complaint also included a fifth cause of action for declaratory relief under 28

U.S.C. § 2201.

 On March 5, 2014, Yahoo moved to dismiss Plaintiffs' claims. ECF No. 37. On August

12, 2014, the Court granted in part and denied in part this motion to dismiss. *See In re Yahoo Mail*

*Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014). Of Plaintiffs' substantive claims, only Plaintiffs'

claim under § 2702(a)(1) of the SCA and § 631 claim under CIPA survived. *Id.* at 1043.

 On February 5, 2015, Plaintiffs moved for class certification on Plaintiffs' SCA and CIPA

claims. ECF No. 60. Plaintiffs sought "solely declaratory and injunctive relief," pursuant to

Federal Rule of Civil Procedure 23(b)(2). ECF No. 105 at 7. On May 26, 2015, the Court granted

in part and denied in part Plaintiffs' motion for class certification. Specifically, the Court certified

the following two equitable relief subclasses pursuant to Federal Rule of Civil Procedure 23(b)(2):

> As to Plaintiffs' SCA claim: All persons in the United States who are not Yahoo
> Mail subscribers and who have sent emails to or received emails from a Yahoo
> Mail subscriber from October 2, 2011 to the present, or who will send emails to or
> receive emails from a Yahoo Mail subscriber in the future.

United States District Court
Northern District of California

> As to Plaintiffs' CIPA claim: All persons in California who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2012 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future.

*Id.* at 44. In addition to certifying these classes, the Court appointed the four named Plaintiffs as Class Representatives, and Girard Gibbs and Kaplan Fox as Class Counsel.

On June 9, 2015, Defendant filed before the Ninth Circuit a petition for permission to appeal this Court's class certification order. ECF No. 120. Plaintiffs filed a response. On August 11, 2015, the Ninth Circuit denied Defendant's petition. ECF No. 125.

On September 19, 2015, both parties filed motions for summary judgment. ECF No. 131; ECF No. 135. In moving for summary judgment, Plaintiffs sought only injunctive and declaratory relief as to the CIPA class and only declaratory relief as to the SCA class. ECF No. 131 at 19. On October 19, 2015, both parties filed oppositions to the other party's motion for summary judgment. ECF No. 151; ECF No. 158. On November 16, 2015, the parties filed their respective replies. ECF No. 164; ECF No. 166. On September 28, 2015, the parties each filed *Daubert* motions to exclude testimony from the opposing party's expert. ECF No. 144; ECF No. 146. The summary judgment and *Daubert* motions were set for hearing on December 10, 2015.

On December 4, 2015, six days before the summary judgment hearing, the parties notified the Court that they had settled. This settlement was the culmination of several mediation sessions. The parties initially participated in a mediation session on December 11, 2014. After the parties filed their summary judgment and *Daubert* motions, the parties participated in a second mediation on November 4, 2015. This mediation provided the groundwork for the parties' eventual settlement, which the parties finalized at a third mediation on December 4, 2015.

In light of the parties' settlement, the Court continued the summary judgment hearing and ordered the parties to move for preliminary approval of class action settlement by January 7, 2016. ECF No. 173 at 1. On January 7, 2016, the parties filed their motion for preliminary approval. ECF No. 174. This motion was set for hearing on March 10, 2016. ECF No. 179.

4

At the March 10, 2016 preliminary approval hearing, the Court requested that the parties amend the Settlement's objection procedure such that Class Members could object by simply mailing an objection to the Courtroom Deputy instead of filing objections with both the Court and Class Counsel. The parties agreed to this modification, and the Court granted preliminary approval on March 15, 2016. ECF No. 182. In the Court's preliminary approval order, the Court set July 1, 2016 as the deadline to object. *Id.* at 6.

On May 31, 2016, Plaintiffs filed their motion for final approval of class action settlement, and Class Counsel filed their motion for attorney's fees and costs and class representative service awards. No objections were filed before July 1, 2016, the deadline to object.

On July 14, 2016, the Courtroom Deputy received an objection from Patrick Sweeney ("Sweeney"). ECF No. 194 ("Sweeney Obj."). In response to this objection, Class Counsel moved for leave to conduct expedited discovery. ECF No. 195. The Court granted Class Counsel's motion on July 25, 2016. ECF No. 196.

On August 14, 2016, the Court ordered Class Counsel to file a statement updating Class Counsel's lodestar in light of the additional discovery on Sweeney. Class Counsel filed a statement on August 17, 2016, which reported a lodestar of $3,912,009.50 and fees and expenses of $213.198.94. ECF No. 201 at 2.

## II. SETTLEMENT TERMS

### A. Yahoo

Pursuant to the Settlement, Yahoo has agreed to provide the following benefits to Class Members. These benefits are the only consideration Yahoo is obligated to give Class Members.

#### 1. Stipulated Injunction

For a period of three years from the Effective Date,[1] Yahoo shall make technical changes

---

[1] The Settlement defines "Effective Date" as "the first date after which the following events and conditions have occurred: (a) the Court has entered a Final Judgment; and (b) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for

5

such that, for incoming email, email content will be retrieved from the servers from which email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the email in his or her inbox.  For outgoing email, Yahoo shall make technical changes such that email content will be retrieved from the servers from which outgoing email is accessible by Yahoo Mail users, and only sent to servers for analysis for advertising purposes after a Yahoo Mail user can access the outgoing email in his or her sent email folder.

Thus, Yahoo will no longer intercept, scan, and analyze email that is "in transit," a central feature alleged in the amended complaint and a required element for CIPA liability.  Amend. Compl. ¶ 1; Cal. Penal Code § 631(a) (proscribing persons from "read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]" and from "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" by means "of any machine, instrument, or contrivance").  Yahoo reports that the changes to its email processing will require "a considerable investment of time, money, and resources."  Final Approval Mot. at 9.

Yahoo shall, upon making the foregoing changes, deliver a written certification under oath to Class Counsel stating that it has made the technical changes required.  If Yahoo's new email architecture becomes outdated and must be improved or replaced during the pendency of the three-year injunction, then Yahoo may change its system in a manner that continues to comply with the requirements of the injunction.  If Yahoo changes its system materially during the injunction, it will notify Class Counsel of such a change.  Nothing in the injunction shall prohibit Yahoo for purposes unrelated to targeted advertising, such as analyzing incoming and outgoing emails for the

review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be a Final Judgment."  Settlement at 4.

6

purposes of spam, malware, and abuse detection and protection at any time on any Yahoo servers.

At the Preliminary Approval Hearing, Yahoo's counsel stated that Yahoo has no intention of eliminating the foregoing changes to its email architecture at the end of the three year injunction. However, as the parties acknowledged at the Preliminary Approval Hearing, if Yahoo does change its email architecture during or after this three year term, the Release does not bar Class Members from again bringing suit against Yahoo. ECF No. 182 at 3.

At the Final Approval Hearing, Yahoo's counsel stated that the development of the technical changes was largely completed. Yahoo's Senior Manager of Engineering had previously stated that these changes would require "a considerable investment of time, money, and resources." Final Approval Mot. at 9.

### 2. Yahoo Website Modifications

No later than the Effective Date, Yahoo will implement the following modifications to its website:

> **Yahoo Privacy Center Webpage:** The Yahoo Privacy Center Webpage shall include a standalone paragraph under the heading "Information Collection and Use—General" stating: Yahoo analyzes and stores all communications content, including email content from incoming and outgoing mail.

> **Yahoo Mail Webpage:** On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), the heading "Information Collection and Use Practices" shall be replaced with the heading "Premium Services." The heading "Personally Relevant Experiences" shall be replaced with the heading "Information Collection and Use Practices."

> **Yahoo Mail Webpage:** On the Yahoo Mail webpage (accessible from the Products menu on the Yahoo Privacy Center webpage), under the bullet that states "This information may also be used for interest-based advertising. To learn more, you can visit Yahoo's control tool for interest-based advertising," an additional bullet point shall be added stating: "Yahoo may share keywords, package tracking and product identification numbers with third parties in order to enhance your user experience and provide targeted ads."

### 3. Certification

Within thirty days of the Effective Date, Yahoo will certify to Class Counsel that no email

7

data of Class Members was collected and stored for the purpose of Yahoo's 2013 trial of Google's AdSense for Content product. Such certification relates to the SCA Class which was certified; the SCA states that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1).

### B. Class Members

At class certification and summary judgment, Plaintiffs sought only injunctive and declaratory relief and did not seek monetary damages. Thus, the Court could not certify a class for monetary damages, Class Members could not receive monetary damages in the Settlement, and Class Members are free to pursue monetary damages claims against Yahoo notwithstanding the Settlement.

Thus, upon the Effective Date of this Settlement, Class Members shall be deemed to have released, acquitted and forever discharged Yahoo from any and all Released Claims. As defined in the Settlement, the term "Released Claims" encompasses all present and future claims, both known and unknown, "arising out of the same nucleus of operative facts" as the facts in the instant case. Settlement at 8. However, the release "shall extend to claims for declaratory, injunctive and non-monetary equitable relief only. No member of the CIPA Class, with the exception of the Class Representatives, hereby releases any claim for damages under California Penal Code Section 637.2(a)(1)-(2). No member of the SCA Class, with the exception of the Class Representatives, hereby releases any claim for damages under 18 U.S.C. § 2707(c)." *Id*. Consequently, no Class Member has released any claims for monetary damages.

### III. DISCUSSION

### A. The Notice and Notice Methodology Were Appropriate

For classes certified under Federal of Civil Procedure 23(b)(2), the Court "may direct

appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).  However, because Rule 23(b)(2) provides only injunctive and declaratory relief, "notice to the class is not required."  *Lyon v. United States Immigration and Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014).

In the instant case, the parties nonetheless "agreed to provide notice . . . across a network of websites."  Final Approval Mot. at 7.  To this end, the parties worked with Advertising.com to place banner advertisements "on a collection of popular websites."  *Id.*  The parties also worked with Rust Consulting, Inc. to create a website informing Class Members of the details of the Settlement.  Finally, Yahoo properly and timely notified state and federal officials of the Settlement, pursuant to the Class Action Fairness Act.

The Court finds that the notice to the Class of the pendency of the action and of this Settlement, Class Counsel's application for attorney's fees and expenses, and the application for service awards for Class Representatives has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

### B.  The Proposed Settlement is Fair, Adequate, and Reasonable

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  In evaluating a proposed class action settlement under Rule 23(e), the legal standard in the Ninth Circuit is whether the settlement "is fundamentally fair, adequate, and reasonable."  *Officers for Justice v. Civil Serv. Comm;n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993).

A district court may consider some or all of the following factors when making this determination: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of

9

the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. These factors are examined in turn.

### 1. Strength of Plaintiffs' Case

As to the strength of Plaintiffs' case, Plaintiffs have achieved their stated goal in this litigation: Yahoo will no longer intercept and analyze emails in transit for advertising purposes. Instead, for the next three years, Yahoo may only analyze incoming email after the email reaches a Yahoo Mail users' inbox, and Yahoo may only analyze outgoing email after the email is in a Yahoo Mail users' sent email folder. These changes, according to Yahoo's Senior Manager of Engineering, will require "a considerable investment of time, money, and resources." Final Approval Mot. at 9. Class Members may bring suit against Yahoo if Yahoo fails to carry out these changes or if Yahoo abandons these changes after three years. Moreover, Yahoo has certified that it did not collect or store Class Members' data during its 2013 trial of Google's AdSense program, and Yahoo has taken steps to make its email analyzing practices more explicit.

The Settlement is further strengthened by the fact that the instant action raises several novel legal issues. Plaintiffs successfully moved for class certification on two injunctive and declaratory relief classes—a nationwide class under the Stored Communications Act ("SCA"), and a California class under the California Information Privacy Act ("CIPA"). Yahoo filed a petition for review of the Court's class certification order, which Plaintiffs' opposed. The Ninth Circuit denied review. This case remains one of the few instances where a nationwide SCA and statewide CIPA class has been certified in the email analyzing context. Moreover, Plaintiffs' ability to obtain class certification came only a year after this Court, in *In re Google Inc. Gmail Litigation*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), denied class certification in a substantially similar email analyzing case.[2]

---

[2] Importantly, unlike the instant case, the plaintiffs in *Gmail* only sought certification of a damages class under Rule 23(b)(3).

Case Nos. 13-CV-4980-LHK; 13-CV-4989-LHK; 13-CV-5326-LHK; 13-CV-5388-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER
GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE
AWARDS

Finally, other courts have noted that legal uncertainty favors approval. *See, e.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). Here, although the Court did not rule on the parties' cross-motions for summary judgment because the parties settled six days prior to the summary judgment hearing, the Court's initial analysis suggested some vulnerability in Plaintiffs' case. In particular, in *Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844, 852 (N.D. Cal. 2015), the Court determined that defendant did not violate federal or state law when scanning and analyzing users' text messages. Although *Backhaut* involved a different company and a different process, the *Backhaut* decision nonetheless did not weigh in Plaintiffs' favor.

### 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation

The risk, expense, complexity, and duration of further litigation also weighs in favor of final approval. Plaintiffs would not have received any relief had the Court ruled in Yahoo's favor on summary judgment. Moreover, the Settlement obviates the need for a final pretrial conference and six-day jury trial. The numerous documents that were filed in connection with Yahoo's motion to dismiss, Plaintiffs' motion for class certification, the parties' cross-motions for summary judgment, and the parties cross-*Daubert* motions indicate that the final pretrial conference and the six-day jury trial would have been contested and expensive for both sides.

### 3. The Risk of Maintaining Class Action Status Throughout Trial

This factor also weighs in favor of final approval. Indeed, in Yahoo's motion for summary judgment, Yahoo requested that the Court de-certify the class. ECF No. 135 at 12–13. The Settlement obviates the need for the Court to rule upon this request.

### 4. Amount of Settlement

In moving for class certification, Plaintiffs sought "solely declaratory and injunctive relief" under Federal Rule of Civil Procedure 23(b)(2). ECF No. 105 at 7. Plaintiffs did not seek

Case Nos. 13-CV-4980-LHK; 13-CV-4989-LHK; 13-CV-5326-LHK; 13-CV-5388-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

classwide monetary relief. *See also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2557 (2011) (stating that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Thus, Class Members could not recover monetary damages on a classwide basis. In moving for summary judgment, Plaintiffs sought injunctive and declaratory relief as to the CIPA class and only declaratory relief as to the SCA class. Once again, Plaintiffs did not seek—and the Court could not award—monetary relief at class certification and summary judgment. The Settlement does not bar Class Members from pursuing monetary relief against Yahoo. *See* Settlement at 8 ("[Y]ou will only be deemed to have released claims for declaratory, injunctive, and non-monetary equitable relief."). Consequently, Class Members may, individually or on behalf of a class, bring suit against Yahoo for monetary relief.

### 5. Extent of Discovery Completed and Stage of Proceedings

This factor weighs in favor of final approval. The first complaint was filed on October 2, 2013. In the nearly three years since, Plaintiffs:

- Litigated Yahoo's motion to dismiss;
- Litigated Plaintiffs' motion for class certification;
- Successfully opposed Yahoo's petition for review to the Ninth Circuit of the Court's class certification order;
- Fully briefed cross-motions for summary judgment; and
- Fully briefed cross-*Daubert* motions.

In addition, as to discovery, Plaintiffs, among other things:

- Took two Rule 30(b)(6) depositions and six fact depositions of Yahoo employees;
- Defended the depositions of all four named Plaintiffs;
- Deposed Yahoo's expert witness and defended the deposition of Plaintiffs' expert witness;

- Deposed and conducted discovery on Patrick Sweeney;

- Prepared and exchanged opening and rebuttal expert reports;

- Drafted and served on Yahoo multiple sets of interrogatories and requests for admission;

- Received more than 136,000 pages in documents from Yahoo;

- Responded to Yahoo's document requests; and

- Reviewed documents related to Yahoo's litigation with the federal government before the U.S. Foreign Intelligence Surveillance Court.

*See generally* Att'y Fees Mot. at 2–7 (summarizing Class Counsel's work).

Finally, Plaintiffs have participated in several mediation sessions, beginning in December 2014 and culminating with the Settlement after mediations in November and December 2015. Thus, over the past three years, Class Counsel took extensive discovery, litigated this case to summary judgment, and developed an informed perspective on this case's strengths and weaknesses.

### 6. Experience and Views of Counsel

This factor favors final approval. The parties have been represented by experienced counsel, and all counsel favor settlement.

### 7. Presence of a Governmental Participant

This factor is not relevant.

### 8. Reaction of Class Members to Proposed Settlement

The reaction of Class Members supports final approval. There are hundreds of thousands (if not millions) of total Class Members—Plaintiffs' motion for class certification did not specify an exact number. No Class Member timely objected to the Settlement, even though the parties streamlined the objection process so that Class Members could object by simply notifying the Courtroom Deputy by mail. There was one untimely objection, but that objection, as discussed

United States District Court
Northern District of California

below, is without merit. In any event, the presence of a single untimely objector amongst hundreds of thousands of Class Members is still "indicia of the approval of the class." *Perkins v. LinkedIn Corp.*, 2016 WL 613255, *3 (N.D. Cal. Feb. 16, 2016); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement (.05%), and 500 class members opted out (.56%)).

### a. The Sweeney Objection is Untimely and Without Merit

Patrick Sweeney filed an objection to the instant Settlement on July 14, 2016. The crux of Sweeney's objection appears to be that the proposed attorney's fees award is too high. In order to prepare for the Final Approval Hearing and to establish a record for appellate review, Class Counsel moved to take expedited discovery on July 22, 2016. The Court granted Class Counsel's motion on July 25, 2016. Sweeney did not attend the August 25, 2016 Final Approval Hearing. The information obtained from the discovery, along with the record in this case, demonstrate that Sweeney's objection lacks merit.

First, Sweeney's objection is untimely. The preliminary approval order clearly states that all objections must be made by July 1, 2016, and that untimely objections "shall be deemed . . . waived." ECF No. 182 at 7. On this basis alone, the Court may "refuse to consider" Sweeney's objection. *Chavez v. PVH Corp.*, 2015 WL 9258144, *3 (N.D. Cal. Dec. 18, 2015) (alteration omitted) (citing additional cases).

Second, in the Ninth Circuit, only an "aggrieved class member" has standing to object to a proposed class settlement. *In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994). The burden is on the objector to "prove that he has standing to object." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015). Sweeney has not met this burden. During Sweeney's deposition, Sweeney admitted that he did not "have actual evidence" of his Class Membership, and that he "guess[ed]" that he was a Class Member. ECF

No. 197-2 at 14. He did not specify whether he had sent an email to any Yahoo Mail user during the relevant time period. In another class action settlement, involving alleged violations of state and federal consumer protection laws, a district court found that Sweeney did not have standing to object because "his claim to membership is based only on [his] belief." *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig.*, 2016 WL 543137, *6 n.16 (D. Me. Feb. 10, 2016). Sweeney's inability to show standing provides a separate and independent basis to overrule his objection.

Third, discovery reveals that Sweeney is a serial objector. During Sweeney's deposition, Sweeney revealed that he had objected in 25 federal cases across the country. Many courts have found Sweeney's objections to be meritless. In *Larson v. Trader Joe's Co.*, 2014 WL 3404531, *7 n.4 (N.D. Cal. July 11, 2014), for example, U.S. District Judge William Orrick noted that Sweeney and his family had "a long history of . . . object[ing] [to] class action proceedings." Judge Orrick determined that Sweeney's objections *Larsen* were "not . . . true" and were thus without merit. *Id.* at *7.

Sweeney's objections in the instant case are similarly misguided. Sweeney, for instance, repeatedly refers to a claim form and claims administration. Sweeney Obj. at 1, 2. However, there is no claim form or claims administration in the instant case because the Settlement provides only injunctive and not monetary relief to Class Members. It is thus unclear to what Sweeney is referring when he discusses the claim form and claims administration process.

Sweeney also appears to argue that the Settlement prevents Class Members from pursuing monetary relief against Yahoo. However, Class Members have not, in fact, released any monetary claims against Yahoo. The Settlement only releases claims for injunctive, declaratory, and other non-monetary equitable relief. As discussed, Plaintiffs only sought injunctive and declaratory relief at class certification and summary judgment. Plaintiffs did not ask, and the Court could not certify, classes which would have provided Class Members with monetary relief, and Class

15

United States District Court
Northern District of California

1    Members could not have received monetary relief as a result of the Settlement. Class Members

2    are free to pursue monetary relief against Yahoo in a separate action.

3         Finally, as outlined in greater detail below, the attorney's fees award sufficiently reflects

4    the work done by Class Counsel and the results achieved in this action. Notably, Sweeney states

5    that Class Counsel has failed to submit "detailed billing records" to support their request for

6    attorney's fees. Sweeney Obj. at 2. This statement is factually incorrect. In their motion for

7    attorney's fees, filed on May 31, 2016—a full month and a half before Sweeney's objection—

8    Class Counsel included detailed billing records which showed the number of hours each attorney

9    worked and the attorney's billable rate. *See* ECF No. 189 (providing billing records for Girard

10   Gibbs); ECF No. 190 (providing billing records for Kaplan Fox).

11        In sum, Sweeney's arguments are unavailing and do not warrant rejection of the

12   Settlement. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, *15 (C.D. Cal. July 29,

13   2010) ("The fact that there is opposition does not necessitate disapproval of the settlement.

14   Instead, the court must independently evaluate whether the objections being raised suggest serious

15   reasons why the proposal might be unfair.") (internal quotation marks omitted). Sweeney's

16   objection is therefore OVERRULED.

17        Having considered the factors set forth in *Officers for Justice*, the Court finds that the

18   Settlement is fair, adequate, and reasonable within the meaning of Rule 23(e). Accordingly,

19   Plaintiffs' motion for final approval of the class action settlement is GRANTED.

20   **C. The Request for Attorney's Fees and Costs Is Reasonable**

21        "Under Ninth Circuit law, the district court has discretion in [class settlement] cases to

22   choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*,

23   290 F.3d 1043, 1047 (9th Cir. 2002). Because Class Members have only received injunctive and

24   declaratory relief, the percentage-of-the-fund method is inapplicable.

25        Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

26

27   16

28

hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941–42 (citations and internal quotation marks omitted). These factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

In the instant case, Class Counsel reports a lodestar of $3,912,009.50 and costs of $213,198.94. ECF No. 201 at 1. Class Counsel requests an award of $4,000,000.00 for attorney's fees and costs. According to Class Counsel, 18 different attorneys at Girard Gibbs and Kaplan Fox & Kilshemer worked on this action. Courts within the Northern District of California, including this Court, have approved the reported hourly rates for 17 of these 18 attorneys. Based on the declarations and exhibits filed by Class Counsel, which state the legal experience and education of these 17 attorneys, this Court finds the hourly rates for these 17 attorneys to be fair and reasonable.

The remaining attorney, Lauren Dubick ("Dubick"), has not been approved at her reported hourly rate of $495.00 in the Northern District of California. *Id.* at 6. Class Counsel failed to file any information as to Dubick's education or legal experience. Dubick worked 0.60 hours on this action, for a total of $297.00 at a $495.00 hourly rate. Because Class Counsel did not file any information as to Dubick's education or legal experience and because no court in the Northern District of California has approved Dubick's stated rate, the Court declines to approve Dubick's stated rate. The Court will exclude Dubick's total of $297.00 from the lodestar, which results in a revised lodestar of $3,911,712.50.

17

As demonstrated below, the *In re Bluetooth* factors—the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment—all weigh in Class Counsel's favor.

### 1. Quality of Representation and Benefit Obtained for the Class

First, Class Counsel achieved a result that was beneficial to the Class. Yahoo now no longer scans or analyzes Yahoo Mail content that is in transit in violation of CIPA. Yahoo has certified that no Class Members' data was collected or stored for Yahoo's 2013 trial of Google's AdSense program in violation of the SCA. Furthermore, Yahoo has explicitly disclosed its email analyzing practices on its public website. In addition, Class Members may, under the Settlement, still bring suit against Yahoo for monetary damages.

Class Counsel achieved these benefits only after several years of litigation, which included opposing Yahoo's motion to dismiss, obtaining class certification, and fully briefing cross-motions for summary judgment and cross-*Daubert* motions.

The numerous exhibits which Class Counsel filed in connection with the motion to dismiss, the motion for class certification, the cross-motions for summary judgment, and the cross-*Daubert* motions reflect the extensive analysis that Class Counsel undertook at each stage of this case. These exhibits, moreover, represent but a small fraction of the more than 136,000 pages of documents which Yahoo produced in this litigation. Class Counsel also drafted and served multiple sets of interrogatories and requests for admission.

Furthermore, Class Counsel took two Rule 30(b)(6) depositions and six other fact depositions of Yahoo employees, one fact deposition of Sweeney, and one expert deposition of Yahoo's expert. Class Counsel also defended the depositions of the four named Plaintiffs and of Plaintiffs' expert.

In light of the large volume of discovery at issue, the extensive motions practice that was undertaken, and the complex legal issues that have been presented in this case, it appears that

Class Counsel took steps to move forward with this litigation in an effective and cost-efficient manner. Specifically, Class Counsel met by phone each week to assign tasks and avoid duplication, kept and monitored detailed time records each month, and designated a single individual to serve as an e-discovery liaison. Att'y Fees Mot. at 3, 12.

Finally, Class Counsel participated in multiple mediation sessions. The parties participated in mediation with Bruce Friedman of JAMS on December 11, 2014, and with Cathy Yanni of JAMS on November 4, 2015 and December 4, 2015. ECF No. 188 at 7. Prior to each mediation session, the parties prepared and exchanged mediation briefs and other materials.

Given the results achieved and Class Counsel's extensive involvement in this case, the Court finds that the quality of representation and benefit obtained for the class factors weigh in Class Counsel's favor.

### 2. Complexity and Novelty of the Issues Presented

Second, as noted above, this case presented several novel and difficult legal issues regarding the application of the SCA and CIPA to email interception and analyzing and the appropriateness of class treatment. Class Counsel were able to achieve class certification of two classes for injunctive and declaratory relief after the Court's decision to deny class certification of a damages class in *In re Google Inc. Gmail Litigation*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014). Class Counsel opposed Yahoo's petition for review of this Court's class certification order, and the Ninth Circuit denied Yahoo's petition. This case remains one of the first and only cases where a nationwide and statewide class has been certified in the email analyzing context. Accordingly, the complexity and novelty of issues weigh in Class Counsel's favor.

### 3. Risk of Nonpayment

Third, the parties settled after fully briefing cross-motions for summary judgment and cross-*Daubert* motions. The Court had reviewed the parties' motions, and had identified several vulnerabilities in Plaintiffs' case. It is possible that, absent settlement, Class Counsel would have

19

1    not been paid for their efforts in this litigation.

2        As a final point, the lodestar multiplier in this case, which excludes the $297.00 billed by

3    Dubick—0.97—is within the range of reasonableness. In *Vizcaino*, the Ninth Circuit conducted a

4    survey of attorney's fees awards in common fund cases ranging from $50 to 200 million between

5    1996 and 2001. *See* 290 F.3d at 1052–54. In the vast majority of cases (20 of 24, or 83%), the

6    multiplier ranged from 1.0–4.0. *Id.* at 1051 n.6. Here, a 0.97 multiplier is slightly below the low

7    end of the multiplier range. Moreover, the multiplier may further decrease if Sweeney files an

8    appeal.

9        Accordingly, Class Counsel's request for $4 million in attorney's fees is GRANTED. The

10    Court hereby directs Yahoo to deposit the sum of $4,020,000.00[3] into an interest-bearing account

11    at Union Bank of California within ten (10) business days of the entry of this Order in accordance

12    with the Settlement. Thereafter, within three (3) business days of the Effective Date, Yahoo shall

13    instruct Union Bank to transfer the entire sum, plus all accrued interest, by wire transfer to a trust

14    account of Girard Gibbs LLP. As further specified in the Settlement, Class Counsel shall jointly

15    decide how to allocate the awarded attorney's fees, expenses, and service awards among

16    themselves, additional counsel, and the Class Representatives.

17    **D. The Request for Class Representative Service Awards Is Reasonable**

18        In evaluating whether representative plaintiffs are entitled to reasonable incentive

19    payments, district courts "must evaluate their awards individually, using 'relevant factors

20    including the actions the plaintiff has taken to protect the interests of the class, the degree to which

21    the class has benefitted from those actions...the amount of time and effort the plaintiff expended in

22    pursuing the litigation...and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at

23    977 (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).

24        The Ninth Circuit has established $5,000.00 as a reasonable benchmark award for

25

26    ———————————
[3] As discussed below, the additional $20,000.00 is for service awards to the Class Representatives.

27    Case Nos. 13-CV-4980-LHK; 13-CV-4989-LHK; 13-CV-5326-LHK; 13-CV-5388-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER

28    GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE
AWARDS

representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The four Class Representatives—Rebecca Abrams, Cody Baker, Brian Pincus, and Halima Nobles—request a service award of $5,000.00.

Each of the four Class Representatives actively participated in the prosecution of this case by regularly communicating and working with [Class] Counsel." Att'y Fees Mot. at 18. The Class Representatives "produced personal and work-related emails, responded to interrogatories, and took time away from work to testify at a deposition." *Id.* Moreover, the Class Representatives (as opposed to other Class Members) agree to release any claims for monetary damages against Yahoo that arise out of the "same nucleus of operative fact." Settlement at 8.

Class Members have significantly benefitted from the Class Representatives' involvement in this action. As noted above, Yahoo has agreed to (1) make changes to its email architecture, (2) publicize its practices, and (3) certify that no Class Member's data was collected and stored during Yahoo's 2013 trial of Google's AdSense program. Moreover, Class Members may continue to pursue claims for monetary damages against Google.

Thus, considering the amount of time and effort expended by Class Representatives over this nearly three-year long litigation, and the results achieved, it is reasonable to award each Class Representative a $5,000.00 service award. Accordingly, Class Counsel's request for a $5,000.00 service award for Rebecca Abrams, Cody Baker, Brian Pincus, and Halima Nobles is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Attorney's Fees and Costs and Representative Plaintiffs' Service Awards are GRANTED. This action and all claims asserted in the action are dismissed with prejudice.

The Court reserves exclusive and continuing jurisdiction over the action, the Class

21

Representatives, the Class Members, and Yahoo for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Judgment. In the event that the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Settlement, and without prejudice to the status quo ante rights of Plaintiffs, Class Members, and Defendants.

The Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry by the Clerk of the Court. The Clerk shall close the file for the following cases: Case Nos. 13-CV-4980-LHK; 13-CV-4989-LHK; 13-CV-5326-LHK; 13-CV-5388-LHK.

**IT IS SO ORDERED.**

Dated: August 25, 2016

_____
LUCY H. KOH
United States District Judge